# HAFETZ & NECHELES LLP
ATTORNEYS AT LAW

10 EAST 40TH STREET, 48TH FLOOR
NEW YORK, N.Y. 10016
TELEPHONE: (212) 997-7400
TELECOPIER. (212) 997-7646

July 27, 2018

Via ECF

Hon. Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *United States v. Clare Bronfman,* S1 18-cr-204 (NGG)

Dear Judge Garaufis:

    We respectfully submit this letter in support of Clare Bronfman's bail application. Ms. Bronfman was arrested on Tuesday and was named in two counts of the Superseding Indictment. She is charged with participating in a Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d) and with Conspiracy to Commit Identity Theft in violation of 18 U.S.C. § 1028(a)(7). Neither of these charges carry a presumption of detention or a mandatory prison sentence.

    Ms. Bronfman is named in three of the ten racketeering acts charged in Count One. In Act Two, she is alleged to have conspired to commit identity theft between 2005 and 2008 by breaking into her father's computer. In Act Five, she is alleged to have encouraged, in early 2009, an alien to enter the United States illegally and to have committed money laundering for that purpose. Finally, in Act Ten, she is alleged to have conspired to commit identity theft, between November 2016 and March 2018, by causing Keith Raniere's deceased girlfriend's credit card to be used pay Raniere's expenses. None of these predicate acts involve even the slightest hint of violence and most occurred approximately a decade ago.

    I.    <u>The Proposed Bail Package</u>

    We propose the following substantial bail package:

1. A $100 million bond secured by $50 million in property, including: (a) $25,000,000 worth of cash or securities held in a trust account of which she is the beneficiary; (b) real estate owned by Ms. Bronfman located in the United States worth approximately $4 million; (c) a UCC filing against the Delaware LLC that owns the island and resort

1

     in Fiji for $13,000,000; and (d) several pieces of real estate in the United States belonging to Ms. Bronfman's sister and worth more than $8 million.[1]

2. Her mother and brother-in-law as co-signors on the bond;

3. Restrictions on her ability to obtain money from her trust accounts except for certain Court-approved purposes (*See* Declarations attached as Exhibits B and C);

4. Surrender of her passport;

5. Electronic monitoring and home detention until all bail conditions are satisfied, including the filing of property liens in the appropriate courts;

6. After satisfaction of bail conditions, travel restricted to the Southern and Eastern Districts of New York; and

7. No contact with any co-defendant or any person who the defense is aware will be a government witnesses in this case outside the presence of her attorneys.[2]

     II.     <u>Legal Standard</u>

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). As such, the Bail Reform Act requires that criminal defendants be released "subject to the least restrictive … combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." Notably, "Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it." *United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996); *accord United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985) (same).

The standard of proof regarding danger to the community is "clear and convincing evidence," § 3142(f); *United States v. Chimurenga*, 760 F.2d 400, 405-06 (2d Cir. 1985), and for risk of flight it is a preponderance. *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007).

In assessing a defendant's danger to the community and the risk of flight presented by her release, Congress has directed courts to consider several factors: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the

---

[1] The properties that will secure the bond are listed on Exhibit A.

[2] On Tuesday, the Court ordered Ms. Bronfman to have no contact with members of Nxivm until her bail package was finalized on July 27. Tr. 6/24, pp. 39–40. We ask that the Court not impose this condition going forward as there are no "members" of Nxivm. Rather, Nxivm was an organization which offered self-help courses to those who wanted it. It was not a membership-based organization.

2

person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g). We discuss these factors below.

### III. Ms. Bronfman Poses No Danger to Any Other Person or the Community

Ms. Bronfman poses no danger to "any other person or the community." She has no prior convictions and has never been accused of any sort of violence. Nor is she alleged to have played any role in the entity DOS.

The only "harassment" the government alleges Ms. Bronfman ever participated in was allegedly using "abusive litigation" to "intimidate and attack perceived enemies and critics of Raniere." Indictment ¶ 6(e). But litigation tactics, regardless of how aggressive they may be, are surely not the type of danger the Bail Reform Act is intended to prevent against. *See, e.g.*, *United States v. Persico*, 376 F. App'x 155, 157 (2d Cir. 2010) (questioning the finding of danger where the defendant had no criminal record and "the government offer[ed] no direct evidence of [the defendant] either using violence or directing others to use violence," and "the only threats he ever condoned were threats of legal action"); *United States v. LaLonde*, 246 F. Supp. 2d 873, 875 (S.D. Ohio 2003) (holding that the defendant did not "pos[e] a serious risk of intimidating witnesses" simply because "he ha[d] contacted witnesses in past prosecutions and asked them to assist him in defending himself" and "enlisted the services of a private investigator in order to learn the identities of potential witnesses against him").

Given the undisputed facts in this case, the proposed bail package will more than reasonably assure "the safety of any other person and the community."

