# Hafetz & Necheles LLP

ATTORNEYS AT LAW

---

10 East 40th Street, 48th Floor
NEW YORK, N.Y. 10016
TELEPHONE: (212) 997-7400
TELECOPIER. (212) 997-7646

August 20, 2018

**VIA ECF**
Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re: *United States v. Raniere, et al.*, 18-cr-204 (NGG)

Dear Judge Garaufis:

    Defendant Clare Bronfman respectfully submits this letter in support of her request for modification of the terms of her release.

    Counsel for Ms. Bronfman has been working closely with the government to finalize the documents necessary to secure the government's liens on the assets securing the bond. All necessary documents have been filed or recorded, with documentary proof of such filings provided to the government. Ms. Bronfman's appearance is thus now secured by a $100 million bond, signed by two close family members, and by $50 million in assets, approximately $8 million of which is comprised of US real estate owned by her sister. At the prior Court appearance, Your Honor ordered that, in addition to the financial conditions, Ms. Bronfman be under house arrest and not contact any "members or former members" of NXIVM.[1] These conditions were imposed as an interim measure to ensure that Ms. Bronfman met the conditions set by Your Honor. Your Honor stated that you would reconsider these conditions at the next Court appearance, which is scheduled for tomorrow, August 21, 2018. July 27 Tr. 19-20, 35, 38-39.

    We write this letter to ask that Your Honor modify the interim conditions of bail and impose the following conditions, which we submit satisfy the objectives of the Bail Reform Act to "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g).

---

[1] With respect to the no-contact provision, as Your Honor directed, the parties were able to agree on language restricting Ms. Bronfman's associations that would apply during the time period between the July 27 appearance and when the terms of the bond would be finalized on August 21. July 27 Tr. 37-39.

1

HAFETZ & NECHELES LLP

- Electronic monitoring with permission to travel only in a specified area within the Eastern and Southern Districts of New York – Our proposal is that Ms. Bronfman would be allowed to travel in Manhattan up to 96th Street, in Brooklyn only insofar as to include the EDNY Courthouse, not to include airports, and would not travel outside this preapproved zone unless she obtains prior approval from Pretrial Services or the Court;

- Home curfew from 8 pm until 6 am – Ms. Bronfman will remain at the residence already approved by Pretrial Services each night from 8 pm to 6 am;

- Report to Pretrial Services once a week in person unless directed to do otherwise by Pretrial Services;

- No contact with co-defendants except in the presence of attorneys; and

- Other standard conditions of pretrial release.

These requirements, when combined with one of the largest financial bonds ever required in this district and secured by $50 million in her own and others' property amply satisfy any concerns raised by the government as to risk of flight or risk of witness tampering, and no more restrictive conditions are justifiable.

### A. Ms. Bronfman's $100 Million Bond is Now Secured by $50 Million in Property.

Ms. Bronfman has now fully complied with the conditions set by the Court for her release, meaning that her bond of $100 million is now secured by the substantial sum of $50 million in assets. First, as ordered by the Court at the bail hearing on July 27, 2018, we filed a letter from Goldman Sachs as trustee of her trust, confirming that if Ms. Bronfman's bail is revoked by the Court, the trustee would file the instructions from the trust advisors to promptly liquidate trust assets if necessary and transfer the sum of $25 million to the Clerk of the Eastern District of New York. *See* ECF Nos. 73 and 93.

Second, as shown on the chart attached as Exhibit A, the remaining $25 million has been secured by a combination of real estate in the United States owned by her sister Sara Bronfman with equity of approximately $8.1 million, real estate owned by Clare Bronfman with equity of approximately $4.5 million, and a UCC-secured interest of $12,350,000 in Clare Bronfman's company, ACK Wakaya Holdings LLC, which holds the business interests in the resort she owns in Fiji.

Setting aside the sheer magnitude of the bond and the property securing it, the moral suasion inherent in the $8 million of property posted by her sister and the fact that her mother and brother-in-law are signatories to the $100 million bond, and would be exposed to financial ruin if she were to violate the conditions of her release, is significant and should give the Court comfort as to Ms. Bronfman's motivation to scrupulously comply with the conditions of her release.

