

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MKM:TH/MKP                           *271 Cadman Plaza East*
F. #2017R01840                       *Brooklyn, New York 11201*

August 21, 2018

By Hand and ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Clare Bronfman, et al.
               Criminal Docket No. 18-204 (NGG) (S-1)

Dear Judge Garaufis:

The government respectfully writes in opposition to defendant Clare Bronfman's August 20, 2018 motion to substantially reduce the non-financial bail conditions set by the Court. For the reasons set forth below, the government respectfully submits that the conditions proposed by the defendant are not sufficient to mitigate the risk of flight or obstruction.

BACKGROUND

The government notes the Court's familiarity with the government's arguments in support of a substantial bail package and incorporates by reference the arguments made in its letter dated July 24, 2018 and on the record before the Court on July 24, 2018 and July 27, 2018. Since the last appearance, the defendant has secured $50 million of the $100 million bond ordered by the Court. Two issues remain. First, the government submits that the condition of home detention should remain in place because the defendant poses an extraordinary risk of flight. Second, the government submits that a tailored non-association provision is provision is crucial to maintaining the integrity of the case. The defendant objects to both bond conditions.

<u>ARGUMENT</u>

I.   <u>Home Detention is Reasonable and Necessary to Mitigate the Risk of Flight</u>

In her letter seeking to modify the interim bail conditions, the defendant rehashes the same arguments claims that she does not pose a risk of flight and that were rejected by the Court.  The defendant's only new arguments are that her bail has now been secured consistent with the Court's order and that her flight would result in forfeiting that money as well as "expos[ing]" her suretors "to financial ruin."  (8/20/18 Bronfman Ltr., Dkt No. 106 at 2.)  These arguments are unavailing.

The defendant has extraordinary wealth and investments all over the world.  As previously stated on the record, in the past year there have been substantial multi-million dollar transfers of funds from accounts held by the defendant, including to accounts in other countries, and the government is not presently able to determine who controls that money.  Moreover, the defendant has declined to provide information as to the amount of the funds in her trusts over time or whether there were significant transfers of money prior to the restructuring of those trusts that the defendant would have access to if she were to flee.  Even with the full scope of the defendant's finances unclear, there can be no doubt that the defendant is in a position to abandon the security and continue to live comfortably.  Indeed, based on her own disclosures, if she were to flee, the defendant would still have over $80 million in assets outside of any trust, including over $3 million in cash and an over $20 million interest in her private island in Fiji.  Given her wealth, the defendant is in a position to reimburse her suretors from any loss if she were to flee.  Neither of her suretors has wealth even close to the full bond amount and it is uncertain whether the government would be able to fully pursue the suretors' assets, nearly all of which are held overseas.[1]

The defendant's resources make the risk of flight extraordinarily high in this case, especially when considered in conjunction with the strength of the government's case and the lengthy sentence the defendant could receive if convicted.  As the case progresses toward trial, and as the government's investigation continues, the incentive to flee will only increase.  A high total bond amount is not sufficient to adequately assure the defendant's appearance and her compliance with pretrial conditions.  Therefore, it is imperative that home detention remain in place, which is also consistent with the recommendation of Pretrial Services.

The government does not object to modifying the conditions of the defendant's bond in order to permit her to leave her residence for attorney visits, court dates, religious services, 90 minutes—three days a week—for exercise and shopping for food and other necessities,  with notice to Pretrial Services.  However, the defendant's proposal that

---

[1]     As the defendant's sister has declined to sign the bond, the government would be unable to pursue her substantial fortune except for the $8,000,000 in property that was posted as security for the defendant's bond.

she have unfettered access to Manhattan from which she could easily flee is not acceptable under the unique circumstances of this case, especially given that she is unemployed, making it even more difficult for Pretrial Services to effectively monitor her. Indeed, Pretrial Services has stated that the defendant's proposal is not feasible.

II.    The Defendant Should be Prohibited from Interacting with Potential Witnesses

      The defendant also objects to any non-association condition beyond a prohibition that she not contact co-defendants except in the presence of co-counsel. Prohibitions on non-contact with potential witnesses are standard in this District. Courts have approved of pretrial non-association prohibitions as long as they are based on an "individualized determination" of the need for such prohibitions. See, e.g., United States v. Smedley, 611 F. Supp. 2d 971, 974 (E.D. Mo. 2009) (upholding condition "requiring defendant to avoid all contact, directly or indirectly, with any persons who were victims or potential witnesses" as appropriately tailored to "safeguard process and operation of court").

