Shapiro Arato LLP

500 Fifth Avenue, 40th Floor
New York, NY 10110
tel: 212-257-4880
fax: 212-202-6417

www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

December 7, 2018

VIA ECF

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Raniere, et al.*, No. 18-cr-204 (NGG)

Dear Judge Garaufis:

      We respectfully submit this letter on behalf of Defendant Clare Bronfman requesting leave to supplement her motion to dismiss (Dkt. 194).  The government does not object to this request.  Earlier this week, the Ninth Circuit held that 8 U.S.C. § 1324(a)(1)(A)(iv) is "unconstitutionally overbroad in violation of the First Amendment" and reversed convictions under that statute.  *United States v. Sineneng-Smith*, --- F.3d ----, 2018 WL 6314287, at *1 (9th Cir. Dec. 4, 2018).  Racketeering Act 5-A charges Ms. Bronfman with violating that provision.  (Superseding Indictment ¶ 24).  The Ninth Circuit is correct, and Act 5-A should be dismissed.

      Subsection (iv) of § 1324(a)(1)(A) makes it a crime to "encourage[] or induce[] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law."  The Indictment does not describe Ms. Bronfman's conduct that allegedly violated this provision.  But regardless, "[i]n the First Amendment context, . . . a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quotation marks omitted).

      Applying this standard in *Sineneng*, the Ninth Circuit correctly held that "Subsection (iv) is facially invalid."  2018 WL 6314287, at *4.  While speech that "encourages" violations of the immigration laws is criminal under Subsection (iv), much of it is constitutionally protected.  Significantly, such speech does not necessarily advocate a *crime*, because "unauthorized presence in the country is a civil violation."  *Id.* at *14.  In part for this reason, "there is a realistic (and actual) danger that the statute will infringe upon recognized First Amendment protections."  *Id.* at *15.  The government could prosecute "a loving grandmother who urges her grandson to overstay his visa," *id.*, or a priest who advises an undocumented parishioner to stay in the country to care for his family or escape persecution, even though following that advice is not criminal.  The government could suppress "marches, speeches, publications, and public debate expressing support for immigrants."  *Id.* at *16.  It could prosecute a politician who tells a

The Hon. Nicholas G. Garaufis
December 7, 2018                                                                                              Page 2

crowd, "I encourage all you folks out there without legal status to stay in the U.S.! We are in the process of trying to change the immigration laws, and the more we can show the potential hardship on people who have been in the country a long time, the better." *Id.* This is disturbing, as "speech on public issues occupies the highest rung of the hierarchy of First Amendment values." *Id.* (quotation marks omitted). Even House Speaker Paul Ryan could face prison for reassuring "Dreamers" that they could "rest easy" despite the rescission of DACA.[1] Subsection (iv) also makes criminals of "professionals who work with immigrants," such as "an attorney who tells her client that she should remain in the country while contesting removal . . . [because] non-citizens within the United States have greater due process rights." *Id.*[2] A public-school guidance counselor who correctly informs a family that their undocumented children are entitled to education, *Plyler v. Doe*, 457 U.S. 202, 230 (1982), could be sent to prison for years. These "are not some parade of fanciful horribles"; "they represent real and constitutionally-protected conversations and advice that happen daily." *Sineneng*, 2018 WL 6314287, at *17. The Ninth Circuit was correct to "strike down Subsection (iv) as overbroad." *Id.* at *17 n.15.

Subsection (iv) is also unconstitutionally vague under the First and Fifth Amendments. *See, e.g., Johnson v. United States*, 135 S. Ct. 2551, 2556-57, 2560-61 (2015) (striking down facially vague statute); *Smith v. Goguen*, 415 U.S. 566, 573 (1974) (applying more stringent vagueness test on First Amendment grounds). "Encouragement" takes infinite forms, including the commonplace, innocuous examples above. Anyone who says anything to an undocumented immigrant (other than telling them to leave the country) must guess whether a prosecutor will find their statements "encouraging." The statute's wide net also guarantees arbitrary and discriminatory enforcement, allowing prosecutors to pick their targets among the millions of people who interact with immigrants. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 165 (1972). Separately, the statute violates the First Amendment because it is discriminatory. Laws that "target speech based on its communicative content[] are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015). Subsection (iv) is content- and viewpoint-based, as it forbids only *encouraging* messages to immigrants. Suppressing such speech furthers no compelling interest and is not tailored to do so. The government already has an arsenal of statutes designed to combat illegal immigration. *See, e.g.*, 8 U.S.C. §§ 1324(a)(1)(A)(i)-(iii), (v), (a)(2)-(4), 1324a-1327.

                                                                                                                         Respectfully submitted,

                                                                                                                         /s/ Alexandra A.E. Shapiro

cc:  All Counsel of Record (by ECF)                          Alexandra A.E. Shapiro

---

[1] *See* https://www.washingtonpost.com/powerpost/dreamers-can-rest-easy-ryan-says-promising-congressional-action/2017/09/06/54053ef8-9307-11e7-8754-d478688d23b4_story.html?utm_term=.f8f52991ba3a.

[2] Indeed, the government has argued that such legal advice is criminal. The court agreed that the "plain meaning" of the statute supported this conclusion but was not pleased with it. *United States v. Henderson*, 857 F. Supp. 2d 191, 203-04 (D. Mass. 2012). The government also took the position that employing an undocumented house cleaner violates the statute. *Id.* at 203. Apparently, anyone who provides any encouragement to undocumented immigrants is a felon, including a person who gives advice on where to find a local soup kitchen, shelter, or doctor. And if they do so repeatedly, they may be subject to the draconian penalties of the RICO statute. *See id.* at 205 n.8.