MKM:TH/MKP
F. #2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

KEITH RANIERE,
CLARE BRONFMAN,
ALLISON MACK,
KATHY RUSSELL,
LAUREN SALZMAN and
NANCY SALZMAN,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 18-204 (S-1) (NGG) (VNS)

REPLY IN FURTHER SUPPORT OF THE GOVERNMENT'S
MEMORANDUM OF LAW REGARDING
DEFENDANTS' ASSERTIONS OF ATTORNEY-CLIENT PRIVILEGES

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Assistant U.S. Attorneys
   (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this reply in further support of its motion regarding the defendants' assertions of privilege.[1] The government has moved for rulings as to defendant Clare Bronfman and non-party Nxivm's assertions of attorney-client privilege over certain written communications obtained by the government. Specifically, the government seeks the following rulings from the Court:

(1) Bronfman has failed to meet her burden to establish a personal attorney-client privilege over written communications between Bronfman, M.F., and attorneys of Frontier Solutions LLC, and, even if she had, such communications are not privileged under the crime-fraud exception;

(2) Bronfman has failed to meet her burden to establish an attorney-client privilege as an owner of Ethical Science Foundation over written communications between her, various applicants for United States visas including B.M. and P.S.H., and Georgia-based attorney Jonathan Ware;

(3) Nxivm has failed to meet its burden to establish attorney-client privilege over written communications shared between Nxivm representatives, various visa applicants, and attorneys;

(4) Nxivm has failed to meet its burden to establish an attorney-client privilege over written communications with Mr. Ricardo Olmedo of Olmedo Gaxiola & Abogados ("Mr. Olmedo Gaxiola") and Diego Ruiz Durán of Bufete Ruiz Durán S.C. and formerly of CLG Abogados ("Mr. Durán"), and if it had, such communications are not privileged under the crime-fraud exception.

---

[1] The government's motion was filed on December 28, 2018 and appears at ECF Docket Number 256. Defendant Bronfman filed a response on January 12, 2019, which appears at ECF Docket Number 282 ("Bronfman Resp.").

1

Counsel for Nxivm, Michael J. Sullivan, Esq., has not submitted any written response to the government's motion. Counsel for Bronfman filed a response that avoids engaging with the substance of the government's motion and fails to sustain her burden of establishing the existence of a valid attorney-client privilege over the materials at issue. The Court should reject Bronfman's request that the Court defer ruling on disputed matters of privilege as the delay tactic that it is.

Should the Court require additional information to resolve these disputed matters, including whether a valid attorney-client relationship or common interest agreement was formed, the government respectfully requests that the Court conduct a hearing. See, e.g., United States v. Juan Angel Napout, 15-CR-252 (PKC) (RML), Transcript dated Oct. 25, 2016 (hearing before Magistrate Judge Robert M. Levy on questions of the existence, scope and waiver of purported attorney-client privileges, and a claimed common-interest agreement); Memorandum & Order, dated March 10, 2017 (describing hearing and holding that defendant failed to establish the existence of a valid common interest agreement).

ARGUMENT

A. Bronfman's Claims of Privilege Lack Any Factual or Legal Support and the Government's Motion Is Not Premature

Bronfman claims that the government's motion is "premature" and not "ripe" for decision at this time because "the government has not yet identified to the defense the documents that it believes are not covered by a lawful privilege and are within the scope of the warrants." Bronfman Resp. at 1, 5. The government's motion could not be more ripe, as

Bronfman has failed to offer anything but conclusory assertions which do not discharge her burden of establishing the existence of a valid attorney-client privilege.[2]

Bronfman's response does not contain a citation to a <u>single</u> case for the proposition that courts have recognized a valid attorney-client privilege between an attorney, a visa applicant, and a third party.[3] The sole authority on which she relies is an article titled "Dual Representation in Immigration Practice" written by Bruce Hake—the same author, and nearly the same article, that the employer in <u>In re De Mayolo</u> urged the district court to consider in support of its claim that a "dual representation" existed. See <u>In re De Mayolo</u>, No. 06-MC-64-LRR, 2007 WL 1121303, at *7 (N.D. Iowa Apr. 16, 2007). The district court

---

[2] Bronfman's complaints about the process that the Court has ordered for the resolution of disputed claims of privilege and her claim that she is "engaging in the taint team review process in good faith," Bronfman Resp. at 3, are disingenuous. The government filed the instant motion after Bronfman refused to provide to the prosecution team any legal or factual authority for her assertions of privilege on the grounds that to do so would necessarily disclose privileged information. The government's prosecution team is informed by the government's firewall team that Bronfman has also declined to engage with the firewall team until the Court resolves the instant motion. Trial in this matter is scheduled for April 29, 2019, and Bronfman's refusals to engage with the government or to provide any basis for her asserted privileges appear to be an effort to delay and hamper the privilege review process, and thus to effectively deny the government access to the results of lawful searches.

