# Hafetz & Necheles llp

ATTORNEYS AT LAW

10 East 40th Street, 48th Floor
NEW YORK, N.Y. 10016
TELEPHONE: (212) 997-7400
TELECOPIER. (212) 997-7646

January 22, 2019

<u>VIA ECF</u>
Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Raniere, et al.*, 18-cr-204 (NGG)(VMS)

Dear Judge Scanlon:

     We write to address the points raised in the government's submissions dated January 18, 2019 related to privilege (Dkts. 290, 291) and to propose a procedure to resolve those issues and any remaining disputes about privilege.

     The government's two submissions—one from the prosecution team and one from the taint team—make clear that fundamentally, the government wants to avoid its obligation to review the potentially privileged documents it seized in the search of defendant's email account. It also seeks to use the taint team, not as an impartial bulwark to fairly assess claims of privilege, but as an extension of the prosecution team with an agenda of puncturing privilege on topics that the prosecution team views as central to its case.

     After seizing tens of thousands of potentially privileged emails from defendants, the government had the obligation to separate privileged documents which the prosecution team must not see from documents that are within the scope of the warrant and not privileged and that may therefore be passed to the prosecution team.  It is the taint team that is charged with that responsibility.  Yet the taint team complains that there are more than 40,000 documents in its review queue and calls the process of reviewing them "extremely slow and burdensome."  Dkt. 290 at 3.  This complaint, which simply invokes the 40,000 figure without explaining what it is comprised of and the steps that have been (or could have been) taken to reduce it already, glosses over several important facts about the process:

     (1) First, the taint team has not divulged how many of the 40,000 documents have already been identified as indisputably privileged.  We do not know if the taint team has undertaken the task of segregating obviously privileged documents—which

1

HAFETZ & NECHELES LLP

should be the taint team's primary objective—but we request that the Court instruct the taint team to provide the Court with the more meaningful number of how many documents out of the 40,000 are *potentially not privileged*.  This number will give the Court and the parties a better picture of how far the taint team has gotten in its review and how long it will take to resolve disputes as to the remainder of the documents.

(2) The taint team has been able to resolve issues of privilege wholesale with respect to certain categories of potentially privileged documents by conferring with defense counsel—for example, counsel for Bronfman and Raniere have conceded that Bronfman's inclusion on emails with counsel for Raniere in several active litigations in which Raniere was the client, which comprise a significant number of potentially privileged emails, destroys the privilege and have agreed that those documents can be provided to the prosecution team.  We request that the taint team provide the Court with the approximate number of documents that fall into this category.

(3) The process of reviewing the remainder of the documents is burdensome in part because the government has refused to have the taint team attorneys make determinations as to whether the documents fall within the scope of the warrant; therefore requiring the taint team and the defendants to resolve privilege as to whole categories of emails that are entirely irrelevant to the investigation and would not fall within the scope of the warrants.[1] (We do not know how many emails the taint team may conclude would be irrelevant and thus unnecessary to resolve the privilege on if they undertook this analysis, but it may significantly decrease the number of emails as to which privilege issues need to be resolved.)

(4) The government has had the potentially privileged documents in its possession for many months—many since as long ago as March 2018 when the taint team could have begun its review; but the first time the taint team identified a tranche of documents to defendants that it did not believe were privileged was December 21.

(5) The taint team then complains that the process of resolving privilege as to these 1,000 documents with defendants took a few weeks (which spanned the Christmas and New Year's holidays) but has to concede that this process led to an agreement among the parties as to *all but approximately 30 of the 1,000 documents*.  Indisputably, this process was an efficient use of the parties' time, and defendant will continue to address the tranches of documents provided by the taint team as quickly as possible. We anticipate responding to the approximately 1,200 documents provided on January 18 by this Friday, January 25.

Instead of having the taint team undertake a good faith review of the remainder of the 40,000 documents as to which there is a genuine question about privilege, the prosecution team seeks to short circuit the taint team's review by litigating privilege in the abstract as to certain categories of documents that the prosecution team has deemed central to its existing charges or

---

[1] For example, the second round of documents the government has identified as potentially not privileged include many emails between Ms. Bronfman and the lawyer for her trust or the trustees for her trust, which do not appear to fall within the scope of the warrant or have anything to do with the investigation.

