UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

- v. -

KEITH RANIERE, CLARE BRONFMAN,
ALLISON MACK, KATHY RUSSELL,
LAUREN SALZMAN, and NANCY SALZMAN,

Defendants.

---

No. 18-cr-204 (NGG) (VMS)

**ORAL ARGUMENT REQUESTED**

Date of service: February 18, 2019

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
CLARE BRONFMAN'S SECOND MOTION TO SUPPRESS**

Kathleen E. Cassidy
Hafetz & Necheles LLP
10 East 40th Street, 48th Floor
New York, New York 10016
(212) 997-7400

Alexandra A.E. Shapiro
Fabien M. Thayamballi
Shapiro Arato Bach LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
(212) 257-4880

*Attorneys for Defendant Clare Bronfman*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 2

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................ 6

I.     The Court Should Suppress Any Materials Obtained From Bronfman's Storage Unit Or, At A Minimum, Order An Evidentiary Hearing.................................................... 6

CONCLUSION ........................................................................................................................... 13

**PRELIMINARY STATEMENT**

Clare Bronfman hired a NXIVM member named Adrienne Stiles to deliver several file cabinets and boxes of Bronfman's personal and business documents to a rented storage unit. Later, long after Stiles had left NXIVM, Bronfman attempted to access the unit but could not because Stiles had rented it under her own name. Stiles, now represented by a class action attorney and hoping to obtain money from NXIVM and Bronfman, told the government about Bronfman's storage unit and was served with a grand jury subpoena directing her to produce the documents. Pursuant to the subpoena, Stiles's lawyer entered the storage unit, took a large quantity of documents without Bronfman's permission, and produced them to the government. The government recently produced a set of these illegally seized documents to Bronfman, prompting this motion to suppress.

Because Stiles's lawyer was responding to a government subpoena, he was acting as an agent of the government when he searched the storage unit, seized closed containers of records, and opened those containers to index the records for production. The government is responsible for this illegal conduct, which was undertaken without a warrant and blatantly violated the Fourth Amendment. Exacerbating this unlawful search and seizure, the government's further review of Bronfman's documents has violated and will violate the Fourth Amendment protections that continue to shield the documents. Bronfman is entitled to suppression or, at a minimum, an evidentiary hearing to examine the circumstances of the government's acquisition and review of documents from Bronfman's storage unit.

**BACKGROUND**

Bronfman is the sole owner of Wisdom Systems, LLC ("Wisdom Systems"), which offers bookkeeping, personal assistant services, and referrals to its network of business

2

professionals, including attorneys, accountants, and computer specialists, to individuals and companies. Among its clients are Bronfman herself; the multiple companies and other entities owned by Bronfman, such as the Ethical Science Foundation ("ESF"); and several individuals and companies whose documents were kept in Wisdom Systems' care. For some time, Wisdom Systems stored its older records and client files in Bronfman's home, where Bronfman also stored a variety of personal papers such as letters and journals. These business and personal documents were contained in file cabinets and folders, cardboard or plastic storage boxes, or digital media such as compact discs. (Declaration of Clare Bronfman ("Bronfman Decl.") ¶¶ 2-3).

In late 2015, Bronfman decided to move these documents from her home to a storage unit. Bronfman hired an individual named Adrienne Stiles (who, at the time, was involved with NXIVM) to move the materials. Stiles was instructed to rent the storage unit for Wisdom Systems, but she in fact rented the unit in her own name, purportedly because the storage facility required her to use her own name rather than the name of a business. Wisdom Systems paid the rental fees for the storage unit, and Bronfman expected the contents of the storage unit to remain private. Approximately six months after Stiles moved Bronfman's materials into the storage unit, Stiles left NXIVM. (Bronfman Decl. ¶¶ 4-7; Declaration of Dennis K. Burke ("Burke Decl.") ¶ 6, Ex. B).

In early 2018, Bronfman's non-profit foundation, ESF, received a subpoena from the New York Department of Health. Dennis Burke of Ballard Spahr LLP represented ESF in connection with the subpoena. (Bronfman Decl. ¶ 8; Burke Decl. ¶ 2). To respond to the subpoena, Burke sought to locate the business records held by Wisdom Systems on ESF's behalf.

