

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MKM:MKP/TH/MJL/KMT          *271 Cadman Plaza East*
F. #2017R01840          *Brooklyn, New York 11201*

March 4, 2019

<u>By Hand and ECF</u>

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:     United States v. Clare Bronfman, <u>et al.</u>
                  Criminal Docket No. 18-204 (NGG) (S-1)

Dear Judge Garaufis:

          The government respectfully submits this letter in opposition to the defendant
Clare Bronfman's second motion to suppress (Dkt. Nos. 352-55).  For the reasons set forth
below, Bronfman's motion should be denied.

I.     <u>Background</u>

          In April 2018, the grand jury issued a subpoena to the named leaseholder of a
storage unit, which the government had learned contained records related to various
Bronfman-affiliated organizations.  (<u>See</u> Exhibit A, lease for storage unit.)  On April 24,
2018, the government received a letter from attorney Dennis Burke, Esq., who stated that he
represented the Ethical Science Foundation ("ESF"), a non-profit organization that was
created by Bronfman and of which she is the sole trustee.  Burke claimed that the leaseholder
did not have rightful possession of the records in the storage unit.  Burke's declaration to the
instant motion states that "[i]n early April 2018, [Burke] attempted to gain access to the
storage unit where the records were located, but the facility did not grant [him] access, as the
unit was rented under the name" of the leaseholder.  (Burke Decl. ¶ 4.)  The government's
understanding is that the Chief Compliance Officer of the storage facility advised Burke in
April 2018 that the facility could not deny a leaseholder or her agent access to her unit, and
offered an opportunity for Burke to seek a court order regarding the contents of the unit,
which he never did.

On May 24, 2018, the government notified the leaseholder's counsel that the previously issued subpoena was withdrawn, which counsel acknowledged.  (See Exhibit B, email chain, dated May 24, 2018.)  The government's understanding is that as of the time the subpoena was withdrawn, the storage unit had not been accessed by anyone since the dispute over the unit arose, and the defendant does not make any claim to the contrary.

Nearly three months after the subpoena was withdrawn, the leaseholder's counsel informed the government that he was in possession of boxes from the storage unit, and he provided the government with an index of those boxes and the file labels.  The index appears to be the same as that which is described as being attached to the letter the leaseholder's counsel sent to Burke, attached as Exhibit J (without enclosures) to Burke's declaration.

On September 13, 2018, the grand jury issued a new subpoena for certain of the boxes, based on the index.  (See Exhibit C, September 13, 2018 subpoena.)  The government received a full set of the documents subpoenaed in early January 2019 and immediately began the privilege review process set forth in the government's filing, dated February 7, 2019 (Dkt. No. 346), which is incorporated here by reference.

The government is not aware of any attempt by Burke or Bronfman, by formal demand letter, court order, or otherwise, to gain custody of the records in the storage unit, either from the storage facility or from the leaseholder's counsel, once they were in the leaseholder's counsel's office.

On February 18, 2019, Bronfman filed the instant motion.  In a declaration to the instant motion, Bronfman attests that the storage unit in question contained older records and client files belonging to Wisdom Systems LLC ("Wisdom Systems") as well as personal items, and that the leaseholder was supposed to have rented the unit in the name of Wisdom Systems.  (Bronfman Decl. ¶¶ 3-5.)  Bronfman also attests that Wisdom Systems paid the fees on the storage unit until April 2018.  (Bronfman Decl. ¶ 5.)  The government's understanding is that since at least April 2018 through present, fees on the storage unit have been paid by the leaseholder or her attorney.

II.    Applicable Law

A.    The Fourth Amendment Is Not Implicated by Voluntarily Disclosed Information or Corporate Records

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV.  Government conduct is not considered a "search" or "seizure" within the meaning of the Fourth Amendment unless the person targeted by the government has "a reasonable expectation of privacy" in the places searched or items seized.  See, e.g., Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) (explaining the "twofold requirement" to finding an expectation reasonable: "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is

2

prepared to recognize as 'reasonable.'").  Without a reasonable expectation of privacy, the Fourth Amendment is not implicated, and accordingly, no warrant is required.

