UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- v. -<br><br>KEITH RANIERE, CLARE BRONFMAN, ALLISON MACK, KATHY RUSSELL, LAUREN SALZMAN, and NANCY SALZMAN,<br><br>Defendants. | No. 18-cr-204 (NGG) (VMS)<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date of service: March 13, 2019 |

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANT CLARE BRONFMAN'S SECOND MOTION TO SUPPRESS

Mark J. Geragos
Geragos & Geragos, APC
644 S. Figueroa St.
Los Angeles, CA 90017
(213) 625-3900

Kathleen E. Cassidy
Hafetz & Necheles LLP
10 East 40th Street, 48th Floor
New York, New York 10016
(212) 997-7400

Alexandra A.E. Shapiro
Fabien M. Thayamballi
Shapiro Arato LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
(212) 257-4880

*Attorneys for Defendant Clare Bronfman*

## **TABLE OF CONTENTS**

 **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 1

  I.     Bronfman Has A Fourth Amendment Interest In The Documents .................................... 1

  II.    The Court Should Order Suppression Or, At A Minimum,
        An Evidentiary Hearing ....................................................................................................... 7

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andresen v. Maryland*,
   427 U.S. 463 (1976) ............................................................................................ 6

*Byrd v. United States*,
   138 S. Ct. 1518 (2018) ............................................................................... 1, 2, 3, 6

*Carpenter v. United States*,
   138 S. Ct. 2206 (2018) ............................................................................... 2, 3, 4, 5

*Ex parte Jackson*,
   96 U.S. 727 (1877) ...................................................................................... 1, 2, 3

*Florida v. Jardines*,
   569 U.S. 1 (2013) ................................................................................................ 2

*Lagow v. United States*,
   159 F.2d 245 (2d Cir. 1946) ............................................................................... 6

*Mancusi v. DeForte*,
   392 U.S. 364 (1968) ........................................................................................... 1

*Marks v. United States*,
   430 U.S. 188 (1977) ........................................................................................... 8

*O'Connor v. Ortega*,
   480 U.S. 709 (1987) ........................................................................................... 6

*Rawlings v. Kentucky*,
   448 U.S. 98 (1980) ............................................................................................. 3

*Skinner v. Ry. Labor Executives' Ass'n*,
   489 U.S. 602 (1989) ......................................................................................... 10

*Smith v. Maryland*,
   442 U.S. 735 (1979) ........................................................................................... 5

*U.S. ex rel. DeForte v. Mancusi*,
   379 F.2d 897 (2d Cir. 1967) ............................................................................ 6, 7

*United States v. Ackerman*,
   831 F.3d 1292 (10th Cir. 2016) ....................................................................... 8, 9

*United States v. Barr*,
   605 F. Supp. 114 (S.D.N.Y. 1985) ............................................................................... 6

*United States v. Birrell*,
   242 F. Supp. 191 (S.D.N.Y. 1965) ............................................................................... 7

*United States v. Bonfiglio*,
   713 F.2d 932 (2d Cir. 1983) ........................................................................................ 9

*United States v. Buchner*,
   7 F.3d 1149 (5th Cir. 1993) ......................................................................................... 5

*United States v. Chuang*,
   897 F.2d 646 (2d Cir. 1990) ........................................................................................ 6

*United States v. Cowan*,
   396 F.2d 83 (2d Cir. 1968) .......................................................................................... 4

*United States v. DiTomasso*,
   81 F. Supp. 3d 304 (S.D.N.Y. 2015) ......................................................................... 10

*United States v. Guterma*,
   272 F.2d 344 (2d Cir. 1959) ........................................................................................ 6

*United States v. Hamilton*,
   538 F.3d 162 (2d Cir. 2008) .................................................................................... 2, 4

*United States v. Infante-Ruiz*,
   13 F.3d 498 (1st Cir. 1994) .......................................................................................... 5

*United States v. Jacobsen*,
   466 U.S. 109 (1984) ............................................................................................ 1, 4, 8

*United States v. Johns*,
   851 F.2d 1131 (9th Cir. 1988) .................................................................................. 3, 5

*United States v. Jones*,
   565 U.S. 400 (2012) ..................................................................................................... 2

*United States v. Karo*,
   468 U.S. 705 (1984) ..................................................................................................... 2

