D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA

        -against-

CLARE BRONFMAN,

        Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**18-CR-204-3 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Clare Bronfman moves to suppress documents that were seized from a rented storage unit, arguing that the Government committed three Fourth Amendment violations in acquiring and reviewing these documents and that, at a minimum, the court should hold an evidentiary hearing. (Bronfman 2d Mot. to Suppress ("Mot.") (Dkt. 352); see Bronfman Reply (Dkt. 424) at 7 (listing the three alleged violations).) For the following reasons, the court will hold an evidentiary hearing before deciding Bronfman's motion.

I.     **BACKGROUND**

Bronfman is the sole owner of Wisdom Systems, LLC, which offers bookkeeping and other services to individuals and companies. (Bronfman Mem. in Supp. of 2d Mot. to Suppress ("Mem.") (Dkt. 353) at 2-3; Decl. of Clare Bronfman ("Bronfman Decl.") (Dkt. 354) ¶ 2.) Among its clients are Bronfman, multiple companies that she owns (such as the Ethical Science Foundation ("ESF")), and several other individuals and companies whose documents were kept in Wisdom Systems's care. (Bronfman Decl. ¶ 2.) For a while, Wisdom Systems stored its older records and client files in Bronfman's home, along with some of Bronfman's personal papers such as letters and journals. (Id. ¶ 3.) These business and personal records were stored in file

1

cabinets and folders, cardboard and plastic boxes, and digital media such as compact discs. (Id. ¶ 3.)

In late 2015, Bronfman hired Adrienne Stiles, who was then "involved with" Nxivm, to move these business and personal materials to a storage unit. (Id. ¶ 4.) Stiles was instructed to rent the storage unit for Wisdom Systems, but she in fact rented the unit in her own name, purportedly because the storage facility required her to use her own name rather than a business's name. (Id. ¶ 5.) Wisdom Systems paid the rental fees for the storage unit until April 2018,[1] and Bronfman expected its contents to remain private. (Id. ¶¶ 5-6.) Approximately six months after moving Bronfman's materials to the storage unit, Stiles left Nxivm. (Id. ¶ 7.)

In early 2018, ESF received a subpoena from the New York Department of Health. (Id. ¶ 8.) An attorney named Dennis Burke represented ESF in connection with the subpoena. (Id.) To respond to the subpoena on ESF's behalf, he sought to locate the business records held by Wisdom Systems. (Decl. of Dennis Burke ("Burke Decl.") (Dkt. 355) ¶ 3.) In early April 2018, he tried to gain access to the storage unit, but the storage facility did not allow him to because the unit was rented in Stiles's name. (Id. ¶ 4; Gov't Opp'n to 2d Mot. to Suppress ("Opp'n") at 1.) It is the Government's understanding that the facility's Chief Compliance Officer offered Burke an opportunity to seek a court order regarding the contents of the unit, but he never did. (Opp'n at 1.)

Next, Burke tried to contact Stiles and learned that she was represented by an attorney, Neil Glazer, who told him that Stiles would not give the storage-unit documents to Bronfman because the government had subpoenaed them. (Burke Decl. ¶ 5.) Glazer told Burke that, since

---

[1] The Government believes that Stiles or her counsel have paid the storage unit's fees since April 2018. (Opp'n at 2.)

the start of April 2018, he had been unsuccessfully trying to access the storage unit in order to turn over documents pursuant to a "general investigative demand" from the Government. (Id. ¶ 7; 2d April 23, 2018 Email (Dkt. 355-5).) Then, on April 11, the grand jury issued Stiles a subpoena directing her to produce "[a]ny and all records related to Keith Raniere, Nxivm or any Nxivm-related entities, including any records located in" the storage unit. (Apr. 11, 2018 Subpoena (Dkt. 355-8).)

Burke and Glazer discussed the documents over the next two weeks, as the storage facility was not granting access to either of them. (Mem. at 5; Burke Decl. ¶¶ 6-9.) On April 16, Glazer told Burke that, once he gained access to the storage unit, his "plan was to photograph the entire unit from every angle," "tak[e] custody" of the documents, "index all containers, and then review the documents." (Apr. 16, 2018 Email (Dkt. 355-1).) Glazer also wrote that he was "meeting all day at the EDNY with the AUSAs and lead FBI case agents," and that "[t]hey trust me enough to handle this, but if I cannot get it done they will obtain a warrant . . ." (Id.) Burke repeatedly objected to Glazer and Stiles's involvement with the storage unit and planned compliance with the subpoena. (Burke Decl. ¶ 8.)

