```
                                                                    1

               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK

   - - - - - - - - - - - - - - - X

     UNITED STATES OF AMERICA,      :   18-CR-204(NGG)
                                    :
                                    :   U.S. Courthouse
                                    :   Brooklyn, New York
          -against-                 :
                                    :   TRANSCRIPT OF
                                    :   CURCIO HEARING
                                    :
                                    :
     CLARE BRONFMAN,                :   March 19, 2019
                                    :   4:30 p.m.
          Defendant.                :
                                    :
   - - - - - - - - - - - - - - - X

   BEFORE:
                  HONORABLE NICHOLAS G. GARAUFIS, U.S.D.J.

   APPEARANCES:
   For the Government:       RICHARD DONOGHUE, ESQ.
                             United States Attorney
                             271 Cadman Plaza East
                             Brooklyn, New York 11201
                         BY: MOIRA KIM PENZA, ESQ.
                             TANYA HAJJAR, ESQ.
                             Assistant U.S. Attorneys


   For the Defendant
   as Curcio counsel:        DONNA R. NEWMAN, ESQ.


                             MARK J. GERAGOS, ESQ.



   Court Reporter:    Holly Driscoll, CSR, FCRR
                      Chief Court Reporter
                      225 Cadman Plaza East
                      Brooklyn, New York 11201
                      (718) 613-2274

   Proceedings recorded by mechanical stenography, transcript
   produced by Computer-Assisted Transcript.
```

1                THE CLERK:  Criminal cause for a Curcio hearing
2            Counsel, state your appearances
3                MS. PENZA:  Moira Penza and Tanya Hajjar for the
4    United States.  Good afternoon, Your Honor.
5                MS. HAJJAR:  Good afternoon.
6                THE COURT:  Good afternoon.
7                MS. NEWMAN:  Good afternoon, Your Honor, Donna R.
8    Newman for Clare Bronfman as Curcio counsel.
9                THE COURT:  Welcome, and thank you very much for
10   accepting the assignment, Ms. Newman.
11               MS. NEWMAN:  Thank you, Your Honor.
12               MR. GERAGOS:  Good afternoon, Your Honor, Mark
13   Geragos, G-E-R-A-G-O-S, with Ms. Bronfman as well.
14               THE COURT:  Good afternoon to you.
15           And good afternoon to you, Ms. Bronfman.
16               THE DEFENDANT:  Good afternoon, Your Honor.
17               THE COURT:  All right.  This is a Curcio hearing,
18   another one.  I'm going to ask the clerk to swear you in so
19   that when I ask you questions, your answers will be under
20   oath.
21           (Defendant sworn by the courtroom deputy.)
22               THE COURT:  Okay.  All right.  First of all, thank
23   you for making the adjustment in the schedule as I had a civil
24   trial that is in the concluding moments.
25               MS. PENZA:  Of course, Your Honor.

3

1  THE COURT:  Let me take a moment at the outset to
2  explain what we're doing here and why.  Ms. Bronfman one of
3  your retained attorneys, Mark Geragos, is the father of one of
4  the attorneys for your co-defendant, Keith Raniere.  This may
5  create an actual or a potential conflict of interest between
6  you and Mr. Geragos.
7  As a defendant in a criminal case, you have the
8  right under our Constitution to be represented by a lawyer
9  whose only loyalty is to you and who is not subject to any
10 force, influence or consideration that might interfere with
11 undivided loyalty to you.  The Court has a duty to make sure
12 that you understand your right to the undivided loyalty of
13 your lawyer.  The Court also has an independent interest in
14 regulating the conduct of lawyers and in ensuring the
15 integrity of the proceedings before it.  Do you understand all
16 that.
17 THE DEFENDANT:  Yes, thank you, Your Honor.
18 THE COURT:  Okay.  You have right to choose your own
19 counsel but before you decide whether to proceed with
20 Mr. Geragos, you need to understand the nature of the possible
21 conflict of interest between you and Mr. Geragos and his
22 daughter.  Moreover, there are some conflicts of interest that
23 are so serious that they require the Court to disqualify a
24 lawyer.  The Court is obligated to make sure that the possible
25 conflict between you and your retained counsel does not