### IV. The Proposed Bail Conditions Will Reasonably Assure Ms. Bronfman's Appearance as Required

The proposed bail package will also assure that Ms. Bronfman will appear as directed at all court dates. As an initial matter, at least since the time of the arrest of Keith Raniere, Ms. Bronfman has known that she is under investigation and facing arrest. For example, at the bail hearing for Raniere, the prosecution said that Ms. Bronfman "is a person who the government does believe has acted as a co-conspirator in criminal activity with [Raniere]." Tr. 6/12, p.24. Nevertheless, Ms. Bronfman voluntarily returned to the United States from Mexico after Raniere was arrested. Moreover, during the period between Raniere's arrest and today, she has twice travelled to Europe (after informing the U.S. Attorney's Office of her travel plans) and then returned to the United States.

In addition, Ms. Bronfman, understanding that she was likely to be indicted, rented an apartment in Manhattan, so that she could live in this area—close to her attorneys—while she prepared for trial. Relatedly, Ms. Bronfman's attorneys had asked the government, prior to her arrest, that she be given the opportunity to voluntarily surrender. On the day of her arrest, the prosecutor emailed undersigned counsel and asked that they contact the prosecutor immediately.

We did so before 7 a.m. and were told that Ms. Bronfman had been indicted and should surrender that day. Ms. Bronfman, voluntarily, did so.

Simply put, Ms. Bronfman "has not seized upon previous opportunities to flee to avoid prosecution or incarceration, and the opportunities have been many." *LaLonde*, 246 F. Supp. 2d at 875. This is a powerful factor, we submit, showing that Ms. Bronfman has no intention of fleeing in this case.

Furthermore, while Ms. Bronfman does have significant foreign ties, including family members in England and France and property in Fiji, there is no realistic possibility that she would manage to flee to any of these countries. The only country where she is a citizen is the United States. And she has already surrendered her passport to the Probation Department. Moreover, each of the three foreign countries to which she has ties have extradition treaties with the United States. Even if she were to flee to any of them, therefore, she would be extradited back to the United States. Courts have recognized that the existence of extradition treaties is a significant factor in determining whether the proposed bail conditions will reasonably assure a defendant's appearance. *See, e.g., United States v. Yijia Zhang*, No. 12-498, 2014 U.S. Dist. LEXIS 147306, at *9 (E.D. Pa. Oct. 16, 2014) ("Importantly, China has no extradition treaty with the United States. If Mr. Zhang were to return to China while on pretrial release, there is likely little chance that he could ever be returned to the United States for trial."); *United States v. Shahab Kouchekzadeh*, No. 08-cr-03A, 2008 U.S. Dist. LEXIS 34669, at *8 (W.D.N.Y. Apr. 28, 2008) (noting that "the possibility exists that he could flee to Iran, where no extradition treaty exists."); *United States v. Agriprocessors, Inc.*, No. 08-cr-1324(LRR), 2009 U.S. Dist. LEXIS 70588, at *25 n.8 (N.D. Iowa Jan. 28, 2009) ("In any event, Israel and the United States have an extradition treaty. Any benefit in fleeing to Israel would presumably be short-lived.") (internal citation omitted); *United States v. Kanawati*, No. 2008-7, 2008 U.S. Dist. LEXIS 38221, at *10–11 (D.V.I. May 12, 2008) (collecting cases).

Additionally, when considering the defendant's motivation to flee, courts often consider what the likely Guidelines sentence would be if the defendant was convicted of the charged crimes. *See, e.g.*, *United States v. Cilins*, 2013 U.S. Dist. LEXIS 104436, at *6 n.1 (S.D.N.Y. July 19, 2013) ("This guideline calculation is, of course, not binding on the parties or this Court for any potential sentencing. But it is a useful benchmark to be considered in the 18 U.S.C. § 3142 factors."). In this case, the likely guidelines would be no higher than 3 years.[3] While that would not be an insignificant prison sentence, it would be substantially shorter than the average sentence that results in detention or home confinement. *Cf. United States v. Bonilla*, 388 F App'x 78, 80 (2d Cir 2010) ("Further, Tavarez's likely Guidelines range of thirty years' to life

---

[3] Ms. Bronfman is charged with two crimes: 18 U.S.C. § 1962 and 18 U.S.C. § 1028(a)(7). The former carries a guideline range of 30–37 months. *See* U.S.S.G. § 2E1.1(a)(1). The guideline for the latter is § 2B1.1 and therefore depends on the amount of loss due to the alleged tax evasion but is most likely under two years.

4

imprisonment provides a strong incentive for him to flee."); *Sabhnani*, 493 F.3d at 66-67 (2d Cir 2007) ("With respect to flight, the government submitted that the defendants had a strong motive to flee the United States because the evidence of their guilt was compelling; and upon conviction, they faced a significant term of incarceration, specifically, a statutory maximum of forty years' imprisonment and a Guidelines range of 210 to 262 months.").