HAFETZ & NECHELES LLP

 Further, as discussed in our prior submissions to the Court in advance of the bail hearing on July 27, 2018, Ms. Bronfman would effectively forfeit access to the substantial assets held in trust for her benefit if she were to flee because the trust advisors would not approve any distribution to her under these circumstances, amounting to additional although informal security for her appearance bond of at least $100 million. *See* ECF No. 68, p. 5, and Exs. B and C (Geller and Weilgus affidavits).

### B. Home Detention Requested by the Government is Not Necessary Because Ms. Bronfman Does Not Present a Risk of Flight.

 The government cannot reasonably maintain that there is a risk of flight given the financial terms of her release, the Defendant's proposal that she be subject to electronic monitoring within a zoned subset of the Southern and Eastern Districts of New York and that she abide by a curfew, and the overwhelming evidence that she is not a flight risk, namely, that she: (1) returned to the United States from Mexico, and then from multiple European trips, during the time that she knew she was under investigation and after two of her co-defendants had been arrested and charged; (2) rented an apartment in Manhattan in anticipation of charges being filed against her; (3) repeatedly had her attorneys inform the government of her travel plans and offer to self-surrender in advance of charges being filed; and (4) that she in fact voluntarily surrendered to the FBI as soon as the government informed her attorneys that there was a warrant for her arrest. The government has cited no evidence of risk of flight that would justify a more restrictive set of conditions than those Ms. Bronfman has proposed.

 Moreover, while the government has indicated that it will ask the Court to keep Ms. Bronfman on home detention with permission to leave for certain purposes upon prior written permission from Pretrial, this proposal is unnecessarily restrictive of Ms. Bronfman's liberty while providing no discernable increase in security to the Court or the government. Ms. Bronfman has proposed that during the hours of 6 am and 8 pm she be permitted to move freely within a certain area of Manhattan and Brooklyn while still being monitored by the Electronic Monitoring Unit. Based on our discussions with Pretrial Services, our understanding is that Pretrial can essentially draw a line on a map and set up an alert to be notified automatically if Ms. Bronfman leaves the predetermined area. It would be easier for Pretrial to monitor Ms. Bronfman's compliance with the terms of her release under this proposal, rather than requiring Pretrial to keep track of the various reasons and permissions involved in the government's proposal.

### C. Home Detention Requested by the Government is Not Necessary Because Ms. Bronfman Does Not Present a Risk of Witness Tampering.

 The government has not set forth any evidence that would suggest that Ms. Bronfman is likely to obstruct justice that is sufficient to justify keeping her on bail conditions more restrictive than those she has proposed.

 First, the government cannot rely on the nature of the offenses charged against Ms. Bronfman as a factor that suggests a risk to the community. 18 U.S.C. § 3142(g)(1). Unlike some of her co-defendants, she is not charged with sex trafficking or forced labor. The charges

3

HAFETZ & NECHELES LLP

against Ms. Bronfman have nothing to do with DOS, the group whose alleged actions form the basis of the most serious charges in the Indictment. The government has not alleged (and cannot allege) that Ms. Bronfman even knew of DOS before the summer of 2017, when some DOS members began to leave NXIVM and informed NXIVM personnel including Ms. Bronfman of that fact.

Ms. Bronfman's alleged crimes are simply of a different magnitude. She is charged with participation in three racketeering acts over the course of 13 years and one substantive offense related to the same conduct as one of the racketeering acts, i.e., two instances of alleged identity theft and one instance of allegedly facilitating the illegal entry of an alien to the United States.

Two out of these three alleged criminal acts are stale, having occurred at latest in 2009, nearly ten years ago. The third racketeering act alleged[2], and the only one within the past nine years, involves an allegation that Ms. Bronfman helped facilitate paying credit card bills for Mr. Raniere's living expenses using his deceased partner's bank account – hardly an allegation that would call for more restrictive bail conditions than normally imposed on defendants arrested for non-violent offenses.