      Here, the government proposes the following narrowly tailored non-association condition: the defendant may not directly or indirectly associate or have contact with, except in the presence of her attorneys, current or former employees or independent contractors of or for NXIVM (including any and all affiliated entities), current or former members of DOS, or with any individual who is currently or was formerly on the Stripe Path, subject to reasonable exceptions agreed-upon by the parties.[2] The defendant has objected to this condition and instead asks that she be instructed to refrain only from communicating with co-defendants.

      The government respectfully requests that the Court make an individualized determination that the non-association condition proposed by the government is necessary as to this defendant in order to protect the integrity of the trial process by keeping her from attempting to interfere with or intimidate potential witnesses. See United States v. Spilotro, 786 F.2d 808, 815 (8th Cir. 1986) (directing district court to "decide whether the association condition is appropriate for the individual defendant and, if so, set forth the reasons for its decision"); cf. United States v. Arzberger, 592 F. Supp. 2d 590, 603-04 (S.D.N.Y. 2008) (declining to impose automatic non-association condition in child pornography cases, but noting that government could renew its application on the basis of the defendant's particular circumstance). In Spilotro, the Eighth Circuit explained that the district court could find that the non-association condition at issue was necessary because it "implicate[d] the

---

[2]    Here, the government initially sought a condition prohibiting the defendant from communicating with current or former members of NXIVM, DOS and/or any affiliated entities. The defendant asked the court not to impose this condition based on her representation that "there are no 'members' of Nxivm" and that it is "not a membership-based organization." The defendant's argument is inconsistent with the position NXIVM has taken, which currently has a "Message to Our Members" posted on its website. See NXIVM website, http://www.nxivm.com, last visited August 21, 2018 (emphasis added).

government's compelling interest in the effective administration of justice."  The Spilotro court also noted that the condition "remain[ed] in effect for a limited period of time, in no way restrict[ed] the appellant's association with any other persons and even permit[ted] the appellant to associate with [the category of persons subject to the condition] when necessary for business purposes or for the preparation of his defense."

The defendant is charged with being a long-standing member of a criminal enterprise that is deeply entwined with NXIVM's leadership.  The Stripe Path is comprised of individuals who have demonstrated a longstanding commitment to NXIVM's leadership and are therefore likely to be witnesses or unindicted co-conspirators.  Although the government has not alleged that NXIVM itself is a criminal enterprise, the Superseding Indictment charges that members of the Enterprise were members of the higher echelons in NXIVM or DOS and that many of the means and methods by which the Enterprise operated involved exploiting people within NXIVM for the financial and personal gain of the members of the Enterprise.  In particular, because of her wealth, the defendant was a primary leader of the Enterprise's use of "harassment, coercion and abusive litigation to intimidate and attack perceived enemies and critics of Raniere," as alleged in the "Means and Methods" section of the Superseding Indictment.  Given her history as a leader of the Enterprise and the means and methods employed by the Enterprise, the defendant should not be interacting with potential witnesses outside the presence of her attorney.

This government's proposal is narrowly tailored and specifically excludes people who have taken individual trainings and courses.  Additionally, the non-association provision is time-limited and is subject to reasonable exceptions.  Indeed, in the time since the defendant was indicted, she has requested the government's consent to her communication for business purposes with four people who otherwise would have been prohibited.  Of those, the government has consented to the defendant continuing to communicate with three of the four.[3]  Moreover, there is no limitation on the defendant preparing her defense by meeting with any potential witnesses who wish to meet with her, as long as one of the defendant's attorneys is present.

---

[3]     The government does not consent to the defendant communicating with the bookkeeper (the "Bookkeeper") referenced in the defendant's letter.  While it would be inappropriate at this juncture to comment on the government's anticipated trial witnesses, the Bookkeeper was employed by the defendant during the time period when the defendant is alleged to have arranged for Jane Doe #7's credit card bill to be paid after her death, knowing co-defendant Keith Raniere was illegally continuing to use the card.  These allegations in part form the basis for Racketeering Act Ten and Count Seven of the Superseding Indictment.  Moreover, the government proffers that the defendant is capable of managing her finances using another bookkeeper.  Indeed, a second bookkeeper has been managing the defendant's finances since the defendant was arrested.  Alternatively, the government has no objection to the defendant continuing to use the Bookkeeper as long as the defendant does not have direct communication with the Bookkeeper outside of the presence of counsel.

<u>CONCLUSION</u>

For the reasons set forth above, the government respectfully submits that the defendant should remain subject to home detention with electronic monitoring and should be subject to the narrowly tailored non-association provision set forth above.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:        /s/
Moira Kim Penza
Tanya Hajjar
Assistant U.S. Attorneys
(718) 254-7000

cc:      Clerk of Court (NGG) (by ECF)
Defense Counsel (by ECF)