[3] That Bronfman faults the government for citing "only" one case addressing the concept of dual representation, Bronfman Resp. at 9, is but one example of the many instances in which Bronfman ignores the basic and well-settled principle that the burden of a establishing an attorney-client privilege rests solely with her. See <u>United States v. Int'l Bhd. of Teamsters</u>, 119 F.3d 210, 214 (2d Cir. 1997) ("The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it.")

3

rejected the claim, reasoning that "such an interpretation of the doctrine is in tension with traditional understandings of the attorney-client privilege." Id.

Indeed, the article cited by Bronfman frankly acknowledges the serious conflicts of interests that can arise from the practice and notes that "[a]ll parties should be advised in writing regarding the nature of the representation, what will happen in the event of conflicts, and what is expected regarding confidential information." Hake, "Dual Representation" at 29. If such a writing exists confirming the existence of such a "dual representation"—or indeed, any writing confirming an attorney-client privilege between an attorney, visa applicant, and third party—it has not been provided to the government.

Bronfman's alternative argument, that the relationship between the parties would be a multiple representation or covered by a common interest agreement, fares no better. Bronfman Resp. at 9, 12 (claiming that a common interest agreement existed between her and M.F.). The law is clear that communications shared between Bronfman, attorneys, and other individuals are not privileged simply because Bronfman asserts that they are. See, e.g., In re Grand Jury Proceedings, 2001 WL 1167497, at *3 (S.D.N.Y. Oct. 3, 2001) ("The burden must be met by an evidentiary showing based on competent evidence, and cannot be discharged by mere conclusory or ipse dixit assertions."). As set forth below, in each of the disputed areas of privilege, Bronfman offers nothing more than a conclusory assertion that such a representation or common interest agreement existed.

4

A. <u>Bronfman's Claims of Personal Privilege As To Communications with M.F. and Frontier Solutions</u>

Without any factual support, Bronfman asserts that it was "the intent of both [Bronfman and M.F.], as made clear by their communications [referenced in the government's motion], that Frontier Solutions was acting as counsel for them both and any communications among them would remain confidential." Bronfman Resp. at 12. The non-privileged communications appended to the government's motion do not establish or reflect a valid attorney-client privilege or a valid common interest privilege between Bronfman, M.F., and Frontier Solutions; indeed, none of the communications involve M.F. at all. Nor do they reflect that Bronfman intended that the communications would remain confidential, as Bronfman intentionally disclosed or forwarded the content of the purportedly privileged communications to Raniere. A "privilege cannot survive if the privilege holder lacks the continuing intention to maintain confidentiality, irrespective of whether the communications actually were disclosed." <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 150 F.R.D. 465, 482 (S.D.N.Y. 1993); <u>see, e.g.</u>, <u>United States v. Stewart</u>, 287 F.Supp.2d 461, 464 (S.D.N.Y. 2003) (holding that defendant waived attorney-client privilege protecting e-mail to attorney by forwarding a copy of e-mail to her daughter). Therefore, to the extent the Court finds that such a privilege could, in theory, be validly formed, the government respectfully requests a hearing so that Bronfman can attempt to establish that such a privilege in fact existed.

Even if Bronfman could establish such a privilege, the communications between Frontier Solutions fall within the crime-fraud exception to the attorney-client privilege because there is probable cause to believe that the objective of Bronfman's

5

communications with Frontier Solutions was intended to facilitate or conceal immigration fraud. As noted in its initial motion, the government's investigation has revealed that M.F. had been living without legal status in the Nxivm community in New York for nearly a decade before seeking a nonimmigrant visa in 2013, and that Bronfman and Raniere were well aware of that fact. Nevertheless, in the August 6, 2016 email referenced in the government's motion, Bronfman falsely claimed that M.F. "has never not complied with USA immigration laws" and M.F. was employed by her father's rock-drilling company in Mexico. In the letter addressed to the United States Embassy in Mexico, Mr. Sandweg also falsely claimed that M.F. had observed "strict compliance with [U.S.] immigration laws" and she has "never violated any immigration laws." These assertions are and were false. Bronfman claims that the communications appended to the government's motion only demonstrate that Bronfman was "exploring legal options [for M.F.] to obtain legal status to come to the United States." Bronfman Resp. at 16. But the communications clearly evince Bronfman's knowledge that the efforts to secure M.F.'s visa were likely to be scrutinized for fraud because they were, in fact, fraudulent.[4]

---

[4] In arguing that "using funds from an estate of which Raniere was the beneficiary as the source of the money to be put toward an investor visa" is "entirely proper," Bronfman Resp. at 15, Bronfman ignores that Raniere was the executor of Ms. Cafritz's estate in December 2016 and could not make "gifts" from her estate without violating a fiduciary duty unless and until the funds in the estate were transferred to him as a beneficiary. See Raniere Mot. for Bail, ECF Docket No. 191, at 10 n.12.