HAFETZ & NECHELES LLP

to additional charges it wants to bring.  In that context, it wants to force defendant to submit detailed factual evidence that goes to the heart of the charges the government has brought or intends to bring against Bronfman.[2]

Defendant has already shown that the government cannot establish, as a matter of law, that there can be no privilege in the immigration contexts raised by the government, and that there must be a more fact-specific analysis based on the particular communications that the government asserts are not privileged.  Dkt. 282 at 4-13.  Further, the government has not even come close to meeting its burden of articulating a theory of crime-fraud that would invalidate the privilege as to attorney-client communications with Frontier or attorneys Duran and Olmedo.  For example, while the government points to statements about M.F. and her immigration or employment history that it alleges in a conclusory fashion are factually false (Dkt. 291 at 5-6) it cites *no* evidence that would indicate that Bronfman (or Frontier) had any *knowledge* that these statements were false, which is at the crux of what the government would have to show to even justify an *in camera* review of the attorney-client communications related to M.F.'s visa.  With respect to Olmedo and Duran, the government has still not identified any crime or fraud that it believes is being furthered through the attorney-client communications between Bronfman and Olmedo or Duran.

If the Court believes it would be helpful to address, at this juncture, the categories of documents related to specific immigration matters (i.e. documents related to M.F.'s visa, B.M.'s visa, and P.S.H.'s visa) and other areas such as NXIVM's privilege with Mexican attorneys Olmedo and Duran, defendant proposes that the most efficient way to proceed is that the taint team should first identify the emails within each of those categories that they believe are not privileged, and defendant will then either (1) agree that the documents are not privileged, or (2) file an *ex parte* factual submission with the Court in order to satisfy our burden of establishing that there is a valid privilege that protects these emails from disclosure.  Regardless of the specific procedure the Court adopts, defendant requests the opportunity to present factual evidence *ex parte* to the Court defending the privilege before any determination is made that no privilege exists or that privilege is vitiated.  As set forth in defendant's opposition brief, communications in each of the topic areas raised by the government are either (1) protected by a privilege involving joint representation of multiple individuals by the same attorney, (2) fall within the well-established privilege covering communications among an entity's counsel and its officers, directors, and employees, or (3) are privileged communications between NXIVM

---

[2] With respect to the specific information regarding immigration matters that the taint team and the prosecution team allege has not been provided by Bronfman, it is not correct that Bronfman has refused to provide this information in order to cause delay.  To the contrary, we were in the midst of pulling together information to respond to the taint team's request for more information about the different types of immigration matters addressed in the documents, when the prosecution team informed us that notwithstanding our ongoing conversations with the taint team to try to resolve which documents were privileged in the immigration context, the prosecution team had decided to make a motion to the Court asking for a ruling that none of these documents were privileged, regardless of which immigration matter they pertained to.  On that basis, defendant made a determination that meeting and conferring with the taint team on that category of documents—as to which the prosecution team had already determined (without seeing the documents) could not be privileged—was a waste of time and resources and that our time was better spent responding to the taint team's inquiries as to other categories of documents.

HAFETZ & NECHELES LLP

directors/officers/employees and NXIVM's counsel that are not vitiated by the crime-fraud exception. Defendant can and will submit evidence supporting the factual basis for each of those invocations of privilege to the Court *ex parte*.

Defendant therefore respectfully requests that the Court enter an order:

(1)   Directing the taint team to provide more detailed information about how many of the 40,000 emails have been reviewed and determined to be (a) beyond the scope of the warrant; (b) within the scope of the warrant and determined by the taint team to be privileged; and (c) within the scope of the warrant and determined by the taint team to be not privileged or possibly not privileged. Only those emails among the 40,000 which are within the scope of the warrant and where privilege is in question would require further meeting-and-conferring or litigation.

(2)   Directing the taint team to identify the universe of emails in the categories of emails addressed by the prosecution team's motion that the taint teams believes either are not privileged because no privilege exists, privilege has been waived, or is subject to the crime-fraud exception; and

(3)   Directing defendants to respond to the taint team's identified emails in each of the categories either by confirming that specific emails are not privileged or by making an *ex parte* factual submission to the Court providing the factual support for the privilege that covers the remaining emails in each category.

Respectfully submitted,

/s/

Kathleen E. Cassidy

cc:   All parties (by ECF)
      AUSA Shannon Jones, Privilege Review Attorney (by email)
      AUSA Philip Pilmar, Privilege Review Attorney (by email)
      Michael J. Sullivan, Esq., Counsel for NXIVM (by email)