3

In early April 2018, he attempted to gain access to the storage unit, but the facility did not grant him access, as the unit was rented under Stiles's name. (Burke Decl. ¶ 4).

Burke attempted to contact Stiles and learned that she was represented by a class action attorney, Neil Glazer. Glazer informed Burke that Stiles would not return the documents from the storage unit to Bronfman because the government had subpoenaed them. Since the beginning of April 2018, Glazer had tried to access the storage unit in order to turn over documents pursuant to a "general investigative demand" from the United States Attorney's Office for the Eastern District of New York. Then, on April 11, 2018, Stiles received a grand jury subpoena that directed her to produce "[a]ny and all records related to Keith Raniere, Nxivm or any Nxivm-related entities, including any records located" in Bronfman's storage unit. (Burke Decl. ¶¶ 5, 7, Exs. A-C, E, H).

Burke and Glazer discussed the documents over the next few weeks in April, as the storage facility was not granting access to either of them. Glazer insisted that he needed access to the storage unit to "photograph the entire unit from every angle," "tak[e] custody" of the documents, "index all containers, and then review the documents." (Burke Decl. ¶ 9, Ex. A). According to Glazer, "the AUSAs and lead FBI case agents" "trust[ed] [him] enough to handle this" without the need to "obtain a warrant." (*Id.* Ex. A). Burke repeatedly objected to Stiles and Glazer's involvement with the storage unit and planned compliance with the subpoena. (*Id.* ¶ 8).

On April 23, 2018, Glazer informed Burke that the storage facility had granted Glazer access to the storage unit. Burke immediately objected, insisting that Glazer and Stiles had no authority to access or review the documents and could not lawfully comply with the subpoena. The next day, Burke emailed a letter to the government objecting to the subpoena on behalf of ESF and Bronfman. He explained that documents in the storage unit were owned by ESF and

4

Bronfman, contained personal and privileged information, and were not lawfully within the possession, custody, or control of Stiles or Glazer. Burke specifically alerted the government that Glazer intended "to 'index all containers, and then review the documents' before producing them to [the government]," and that Burke objected to "Stiles' and [Glazer's] viewing and production of these documents." (Burke Decl. ¶¶ 9-10, Exs. F-G, I).

Several months later, on September 13, 2018, Glazer emailed a letter to Burke stating:

> We are writing to inform you that we now have in our custody some contents of the storage unit in [Stiles's] possession that you and I discussed earlier this year. We removed all boxes containing files, documents and electronic and data storage devices without reviewing the materials. We left in the unit . . . several boxes containing . . . personal effects of one or both Bronfman sisters.
>
> The boxes in our custody are locked in a secure file room. We have not reviewed the contents. Two secretaries at our firm prepared an index of box and file labels and descriptions of contents of several boxes containing items other than documents that they noticed in the course of preparing the index. . . .
>
> We do not at this time plan to review the documents. If and when we do, we will do so in a way . . . that insulates our . . . staff who may work on any matter related to or concerning your clients from exposure to potentially privileged documents.

(Burke Decl. ¶ 11, Ex. J). Glazer stated that he would be willing to return the irrelevant materials remaining in the storage unit (at Bronfman's expense), but only "[s]ubject to any objections or requests from the U.S. Attorney's Office." (*Id.*).

On January 14, 2019, nearly a week after Bronfman filed her motion to suppress the fruits of the searches of her Google account, the government's privilege team informed counsel for Bronfman that it "ha[d] received scans of certain hard copy document pursuant to a subpoena" and would conduct a privilege review. When asked whether Glazer had produced these documents, the government declined to "disclose information about [its] subpoena process" but suggested that "the source w[ould] be obvious from the face of the documents."

5

On February 7, 2019, after reviewing the documents produced by the government's privilege team and determining that they came from the storage unit, counsel for Bronfman instructed the privilege team to refrain from providing any of the documents to the government's trial team. Counsel for Bronfman noted that the government had long been aware that the documents produced by Glazer "were not lawfully in Ms. Stiles's possession."