Information voluntarily disclosed to a third party is not protected under the Fourth Amendment.  See, e.g., Smith v. Maryland, 442 U.S. 735, 743-44 (1979) (no reasonable expectation of privacy in numbers dialed on a telephone due to the risk assumed that the phone company will disclose this information to the government); United States v. Miller, 425 U.S. 435, 444 (1976) (bank account records do not command a privacy interest).  This is true "even if the information is revealed [to the third party] on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."  Miller, 425 U.S. at 443.

In addition, although "the Fourth Amendment protects corporations from subpoenas that are unreasonably broad, Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208 (1946), neither the officers of a corporation, Wilson v. United States, 221 U.S. 361, 376-77 (1911), the shareholders, see Grant v. United States, 227 U.S. 74, 80 (1913), the custodian of the records, Wheeler v. United States, 226 U.S. 478 (1913), nor the corporation itself, Wilson v. United States, supra, 221 U.S. at 374-75, has any other Fourth Amendment interest in corporate records."  United States v. Lartey, 716 F.2d 955, 961 (2d Cir. 1983).  See also United States v. Barr, 605 F. Supp. 114, 117 (S.D.N.Y. 1985).

When no Fourth Amendment interest is implicated, a "case is governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time the subpoena is issued."  Miller, 425 U.S. at 444.

B.  A Corporate Employee Must Establish Standing Separate From A Corporation to Challenge A Search or Seizure

A defendant seeking suppression bears the burden of establishing by a preponderance of the evidence that his personal Fourth Amendment rights were violated by the challenged search and seizure.  Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978); accord United States v. Padilla, 508 U.S. 77, 81 (1993) ("It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." (emphasis in original)); United States v. Osorio, 949 F.2d 38, 40 (2d Cir. 1991); United States v. Shelton, No. 14 Cr. 6009, 2015 WL 500886, at *2 (W.D.N.Y. Feb. 5, 2015).

A corporate entity – such Wisdom Systems – and the natural individuals who created it or were its employees are different "persons" for Fourth Amendment purposes. See G.M. Leasing Corp. v. United States, 429 U.S. 338, 353 (1977) (corporations are among the people protected against unreasonable searches and seizures under the Fourth Amendment); see also Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001) ("incorporation's basic purpose is to create a distinct legal entity, with legal rights,

3

obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs."). With respect to searches of corporate property, therefore, a corporate entity's employee or shareholder – even a sole shareholder or the corporation's CEO – does not automatically have standing to assert the corporation's Fourth Amendment rights absent harm to an individualized, legitimate and reasonable expectation of privacy. See United States v. Hamdan, 891 F. Supp. 88, 94 (E.D.N.Y. 1995) ("the determination as to whether an individual has standing to challenge a warrantless search does not depend strictly upon the ownership of the premises searched, but upon whether the individual had a reasonable expectation to privacy in the area searched" (citing Mancusi v. DeForte, 392 U.S. 364, 366 (1968))). Consequently, "[w]hen a man chooses to avail himself of the privilege of doing business as a corporation, even though he is its sole shareholder, he may not vicariously take on the privilege of the corporation under the Fourth Amendment." United States v. Guterma, 272 F.2d 344, 346 (2d Cir. 1959) (citation omitted); accord United States v. Triumph Capital Grp., Inc., 211 F.R.D. 31, 54 (D. Conn. 2002).