*United States v. Knoll*,
   16 F.3d 1313 (2d Cir. 1994) ........................................................................... 5, 6, 9, 10

*United States v. Knoll*,
   116 F.3d 994 (2d Cir. 1997) ........................................................................................ 9

*United States v. Lartey,*
  716 F.2d 955 (2d Cir. 1983) .................................................................................... 5, 6

*United States v. Miller,*
  148 F.3d 207 (2d Cir. 1998) ......................................................................................... 5

*United States v. Miller,*
  425 U.S. 435 (1976) ..................................................................................................... 5

*United States v. Moscatiello,*
  771 F.2d 589 (1st Cir. 1985) ........................................................................................ 5

*United States v. Rahme,*
  813 F.2d 31 (2d Cir. 1987) ........................................................................................... 4

*United States v. Triumph Capital Grp., Inc.,*
  211 F.R.D. 31 (D. Conn. 2002) ................................................................................... 6

*United States v. Van Leeuwen,*
  397 U.S. 249 (1970) ..................................................................................................... 3

*Walter v. United States,*
  447 U.S. 649 (1980) ..................................................................................................... 8

## PRELIMINARY STATEMENT

The government cannot encourage third parties to steal documents for its investigation. And if stolen documents end up in its hands, it must ordinarily obtain a warrant to review them. These principles are firmly grounded in the Fourth Amendment, and they require suppression here. The government's arguments to the contrary are confused, misleading, and meritless.

## ARGUMENT

### I. Bronfman Has A Fourth Amendment Interest In The Documents

"The concept of standing in Fourth Amendment cases" is merely "shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018). Contrary to the government's assertions (Opp'n 5), Bronfman has a cognizable interest in the documents at issue—both her personal documents and business records of Wisdom Systems, LLC, which she wholly owns. (Bronfman Decl. ¶¶ 2-4).

Bronfman originally stored these documents in file cabinets, boxes, and storage media located in her home. (*Id.* ¶¶ 2-3). Had the government seized them (or even "papers [that] belonged to" someone else) from her home, Bronfman indisputably would have had "personal standing to object to their admission." *Mancusi v. DeForte*, 392 U.S. 364, 367 n.4 (1968).

Nothing changed when Bronfman moved the file cabinets, boxes, and media into storage. The Supreme Court has unequivocally held that "sealed packages are . . . effects in which the public at large has a legitimate expectation of privacy," *United States v. Jacobsen*, 466 U.S. 109, 114 (1984), and that "[t]he constitutional guaranty of the right of the people to be secure in their *papers* against unreasonable searches and seizures extends to their papers, thus closed against inspection, *wherever they may be*," *Ex parte Jackson*, 96 U.S. 727, 733 (1877) (emphasis added).

Thus, when one person entrusts another with transporting and storing containers, she has standing to object to searches of their contents. *See Jacobsen*, 466 U.S. at 114 (a "wrapped

parcel . . . delivered to [a] private freight carrier . . . [i]s unquestionably an 'effect' within the meaning of the Fourth Amendment," and "the Fourth Amendment requires that [the government] obtain a warrant before examining the contents of such a package"); *Jackson*, 96 U.S. at 733 ("Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles."); *United States v. Karo*, 468 U.S. 705, 708, 720 n.6 (1984) (defendants "had a reasonable expectation of privacy in their own storage locker" in a "commercial storage facility"); *United States v. Hamilton*, 538 F.3d 162, 167-69 (2d Cir. 2008) (individuals have "protected privacy interest[s]" in "storage unit[s]" and "file cabinets").

Bronfman has standing to contest searches and seizures of her containers and documents for another reason as well. While she had "legitimate expectations of privacy" in these items (as explained above), that privacy-based test only "supplements, rather than displaces, 'the traditional property-based understanding of the Fourth Amendment.'" *Byrd*, 138 S. Ct. at 1526 (quoting *Florida v. Jardines,* 569 U.S. 1, 11 (2013)). As the owner of the containers and documents, Bronfman has property interests protected by the Fourth Amendment. *See Carpenter v. United States*, 138 S. Ct. 2206, 2268 (2018) (Gorsuch, J., dissenting) ("[I]f a house, paper, or effect is yours, you have a Fourth Amendment interest in its protection.")[1]; *id.* ("No more [i]s needed to trigger the Fourth Amendment."); *United States v. Jones*, 565 U.S. 400, 403-404 (2012) (defendant could object to placement of tracking device on his Jeep even though "it was parked in a public parking lot"); *id.* at 406 (it did not matter whether he had an "'expectation of privacy' in the area of the Jeep accessed by [the] Government" because there was a "government

---

[1] Nothing suggests the *Carpenter* majority disagreed with the analysis we quote from the dissent.