On April 23, Glazer told Burke that he had gained access to the unit. (Apr. 23, 2018 Email (Dkt. 355-4).) Later that day, Burke objected to Glazer's accessing the unit, insisting that Glazer and Stiles had no authority to access or review the materials and could not lawfully comply with the subpoena. (Burke Decl. ¶ 10; Apr. 23-24, 2018 Email (Dkt. 355-7).) The next day, he emailed the Government asking that it withdraw the subpoena and explaining that the storage-unit documents were (1) owned by ESF and Bronfman, (2) contained personal and privileged information, and (3) were not lawfully within Stiles or Glazer's possession. (Apr. 24,

3

2018 Letter (Dkt. 355-9).) Burke alerted the Government that Glazer intended "to 'index all containers, and then review the documents' before producing them to [the Government]." (Id.)

On May 24, 2018, the Government notified Glazer that it had withdrawn its subpoena. (Opp'n at 2.) The Government's understanding is that, as of the time the subpoena was withdrawn, the storage unit had not been accessed by anyone since the dispute over the unit began. (Id.) Nearly three months later, Glazer told the Government that he possessed boxes from the storage unit and provided an index of those boxes and the labels of the files within the boxes. (Id.)

On September 13, 2018, Glazer emailed Burke, explaining that his firm had removed all boxes from the storage unit except ones containing Bronfman and her sister's personal effects. (Sept. 13, 2018 Letter (Dkt. 355-10) at 1.) Per Glazer, his firm did not plan to review any of the materials but had "prepared an index of box and file labels and descriptions of contents of several boxes containing items other than documents," which he provided to Burke. (Id.) Glazer offered to copy the underlying documents for Burke at Bronfman's expense. (Id. at 2.) On September 21, 2018,[2] the grand jury issued a new subpoena to Adrienne Stiles for certain boxes listed in the index. (Sept. 21, 2018 Subpoena (undocketed); see Opp'n at 2.) The Government received a full set of the subpoenaed documents in early January 2019 and began its privilege review; shortly thereafter, the Government's privilege team produced the materials to Bronfman. (Mem. at 5; Opp'n at 2; see Gov't Feb. 7, 2019 Letter (Dkt. 346) (setting forth the Government's privilege-review process).)

---

[2] The Government's memorandum states that the subpoena was issued on September 13 (Opp'n at 2), but the subpoena appears to indicate that it was issued on September 21. (Sept. 21, 2018 Subpoena (undocketed).)

4

On February 7, after reviewing the documents and determining that they came from the storage unit, Bronfman told the privilege team not to provide the documents to the Government's trial team. (Mem. at 6.) On February 18, Bronfman filed the instant motion. (Mot.)

## II. DISCUSSION

As a threshold issue, the Government argues that Bronfman had no Fourth Amendment interest in the storage unit or in the business or personal documents therein for three reasons: (1) the storage unit was leased in Adrienne Stiles's name; (2) Bronfman has no interest in Wisdom Systems's records; and (3) Bronfman turned over her personal materials to Wisdom Systems's or Stiles's custody by moving them to the storage unit. (Opp'n at 5.)

### A. Whether Bronfman Has a Fourth Amendment Interest

It is Bronfman's burden to establish a Fourth Amendment interest, but the court must credit the facts she asserts and cannot deny her motion to suppress unless her allegations, seen in the light most favorable to her, are legally insufficient to sustain her burden. United States v. Hamilton, 538 F.3d 162, 168 (2d Cir. 2008). If the asserted facts, or the inferences to be drawn from them, are contested, the court must hold a hearing to determine the contested issues. Id. (citing United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992). Once Bronfman establishes a basis for her motion, it is the Government's burden "to prove, by a preponderance of the evidence, the legality of the actions of its officers." United States v. Wyche, 307 F. Supp. 2d 453, 457 (E.D.N.Y. 2004) (citations omitted).