1  require the Court to disqualify him.
2              Ms. Bronfman, if at any time during my questioning
3  you want to speak with your attorneys, tell me and you'll be
4  given that opportunity, do you understand that?
5              THE DEFENDANT:  Yes, Your Honor.
6              THE COURT:  Okay.  Ms. Bronfman, is your mind clear
7  as you stand here today?
8              THE DEFENDANT:  Yes, it is, thank you.
9              THE COURT:  Okay.  The Court has appointed Donna
10 Newman to serve as your Curcio counsel and discuss
11 independently of your retained counsel the potential conflicts
12 arising from Mr. Geragos's representation of you.
13             Have you consulted with Ms. Newman regarding whether
14 the relationship between your retained attorney, Mark Geragos,
15 and an attorney for your co-defendant, Keith Raniere, presents
16 any potential conflicts of interest?
17             THE DEFENDANT:  Yes, I have, thank you, Your Honor.
18             THE COURT:  Okay.  Ms. Newman, have you had that
19 discussion with your client?
20             MS. NEWMAN:  Yes, I have.
21             THE COURT:  Have you answered all of her questions
22 about any potential conflict?
23             MS. NEWMAN:  Yes, I have.
24             THE COURT:  Okay.  So, I'm just going to ask you a
25 few questions, Ms. Bronfman.  How did you choose Mark Geragos

as your attorney?

THE DEFENDANT:  I researched online different attorneys and then I asked those three different attorneys that I asked to meet with and Mr. Geragos was one of the three.

THE COURT:  Oh, so this is like online dating.  We now do everything online.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  But you were satisfied having found him online, looking at his background --

THE DEFENDANT:  Correct.

THE COURT:  -- and his experience and then meeting with him that he was the best person of the ones that you considered to hire?

THE DEFENDANT:  Correct.

THE COURT:  Is that it?

THE DEFENDANT:  Correct, Your Honor.

THE COURT:  He was not recommended by a friend or a colleague or a relative?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Very interesting.  Okay.

MR. GERAGOS:  Kind of like your quiz show lawyer.  I won't get into that.

THE COURT:  You're not planning to be on a quiz show tonight, are you?

6

1  MR. GERAGOS: No, I'm not but I may turn it on just
2  to watch since now I'm curious as to whether he won.
3  THE COURT: It's been an interesting day.
4  MR. GERAGOS: I bet.
5  THE COURT: Ms. Bronfman, have you received any
6  inducements, promises or threats with regard to hiring
7  Mr. Geragos?
8  THE DEFENDANT: No, I haven't, Your Honor.
9  THE COURT: Okay. Was Keith Raniere or any of Keith
10 Raniere's attorneys involved in your decision to terminate
11 Susan Necheles?
12 THE DEFENDANT: No, Your Honor.
13 THE COURT: Have you received any inducements,
14 promises or threats with regard to terminating Susan Necheles?
15 THE DEFENDANT: No, Your Honor.
16 THE COURT: Okay. Your prior counsel stated that
17 you will not be paying any additional legal fees for Keith
18 Raniere or other defendants once the trust that you created is
19 depleted, is that still true?
20 THE DEFENDANT: Yes, sir, that's correct.
21 THE COURT: To the extent that you and Mr. Raniere
22 jointly incur legal fees, for example, the costs of private
23 investigators, briefs that your attorneys draft but that
24 Raniere joins, the costs of discovery, vendors, etc., do you
25 pay those in full yourself separately from the trust you

1  created and funded which has paid for your co-defendant's
2  legal fees?
3           THE DEFENDANT:  It's separated out.
4           THE COURT:  Separated out meaning?
5           THE DEFENDANT:  I pay for only my portion.
6           THE COURT:  Of it?
7           THE DEFENDANT:  Of what's used, correct.
8           THE COURT:  And anything else would be paid for, to
9  the extent funds were available, from the irrevocable trust?
10          THE DEFENDANT:  Correct.
11          THE COURT:  Or from other funds having nothing to do
12 with you?
13          THE DEFENDANT:  Correct.
14          THE COURT:  Okay, that's good to know.
15          Are you satisfied with the services of your
16 attorneys thus far in this case?
17          THE DEFENDANT:  Yes, Your Honor.
18          THE COURT:  Okay.  Do you understand that in every
19 criminal case, including this one, the defendant is entitled
20 to the assistance of counsel whose loyalty to him or her is
21 undivided and who is not subject to any force or consideration
22 that might in any way intrude upon the attorney's loyalty to
23 his or her client's interests?
24          THE DEFENDANT:  Yes, Your Honor.
25          THE COURT:  Okay.  The New York Rules of