Moreover, given the proposed bail package, fleeing would mean that Ms. Bronfman would surrender the vast majority, if not the entirety, of her wealth by fleeing. Most obviously, it would cause her to forfeit $100 million—the entirety of her net worth outside her trusts—based on the amount of the bond. And as set forth in the attached Declarations of Leslie Geller, Esq. and Joseph Weilgus, if Ms. Bronfman were to flee she would also lose her access to the two substantial trust accounts of which she is the beneficiary, which comprise the other significant part of her wealth. First, as described in the Geller and Weilgus Declarations, attached as Exhibits B and C, the trust would immediately transfer $25,000,000 from the trust as a distribution to the court if Bronfman's bail were to be revoked. Second, the trust advisors would, under no circumstances, distribute funds as discretionary distributions to a fugitive from justice, which would ruin their own professional careers and subject them to criminal liability. *Compare Sabhnani*, 493 F.3d at 77 ("Defendants could, with relatively little disruption, continue to operate their highly lucrative business from any number of overseas locations.").

Finally, fleeing would cause significant financial harm to Ms. Bronfman's closest family members. Her mother and brother-in-law, who have both come to New York from Europe to act as sureties on the bond, would be left destitute.[4] Similarly, Sara Bronfman[5], Ms. Bronfman's sister, would lose her properties in upstate New York, her New York City apartment, and her share of a property in Sun Valley, Idaho, all of which she has agreed to post to secure Ms. Bronfman's bond. Collectively, these properties are worth over $8 million. *See* Chart of Properties, attached as Ex. A. The harm fleeing would cause these close family members would provide "moral suasion**,**" *United States v. Baig*, 536 F. App'x 91, 93 (2d Cir. 2013), over Ms. Bronfman and further serves as a factor which prevents her from fleeing.

V.  House Arrest is not Appropriate in this Case

We respectfully submit that house arrest is not appropriate in this case as it is not the "least restrictive … condition" possible to prevent flight and protect the community. *See* § 3142(c)(1)(B). As an initial matter, we note that the other defendants in this case who, like Ms. Bronfman, were not charged with sex trafficking or forced labor, were not subjected to home

---

[4] Ms. Bronfman's mother has a home which she would lose, as a surety on the bond, if Ms. Bronfman fled. Similarly, her brother-in-law would lose the approximately three million dollars in assets he has if she fled.

[5] Ms. Bronfman's sister was unable to travel to the United States to be in court today due to her young children, including one who she is still nursing.

detention. Ms. Bronfman should not be treated differently due to her wealth. Moreover, while the liberty interest in not being restricted to one's home without having been convicted of a crime may not be as significant as the liberty interest in not being incarcerated, it is still of constitutional significance. *See United States v. Polouizzi*, 697 F. Supp. 2d 381, 388 (E.D.N.Y. 2010) ("The excess [prohibited by the Eight Amendment] can be reflected in monetary terms or in other limitations on defendant's freedom such as curfews, house arrests, limits on employment, or electronic monitoring."). And, in fact, criminal defendants with similarly large net worth's (and facing more serious charges) have been released without home incarceration. For example, in *United States v. Rajaratnam*, the defendant was released on a $100 million personal recognizance bond, secured by $20 million in cash or property, and allowed to travel within 110 miles of Manhattan. 09-cr-1184 (S.D.N.Y.), Dkt. Entry for 10/16/2009. Similarly, in *United States v. Madoff*, the defendant was initially released on a $10 million personal recognizance bond, and was allowed to travel to S.D.N.Y., E.D.N.Y. and the District of Connecticut. 09-cr-213 (S.D.N.Y.), Dkt. # 4. Only after he was unable to obtain sureties to co-sign his bond was he subjected to home detention. *See* Dkt. #22.

Most crucially, Ms. Bronfman is not accused of any violence or tampering with witnesses. And, as discussed above, she is not a flight risk. As such, home detention would not be tailored to the minimal risk she poses. *See United States v. Scott*, 450 F.3d 863, 866 n.5 (9th Cir. 2006) (holding that "conditions of release or detention [must] not be 'excessive' in light of the perceived evil.") (brackets in the original; quoting *United States v. Salerno*, 481 U.S. 739, 754 (1987).

Finally, while electronic monitoring exists that could track Ms. Bronfman without subjecting her to home confinement, we do not believe, for the reasons discussed above, that it is necessary in this case to prevent her from fleeing.

**Wherefore**, this Court should release Ms. Bronfman under the proposed bail conditions.

                Respectfully submitted,

                /s/ Susan Necheles

HAFETZ & NECHELES LLP
Susan R. Necheles
Kathleen E. Cassidy
Gedalia M. Stern
10 E. 40th St., 48th Fl.
New York, N.Y. 10016
212-997-7400
srn@hafetznecheles.com
*Attorneys for Clare Bronfman*

cc: AUSA Moira K. Penza

7