Although the government has alleged that Ms. Bronfman "has led efforts to discredit DOS victims and has orchestrated abusive litigation meant to intimidate and attack perceived enemies and critics of Raniere," (ECF No. 52, p. 3), Ms. Bronfman is not charged with obstruction, witness tampering, or any crime involving any effort to intimidate a witness or interfere with the government's investigation. The government's only allegations with respect to Ms. Bronfman that they claim suggest a risk of witness intimidation are (1) that she aggressively pursued litigation against NXIVM adversaries, and (2) that she "compile[d] information and threaten[ed] litigation against those she considered to be an enemy or critic of Raniere," as demonstrated by two emails attaching spreadsheets collecting information on adverse parties that the government alleges Bronfman put together and emailed to Raniere.

These allegations fail as a basis to restrict Ms. Bronfman to house arrest. First, they are not recent and do not raise any concern that Ms. Bronfman would attempt to obstruct justice while she is under Indictment. The government has not pointed to any alleged act by Ms. Bronfman during the more than four months between the arrests of her co-defendants Keith Raniere and Allison Mack and her own arrest in late July, a time period when she knew about the charges against her co-defendants and the likelihood of charges against herself and others, yet was not under any Court restriction. There is no need to restrict her liberty to such a significant degree at this point.

Second, there is no suggestion that she ever took any action against any adverse party, except through lawyers, and within the bounds of the law. The government cannot dispute that much of the litigation commenced was meritorious, as numerous courts have found in favor of NXIVM or Ms. Bronfman, or at a minimum was colorable, as no court, to our knowledge, has sanctioned NXIVM or its attorneys for bringing legal claims against its supposed adversaries.

---

[2] Racketeering Act 10 and Substantive Count 7 are based on the same alleged conduct.

4

HAFETZ & NECHELES LLP

Merely collecting information about prospective witnesses or threatening legal action through attorneys does not constitute a "serious risk that the [defendant] will . . . obstruct or attempt to obstruct justice, or . . . intimidate . . . a perspective witness" within the meaning of the Bail Reform Act. 18 U.S.C. § 3142(f)(2)(B). *See, e.g.*, *United States v. Persico*, 376 F. App'x 155, 157 (2d Cir. 2010) (questioning the finding of danger where the defendant had no criminal record and "the government offer[ed] no direct evidence of [the defendant] either using violence or directing others to use violence," and "the only threats he ever condoned were threats of legal action"); *United States v. LaLonde*, 246 F. Supp. 2d 873, 875 (S.D. Ohio 2003) (holding that the defendant did not "pos[e] a serious risk of intimidating witnesses simply because "he ha[d] contacted witnesses in past prosecutions and asked them to assist him in defending himself" and "enlisted the services of a private investigator in order to learn the identities of potential witnesses against him").

### D. *The Government's Requested No-Contact Provision is Overbroad and Unreasonably Impinges on Ms. Bronfman's Right of Association.*

The government has proposed the following restriction on Ms. Bronfman's contacts and associations while she is on Pretrial release:

> The defendant may not directly or indirectly associate or have contact with, except in the presence of her attorneys, current or former employees or independent contractors of or for NXIVM (including any and all affiliated entities) or with any individual who is currently or was formerly on the stripe path, subject to reasonable exceptions agreed-upon by the parties.

NXIVM is a company which organized self-help and self-improvement classes that anyone could pay for and attend. NXIVM offered classes in several countries and in several centers around the United States. Since its inception in 2001, thousands of individuals attended NXIVM classes and seminars. Over the years, a small percentage of people who attended a NXIVM class or seminar sought out a more formal relationship with the company as a paid salesperson, coach or center owner. Coaches or teachers generally were paid not as NXIVM employees, but as independent contractors.

Hundreds of NXIVM contractors and students also chose to pursue advancement up the NXIVM "stripe path." Modeled off of the merit badge system in the Boy Scouts or the belt system in martial arts, the "stripe path" offered individuals a means of demonstrating their attainment of certain goals or skills. Upon attainment of these goals, contractors and students would be entitled to place a "stripe" on a colored sash that would be worn during gatherings of NXIVM students and contractors (the color of the sash itself was also indicative of an individual's accomplishments). Individuals who were interested in pursuing advancement in the organization were said to be on the "stripe path."

The Indictment does not allege that NXIVM itself is a criminal enterprise. Nor does it allege that DOS was formally affiliated with NXIVM or otherwise sanctioned by the business. Instead, the Indictment alleges that the defendants in this case were part of an "inner circle" of people close to Keith Raniere who formed a racketeering enterprise.