6

B. <u>Bronfman's Claimed Privileges As To Communications with Frontier Solutions and Jonathan Ware, Esq.</u>

Bronfman also claims that an attorney-client privilege covers communications between Bronfman, as owner of Ethical Science Foundation ("ESF"), an attorney, and various visa applicants. Without any further factual or legal support, Bronfman maintains that communications that include a visa applicant do "not break the corporation's privilege, either pursuant to the principles of corporation attorney-client privilege or because the lawyer is acting jointly for both prospective sponsor and beneficiary." Bronfman Resp. at 10.

Bronfman's argument fails.[5] The government's motion specifically identified two visa applicants who had communications with Bronfman and Mr. Ware: B.M., a South African national, and P.S.H., a German national. Although Bronfman makes blanket assertions seeking to invoke the attorney-client privilege, she fails even to establish that B.M. and P.S.H. were in fact employees or prospective employees of ESF, a factual condition precedent to her subsequent and equally meritless argument that an attorney-client privilege belonging to ESF could be "shared" by both the company visa sponsor and an employee. The government's investigation has revealed that neither B.M. nor P.S.H. were employees or prospective employees of ESF. B.M. was the holder of a F-1 student visa and not employed by ESF. While P.S.H. sought and obtained a H1B visa as a "research analyst" with ESF, P.S.H. was employed by a separate Nxivm-affiliated entity, Rainbow Cultural Garden, LLC,

---

[5] Nxivm has also failed to provide any factual support or legal authority in support of its claim that any valid attorney-client privilege attached to communications between attorneys, Nxivm representatives, and non-citizen visa applicants.

7

as a caretaker of children. Indeed, it appears that ESF existed primarily as a vehicle through which employees of Rainbow Cultural Garden, LLC sought visas.

Accordingly, Bronfman cannot demonstrate any grounds to assert an attorney-client privilege over communications shared between Bronfman, Mr. Ware, and various visa applicants.

C. Nxivm's Claim of Privilege As To Communications with Mr. Olmedo Gaxiola and Mr. Durán

Nxivm has failed to establish a valid attorney-client privilege between Nxivm and Mr. Olmedo Gaxiola and Mr. Durán, attorneys in Mexico. Even if it had, the communications fall within the crime-fraud exception to the attorney-client privilege because there is probable cause to believe that these communications were made solely with the intent and for the purpose of intimidating and silencing DOS victims. See e.g., In re Grand Jury, 705 F.3d 133, 157 (3d Cir. 2012) ("All that is necessary [for the crime-fraud exception to apply] is that the client misuse or intend to misuse the attorney's advice in furtherance of an improper purpose. When this occurs, the purpose of the privilege, to promote the fair administration of justice, has been undermined and the privilege no longer applies.") (internal citations omitted).

Bronfman's claims that "individuals affiliated with NXIVM were seeking the advice of counsel in Mexico for crimes or civil wrongs that may have been committed against the company in Mexico" and that "[s]imply consulting an attorney to determine the possible legality of a particular course of action is hardly enough to pierce the attorney-client confidences" fail. Bronfman Resp. at 18. As the government noted in its motion, Jane Does

8

8 and 9 were victims of DOS who lived in the Albany area of New York and had no involvement with Nxivm Mexico. The communications between Bronfman and Raniere clearly demonstrate that, far from "consulting an attorney to determine the possible legality of a particular course of action," Bronfman and Raniere used attorneys in Mexico to send letters that Bronfman and Raniere drafted for the sole purpose of intimidating these victims. Far from "consulting" Mr. Olmedo Gaxiola or Mr. Durán or seeking advice from them, the communications between Bronfman and Raniere make clear that the letters sent to Jane Does 8 and 9 were written by not by any attorney but by Raniere and Bronfman. To use the attorney-client privilege to shield communications "in furtherance of such goals is socially perverse, and the client's communications seeking such advice are not worthy of protection." In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984).

9

CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court grant the requested relief.

Dated: Brooklyn, New York
January 18, 2019

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Assistant United States Attorneys
    (Of Counsel)