## ARGUMENT

I.  **The Court Should Suppress Any Materials Obtained From Bronfman's Storage Unit Or, At A Minimum, Order An Evidentiary Hearing**

The government's acquisition and use of materials from Bronfman's storage unit violated the Fourth Amendment, requiring suppression. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). "When an individual seeks to preserve something as private, and his expectation of privacy is one that society is prepared to recognize as reasonable, . . . official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Id.* (quotation marks omitted).

Bronfman had a reasonable expectation of privacy in the storage unit where she entrusted Stiles to deliver her personal and business documents. *See, e.g.*, *United States v. Karo*, 468 U.S. 705, 720 n.6 (1984) ("surely [the defendants] had a reasonable expectation of privacy in their own storage locker"); *United States v. Johns*, 851 F.2d 1131, 1136 (9th Cir. 1988) (defendant "had a reasonable expectation of privacy in [his storage] unit," even though "his name was not on the rental agreement for the storage unit," because he "was the co-owner" of its contents and "the payor of a portion of the rental payments"); *United States v. Hamilton*, 538 F.3d 162, 169 (2d Cir. 2008) ("Privacy interests have been found with respect to business premises and storage

6

lockers."); *United States v. Eldridge*, No. 09CR329A, 2012 WL 2131890, at *3-5 (W.D.N.Y. June 12, 2012) (collecting cases regarding storage units and holding that defendant had reasonable expectation of privacy in property stored at girlfriend's home). Bronfman also had a reasonable expectation of privacy in the documents themselves, which were stored in closed containers. *See, e.g.*, *United States v. Ross*, 456 U.S. 798, 822-23 (1982) ("[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view."); *United States v. Knoll*, 16 F.3d 1313, 1320-21 (2d Cir. 1994) (defendant had reasonable expectation of privacy in documents in "file folders" or "closed boxes").

The government did not obtain a warrant to search Bronfman's storage unit or to seize or review her files. Instead, it subpoenaed those files from Stiles, demonstrating that it knew Stiles would take them and turn them over. But the law does not permit the government to circumvent the warrant requirement so easily. The Supreme Court "ha[s] never held that the Government may subpoena third parties for records in which the suspect has a reasonable expectation of privacy." *Carpenter*, 138 S. Ct. at 2221. Rather, "where the suspect has a legitimate privacy interest in records held by a third party," "a warrant is required" to seize or search those records. *Id.* at 2222. As a result of the government's failure to obtain a warrant, it violated the Fourth Amendment several times over:

   1. *Unlawful search of storage unit and seizure of files.* First, the government violated the Fourth Amendment when Glazer searched the storage unit and seized Bronfman's files at its request. "Although the surreptitious search of premises by a private party does not violate the Fourth Amendment, if, in conducting the search, the searcher is acting as an instrument or agent of the Government, there is a Fourth Amendment transgression." *United States v. Bennett*, 709 F.2d 803, 805 (2d Cir. 1983).

7

"One way for a private party to 'act[] as an agent of the Government' is through legal compulsion. If a private party *must* perform a search—if she can face liability for not doing so—the search is controlled by the Fourth Amendment." *United States v. DiTomasso*, 81 F. Supp. 3d 304, 308 (S.D.N.Y. 2015) (quotation marks omitted). In addition, private parties "act[] as government agents if the government directs their actions or tacitly approves of whatever measures were taken to seize the evidence." *United States v. Shkreli*, No. 15-CR-637 (KAM), 2017 WL 3608252, at *5 (E.D.N.Y. May 16, 2017) (quotation marks omitted).

Here, Glazer stated multiple times that he would take, and did take, Bronfman's files from the storage unit to comply with a government subpoena. He was therefore acting as an agent of the government, and the warrantless search and seizure violated the Fourth Amendment.

  2. *Unlawful search of files by the government.* Separately, the government violated the Fourth Amendment if it reviewed those files to a greater extent than Stiles or Glazer did. When private parties take files from a suspect without permission and turn them over to the government, the government ordinarily must seek a warrant to review those files. A warrant is unnecessary only if the private parties have already reviewed the files.