Instead, to establish standing, a defendant must show "some personal expectation of privacy in the corporate records at issue." Triumph Capital, 211 F.R.D. at 54. "This threshold question involves two separate inquiries: first, [the defendant] must demonstrate a subjective expectation of privacy in a searched place or item; and second, his expectation must be one that society accepts as reasonable." United States v. Chuang, 897 F.2d 646, 649 (2d Cir. 1990). Whether a "corporate officer has a reasonable expectation of privacy to challenge a search of business premises focuses principally on whether he has made a sufficient showing of a possessory or proprietary interest in the area searched." Id. (internal quotation marks and citation omitted; alteration in original).

C. A Search Conducted by a Private Party Only Implicates the Fourth Amendment if the Private Party Acts as a Government Agent

The Fourth Amendment does not provide protection against searches by private individuals acting in a private capacity. See United States v. Jacobsen, 466 U.S. 109, 113 (1984) (the Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official" (internal quotation marks and citation omitted)). Thus, evidence secured by private searches, even if illegal, need not be excluded from a criminal trial. See Walter v. United States, 447 U.S. 649, 656 (1980) ("[A] wrongful search and seizure conducted by a private party does not violate the Fourth Amendment and . . . . such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully." (citation omitted)).

Consequently, an improper search conducted by a private party can only violate the Fourth Amendment when that private party acts as an agent or instrument of the Government at the time of the search. That analysis "turns on the degree of the Government's participation in the private party's activities," Skinner v. Ry. Labor Execs.' Assoc., 489 U.S. 602, 614 (1989) (internal citations and quotations omitted), where "some

4

evidence of Government participation or affirmative encouragement of the private search is required before that search is held to be unconstitutional." United States v. Heleniak, Crim. No. 14-42A, 2015 WL 521287 (W.D.N.Y. Feb. 9, 2015) (citing United States v. Richardson, 607 F.3d 357 (4th Cir 2010)).  The defendant "bear[s] the burden to establish that a private party acted as a government instrument or agent."  United States v. Dupree, 781 F. Supp. 2d 115, 158 (E.D.N.Y. 2011).

III.    Analysis

    A.    The Fourth Amendment Is Not Implicated and if It Were, Bronfman Has No Standing

        Bronfman's motion to suppress suffers from multiple fatal flaws.  As an initial matter, the Fourth Amendment is not even implicated here because Bronfman had no expectation of privacy in the storage unit.  The unit was not in her name, neither she (nor her lawyer) had any means of accessing it, and from April 2018 through the present, she has made no legal efforts to obtain possession of the records in the storage unit or keep the leaseholder from accessing them.  See United States v. Rahme, 813 F.2d 31, 34 (2d Cir. 1987) ("The absence of possession, however, may often result in a finding that an accused had no legitimate expectation of privacy because the absence of a right to exclude others from access is an important factor militating against a legitimate expectation of privacy.") Even under Bronfman's own declaration, (see Bronfman Decl. at ¶ 5), she had turned the records over to the custody of Wisdom Systems.  As set forth in Lartey and the Supreme Court cases to which it cites, Bronfman has no Fourth Amendment interest in such corporate records.  716 F.2d at 961.

        Even if the Fourth Amendment were implicated, which it is not, Bronfman cannot meet her burden of demonstrating that she has standing to challenge such a search. Bronfman's personal Fourth Amendment rights are separate and distinct from any Fourth Amendment rights that could be exercised by Wisdom Systems.  See Guterma, 272 F.2d at 346; Triumph Capital, 211 F.R.D. at 54.  To establish standing as an individual, Bronfman would need to show "some personal expectation of privacy" in the documents at issue, Triumph Capital, 211 F.R.D. at 54, specifically, by showing both "a subjective expectation of privacy in a searched place or item" and that her "expectation [is] one that society accepts as reasonable." Chuang, 897 F.2d at 649.  As detailed above, Bronfman had no reasonable personal expectation of privacy in Wisdom Systems' records, which were left in a storage unit for years, could have been accessed by others and could not be accessed by her.  See, e.g., Barr, 605 F. Supp. at 117.