2

trespass" on his property); *see also Byrd*, 138 S. Ct. at 1527 ("one who owns . . . property will in all likelihood have a legitimate expectation of privacy") (quotation marks omitted).

Placing that property in the care of others did not eliminate Bronfman's rights, because "[e]ntrusting your stuff to others is a *bailment*," and the "bailee normally owes a legal duty to keep the item safe." *Carpenter*, 138 S. Ct. at 2268 (Gorsuch, J., dissenting); *see also id.* at 2269 ("[F]ew doubt that e-mail should be treated much like the traditional mail it has largely supplanted—as a bailment in which the owner retains a vital and protected legal interest."). Consequently, the government's intrusion on her property implicates the Fourth Amendment. *See Jackson*, 96 U.S. at 733 (warrant required to open letters entrusted to postal service); *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970) (same).[2]

The government does not cite, let alone discuss, any of this authority. While it contends that Bronfman has no protected interest in the documents, its arguments are meritless.

The government argues that "Bronfman had no expectation of privacy in the storage unit" (Opp'n 5), but this is both irrelevant and wrong. Her expectation of privacy in the storage unit would prevent the government from entering, but she had also a protected interest in avoiding searches of her containers and the documents inside them. Also, Bronfman *did* have a protected interest in the unit because, although her "name was not on the rental agreement," she owned the contents and paid rent. *United States v. Johns*, 851 F.2d 1131, 1135-36 (9th Cir. 1988).

---

[2] The bailor may not always have a protected interest in the *location* where her property is stored. In *Rawlings v. Kentucky*, 448 U.S. 98 (1980), the defendant suddenly dumped drugs into the purse of an acquaintance before the police arrived, and the Court found he had no legitimate expectation of privacy in the purse. Once the police searched the purse, the drugs were in plain view, so his ownership of the drugs did not help him. *See id.* at 105-06. But *Rawlings* did not suggest that the police could have opened a letter or read an address book he had placed inside the purse. In any event, the defendant admitted he had no "subjective expectation" of privacy (unlike here); his "sudden bailment" was nonconsensual or at least reckless (unlike here); and at the time, the Supreme Court placed less emphasis on property rights (unlike here). *Id.* at 105.

3

The government does not mention *Johns*—which the Second Circuit endorsed in *Hamilton*, 538 F.3d at 168-69—and the case it does cite is totally inapposite. In *United States v. Rahme*, 813 F.2d 31 (2d Cir. 1987), the defendant had no privacy interest in luggage he had left in a hotel room because when he failed to pay the bill, the hotel seized it pursuant to a lien under New York law. *See id.* at 33-35. The hotel had the right to sell the luggage. *See id.* at 34-35; *United States v. Cowan*, 396 F.2d 83, 87 (2d Cir. 1968) (failure to pay bill meant hotel "could sell the baggage at public auction"; hotel was required by law "to examine the luggage and its contents," invite "the entire community to examine them," and "exhibit[]" the "contents" at sale).

Here, neither Stiles nor the storage facility ever had the right to dispose of Bronfman's property. At all times, Bronfman retained ownership of the property and expected it to remain private. (Bronfman Decl. ¶ 6). While the government asserts that Bronfman could not access the unit and did not try to retrieve its contents (Opp'n 5), this is a gross mischaracterization. Bronfman repeatedly objected to Stiles and Glazer's accessing the unit's contents and demanded their return. (Burke Decl. ¶¶ 8, 10; Ex. B at 1-2; Ex. C at 1-2; Ex. F; Ex. G at 1-2; Ex. I). Glazer stated that Stiles did not want the contents, acknowledged Bronfman's ownership, and resisted returning them only because of the subpoena. (*Id.* Ex. B at 1; Ex. C at 1; Ex. J). Subpoena aside, Stiles never claimed any right to access that property, because she had none. *See Carpenter*, 138 S. Ct. at 2269 (Gorsuch, J., dissenting) ("A bailee who uses the item in a different way than he's supposed to, or against the bailor's instructions, is liable for conversion.").