As an initial matter, it is possible for Bronfman to have separate Fourth Amendment interests in the storage unit and in the containers of documents therein. See, e.g., United States v. Bonfiglio, 713 F.2d 932, 937 (2d Cir. 1983) ("[W]hen items have been lawfully seized, a separate warrant is required to conduct a search thereof if the individual has a high expectation of

5

privacy in the item seized."). Courts agree that individuals have a reasonable expectation of privacy in their storage units. See United States v. Karo, 468 U.S. 705, 720 n.6 (1984) ("[S]urely [the defendants] had a reasonable expectation of privacy in their own storage locker."); United States v. Johns, 851 F.2d 1131, 1136 (9th Cir. 1988) (holding that a defendant "had a reasonable expectation of privacy in [a storage] unit" because he had "joint control and supervision of it"); United States v. Eldridge, No. 09CR329A, 2012 WL 2131890, at *3-5 (W.D.N.Y. June 12, 2012) (collecting cases regarding storage units and holding that a defendant had a reasonable expectation of privacy in property stored at his girlfriend's home); see also Hamilton, 538 F.3d at 169 ("Privacy interests have been found with respect to business premises and storage lockers."). Courts also agree that persons have a reasonable expectation of privacy in documents stored in closed, opaque containers, even if those containers are in a location that might not otherwise be private. See United States v. Ross, 456 U.S. 798, 822-23 (1982) ("[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view."); United States v. Knoll, 16 F.3d 1313, 1320-21 (2d Cir. 1994) (stating that a defendant had a reasonable expectation of privacy in "opaque file folders [that] were closed or were in closed boxes, and did not reveal their contents" even after the folders were stolen from his office).

If these were Bronfman's _personal_ documents and in her _personal_ storage unit, she would unquestionably have a Fourth Amendment interest in both the documents and the storage unit. The issue before the court is complicated by the roles of Stiles and Wisdom Systems, a bookkeeping company that Bronfman solely owns. With respect to Bronfman's personal documents, these complications do not change the result. With respect to the storage unit itself and Wisdom Systems's documents therein, a suppression hearing will help the court decide whether Bronfman has established a _personal_ and reasonable expectation of privacy.

6

Unlike the Government (Opp'n at 2-3, 5), the court does not find it significant that Stiles moved the documents to the storage unit and leased the storage unit in her own name, which prevented Bronfman and her lawyer from accessing it. (See Burke Decl. ¶ 4.) When one person asks another to transport and store containers, she retains her Fourth Amendment interest in those materials. See United States v. Jacobsen, 466 U.S. 109, 114 (1984) (stating that a "wrapped parcel . . . delivered to [a] private freight carrier . . . [i]s unquestionably an 'effect' within the meaning of the Fourth Amendment"); see also Carpenter v. United States, 138 S. Ct. 2206, 2228 (2018) (suggesting that a person retains privacy expectations in personal records that she turns over to "bailees or custodians [that have] a duty to hold the records for the [person's] use); id. at 2268 (Gorsuch, J., dissenting) (stating that, under the traditional property-based understanding of the Fourth Amendment, "[e]ntrusting your stuff to others is a bailment . . . . [A] bailee normally owes a legal duty to keep the item safe . . ."). According to Bronfman, "Stiles was instructed to rent the storage unit for Wisdom Systems," and Wisdom Systems paid the rental fees until April 2018, when the dispute over the documents arose. (Bronfman Decl. ¶ 5.) Stiles's counsel said that she rented the unit in her own name only because the storage facility required her to list the name of a person, not a business. (Neil Glazer Apr. 18, 2018 Email (Dkt. 395-2).) This conduct by both women makes clear that, at the time, neither thought Bronfman relinquished her ownership of the documents to Stiles. The exchange was a bailment.