8

1   Professional Conduct state that lawyers in this state must
2   adhere to -- that the rules that lawyers must adhere to
3   recognizes that familial relationships like the father-
4   daughter relationship between your attorney, Mark Geragos, and
5   a lawyer for your co-defendant may create a significant risk
6   of conflict that would undermine your right to conflict-free
7   counsel in this criminal matter, do you understand that --
8            THE DEFENDANT:  Yes.
9            THE COURT:  -- the concept?
10           THE DEFENDANT:  Yes.
11           THE COURT:  Okay.  As a result, those Rules of
12  Professional Conduct ordinarily prohibit lawyers with a close
13  familial relationship from representing parties in the same
14  matter unless the parties have knowingly and voluntarily
15  consented to the representation.  You do not need to
16  understand the Rules of Professional Conduct but I want to
17  make sure that you understand the risk posed to your
18  constitutional right for conflict-free representation if, as
19  here, close family members are representing different parties
20  to the same matter, do you understand that?
21           THE DEFENDANT:  Yes, Your Honor.
22           THE COURT:  Because one of your attorneys, Mark
23  Geragos, is related to an attorney for your co-defendant,
24  Keith Raniere, there may be a significant risk that she may
25  inadvertently or intentionally disclose matters to your

9

co-defendant's attorneys that should be kept confidential; do you understand that there could be, you know, dinner table talk where some information might inadvertently be mentioned, I don't know if they ever have dinner and I'm not going to ask Mr. Geragos whether he ever has dinner with his daughter but it's always a possibility.

Obviously Mr. Geragos's daughter, Terry --

MR. GERAGOS: Teny.

THE COURT: Teny?

MR. GERAGOS: T-E-N-Y.

THE COURT: -- has become an attorney just like her dad and so I'm sure he's very proud of his daughter, they may talk together, they may go to dinner and they may chat and I just want you to understand that even something innocent and inadvertent could affect your right to independent counsel in this case, do you understand that?

THE DEFENDANT: I understand that, yes, thank you, Your Honor.

THE COURT: Okay. Additionally, Mr. Geragos's, relationship to his daughter may interfere with his loyalty to you and the exercise of professional judgment in your interest, do you understand?

THE DEFENDANT: Yes, I understand.

THE COURT: As a result of this familial relationship, your lawyer may be influenced to advise you to

1  do things that are in your co-defendant's best interest but
2  not in yours, do you understand that?
3              THE DEFENDANT:  I understand.
4              THE COURT:  Or as a result of this familial
5  relationship, your lawyer may be influenced to do things in
6  his daughter's best interest and not in your best interest, do
7  you understand that?
8              THE DEFENDANT:  I do, Your Honor.
9              THE COURT:  For example, Mr. Geragos may be
10 influenced by a desire to avoid his daughter facing
11 reputational damage by employing or not employing a legal
12 strategy that could hurt his daughter's client but would be in
13 your best interest, do you understand that?
14             THE DEFENDANT:  I do, Your Honor.
15             THE COURT:  As another example because it has been
16 represented that the trust that is paying Mr. Raniere's legal
17 fees is nearly depleted and that Raniere's attorneys will be
18 trying this case without full compensation, it may be in
19 Mr. Geragos's interest to keep you in the case longer than
20 would otherwise be in your interest so that his daughter's
21 firm does not have to bear the cost of legal services that you
22 are currently paying for as part of a joint defense, do you
23 understand that?
24             THE DEFENDANT:  I do, Your Honor.
25             THE COURT:  For example, to the extent you currently

1   bear the cost of legal services that his daughter's firm
2   would otherwise be providing for free, Mr. Geragos may be
3   incentivized to have you remain in the case even if it is
4   not in your best interest; that's a possibility, right?
5            THE DEFENDANT:  I understand the concept.
6            THE COURT:  Have you consulted with Ms. Newman
7   about the risks associated with this potential conflict of
8   interest?
9            THE DEFENDANT:  Yes, I have, thank you.
10           THE COURT:  I'm sorry?
11           THE DEFENDANT:  I have, thank you.
12           THE COURT:  Okay.
13           Are you satisfied with the advice that Ms. Newman
14  has given you?
15           THE DEFENDANT:  Yes, thank you, Your Honor.
16           THE COURT:  Okay.  Let me give you some examples
17  about the ways in which your attorney's ability to represent
18  you might be affected by the fact that he has a close familial
19  relationship with an attorney representing your co-defendant.
20           This could affect the way that your lawyers consider
21  and advise you whether and when you should plead guilty,
22  whether you should seek to cooperate with the government, what
23  defenses you should raise, whether you should testify at
24  trial, which witnesses should be cross-examined, what
25  questions they should be asked, which witnesses should be