5

HAFETZ & NECHELES LLP

By seeking to prohibit Ms. Bronfman from associating with anyone who currently or formerly was on the stripe path, or currently or formerly was an employee or an independent contractor of NXIVM, the government is prohibiting Ms. Bronfman from contact or association with hundreds of people, many of whom are her close friends, are still supportive of NXIVM, and have nothing to do with the allegations in the Indictment. The government is ignoring the distinction – one which the Indictment draws – between NXIVM's ordinary business operations and the criminal conduct alleged in the Indictment.

A bond condition that broadly restricts contact without tailoring it to legitimate government concerns infringes a defendant's associational rights, and should be imposed only after an individualized determination of the need for a no-contact order. *See United States v. Arzberger*, 592 F. Supp. 2d 590, 603-04 (S.D.N.Y. 2008). *United States v. Lillimoe*, No. 3:15-cr-25 (JCH), 2015 SL 9694385, at *2 (D. Conn. May 28, 2015) (holding that determination whether no-contact restriction is appropriate must be based on "particularized evidence" and an "'individualized determination' of the need for the restriction").

The only objective the government has identified in prohibiting Ms. Bronfman from associating with hundreds of her friends and acquaintances is a generalized risk of witness intimidation or tampering.

We do not believe the government has any legitimate need or any legal basis to restrict her association beyond her co-defendants. While the government's proposal allows for the parties to reach agreement as to particular individuals, this shifts the burden to Ms. Bronfman to justify the need for contact with many people whom the government has no legitimate need to prevent her from associating with. It is the government that bears the burden of establishing the need for a restriction on Ms. Bronfman's right to association while she is on Pretrial release, needs to prepare for trial, and is presumed to be innocent.

Finally, while the government has agreed to allow Ms. Bronfman to have contact with a few individuals implicated by the restriction that has been in place since our last bail hearing, there is one individual raised by the defense for whom the government has said it will not allow direct contact. We will ask the Court on Tuesday to rule on whether Ms. Bronfman can have contact with this individual.

The individual in question has been employed by one of Ms. Bronfman's companies for at least nine years as a bookkeeper and assistant who deals with her personal finances and many of her business interests. The government considers the bookkeeper a witness in this case and, we understand, has interviewed her on more than one occasion. By taking the position that she can have no contact with Ms. Bronfman, the government is effectively depriving the witness of her livelihood and employment and limiting Ms. Bronfman's ability to conduct lawful business and personal finance transactions. This is an unreasonable restriction as the government has no basis to claim that Ms. Bronfman has, at any point, sought to influence the witness's testimony or prevent her from talking to the government. We propose that Ms. Bronfman be permitted to have contact with this witness, outside the presence of counsel, for purposes of dealing with her personal and business finances, as long as she does not discuss the facts of the case with her.

HAFETZ & NECHELES LLP

### E. *Ms. Bronfman's Proposed Conditions Reasonably Assure Her Appearance as Required and The Safety of Others and the Community.*

The conditions we propose are reasonably restrictive and geared toward assuring the Court and the government that there is no basis for concern that Ms. Bronfman will not appear as required or will take any action to intimidate witnesses or obstruct justice. The government has conceded that it would allow Ms. Bronfman to leave her home for specific purposes, upon prior approval by Pretrial Services, but will not consent to allowing her to come and go freely during the day. The government's proposal is unnecessarily restrictive of her liberty and not tailored to any reasonable concern raised by the government. Ms. Bronfman would be on a curfew every night between 8 pm and 6 am, and will check in weekly with Pretrial in person. She would be electronically monitored by Pretrial Services and have her movement restricted to a certain subset of the Southern and Eastern Districts. Pretrial would immediately be alerted if she left this area. No more is required to satisfy the requirements of the Bail Reform Act, and we respectfully ask the Court to release her on the conditions we have proposed.

Respectfully submitted,

/s/

Susan R. Necheles
Kathleen E. Cassidy


cc: AUSAs Moira Kim Penza, Tanya Hajjar, and Karin Orenstein (via ECF)

7