In *United States v. Knoll*, 16 F.3d 1313 (2d Cir. 1994), for example, burglars stole the defendant's files and turned them over to the government. The Court held that if the files "were closed or were in closed boxes, and did not reveal their contents, then a reasonable expectation of privacy continued even after they were stolen" and "continued so long as the files had not been searched before contact with the government occurred." *Id.* at 1320-21. But because the stolen records "had already been searched by private parties" by the time they reached the government, the government "was not required" to obtain a search warrant "to read them." *Id.* at 1319. Similarly, in *United States v. Palmisano*, 104 F.3d 354 (2d Cir. 1996) (unpublished), the Court

8

found that "there was no Fourth Amendment violation" because a private party "had reviewed the contents of the [defendant's] disks before turning them over to the FBI."

On the other hand, in *United States v. Cacace*, 796 F.3d 176 (2d Cir. 2015), a private party stole an address book from the defendant's house and gave it to the government, apparently without reading it first. The defendant argued that even if the government was not responsible for the theft, its subsequent review of the address book without a warrant was unconstitutional. Citing *Knoll*, the Second Circuit agreed that "[t]he record support[ed] [the defendant's] position that [the government's] search of the address book was conduct not permitted either by a warrant or any Fourth Amendment exception." *Id.* at 190.[1]

Here, there is good reason to believe that Glazer conducted only a limited review of Bronfman's files before producing them to the government. In his September 2018 letter, Glazer stated that while "[t]he boxes in our custody are locked in a secure file room," "[w]e have not reviewed the contents" and "do not at this time plan to review the documents," even though the government's subpoena was outstanding. (Burke Decl. Ex. J). "Two secretaries at [his] firm prepared an index of box and file labels and descriptions of contents of several boxes containing items other than documents that they noticed in the course of preparing the index." (*Id.*). The government's review of the contents of the documents would therefore exceed the scope of this limited search by Glazer's firm, infringing Bronfman's reasonable expectation of privacy in violation of the Fourth Amendment.

3.    *Unlawful search of files by private parties acting as government agents.*

Moreover, any search of Bronfman's files that Glazer conducted to respond to the subpoena—

---

[1] The Court ultimately sidestepped the issue because the admission of the challenged evidence was harmless. *See id.* Notably, the government did not claim that it was permitted to review the address book without a warrant. *See* Br. of U.S, *Cacace*, 2015 WL 401499, at *61-62.

9

even the limited "indexing" review described above—was the warrantless search of a government agent and violated the Fourth Amendment. The Second Circuit's decision in *Knoll* governs this scenario as well. As explained above, in *Knoll*, burglars stole files from the defendant's office and turned them over to the government. The burglars initially gave the government only a subset of the files. Dissatisfied with the initial production, the government asked the burglars for additional files, knowing they were stolen.

The district court denied the defendant's motion to suppress because the government was not responsible for the burglary. The Second Circuit, however, remanded for further factfinding to determine the government's responsibility for the burglars' ensuing search of the files. "[T]he critical issue [wa]s the point in time when the object of the search [was] completed." 16 F.3d at 1320. If private parties have already conducted a full search of the stolen files before contact with the government, "the government cannot later become a party" to that completed search, and it does not implicate the Fourth Amendment. *Id.* But a search begun by private parties implicates the Fourth Amendment if the private parties become government agents, such as if the government joins the search "while it [i]s in progress" or gives the private parties its "tacit approval." *Id.* The government "may not expand the scope of an ongoing private search unless it has an independent right to do so," and [a] private party acting as a government agent also may not expand upon a previously private search without running afoul of the Fourth Amendment." *Id.*; *see also Walter v. United States*, 447 U.S. 649, 659 (1980) (plurality) (where a "private search merely frustrate[s] th[e] expectation [of privacy] in part," it does not "strip the remaining unfrustrated portion of that expectation of all Fourth Amendment protection").