        Bronfman surrendered any possessory interest in the documents at issue – assuming, arguendo, she ever had one – the minute she placed the documents under Wisdom System's control.  The Fourth Amendment simply does not convert an employer's property into an employees' property in these circumstances.

B.  <u>The Leaseholder and Her Counsel Were Not Government Agents</u>

Bronfman's motion also fails because it relies on the false premise that the leaseholder was acting pursuant to a subpoena (and thus as a government agent) when the records were removed from the storage unit.  (<u>See</u> Def.'s Memorandum of Law at 7-8; 9-11 ("[Counsel for the leaseholder] obtained Bronfman's documents from the storage unit <u>only after Stiles had been served with a subpoena</u> . . . .", "Then, <u>in the course of responding to the subpoena</u> [two secretaries indexed the contents of the boxes from the unit].") (emphasis added)).  To the contrary, as the documents submitted by the government attached to this opposition make clear, the government withdrew its initial subpoena after the dispute over possession was brought to the government's attention and a new subpoena was only issued once records from the storage unit were already in the leaseholder's counsel's office.  (<u>See</u> Ex. B-C.)  Because Bronfman's motion is based on incorrect and incomplete information, she has not met her burden to demonstrate that suppression, or even an evidentiary hearing is warranted.  <u>See</u> <u>United States v. Wilson</u>, 404 F.3d 163, 167 (2d Cir. 2005) (reiterating prior Second Circuit holding that an evidentiary hearing on a motion to suppress is only necessary if "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question") (internal quotation and citation omitted).

The line of cases upon which Bronfman relies do not require a different outcome.  For example, in <u>United States v. Knoll</u>, the primary authority on which Bronfman relies, a prosecutor received records knowing that they had been stolen from a law office and then requested that the person who orchestrated the burglary provide additional records, saying, for instance, "[Y]ou've got to turn over more," which he then did.  16 F.3d 1313, 1319-20 (2d Cir. 1994).  In <u>Knoll</u>, the Second Circuit remanded for further factfinding to determine whether the search had already been completed at the time the prosecutor requested additional records.  <u>Id.</u>  On remand, the district court found that the person who orchestrated the burglary had already "searched through each of the stolen files immediately after the burglary," breaching any expectation of privacy before the government was involved, and denied the suppression motion.  <u>Id.</u>  The Second Circuit affirmed.  <u>United States v. Knoll</u>, 116 F.3d 994, 997-98 (2d Cir. 1997).

Here, there is no credible allegation that the initial acquisition of the records was at the government's direction.  Indeed, Bronfman provided them to the leaseholder over three years prior to issuance of the first subpoena.  As noted above, since that time, the documents have been located in a storage facility that can only be accessed by the subpoena recipient.  Nor is there any credible allegation that the retrieval of the records from the storage unit was at the government's direction.  Rather, the government withdrew its subpoena before the records were accessed, and the government did not issue a new subpoena until four months later—when the records were already in the leaseholder's counsel's office and already had been indexed by file folder.  To the extent there is a question of whether any further search of the records is an unlawful search, as set forth below, Bronfman has no standing to make such a claim, and any expectation of privacy was further reduced once the government received the detailed index of the file folders.  <u>See</u>

<u>United States v. Bonfiglio</u>, 713 F.2d 932, 937 (2d Cir. 1983) (clearly labeled cassette tape "had the practical effect of putting the contents of the tape in plain view and therefore reducing the expectation of privacy"); <u>cf.</u> <u>Knoll</u>, 16 F.3d at 1321 ("So long as the opaque file folders were closed or were in closed boxes, and did not reveal their contents, then a reasonable expectation of privacy continued even after they were stolen from Knoll's office.").

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the Bronfman's second motion to suppress.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:	/s/
	Moira Kim Penza
	Tanya Hajjar
	Mark J. Lesko
	Kevin M. Trowel
	Assistant U.S. Attorneys
	(718) 254-7000

cc:	Clerk of Court (NGG) (by ECF)
	Counsel of Record (by ECF)