Thus, Bronfman may not have had physical "possession" of her documents, but she indisputably had a legal "right to exclude others from access." *Rahme*, 813 F.2d at 34. This separation of possession and ownership is an essential feature of bailments, and as explained above, it does not strip owners of their Fourth Amendment rights. *See, e.g.*, *Jacobsen*, 466 U.S.

4

at 114; *Johns*, 851 F.2d at 1136; *see also Carpenter*, 138 S. Ct. at 2221 ("this Court has never held that the Government may subpoena third parties for records in which the suspect has a reasonable expectation of privacy"); *United States v. Infante-Ruiz*, 13 F.3d 498, 501-02 (1st Cir. 1994) (defendant had privacy interest in briefcase even though it was stored inside the trunk of another person's car); *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993) (same); *United States v. Miller*, 148 F.3d 207, 214 (2d Cir. 1998) (uncertain whether *Rahme* applied because hotel agreed to store property but later prepared to dispose of it); *cf. United States v. Knoll*, 16 F.3d 1313, 1319-21 (2d Cir. 1994) (defendant's files were in possession of third parties, but he had expectation of privacy to the extent third parties did not search files).[3]

The government claims Bronfman "surrendered" her rights by placing documents "under Wisdom System[s'] control" because they became "corporate records." (Opp'n 5). This is nonsense. As explained below, Bronfman has a cognizable interest in corporate records. But more importantly, Bronfman's *personal* documents (Bronfman Decl. ¶¶ 3-4) did not become corporate records just because she placed them in a Wisdom Systems storage unit. While the government purports to rely on *United States v. Lartey*, 716 F.2d 955, 961 (2d Cir. 1983), the records in that case were pharmacy business records, not personal documents. In any event, Bronfman wholly owns Wisdom Systems (*id.* ¶ 2), so by storing documents with it, she was by no means relinquishing "control" (Opp'n 5). *Cf. United States v. Moscatiello*, 771 F.2d 589, 601

---

[3] The government discusses *United States v. Miller*, 425 U.S. 435 (1976), and *Smith v. Maryland*, 442 U.S. 735 (1979), but does not cite them in support of any argument. (Opp'n 3). Regardless, they are irrelevant. *Miller* held that a depositor has no Fourth Amendment interest in a bank's "business records" because the depositor does not "own[]" them, and their contents are "exposed" to bank employees. *Carpenter*, 138 S. Ct. at 2216; *Miller*, 425 U.S. at 440 (the documents were not the defendant's "private papers"). *Smith* held that phone users have no Fourth Amendment interest in "the numbers they dial," although they do have an interest in "the *contents* of communications." *Smith*, 442 U.S. at 741-43. Here, the government seeks Bronfman's documents (not just others' records about Bronfman) in order to use their contents.

5

(1st Cir. 1985) (defendant had "proprietary interest" in warehouse that was searched because he had a one-fourth share in "the corporation that held title to the warehouse"), *vacated on other grounds sub nom. Carter v. United States*, 476 U.S. 1138 (1986).  Even if she had been a mere employee, she would have an interest in personal documents stored on corporate premises.  *See O'Connor v. Ortega*, 480 U.S. 709, 716 (1987) (plurality) ("The appropriate standard for a workplace search does not necessarily apply to a piece of closed personal luggage, a handbag or a briefcase that happens to be within the employer's business address."); *id.* at 718-19 (doctor had reasonable expectation of privacy in hospital desk and cabinets containing personal items).

      Bronfman also has an interest in Wisdom Systems' corporate records.  Courts allow sole owners to challenge searches of their businesses' records.  *See, e.g.*, *Andresen v. Maryland*, 427 U.S. 463, 466-67 (1976); *Knoll*, 16 F.3d at 1317.  The government's cases do not require a contrary result.  In *Lartey*, the government subpoenaed the defendant's pharmacies, and the Court *entertained* his challenge but held that "exigent circumstances" permitted the subpoenas. 716 F.2d at 961.  In *United States v. Chuang*, 897 F.2d 646 (2d Cir. 1990), the defendant was not even a majority owner of the bank whose records were searched.  *Id.* at 650.  Moreover, banks are "closely regulated," so their records are subject to regular inspection.  *Id.* at 650-51.  Only *United States v. Guterma*, 272 F.2d 344 (2d Cir. 1959), suggests that sole owners do not necessarily have an interest in corporate records.  *Id.* at 346.[4]  But by ignoring sole owners' effective ownership of corporate property, *Guterma* is inconsistent with the Supreme Court's recent reminders that the Fourth Amendment respects property rights.  *See, e.g.*, *Byrd*, 138 S. Ct. at 1526-27.  Earlier decisions also state that *Guterma* is a "precedent[] of dubious value."  *U.S.*