It is not clear whether Bronfman knew that Stiles used her own name to lease the unit (see id. (in which Glazer wrote that Stiles "made it known at the time" that she had put her name on the rental agreement)), but that does not matter. Persons may have expectations of privacy in areas that they use but do not legally own. See Hamilton, 538 F.3d at 169 (collecting cases and stating that "[t]here is no authority for the proposition that one need live in the premises, or

7

exercise control over them, in order to enjoy a privacy interest in those premises"); Johns, 851 F.2d at 1135-36 (stating that a defendant "had a reasonable expectation of privacy in [a storage] unit," even though "his name was not on the rental agreement for the storage unit," because he "was the co-owner" of its contents and "the payor of a portion of the rental payments," which indicated a "formalized ongoing agreement" between him and the person whose name was on the rental agreement). If a person can have a privacy interest in a home in which she is an overnight guest, see Minnesota v. Olson, 495 U.S. 91, 99 (1990), an office computer owned by her employer, see Leventhal v. Knapek, 266 F.3d 64, 73 (2d Cir. 2001), and a car that was rented in someone else's name, see Byrd v. United States, 138 S. Ct. 1518, 1524 (2018), surely she can have a privacy interest in a storage unit she hired someone else to lease on her behalf, regardless of whose name is on the rental agreement. See generally Hamilton, 538 F.3d at 167-68 (outlining the "wide array of circumstances" in which courts have found protected privacy interests).

Trickier issues are that Stiles leased the unit on behalf of Wisdom Systems, not Bronfman in her personal capacity, and that the storage unit included both Wisdom Systems's business records and Bronfman's personal documents. (Bronfman Decl. ¶¶ 3, 5.) The Government correctly points out that a corporation and the individual who created it are different "persons" for Fourth Amendment purposes. (Opp'n at 3.) Per the Government, it follows that Bronfman surrendered any interest in her documents the moment she placed them under Wisdom Systems's control. (Id. at 5.)

Not so. At a minimum, she retained her Fourth Amendment interest in her personal documents. They did not cease to be her property because she entrusted them to Wisdom Systems, a bookkeeping company, in the same way that persons can retain interests in personal

8

property stored in their employer's premises or in other people's homes. See Hamilton, 538 F.3d at 168-69 (collecting cases); cf. Carpenter, 138 S. Ct. at 2228 (suggesting that defendants may retain expectations of privacy when businesses are "bailees or custodians of [defendants' personal] records, with a duty to hold the records for the defendants' use"). For example, the Second Circuit has found that a public employee had an expectation of privacy in his office computer because his employer did not have "a general practice of routinely conducting searches of office computers" and had not given him "notice that he should have no expectation of privacy in the contents of his office computer." Leventhal, 266 F.3d at 74. The Supreme Court has found that a doctor had a reasonable expectation of privacy in his desk and file cabinets because they were assigned exclusively to him, he did not share them with anyone, and over the course of 17 years other employees had never accessed them. O'Connor v. Ortega, 480 U.S. 709, 717-18 (1987). Similarly, Bronfman had an expectation of privacy in her personal documents because she did not have notice that anyone would search the contents of containers in a locked storage unit.[3]

More difficult is the question of whether, as the sole owner of Wisdom Systems, Bronfman has a Fourth Amendment interest in its storage unit or its business materials, some of which were entrusted to Wisdom Systems by other individuals and companies. (See Bronfman Decl. ¶¶ 2-3.) Shareholders of a corporation cannot "vicariously assert the corporation's Fourth Amendment rights." United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 54 (D. Conn. 2002) (citing, inter alia, Lagow v. United States, 159 F.2d 245, 246 (2d Cir. 1946)). To

---

[3] Additionally, Bronfman had an expectation of privacy in her personal documents before Stiles moved them to the storage unit because they were in her home. (Bronfman Decl. ¶¶ 3-4.) Based on the record, there was no point at which Bronfman lost her expectation of privacy in these personal documents.

9

challenge a search of corporate premises or records, they must establish a personal and reasonable expectation of privacy in the place or item searched. United States v. Chuang, 897 F.2d 646, 649 (2d Cir. 1990); Triumph Capital, 211 F.R.D. at 54. "The question whether a [person] has a reasonable expectation of privacy to challenge a search of business premises focuses principally on whether he has made a sufficient showing of a possessory or proprietary interest in the area searched." Chuang, 897 F.2d at 649. "The greater the degree of exclusivity and control over a work area, and the more time a defendant spends there, the more likely [Fourth Amendment] standing is to be found." United States v. Hamdan, 891 F. Supp. 88, 94 (E.D.N.Y. 1995) (citations omitted).