12

1  called and what other evidence to offer on your behalf, what
2  arguments to make on your behalf to the jury, what arguments
3  to make to the Court and what facts to bring to the Court's
4  attention before trial, during trial or, if you are convicted,
5  at your sentencing.
6           So, tell me in your own words your understanding of
7  the potential conflict of interest that we are discussing
8  here.
9           THE DEFENDANT:  That because of the familial
10 relationship between Ms. Geragos and Mr. Geragos, the
11 question is whether he will be representing me and my
12 interest alone.
13          THE COURT:  Okay.
14          Do you understand that you have the right to
15 object to your attorney's continued representation of
16 you based on the existence of a potential conflict of
17 interest?
18          THE DEFENDANT:  Yes, I do.
19          THE COURT:  It is important that you understand
20 that no one can predict with any certainty the course that
21 this case will take or how this conflict might affect it.
22          What is your understanding of the right to effective
23 assistance of counsel?
24          THE DEFENDANT:  That he has -- my rights are his
25 only priority.

13

1  THE COURT:  His only priority?
2  THE DEFENDANT:  Correct.
3  THE COURT:  Right, that's right.
4  Is there anything that I have said that you wish to
5  have explained further?
6  THE DEFENDANT:  No, thank you, Your Honor.
7  THE COURT:  Okay.
8  I have given you the opportunity to think about what
9  you have been told and to talk with your counsel other than to
10  your attorney.  Do you need any more additional time to
11  consult with Ms. Newman privately?
12  THE DEFENDANT:  No, thank you, Your Honor.
13  THE COURT:  Okay.
14  Given your attorney's familial relationship with the
15  lawyer for your co-defendant and that it may adversely affect
16  your defense, do you still believe it is in your best interest
17  to proceed with Mr. Geragos?
18  THE DEFENDANT:  I do, Your Honor.
19  THE COURT:  So, is that your wish?
20  THE DEFENDANT:  Yes, it is, Your Honor.
21  THE COURT:  Do you understand that by continuing in
22  this fashion with your attorneys, you are waiving your right
23  to be represented by an attorney who has no potential conflict
24  of interest in this regard?
25  THE DEFENDANT:  Correct, I do understand that, thank

14

1  you.
2          THE COURT:  Okay.
3          Are you knowingly and voluntarily waiving your
4  right to conflict-free representation with respect to
5  Mr. Geragos's relationship with Teny Geragos who is an
6  attorney for Keith Raniere.
7          THE DEFENDANT:  Yes, I am, thank you, Your
8  Honor.
9          THE COURT:  Do you agree to waive any
10 post-conviction argument on appeal or otherwise that by
11 virtue of your attorney's familial relationship with a
12 lawyer for your co-defendant you were denied effective
13 assistance of counsel?
14         THE DEFENDANT:  Yes, I do.
15         THE COURT:  Okay.
16         Is there anything else that I should be discussing
17 with your client, Ms. Newman?
18         MS. NEWMAN:  No.  Thank you very much, Your Honor.
19         THE COURT:  Anything else that I failed to inquire
20 about in this proceeding?
21         MS. PENZA:  No, Your Honor.
22         THE COURT:  Anything else from you, Mr. Geragos?
23         MR. GERAGOS:  No, Your Honor.
24         THE COURT:  Well, thank you for coming in.  I think
25 I've completed the seven Curcio hearings that I've been asked

1  to conduct.  That's a record in one case.
2              THE DEFENDANT:  Thank you very much.
3              THE COURT:  I do want to thank Ms. Newman for
4  stepping up and handling this.
5              MS. NEWMAN:  Thank you, Your Honor, not a problem.
6              THE COURT:  I really appreciate it.
7              MR. GERAGOS:  As do we.  Thank you.
8              MS. PENZA:  Thank you, Your Honor.
9              MS. HAJJAR:  Thank you, Your Honor.
10             THE COURT:  Have a good evening, everyone.
11             MR. GERAGOS:  Thank you.
12             (Time noted:  4:50 p.m.)
13             (End of proceedings.)