Applying these principles, the Second Circuit observed that "[a]t some point" during the burglars' review of the defendant's files, they "may have been acting as agents of the

10

government[,] given that [the AUSA] directed their actions and tacitly approved of whatever measures they took to produce information he wanted from the contents of the files." *Knoll*, 16 F.3d at 1320.  The question was whether this "government" search exceeded the scope of any "private" search the burglars conducted prior to contact with the government. *See id.* at 1320-21.

On remand, the district court concluded that the burglars' "search of [the defendant's] files was completed before [the government] asked [them] for more information." *United States v. Knoll*, 116 F.3d 994, 997 (2d Cir. 1997). Specifically, "prior to [their] initial contact" with the government, the burglars had "remov[ed] documents from envelopes and files, look[ed] at letters, [and] listen[ed] to tape recordings." *Id.* The district court therefore concluded that the defendant's "reasonable expectation of privacy in the files had been defeated before any government involvement," and the Second Circuit agreed. *Id.* at 998.

Here, the result is clearly different. Glazer obtained Bronfman's documents from the storage unit only after Stiles had been served with a subpoena, so unlike in *Knoll*, there was no "private" search prior to contact with the government. Then, in the course of responding to the subpoena, "[t]wo secretaries at [Glazer's] firm prepared an index of box and file labels and descriptions of contents of several boxes containing items other than documents that they noticed in the course of preparing the index." (Burke Decl. Ex. J). While they apparently did not review the contents of documents, the secretaries necessarily opened boxes and file cabinets to prepare an index for production to the government, thereby intruding on Bronfman's reasonable expectation of privacy while acting as government agents. This violated the Fourth Amendment.

Moreover, Glazer did not rule out the possibility of reviewing the contents of the documents at a later date. (*Id.*). If his firm did review any documents to determine whether they were responsive to the subpoena, it violated the Fourth Amendment for this reason as well.

11

\* \* \*

Accordingly, the search of Bronfman's storage unit, the seizure of her files, and the subsequent search of those files by Glazer's firm and the government violated the Fourth Amendment in multiple respects, "requir[ing] suppression [of the files] as 'fruits of the poisonous tree.'" *Knoll*, 16 F.3d at 1321.

At a minimum, however, the Court should order an evidentiary hearing to determine the extent of the Fourth Amendment violations and appropriate remedy. "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (quotation marks omitted). Bronfman easily satisfies this standard, and courts regularly hold "hearing[s] . . . to resolve issues of fact" related to government's use of files taken from defendants without permission. *Knoll*, 16 F.3d at 1320-21, 1324 (remanding for a hearing); *see also United States v. RW Prof'l Leasing Servs. Corp.*, 317 F. Supp. 2d 167, 173 (E.D.N.Y. 2004) (ordering suppression hearing because "the defendants ha[d] made a sufficient showing that contested issues of fact exist regarding whether [a private party] was working on behalf of the Government at the time he obtained documents" from the defendants). Notably, now that Bronfman has raised serious questions about the legality of the government's conduct, it is the government's burden to prove that suppression is unwarranted. *See United States v. Wyche*, 307 F. Supp. 2d 453, 457 (E.D.N.Y. 2004) ("On a motion to suppress evidence in a criminal trial, once [the defendant] establishes a basis for his motion, the burden rests upon the Government to prove, by a preponderance of the evidence, the legality of the actions of its officers.").

## **CONCLUSION**

For the foregoing reasons, the Court should suppress the materials taken from Bronfman's storage unit or, at a minimum, hold an evidentiary hearing.

Dated:   February 18, 2019
         New York, New York

                                                        Respectfully submitted,

                                                     _____/s/_____
                                                     Kathleen E. Cassidy
                                                     Hafetz & Necheles LLP
                                                     10 East 40th Street, 48th Floor
                                                     New York, New York 10016
                                                     (212) 997-7400

                                                     Alexandra A.E. Shapiro
                                                     Fabien M. Thayamballi
                                                     Shapiro Arato Bach LLP
                                                     500 Fifth Avenue, 40th Floor
                                                     New York, New York 10110
                                                     (212) 257-4880

                                                     *Attorneys for Defendant Clare Bronfman*