---

[4] *United States v. Barr*, 605 F. Supp. 114, 117 (S.D.N.Y. 1985), relies on *Lartey*.  *United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31, 54 (D. Conn. 2002), relies on *Lagow v. United States*, 159 F.2d 245 (2d Cir. 1946), and its progeny, but *Lagow* was the basis for *Guterma*.

6

*ex rel. DeForte v. Mancusi*, 379 F.2d 897, 904 (2d Cir. 1967), *aff'd*, 392 U.S. 364 (1968). In *United States v. Birrell*, 242 F. Supp. 191 (S.D.N.Y. 1965), the court did not deem *Guterma* binding, *see id.* at 200-01, and it held that the defendant had a cognizable interest in "corporate records" he placed in storage in the office, garage, and barn of an attorney, *id.* at 195-200.

Thus, Bronfman has a Fourth Amendment interest in personal *and* corporate documents.

## II. The Court Should Order Suppression Or, At A Minimum, An Evidentiary Hearing

Our motion identified three Fourth Amendment violations: (1) Glazer searched the storage unit and seized its contents while acting as a government agent pursuant to subpoena (Mot. 7-8); (2) the government reviewed, or will review, the documents to a greater extent than Glazer did without a warrant (Mot. 8-9); and (3) Glazer opened and indexed containers while acting as a government agent pursuant to subpoena (Mot. 9-11). The government claims our government-agent analysis is mistaken because, apparently, it withdrew the subpoena before issuing a new one. (Opp'n 6). But this explanation affects only arguments (1) and (3), not argument (2). And as to arguments (1) and (3), it merely raises questions that require a hearing.

Even if Glazer never acted as a government agent, he gave documents to the government in which Bronfman has a protected interest, and the government's warrantless review of those documents violated, or will violate, the Fourth Amendment. (Mot. 9-11). The government's only response is that because Glazer created an "index of the file folders" in a private capacity and sent it to the government, Bronfman's expectation of privacy was "reduced." (Opp'n 6-7). But it was not eliminated. "The private search merely frustrated [her] expectation [of privacy] in part. It did not simply strip the remaining unfrustrated portion . . . of all Fourth Amendment

7

protection." *Walter v. United States*, 447 U.S. 649, 659 (1980) (plurality).[5]  A "limited private search" does not "justif[y] an unlimited official search." *Id.* at 656.  "The additional invasions of [the defendant's] privacy by the government . . . must be tested by the degree to which they exceeded the scope of the private search." *Jacobsen*, 466 U.S. at 115.[6]

The government has exceeded, or will exceed, Glazer's search.  It does not dispute that Glazer did not review any documents and conducted only a "limited" search to create an index of the box and folder labels.  (Mot. 9; *see also* Opp'n Ex. C Rider).  The government's review of the documents' contents has violated or will "violate the Fourth Amendment if they act without a warrant" because "the expectation of privacy [in *that* information] has not already been frustrated." *Jacobsen*, 446 U.S. at 117-18; *see also id.* at 120 (no violation only if government "learn[ed] nothing that had not previously been learned during the private search"); *Walter*, 447 U.S. at 652, 657-59 & n.14 (plurality) (defendants had privacy interest despite "explicit" labels on boxes, since "[p]rior to the Government screening one could only draw inferences about what was on the films," and "it was clearly necessary for the FBI to screen the films . . . to obtain the evidence needed"); *United States v. Ackerman*, 831 F.3d 1292, 1304 (10th Cir. 2016) (Gorsuch, J.) ("rummaging through private papers or effects would seem pretty obviously a 'search'"); *id.* at 1305-07 (while AOL had already scanned email for child pornography, government's review

---

[5] The plurality decided the case on the narrowest ground and is therefore binding.  *See Marks v. United States*, 430 U.S. 188, 193-94 (1977).  Regardless, *Jacobsen* says the same thing.