To resolve this question, the court needs more information about both Wisdom Systems and the storage unit. Bronfman has not said whether Wisdom Systems had any employees or contractors besides Stiles or whether these other individuals would have been trusted to access the storage unit or Wisdom Systems's records more generally.[4] Nor has she explained her statement that she "expected the contents of the storage unit would remain private." (Bronfman Decl. ¶ 6.) Does "private" mean that nobody except Bronfman would access them, or that other individuals affiliated with Wisdom Systems would access them as well? To establish a personal and reasonable expectation of privacy in the storage unit and the business documents therein, Bronfman must show that she personally exercised "exclusivity and control over" them. See Hamdan, 891 F. Supp. at 94; see also Carpenter, 138 S. Ct. at 2226-28 ("[I]ndividuals lack any

---

[4] The documents filed in support of Bronfman's motion contain suggestions that other individuals may have been involved with the storage unit. For example, Bronfman's declaration says that Stiles "was instructed to rent the storage unit for Wisdom Systems"; it does not say who gave this instruction. (Bronfman Decl. ¶ 5.) One of Glazer's emails that Bronfman submitted in support of her motion indicates that "[s]omeone" called Stiles in October 2016 regarding a bill for the storage unit. (Apr. 17-18, 2018 Email (Dkt. 355-2) at 2.) Burke's emails to Glazer repeatedly refer to the documents as Wisdom Systems's, not Bronfman's. (See, e.g., id. at 1.)

protected Fourth Amendment interests in records that are possessed, owned, and controlled only by a third party," such as records that third-party businesses "collected, stored, and classified as their own for any number of business and commercial purposes"). The court will hold a suppression hearing to explore these issues. See Knoll, 16 F.3d at 1321, 1324 (remanding for a suppression hearing). Bronfman may submit additional evidence at or before the hearing.

**B.     Whether the Government's Conduct Violated the Fourth Amendment**

Bronfman argues that the storage-unit documents should be suppressed because the Government committed three First Amendment violations in acquiring and reviewing them. (Mem. at 7-11; Reply at 7.)

1.     Glazer's Search of the Storage Unit and Seizure of its Contents

First, Bronfman contends that the Government violated the Fourth Amendment when Glazer searched the storage unit and seized Bronfman's files at its request. (Mem. at 7-8.) Per Bronfman, Glazer acted as a Government agent in doing so, making his search and seizure a Fourth Amendment violation. (Id.) See United States v. Bennett, 709 F.2d 803, 805 (2d Cir. 1983) ("Although the surreptitious search of premises by a private party does not violate the Fourth Amendment, if, in conducting the search, the searcher is acting as an instrument or agent of the Government, there is a Fourth Amendment transgression."); United States v. DiTomasso, 81 F. Supp. 3d 304, 308 (S.D.N.Y. 2015) ("One way for a private party to act[] as an agent of the Government is through legal compulsion. If a private party *must* perform a search—if she can face liability for not doing so— the search is controlled by the Fourth Amendment." (quotation marks omitted) (emphasis in original)). The Government's response is that Glazer did not access the storage unit before the Government withdrew its first subpoena on May 24, 2018, and the

Government did not issue its second subpoena until after Glazer had taken the documents to his office and indexed them by file folder. (Opp'n at 2, 6.)

There are two problems with the Government's argument. First, Glazer stated in an April 23, 2018 email to Burke that he had access to the storage unit. (Apr. 23, 2018 Email.) This was more than a month before the Government withdrew its first subpoena. The storage unit may have granted Glazer access because of the subpoena, and he (or others from his office) may have entered the storage unit while the subpoena was in place in preparation to comply with it, which would make him a Government agent. Second, even if all of Glazer's searches and seizures took place in between the first and second subpoenas, he may still have been acting as a Government agent if the Government directed, encouraged, or tacitly approved his conduct, United States v. RW Prof'l Leasing Servs. Corp., 384 F. Supp. 2d 566, 570 (E.D.N.Y. 2005) (citing Knoll, 16 F.3d at 1320), or if Glazer acted "with an intent to assist law enforcement," DiTomasso, 81 F. Supp. 3d at 309. Glazer told Burke that, even before the first subpoena, he had a "preexisting obligation" to access the storage unit in response to "a general investigative demand" from the Government and had been talking to the Government for months. (2d Apr. 23, 2018 Email.) This suggests that the Government may have directed, encouraged, or tacitly approved of his search of the storage unit and his seizure of its contents. A hearing will help the court probe these issues. See RW Prof'l Leasing Servs., 317 F. Supp. 2d at 173 (ordering a suppression hearing "to determine whether there was Government involvement in [a private party's] seizure of the documents").