[6] In *Walter*, private parties opened the defendant's boxes of obscene films but did not actually view them, so the government's viewing of the films "was a significant expansion of the search" that required a warrant.  447 U.S. at 656-59.  In *Jacobsen*, FedEx employees opened a package and saw it contained a plastic bag of white powder.  A DEA agent arrived and performed a chemical field test to verify it was cocaine.  *See* 466 U.S. at 111-15.  The Court held that the chemical test "exceeded the scope of the private search." *Id.* at 122.  It ruled, however, that the test itself was not a "search" because—unlike document review—it "merely disclose[d] whether or not [the] substance [wa]s cocaine," and "no other arguably 'private' fact." *Id.* at 122-23.

8

"exceeded" that search because it "revealed something previously unknown" about the email); *id.* at 1307-08 (review of email was also "trespass to chattels" implicating Fourth Amendment).

The cases the government cites do not help it. (Opp'n 6-7). In *United States v. Bonfiglio*, 713 F.2d 932 (2d Cir. 1983), the government seized a cassette tape while searching the defendant's home pursuant to a warrant, and the Court held it did not need a *separate* warrant to play the tape because the label made its contents apparent. *See id.* at 935-37. Unlike in *Walter* (where the films were also labeled), the "initial search was conducted by government agents who possessed a warrant," not by a "private party," which "diminished" the Fourth Amendment concerns. *Id.* at 939. Thus, *Bonfiglio* does not apply here, since there is no warrant. The government also cites *Knoll*, but there the private parties thoroughly reviewed the documents. *See United States v. Knoll*, 116 F.3d 994, 997 (2d Cir. 1997). Here, by contrast, Glazer did not review the "contents" of Bronfman's documents, so "the object of the search [was not] completed" by the private party. *Knoll*, 16 F.3d at 1320-21.

Bronfman is also entitled to a hearing on whether Glazer acted as a government agent when he entered the storage unit, removed its contents, and indexed them for the government. (Mot. 12). The government surmises that when "the [first] subpoena was withdrawn [in May 2018], the storage unit had not been accessed by anyone." (Opp'n 2). However, Glazer said he had overcome the storage facility's objections and gained access to the unit by April 23, 2018. (Burke Decl. ¶ 9, Ex. D). The facility likely relented and granted him access because of the subpoena, in which case he entered the unit as a government agent. But even if the government is correct, and all of Glazer's searches and seizures occurred between the first and second subpoenas, Glazer may still have been acting as a government agent. While the government engaged in extensive discussions with Glazer (Burke Decl. Ex. B at 2-3; Ex. E at 1; Ex. G at 1),

9

the government says nothing about them, attaching only a single, self-serving email chain (Opp'n Ex. B). Even when Stiles was not under subpoena, Glazer acted as a government agent if the government "did more than adopt a passive position," *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 615 (1989), and encouraged Glazer or "tacitly approved" of his conduct, *Knoll*, 16 F.3d at 1320. It clearly did, since *before* the first subpoena, Glazer tried to access the unit to respond to an "investigative demand" from the government. (Burke Decl. Ex. E at 1). Glazer was also a government agent if he "perform[ed] searches with an intent to assist law enforcement." *United States v. DiTomasso*, 81 F. Supp. 3d 304, 309 (S.D.N.Y. 2015). Again, he clearly did, since after seizing Bronfman's documents, he alerted the government so that it could serve another subpoena. (Opp'n 2). There are compelling reasons to believe that Glazer acted as a government agent, and the government's contrary assertions should be probed at a hearing.

## CONCLUSION

For these reasons, the Court should order suppression or an evidentiary hearing.

Dated:      March 13, 2019
            New York, New York

                                            Respectfully submitted,

                                            /s/ Alexandra A.E. Shapiro
Mark J. Geragos                             Alexandra A.E. Shapiro
Geragos & Geragos, APC                      Fabien M. Thayamballi
644 S. Figueroa St.                         Shapiro Arato LLP
Los Angeles, CA 90017                       500 Fifth Avenue, 40th Floor
(213) 625-3900                              New York, New York 10110
                                            (212) 257-4880

Kathleen E. Cassidy
Hafetz & Necheles LLP
10 East 40th Street, 48th Floor
New York, New York 10016
(212) 997-7400

                                            *Attorneys for Defendant Clare Bronfman*