  2. Glazer's Search of the Storage-Unit Documents

Second, Bronfman asserts that Glazer's limited "indexing" review was the warrantless search of a Government agent and violated the Fourth Amendment. (Mem. at 9-10.) The

Government responds that Glazer's review took place in between the withdrawal of the first subpoena and the issuance of the second. (Opp'n at 6-7.) But as discussed above, Glazer's emails to Burke suggest that he was in regular communication with the Government. Thus, the Government may have directed, encouraged, or "tacitly approve[d]" Glazer's conduct, see RW Prof'l Leasing Servs., 384 F. Supp. 2d at 570 (citing Knoll, 16 F.3d at 1320), or Glazer may have conducted his review "with an intent to assist law enforcement," DiTomasso, 81 F. Supp. 3d at 309. Again, a suppression hearing will help the court determine whether Glazer acted as a Government agent.

3. The Government's Search of the Storage-Unit Documents

Third, Bronfman maintains that the Government violated the Fourth Amendment if it reviewed the storage-unit documents to a greater extent than Stiles or Glazer did. (Mem. at 8-9.) A September 2018 letter from Glazer indicates that, after seizing the storage-unit documents, his firm did not review them but instead "prepared an index of box and file labels and descriptions of contents of several boxes containing items other than documents that they noticed in the course of preparing the index." (Sept. 13, 2018 Letter.) According to Bronfman, the Government's warrantless review of the documents would thus exceed the scope of Glazer's search, infringing on Bronfman's reasonable expectation of privacy in the documents' contents. (Mem. at 9.) As Bronfman says (id. at 8), when a private party takes an individual's files and gives them to the Government without reviewing them, the Government typically needs a warrant to review the files. See United States v. Cacace, 796 F.3d 176, 190 (2d Cir. 2015) (citing Knoll, 16 F.3d at 1319); see also Walter v. United States, 447 U.S. 649, 656 (1980) (plurality opinion) (stating that a "limited private search" does not "justif[y] an unlimited official search").

13

The Government's only response is that "any expectation of privacy was [] reduced once the [G]overnment received the detailed index of the file folders" from Glazer. (Opp'n at 6.) The Government cites a case in which the Second Circuit found the Government could play a lawfully seized cassette tape of a recorded conversation because the tape's label, which stated "Tap on Ben Bon Hoft," "had the practical effect of putting the contents of the tape in plain view and therefore reducing the expectation of privacy." Bonfiglio, 713 F.2d at 937. Here, the court does not know what was stated on the containers' labels or in Glazer's index, nor does it know the contents of the documents.[5] So, without more evidence from the Government, the court cannot assess whether Glazer's limited review eliminated Bronfman's expectation of privacy in the storage-unit documents. The Government may submit this evidence at or before the suppression hearing.

\* \* \*

In sum, Bronfman has shown that she had a Fourth Amendment interest in her personal documents that were in the storage-unit. More evidence is required to determine whether she also had a Fourth Amendment interest in the storage unit itself and in Wisdom Systems's business documents therein, and whether the searches and seizures of the storage unit, personal documents, and business documents violated the Fourth Amendment. As Bronfman has established a basis for her motion to suppress with respect to her personal documents (and may yet do so with respect to the storage unit and business documents), it is the Government's burden

---

[5] The rider to the September 21, 2018 subpoena that was issued to Stiles appears to list descriptions of boxes, taken from Glazer's index. (Sept. 21, 2018 Subpoena.) Most of the descriptions communicate little about the boxes' contents. For example, some of them indicate only the number of a particular box and that it had no label. (Id.)

14

"to prove, by a preponderance of the evidence, the legality of the actions of its officers" at the anticipated suppression hearing. Wyche, 307 F. Supp. 2d at 457 (citations omitted).

## III. CONCLUSION

Bronfman and the Government are DIRECTED to contact the court's Deputy to schedule an evidentiary hearing regarding Bronfman's second motion to suppress (Dkt. 352) as soon as practicable in light of the upcoming trial date.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
       March 15, 2019

NICHOLAS G. GARAUFIS
United States District Judge