MKM:TH/MKP/KMT
F. #2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

Docket No. <u>18-204 (S-2) (NGG) (VNS)</u>

   - against -

KEITH RANIERE,
CLARE BRONFMAN,
ALLISON MACK and
KATHY RUSSELL,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GOVERNMENT'S MEMORANDUM OF LAW IN
RESPONSE TO DEFENDANTS' PRETRIAL MOTIONS
<u>AS TO THE SECOND SUPERSEDING INDICTMENT</u>

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Mark J. Lesko
Kevin Trowel
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ................................................................................................................... 3

    I.    There Is No Basis to Dismiss or Sever Racketeering Acts Two, Three and Four
        ........................................................................................................................ 3

        A.    S-2 Does Not Unfairly Prejudice Raniere and He Has No Speedy Trial
                Right to the Current Trial Date ............................................................. 4

                1.    Applicable Law .......................................................................... 5

                2.    Discussion .................................................................................. 6

        B.    Relatedness Is Not an Element that Must Be Pleaded in the Indictment
                .......................................................................................................... 10

    II.    There Is No Basis to Dismiss Counts One and Two ....................................... 13

        A.    Count One Is Properly Pleaded ............................................................ 13

        B.    Count Two Is Properly Pleaded ........................................................... 18

    III.    Defendants' Motions To Sever Should Be Denied ......................................... 27

    IV.    Raniere and Mack's Motion to Preclude the Government's Experts Should Be
        Denied ............................................................................................................ 29

    V.    There Is No Basis for Raniere's Refusal to Identify His "Foreign Witnesses" 30

    VI.    Counts Three, Four, Five and Eleven Should Be Dismissed .......................... 31

    VII.    Raniere's Request for a Bill of Particulars as to the Interstate Commence
        Element of Racketeering Acts Two, Three and Four Should Be Denied ........ 32

    VIII.    Bronfman's Remaining Arguments Are without Merit .................................. 33

CONCLUSION ............................................................................................................. 34

## PRELIMINARY STATEMENT

On March 13, 2019, more than six weeks before opening statements in the above-captioned matter, the grand jury returned a second superseding indictment ("S-2"). In response, the defendants Keith Raniere and Claire Bronfman have moved to dismiss S-2, and sought other relief. Their motions as to S-2 largely recycle the legal arguments made in their initial motions to dismiss the first superseding indictment ("S-1"), to which the government responded at length on December 17, 2018 (DE 248, 249), and which remain pending before the Court. Accordingly, the government incorporates its previous response herein and supplements it below where appropriate.

Defendants' motions to dismiss S-2 suffer from the same deficiencies as their motions to dismiss S-1. In particular, Raniere again "confuses the standards of pleading with [the] standard of proof," United States v. Messina, No. 11-CR-31 (KAM), 2012 WL 463973, at *4 (E.D.N.Y. Feb. 13, 2012), in seeking to dismiss Racketeering Acts ("RA") Two, Three and Four on "relatedness" grounds. (RBr. 5; MBr. 7).[1] As with S-1, S-2 was "returned by a legally constituted and unbiased grand jury" and is "valid on its face," and that is "enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956). And Raniere offers no legal support for his assertion that Racketeering Acts Two, Three and Four in S-2 force him to choose between his constitutional right to a Speedy Trial

---

[1]     References to "DE," "RBr." and "BBr." are to docket entries in this matter, the defendant Keith Raniere's March 22, 2019 Motions (DE 456) and the defendant Clare Bronfman's March 22, 2019 Motions (DE 457-459), respectively.

and his right to adequately prepare a defense.  Raniere misunderstands the scope of his right

to a speedy trial and, as set forth below, S-2 places no undue burden on this right.

Bronfman simply restates the arguments she made in her motion to dismiss S-1, and, as in that previous motion, again ignores relevant case law in this Circuit and fundamentally misunderstands the RICO statute and pleading requirements.  Indeed, although Count One of S-2 now charges the defendants in a <u>Glecier</u>-type racketeering conspiracy – a form of pleading discussed at length in the government's December 17, 2018 response and specifically approved by the Second Circuit in <u>United States v. Applins</u>, 637 F.3d 59 (2d Cir. 2011) (DE 248 at 26-30) – Bronfman fails to cite <u>Glecier</u>, ignores the Second Circuit's lengthy discussion of <u>Glecier</u> in <u>Applins</u>, and fails to acknowledge this Court's application of <u>Glecier</u>'s principles in <u>United States v. Bronson</u>, No. 05-CR-714 (NGG), 2007 WL 2455138, at *2 (E.D.N.Y. Aug. 23, 2007) (discussed in DE 248 at 27-30). Her assertion that she lacks "adequate notice" of the charges against her (BBr. at 1) is frivolous and there is no legal support for her motion to dismiss S-2 on that, or any other, ground.  Her motion to dismiss should be denied.

The motions to sever filed by Bronfman, Mack and Russell should similarly be denied.  Ignoring that they are charged in the same racketeering conspiracy with their co-defendant Keith Raniere, the defendants again propose to split themselves into different groups for separate trials.  For the reasons stated below and in the government's memorandum in opposition to the defendants' prior motions for severance, <u>see</u> DE 299, the evidence related to DOS and to child exploitation is equally admissible against all defendants

as evidence of the racketeering enterprise and the racketeering conspiracy with which all defendants are charged.

For the reasons stated in the government's December 17, 2018 response and below, Raniere's and Bronfman's motions for a bill of particulars, Raniere's motions concerning the trial date, to preclude the government's experts and to introduce testimony by closed-captioned television ("CCTV"), and Bronfman's motions referring back to her motion to dismiss S-1 are also without merit. They, too, should be denied.

<u>ARGUMENT</u>

I.    <u>There Is No Basis to Dismiss or Sever Racketeering Acts Two, Three and Four</u>

Raniere moves to sever or dismiss Racketeering Acts Two, Three and Four in S-2, which are premised on sexually explicit photographs of a minor recovered from a hard drive controlled by Raniere. (S-2 ¶¶ 21-23). Specifically, S-2 alleges that on or about November 2, 2005 (RA2) and November 24, 2005 (RA3), Raniere

> knowingly and intentionally employ[ed], use[d], persuade[d], induce[d], entice[d] and coerce[d] a minor, to wit: Jane Doe 2, an individual whose identity is known to the Grand Jury, to engage in sexually explicit conduct for the purpose of producing one or more visual depictions of such conduct, which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

(S-2 ¶¶ 21, 22). S-2 further alleges that between November 2005 and March 2018, Raniere possessed images "of a minor engaging in sexually explicit conduct," in violation of Title 18, United States Code, Section 2252(a)(4)(B) (RA 4). (S-2 ¶ 23).

Raniere's "first argument" is that Racketeering Acts Two, Three and Four should be "severed" – not dismissed – from S-2 as a result of the "immense prejudicial impact of returning these charges [26] days before jury selection."  (RBr. at 7).  He "cites no precedent whatsoever in support of the extraordinary proposition that some racketeering acts may be severed from the other racketeering acts charged under a single count of racketeering," and the government is aware of none.  United States v. Urso, 369 F. Supp. 2d 254, 262 (E.D.N.Y. 2005) (Garaufis, J.) (rejecting argument that racketeering acts may be severed).  In the alternative, he asserts that the racketeering acts should be dismissed because "there is no connection or nexus between these photos [that underlie Racketeering Acts Two, Three and Four] and the enterprise" charged in S-2.  (RBr. at 6).  As with the defendants' pretrial motions to dismiss, he supports his argument with extra-record facts and speculation, and he fails to cite to a case in any Circuit in which a racketeering act has been dismissed on this basis.  Both of these arguments are without merit.

A.    S-2 Does Not Unfairly Prejudice Raniere and He Has No Speedy Trial Right to the Current Trial Date

The underlying premises of Raniere's "first argument" are that (1) he has a speedy trial right to the current trial date of April 29, 2019 and (2) he cannot adequately prepare a defense to Racketeering Acts Two, Three and Four by that date.  He implicitly asserts that his right to the current trial date is immutable and because it cannot be squared with his right to "prepare a defense to serious charges," one of these rights "will … lose out to the other" unless the Court grants his motion to dismiss or sever Racketeering Acts Two,

Three and Four.  (RBr. at 8).  Raniere misunderstands his right to a speedy trial – indeed, he

cites no law in support of this assertion – and this argument should be rejected.

      1.     Applicable Law

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the

accused shall enjoy the right to a speedy . . . trial." U.S. Const. Amend. VI.[2]  The Supreme

Court has explained that the word "speedy" is "'amorphous,' 'slippery,' and 'necessarily

relative.'" Vermont v. Brillon, 556 U.S. 81, 89 (2009) (quoting Barker v. Wingo, 407 U.S.

514, 522 (1972)); see United States v. Ghailani, 733 F.3d 29, 41 (2d Cir. 2013).  The Second

Circuit has explained that "what may be considered 'speedy' is necessarily dependent on the

nature of the trial and the parties' interests in the given case." Ghailani, 733 F.3d at 41.  It is

also dependent on the nature of the pending charges, and, "[t]o take but one example, the

delay that can be tolerated for an ordinary street crime is considerably less than for a serious,

complex conspiracy charge." Barker, 407 U.S. at 531.

      Consequently, "the Supreme Court has recognized for more than a century that

the constitutional right to a speedy trial is not 'so unqualified and absolute' that it must

prevail over 'the demands of public justice.'" Ghailani, 733 F.3d at 41 (quoting Beavers v.

Haubert, 198 U.S. 77, 86 (1905)).  Indeed, "'in large measure because of the many

---

[2]     Raniere does not distinguish between his constitutional right to a speedy trial
under the Speedy Trial Clause and his right to a speedy trial under the Speedy Trial Act.
Because nearly all of the time that has passed since Raniere's indictment on April 19, 2018
has been properly excluded under the Speedy Trial Act, the government assumes that his
argument is premised on the Sixth Amendment's Speedy Trial Clause.

procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.'" Ghailani, 733 F.3d at 42 (quoting United States v. Ewell, 383 U.S. 116, 120 (1966)). As the Second Circuit has explained, "[i]n other words, both defendants and the public have an interest in a system that is fair and reliable, which must often come at the expense of haste." Id.

    2.   Discussion

The Court should reject Raniere's attempt to use his right to a speedy trial as a sword and his fundamental right to prepare a defense as a shield to defeat the public's interest in holding him accountable for the serious crimes of which he has been accused. Because Raniere has repeatedly asserted that he cannot be prepared for trial on S-2 by April 29, 2019,[3] the government respectfully submits that the Court should either (1) clarify the record with respect to Raniere's assertions that he cannot be ready on April 29, 2019, by conducting a hearing with Raniere and his counsel, during which the Court should inquire

---

[3]    (Compare RBr. at 7-8 (noting that "the defense lacks sufficient time to conduct an adequate examination of this evidence and investigation of the circumstances surrounding this evidence" related to Racketeering Acts Two, Three and Four in S-2); DE 436 ("[A] responsible and appropriate defense to these four-day-old charges involves the retention of a computer forensic expert to review the metadata and determine certain essential facts concerning this fourteen-year-old electronic evidence. This may not be done in twenty-six days.") with DE 483 (March 29, 2019 letter requesting that Court deny the defendant Allison Mack's request for an adjournment); RBr. at 3 ("We are ready . . . . This continues to be true, even though the government has superseded the indictment. . . .")).

about their preparedness for trial and Raniere's satisfaction with his counsel's preparation; or (2) briefly adjourn the trial to protect his fundamental due process right to present a defense, see Washington v. Texas, 388 U.S. 14, 19 (1967) (holding that "right to present a defense . . . is a fundamental element of due process of law").

If Raniere asserts that he cannot be prepared by April 29, 2019, his right to a speedy trial must give way to his fundamental right to present a defense.  See, e.g., Barker v. Wingo, 407 U.S. at 521 (contrasting fundamental due process rights with right to speedy trial and noting that "the right to speedy trial is a more vague concept than other procedural rights" and "deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself").  As the Supreme Court explained in Barker, in assessing an alleged speedy trial violation, "the most serious" consideration is "the possibility that the defense will be impaired," "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  407 U.S. at 532.

Raniere cites no legal authority to support his assertion that his right to a speedy trial would be impermissibly burdened by a brief adjournment to give him the additional time he needs to prepare for trial on S-2, and the government is aware of no such case.  Indeed, the Supreme Court and this and other Circuits have found no speedy trial issue under the circumstances present here.  In United States v. Rojas-Contreras, for example, the Supreme Court considered the impact of a superseding indictment on both a defendant's right to a speedy trial and his right to present a defense.  See 474 U.S. 231, 236 (1985).  The Court concluded that the Speedy Trial Act does not require an adjournment of trial upon the return of a superseding indictment, but that a district court has discretion under the Speedy

Trial Act to grant an "ends of justice" continuance when the timing of a superseding indictment would deprive a defendant of his ability to prepare his defense.  See id.  The Supreme Court held, in other words, that where a defendant's right to a speedy trial may jeopardize his fundamental right to present a defense, the former must cede to the latter.  See id. at 240–41 (Blackman, J., concurring) ("To avoid prejudicing a defendant, a continuance should be granted where there is a meaningful possibility that a superseding indictment will require an alteration or adjustment in the planned defense.").

The Second Circuit addressed a similar issue in United States v. Rojas, 7 Fed. App'x 9 (2d Cir. 2001).  In Rojas, the defendant was originally "indicted for a narcotics conspiracy that involved transporting cocaine from Texas to New York City."  Id. at 10. Five days before trial on that indictment was to begin, the grand jury returned a superseding indictment charging the defendant with operating a Continuing Criminal Enterprise ("CCE"), in violation of 21 U.S.C. § 848(e), which the defendant moved to dismiss.  See id.  The district court denied the defendant's motion and granted his request in the alternative to adjourn the trial.  Id. at 11.  On appeal, the Circuit rejected the defendant's assertion that the district court erred in denying his motion to dismiss the CCE charge "pursuant to the Speedy Trial Act."  Id.  The Circuit noted that "[t]he record contain[ed] no evidence to support [the defendant's] contention that the Government filed the super[s]eding indictment in order to manipulate the Speedy Trial clock.  Indeed, the record show[ed] that the government sought and obtained the indictment within a reasonable time."  Id.  Rojas, like Rojas-Contreras, makes clear that Raniere's right to a speedy trial is not immutable and must give way to the

8

government's interest in bringing him to trial on the serious crimes charged in S-2 and his own right to prepare a defense to those charges.[4]

The government respectfully submits that an adjournment of no more than two or three weeks will be sufficient to protect Raniere's fundamental right to present a defense to the charges in S-2.[5]  Raniere asserts that he cannot be ready on April 29, 2019 because he will need to conduct a "forensic examination" of the approximately 15 sexually explicit images that underlie Racketeering Acts Two, Three and Four.  (RBr. at 3; see also DE 436 at 2).  Given the relatively small number of images, all found in the same folder on a hard drive

---

[4]    See also, e.g., United States v. Chew, 497 F. App'x 555, 559 (6th Cir. 2012) (explaining that, "[t]o the extent the [alleged speedy trial] delay . . . was indirectly caused by the filing of the superseding indictment," the claim must fail unless the "record showed abuse of prosecutorial discretion, such as dilatory purpose or bad faith"); United States v. Smith, 24 F.3d 1230, 1235 (10th Cir. 1994) (rejecting Speedy Trial Act claim in light of superseding indictment and explaining that, "[i]f the district court had not granted a continuance in [defendant]'s case, he would have had to go to trial with only five days to prepare a case on a superseding indictment which contained eight new counts against him. Under these circumstances, the trial court did not abuse its discretion in granting a continuance."); United States v. Antwine, 873 F.2d 1144, 1149–50 (8th Cir. 1989) (rejecting Speedy Trial Act claim and explaining that "[f]ar from being prejudiced by these delays, [the defendant]'s interests were served by them. The trial court . . . properly granted the continuance sought by defense counsel so that adequate time would be afforded defendant to prepare his defense to the superseding indictment.  If [this] motion[] had been denied, the denial[] might well have been urged by [defendant] as grounds for appeal."); United States v. Love, 867 F. Supp. 260, 261 (S.D.N.Y. 1994) ("In the circumstance of a superseding indictment, such a decision [to grant a continuance of the trial date] would generally require an examination of whether the defendant requires additional time to modify his or her planned defense in light of the superseding indictment, as indicated by the Supreme Court in Rojas–Contreras.").

[5]    Raniere's suggestion that S-2 also creates "tremendous prejudice to . . . his counsel" (RBr. 8) is irrelevant to the Court's consideration of his motion to dismiss.

seized from 8 Hale Drive, such an examination is unlikely to take more than an additional two to three weeks to complete.  The government is aware that Raniere has retained an expert, to whom the government has made the photographs available for inspection.[6] Further, Raniere's extra-record factual assertions about the images suggest that his expert has begun his analysis.  (RBr. at 5-6).  The government anticipates that its case-in-chief will take approximately five weeks and therefore an adjournment to May 13, 2019 or May 20, 2019 will not conflict with Raniere's counsel's next trial, which is scheduled to begin on July 29, 2019.  (RBr. 3).[7]

       B.     Relatedness Is Not an Element that Must Be Pleaded in the Indictment

Raniere's assertion that Racketeering Acts Two, Three and Four should be dismissed as insufficiently related to the charged enterprise is equally meritless.  (RBr. at 5). The government set forth the law relevant to this argument in its December 17, 2018 filing in response to Bronfman's argument that the racketeering acts alleged in S-1 were insufficiently related to the charged enterprise.  (DE 248 at 8-14).  Although Raniere makes the same argument as to S-2, he makes no effort to address the legal authorities cited by the

_____

[6]     Raniere has not yet provided expert disclosure for this expert under Rule 16.

[7]     If the Court briefly adjourns the trial to permit Raniere to prepare his defense, the government respectfully requests that the Court order an equivalent adjournment of other trial related deadlines, including the deadlines for the disclosure of Jencks Act material, and the exchanges of witness lists and trial exhibits.  (See RBr. at 4).

government in its previous submission and, indeed, he cites no relevant case law in this section of his brief.[8]

To summarize the law set forth in the government's previous response, the government need not plead relatedness in the indictment. See, e.g., Messina, 2012 WL 463973, at *4 (denying motion to dismiss RICO conspiracy count on "relatedness" ground). (See also DE [ ] at 16-18 (collecting cases)). Raniere's argument about relatedness is based on unsupported factual assertions that are irrelevant to his motion to dismiss. See id. (noting that pretrial arguments concerning relatedness "are premature, as they confuse the standards of pleading with standards of proof"). He does not dispute that Count Two – of which Racketeering Acts Two, Three and Four are part – is "valid on its face" and, accordingly, "it may not be dismissed on the ground that it is based on inadequate or insufficient evidence." Id. (internal quotation marks omitted).

In any event, Raniere's assertion that "there is no role that these unreviewed photographs could possibly have in the affairs of the enterprise" is incorrect. (RBr. at 6).

_____

[8]    Raniere cites four cases in this section of his brief, all of which were decided on direct appeal following a jury trial. (See RBr. 6-7 (citing United States v. Polanco, 145 F.3d 536, 539 (2d Cir. 1998) (The jury returned a verdict of guilty on all counts except two. . .."); United States v. Irizarry, 341 F.3d 273, 285 (3d Cir. 2003) ("Following a trial on all of these charges, a jury returned a special verdict finding Irizarry guilty on all counts."); United States v. Bruno, 383 F.3d 65, 71 (2d Cir. 2004), as amended (Oct. 6, 2016) (noting that defendants "were . . . tried for, and convicted of, violating" provisions of the Violent Crimes in Aid of Racketeering Act and Racketeer Influenced and Corrupt Organizations Act); United States v. Daidone, 471 F.3d 371, 372 (2d Cir. 2006) ("A jury convicted Daidone of all five charged offenses. . . .")). These cases are irrelevant to a pre-trial motion to dismiss an indictment.

The sexually explicit photographs of Jane Doe 2 were found on a hard drive seized from 8 Hale Drive, in a folder titled "BACKUPS," in a subfolder titled "Studies," which in turn contained 12 subfolders, each of which contained numerous sexually explicit photographs of other members and associates of the Enterprise with whom Raniere had sexual relationships, including Raniere's codefendants Lauren Salzman and Kathy Russell.  The photographs in each of the 12 subfolders were taken contemporaneously with the photographs of Jane Doe 2, and the women in all of the photographs – including Jane Doe 2 – were photographed in many of the same poses.  The government anticipates that multiple witnesses at trial will testify that these poses are consistent with Raniere's sexual preferences and are similar to the poses depicted in photographs Raniere demanded and obtained as collateral from "first-line" DOS "masters," including codefendants Allison Mack and Lauren Salzman.  Further, Jane Doe 2 ultimately became the first member of DOS and continues to be a member of the Enterprise.  In other words, the government will prove at trial that Raniere "was enabled to commit the predicate offenses [in Racketeering Acts Two, Three and Four] solely by virtue of his position in the enterprise or involvement in or control over the affairs of the

enterprise," and "that th[ose]e predicate offenses are related to the activities of that enterprise."  Daidone, 471 F.3d at 375.[9]

II.    There Is No Basis to Dismiss Counts One and Two

Bronfman incorrectly asserts that Count One – a Glecier-type racketeering conspiracy – is improperly pleaded.  As with her motion to dismiss S-1, she fails to cite any case in any Circuit in which a court has granted a motion to dismiss on the ground she urges, and she fails to address any of the relevant case law, including Glecier, Applins or this Court's opinion in Bronson, all of which were discussed in the government's December 17, 2018 response.  As in Bronfman's motion to dismiss S-1, she fails to understand the pleading requirements for substantive RICO and RICO conspiracy counts and her motion to dismiss S-2 should be denied.

A.    Count One Is Properly Pleaded

In the context of a RICO conspiracy charge – as with any federal criminal charge – Rule 7(c) requires the government to allege the "essential elements" of the charge.

_____

[9]    Further, the photographs underlying Racketeering Acts Two, Three and Four are consistent with, and evidence of, the means and methods by which Raniere and others participated in the conduct of the affairs of the Enterprise.  For example, as alleged in S-2, Raniere and others "participated in the conduct of the affairs of the Enterprise" by, inter alia, "[i]nducing shame and guilt in order to influence and control members and associates of the Enterprise," "[o]btaining sensitive information about members and associates of the Enterprise in order to maintain control over them," and "[r]ecruiting and grooming sexual partners for RANIERE and obtaining nude photographs of women for RANIERE."  (S-2 ¶ 6).

See, e.g., United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002) ("A criminal defendant

is entitled to an indictment that states the essential elements of the charge against him."

(quoting United States v. Pirro, 212 F.3d 86, 91 (2d Cir. 2000)); see also Hamling v. United

States, 418 U.S. 87, 117 (1974) (explaining that indictment need only state the essential

elements and facts of the substantive charges, inform the defendant of those charges and

enable him to plead an acquittal or conviction in bar of future prosecutions for the same

offense).  (See also DE 248 at 8, 16-17, 31-32).  "Accordingly, to list adequately the

elements of [RICO conspiracy under] section 1962(d), an indictment need only charge – after

identifying a proper enterprise and the defendant's association with that enterprise – that the

defendant knowingly joined a conspiracy the objective of which was to operate that

enterprise through an identified pattern of racketeering activity."  United States v. Glecier,

923 F.2d 496, 500 (7th Cir. 1991).  The elements of the alleged racketeering acts are not

essential elements of a RICO conspiracy charge.  See id. ("Neither overt acts nor specific

predicate acts that the defendant agreed personally to commit need be alleged or proved for a

section 1962(d) offense."); see also Applins, 637 F.3d at 81 ("[A] RICO conspiracy charge

need not specify the predicate or racketeering acts that the defendants agreed would be

committed."); United States v. Orena, 32 F.3d 704, 714 (2d Cir. 1994) ("[O]nly a 'generic

definition' of an underlying state crime is required in a RICO indictment, as distinguished

from 'the elements of the penal codes of the various states where acts of racketeering

occurred.'"); United States v. Bagaric, 706 F.2d 42, 62 (2d Cir. 1983) (rejecting argument

that "the court was obliged to charge the elements of the penal codes of the various states

where acts of racketeering occurred, and was not permitted to rely upon generic definitions

14

of murder, arson, and extortion"), abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249 (1994).

In light of this well-settled law, courts have repeatedly rejected the argument, made by Bronfman, that the government must identify predicate acts with more specificity than is provided in Count One of S-2. In Applins, 637 F.3d at 81-82, the Second Circuit approvingly cited to a number of cases on point. In United States v. Crockett, for example, the Seventh Circuit rejected a challenge to the specificity of a RICO conspiracy charge that alleged that the charged enterprise "would use violence and the threat of violence, including arson and murder," in furtherance of its object. 979 F.2d 1204, 1208 (7th Cir. 1992) (cited approvingly in 637 F.3d at 81). The indictment identified only "the general kinds of racketeering acts that formed the pattern of racketeering activity (murder, extortion, and arson)." Id. In United States v. Phillips, the Third Circuit rejected a challenge to the specificity of a RICO conspiracy charge that "simply state[d] that the defendants conspired to commit 'multiple' acts of bribery in violation of 18 Pa. Cons. Stat. § 4701, and extortion in violation of 18 U.S.C. § 1951(a)." 874 F.2d 123, 125, 129-30 (3d Cir. 1989) ("The jury was free to consider any act of bribery and extortion occurring within the time frame of the conspiracy. . . .") (cited approvingly in 637 F.3d at 81). In United States v. Sutherland, the Fifth Circuit rejected a challenge to the specificity of an indictment that alleged a "conspiracy to commit 'a violation of Title 18, United States Code, Section 1962(c), involving Section 36.02, Texas Penal Code.'" United States v. Sutherland, 656 F.2d 1181, 1197 n.12 (5th Cir. 1981) (quoting indictment) (cited approvingly in 637 F.3d at 81).

15

As the government noted in its response to Bronfman's motion to dismiss S-1, this Court considered and rejected the argument she urges on the Court in Bronson, 2007 WL 2455138, at *2-3. In that case, the indictment charged the defendant with agreeing to

> conduct of the affairs of that enterprise through a pattern of racketeering activity consisting of multiple acts indictable under the following provisions of federal law:
>
> a. Title 18, United States Code, Section 1512 (witness tampering);
> b. Title 18, United States Code, Section 1503 (obstruction of justice);
> c. Title 18, United States Code, Section 1513 (retaliation against a witness or informant);
> d. Title 18, United States Code, Section 1510 (obstruction of a criminal investigation); and
> e. Title 18, United States Code, Section 201 (bribery); and acts involving extortion, in violation of New York Penal Law, Section 155.35.

Superseding Indictment, United States v. Bronson, 2006 WL 5048046 (E.D.N.Y. Apr. 20, 2006) (No. 05-CR-714 (NGG)). This Court rejected the defendant's argument that the pleading of the RICO conspiracy count was "unconstitutionally vague." Id. at *2. The Court explained that, because the indictment "list[ed] the specific types of predicate crimes that were allegedly committed (witness tampering, obstruction of justice, retaliation against a witness or informant, obstruction of a criminal investigation, bribery, and extortion), and discusse[d] in detail the means and methods of the conspiracy," it "adequately inform[ed] defendant] of the nature of the charge so he can prepare a defense." Bronson, 2007 WL

2455138, at *3.  As these and many other cases make clear, Bronfman's argument that Count

One is improperly pleaded is without merit.[10]

        As with her motion to dismiss S-1, Bronfman relies primarily on cases that do

not involve RICO conspiracy charges.  (BBr. at 4 n.3 & 4).  These cases are inapposite.  As

the above-cited cases make clear, racketeering acts alleged in connection with a RICO

conspiracy charge are not separate "charges," and cases that discuss the pleading standard for

stand-alone charges under §§ 1952, 1956, or 1957 (BBr. at 4 n.3 & 4), for example, provide

no support for her argument.  Bronfman is simply incorrect that a RICO conspiracy count

---

    [10]    In United States v. Tello, for example, the Seventh Circuit explained that "[a] section 1962(d) conspiracy charge thus does not require proof that the defendant committed two predicate acts of racketeering, that he agreed to commit two predicate acts, or, for that matter, that any such acts were ultimately committed by anyone."  687 F.3d 785, 792 (7th Cir. 2012).  The Court rejected the defendant's challenge to the indictment, which charged him with agreeing to

        conduct and participate, directly and indirectly, in the conduct of
        the affairs of that enterprise through a pattern of racketeering
        activity involving multiple acts indictable under the provisions
        of Title 18, United States Code, sections, 1201, 1512, 1513; and
        multiple acts involving violations of the laws of the State of
        Wisconsin, chargeable under the provisions of Wisconsin
        Statutes, Sections 940.01, 939.32, . . . 939.31, 943.32, 943.02
        and 940.31; and multiple acts involving the distribution of
        controlled substances including cocaine, cocaine base in the
        form of 'crack' cocaine and marijuana in violation of the laws of
        the United States, including Title 21, United States Code,
        Sections 841 and 846.

Id. at 794-95.  The Court further explained that, in the context of a RICO conspiracy charge, "any allegation as to overt acts, including predicate acts of racketeering, . . . committed in furtherance of the charged conspiracy, would constitute surplusage rather than an essential element of the charged conspiracy."  Id. at 769 (emphasis added).

must allege the elements of the types of racketeering acts alleged, much less the elements of a statute that is cross-referenced in the statutes cited to identify such types of racketeering acts. See, e.g., United States v. Gotti, No. S4 02 CR 743 (RCC), 2004 WL 32858, at *7 (S.D.N.Y. Jan. 6, 2004) (collecting cases and noting, with respect to substantive RICO charge, that "[o]ther courts have noted the difference between direct charges of violations of federal and state laws and RICO indictments alleging those crimes as predicate acts"). Her motion to dismiss on this ground should be denied.

B.   Count Two Is Properly Pleaded

Bronfman's argument that the racketeering acts alleged in Count Two are insufficiently pleaded because they do not specify the "underlying offenses" that are cross-referenced in the racketeering acts is equally meritless.[11]  (BBr. at 6-7).  Her argument that the racketeering acts alleged in Count Two violate the Sixth Amendment – insofar as the alleged acts do not cite specific subparagraphs within the cited "underlying offenses" (BBr. 1 at 29-31) – and the Fifth Amendment – insofar as the indictment fails to allege the "essential elements" of the "underlying offenses" (BBr. 2 at 32-34) – are both premised on a misunderstanding of what constitutes an "essential element" of a crime.  Her arguments are foreclosed by United Sates v. D'Amelio, 683 F.3d 412 (2d Cir. 2012), and they should be rejected.

---

[11]   For ease of reference, the government uses the term "underlying offense" as Bronfman uses it in her motions to dismiss S-1 and S-2.

As an initial matter, as discussed in the government's December 17, 2018 response (DE 248 at 8-9), "'[a] criminal defendant is entitled to an indictment that states the essential elements of the charge against him.'"  LaSpina, 299 F.3d at 177 (quoting Pirro, 212 F.3d at 91).  Accordingly, under Rule 7(c), "'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'"  LaSpina, 299 F.3d at 177 (quoting United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992)).  Count Two satisfies this standard.

The Second Circuit's discussion of a statute's "core of criminality" and its "essential elements" in D'Amelio, 683 F.3d at 416, is instructive in understanding Bronfman's fundamental misunderstanding of Rule 7(c)'s pleading requirements.  In D'Amelio, the indictment alleged that the defendant attempted to entice a minor, in violation of 18 U.S.C. § 2422(b), and in doing so used a facility of interstate commerce, "to wit, . . . a computer and the Internet."  Id. at 414 (emphasis added).  At trial, however, the jury instructions permitted the jury to find the defendant guilty "based on his use of either the telephone or the Internet," i.e., by a means not identified in the "to wit" clause of the indictment.  Id. at 416 (emphasis added).  The Second Circuit concluded that this amounted to "at most" a non-prejudicial variance in proof that neither violated the Fifth Amendment's grand jury clause nor deprived the defendant of notice of the crime to be proven at trial.  Id. at 416, 424.

In rejecting the defendant's notice argument, the Second Circuit held that an indictment provides sufficient notice if it alerts the defendant to the "'core of criminality'" to be proven at trial, i.e., the "essence of a crime, in general terms."  Id. at 418.  As the Court

19

explained, "the particulars of how a defendant effected the crime falls outside that purview." Id.  The Second Circuit further explained that "the specific means used by a defendant to effect his or her crime does not constitute an 'essential element' of the offense and, therefore, proof of specific means apart from those charged in the indictment does not constructively amend the indictment."  Id. at 422.  In the crime charged in D'Amelio, the "essential element" of the crime "involved communications conveyed by facilities of interstate commerce, not the specific interstate commerce facilities used to achieve these communications."  Id. at 423.  What followed in the "to wit" clause were means by which the defendant was alleged to have "effect[ed] his . . . crime."  Id. at 422.

The Court also rejected the defendant's argument that the petit jury was permitted to convict the defendant of a crime not presented to the grand jury.  The Second Circuit explained that the Fifth Amendment's grand jury clause is offended only when the petit jury convicts based "on a complex of facts distinctly different from that which the grand jury set forth in the indictment."  Id. at 419.  In addressing the issue, the court looked to the "course of conduct" alleged in the indictment to determine whether it had the same "ultimate purpose (its 'core of criminality')" as the crime proved at trial.  Id. at 421.  The Court noted that the course of conduct took place within the "discrete time period" charged in the indictment, and served the ultimate purpose alleged in the indictment, i.e., the enticement of a minor.  Id. at 422.  The Court further noted that the means by which the defendant effected the crime "ma[de] no difference under the relevant statute, and 'affect[ed] neither the [g]overnment's case nor the sentence imposed.'"  Id. at 422 (quoting United States v. Knuckles, 581 F.2d 305 (2d Cir. 1978)).

20

D'Amelio makes clear that the racketeering acts alleged in connection with Count Two provide ample notice to the defendants and pose no risk that the petit jury will convict on a theory not presented to the grand jury.  In every racketeering act cited by Bronfman, the purported "underlying offense" is part of a "to wit" clause that identifies the means by which the named defendant "effect[ed] his or her crime;" the "underlying offenses" are not "essential elements" of the offense.  See United States v. Bastian, 770 F.3d 212, 221 (2d Cir. 2014) ("As a preliminary matter, we have never suggested that a 'to wit' clause binds the government to prove the exact facts specified in a criminal indictment."); United States v. Agrawal, 726 F.3d 235, 261 (2d Cir. 2013) ("When the indictment is thus considered as a whole, the "to wit" clause is properly understood to be illustrative rather than definitional of the core of criminality charged by the grand jury.").

In Racketeering Act One-A, the "essential element" is that the charged conspiracy to commit identify theft was undertaken with "intent to commit, and to aid and abet, and in connection with" another federal crime.  (S-2 ¶ 19).  The immigration statute identified in the "to wit" clause, together with the date ("[i]n or about 2004") and the victim's name[12] provides sufficient notice and identifies the "core of criminality" that was presented to the grand jury and that will be proven at trial.  Moreover, the subpredicate act alleged in Racketeering Act 1B arises from the same course of conduct as Racketeering Act

_____

[12]    As the government noted in its December 17, 2018 response, it has provided to the defense the names of all of the individuals identified in the indictment as Jane Doe or John Doe.

21

1A and provides further information about the "core of criminality" underlying these acts.
(Id. ¶ 20). The two subpredicate acts taken together put the defendant on notice that the
"means of identification" underlying Racketeering Act 1A is a "sheriff's identification card
with the last name and date of birth of Jane Doe 1," and that the defendant possessed that
document "[i]n or about December 2004."[13]

This same analysis applies to Racketeering Acts 5A-C and 7. In both of those
acts, the "essential element" is that the charged conspiracy to commit identify theft was
undertaken with "intent to commit, and to aid and abet, and in connection with" another
federal crime. Racketeering Act 5A makes clear that the conspiracy to accomplish these
crimes took place "[i]n or about and between August 2005 and November 2008." (S-2 ¶ 25).
Further, Racketeering Acts 5B and 5C make clear that the agreement to commit the alleged
acts resulted in two substantive identity thefts. The first, identified in Act 5B, was
accomplished by Raniere "[i]n or about and between January 2006 and November 2008,"
and involved a means of identification belonging to a victim ("John Doe 1") that the
government has identified to the defendants. Similarly, the second substantive act, as alleged

---

[13]    Bronfman alleges that Racketeering Act 1A must be dismissed because it
refers to § 1324(a)(1)(A), which is "facially invalid." (BBr. at 9). As set forth in the
government's February 25, 2019 memorandum (DE 377), the statute is not "facially invalid,"
and her argument should be rejected. In any event, even if the Court were to conclude that
§ 1324(a)(1)(A)(iv) is facially invalid, that would not warrant dismissal of the act, because
the statute is referenced in a "to wit" clause and is not an essential element of the crime. As
set forth above, the government can prove that the defendant effected the crime by means of
any of the three remaining subsections of § 1324(a)(1)(A).

in Racketeering Act 5C, was accomplished by Raniere and Bronfman together, in or about

the same period, and involved a means of identification belonging to another victim ("John

Doe 2") who the government has identified to the defendants.  Similarly, Racketeering Act 7

identifies a narrow time frame ("[i]n or about November 2008") and involved a means of

identification belonging to another victim ("Jane Doe 3") who the government has identified

to the defendants.   These facts provides sufficient notice and identify the "core of

criminality" that was presented to the grand jury and that will be proven at trial.

The "essential element" in Racketeering Act 9 is similar to those in

Racketeering Acts 5 and 7, insofar as the government must prove that the defendant

"recruit[ed], harbor[ed], transport[ed], provide[d] and obtain[ed]" a person for labor and

services in violation of "this chapter."   18 U.S.C. § 1590.  The means by which the crime

was effected – document servitude and forced labor – are identified in the "to wit" clause.

The "core of criminality" alleged in this act is clear from the indictment, which alleges that

the alleged acts occurred "[i]n or about and between March 2010 and April 2010" and

involved a victim ("Jane Doe 4") who the government has identified to the defendants.

In Racketeering Act 8, the "essential element" that must be alleged is the

"intent to promote the carrying on of specified unlawful activity."  (Indictment ¶ 13).  The

means by which the crime was effected is again set forth in a "to wit" clause, and puts the

defendant on notice that the alleged money laundering was committed with the intent to

promote visa fraud.  The "core of criminality" is clear insofar as Racketeering Act 7 also

provides a narrow time range ("[i]n or about March 2009") and alleges that the money

laundering involved "wire transfers."  Further, defendants acknowledge that Racketeering

23

Act 7 in S-2 is "analogous" to Racketeering Act 5 in S-1, the subpredicates of which further inform the defendant that this course of conduct involved a victim ("Jane Doe 3") who the government has identified to the defendants, and an attempt to "encourage or induce" that individual to "come to, enter and reside in the United States."[14]

In Racketeering Act 11, the "essential element" the government must prove is that the document the defendant knowingly presented was "required by the immigration laws." United States v. Archer, 671 F.3d 149, 154 (2d Cir. 2011) (describing elements). The "core of criminality" concerns the false statements in the document that Bronfman submitted, and it is unrelated to the particular section of the immigration laws or regulations that required Bronfman to submit that document. Racketeering Act 11 further clarifies the "core of criminality" by informing the defendant that the document was presented "[i]n or about and between October 2015 and January 2018" and, in the "to wit" clause, that the document was an "offer of employment" submitted to the "United State consulate." (Indictment ¶ 35).

---

[14]    See, e.g., United States v. Martinelli, 454 F.3d 1300, 1312 (11th Cir. 2006) ("[W]e have been unable to find any money laundering conspiracy case that required jury instructions on the elements of the specified unlawful activity."); United States v. Cherry, 330 F.3d 658, 667–68 (4th Cir. 2003) ("[D]etails about the nature of the unlawful activity underlying the [money laundering] need not be alleged. . . . Thus, it was not necessary for the Money Laundering Counts to have alleged the elements of the specified unlawful activity (i.e., bank embezzlement). It was sufficient for those counts to have alleged, as they did, that the money laundering transactions involved funds derived from a specified unlawful activity, and that such activity violated 18 U.S.C. § 656."); United States v. Loe, 248 F.3d 449, 468 (5th Cir. 2001) ("Nor is jury unanimity regarding the specified unlawful activity required." )

Bronfman's argument that Racketeering Act 11 is also deficient because it fails to specify which statements are alleged to be false is meritless. (BBr. at 8). Racketeering Act 11 makes clear that allegedly false statements are contained in an employment application that Bronfman submitted to the United States consulate. (S-2 ¶ 35). That document has been disclosed to Bronfman as Rule 16 discovery.[15] Nothing further is required.[16] See United States v. Imran, No. 1:15CR259, 2015 WL 9008152, at *2 (E.D. Va. Dec. 15, 2015) (rejecting argument that § 1546(a) charge lacked specificity where the "indictment clearly states that the alleged misrepresentations at issue are those which were 'false with respect to

_____

[15]     The document that underlies this act has been disclosed to Bronfman as Rule 16 discovery bearing Bates numbers VDM_NXIVM000260844-45.

[16]     The cases cited by Bronfman are not to the contrary. The quote she draws from United States v. Stringer, 730 F.3d 120 (2d Cir. 2013), is taken out of context and is not a holding of the Court. In the excerpt, the Court noted that "for certain statutes specification of how a particular element of a criminal charge will be met (as opposed to categorical recitation of the element) is of such importance to the fairness of the proceeding that it must be spelled out in the indictment, but there is no such universal requirement." Id. at 126. The court continued by noting that "[o]ther examples that courts have found to fall in that less-common category have been specification of what statements are alleged to be false, and in what respect they are false, in charges of criminal falsity." Id. Bronfman cites no case to support her assertion that § 1546(a) falls within this "less-common category," or, if it does, that the facts alleged in Racketeering Act 11 are insufficient. Indeed, her argument is refuted by Imran, cited above, and other cases in this district. See, e.g., United States v. Schwimmer, 649 F. Supp. 544 (E.D.N.Y. 1986); United States v. Upton, 856 F. Supp. 727, 744 (E.D.N.Y. 1994).

       Brofman concedes that her second argument – that the government must allege the allegedly false statements were made under penalty of perjury – is foreclosed by United States v. Khalje, 658 F.2d 90, 91-92 (2d Cir. 1981); see also United States v. Gupta, 618 F. App'x 21, 22–23 (2d Cir. 2015) (citing Khalje and rejecting argument that "presenting" prong requires the jury to "find that the false statements were made under penalty of perjury"). (BBr. at 9).

material facts in an application required by the immigration laws, namely a written application for naturalization to U.S. citizenship.'" (quoting indictment)); see also, e.g., United States v. Rigas, 490 F.3d 208, 229 (2d Cir. 2007) ("When the crime charged involves making false statements, 'the "core of criminality" is not the substance of the false statements but rather that knowing falsehoods were submitted. . . .'" (quoting United States v. Sindona, 636 F.2d 792, 797 (2d Cir. 1980)); United States v. Bernstein, 533 F.2d 775, 786 (2d Cir. 1976) ("It is the submission of the false document which constitutes the separate crime. . . .  The offense was fully and clearly charged, since the indictment specified the time and place of the transaction and the submission of a particular false application in respect to a particular piece of property."); United States v. Kamdar, No. 04-CR-156, 2009 WL 2407676, at *3 (W.D.N.Y. Aug. 5, 2009) (citing Rigas and rejecting argument that indictment charging mail fraud in violation of 18 U.S.C. § 1341 was required to "identify the false representations allegedly made by defendant").

   The indictment adequately pleads the "essential elements" of charged crimes and identifies the "core of criminality" that was presented to the grand jury and that will be proved to the petit jury.  Further, in light of the factual allegations in the indictment, the disclosure of the victims' names (identified as John and Jane Does in the indictment), the extensive Rule 16 discovery provided to date, and the descriptions of the alleged crimes contained in numerous filings and detention letters filed in this case, there can be no serious argument that the notice the defendant have received is insufficient to allow them to prepare a defense.  This argument should be rejected.

III.    Defendants' Motions To Sever Should Be Denied

        The severance motions filed by defendants Bronfman, Mack and Russell are without merit and should be denied.  Although they repeatedly attempt to argue otherwise, Bronfman, Mack and Russell are each charged in an overarching RICO conspiracy involving predicate acts of human trafficking, sex trafficking, and child exploitation, and the evidence regarding these offenses is admissible against them as proof of the enterprise and the pattern of racketeering charged in S-2.  As set forth in its motions to admit enterprise evidence, see DE 414, 407, the government expects to admit evidence that the members of the charged enterprise recruited and groomed sexual partners for Raniere, both within and outside of DOS, and were aware of and facilitated Raniere's sexual relationship with underage victims.

        Bronfman incorrectly argues—as she did previously—that in a severed trial, the government would be limited to proving only the conduct specifically alleged against that defendant.  That argument remains incorrect.  Even if Bronfman, Mack and Russell were each tried separately, the evidence they complain of would still be admissible against them to establish the "existence and nature of the RICO enterprise" and "a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities."  United States v. Basciano, 599 F.3d 184, 205-07 (2d Cir. 2010) (quoting United States v. DiNome, 954 F.2d 839, 843 (2d Cir. 1992)).

        None of the cases cited by the moving defendants hold otherwise.  Bronfman misleadingly cites United States v. Ham, 998 F.2d 1247 (4th Cir. 1993), in which the district court admitted evidence relating to homosexuality, child molestation and abuse against defendants in a RICO case with predicate acts involving mail fraud and murder.  The

27

majority in <u>Ham</u> reversed defendants' convictions because the "evidence of child molestation and homosexuality were brought in for [a] limited purpose [which was relevant to] the government's theory of motive for the Bryant murder" and had only "incremental probative value." <u>Id.</u> at 1253. In contrast, here, the evidence relating to child exploitation and child pornography is <u>direct</u> evidence of the RICO conspiracy as against every defendant charged in the conspiracy, including Bronfman, Russell and Mack.

Contrary to the defendants' arguments, the RICO conspiracy with which each of them is charged implicates the same type of intertwined proof. At trial, the government will prove that Bronfman, Mack and Russell were themselves each in sexual relationships with Raniere and, at various times, undertook efforts to facilitate Raniere's access to other women. For example, the government expects to present evidence, in the course of proving Racketeering Act Eight, that Bronfman instructed a woman not to have sexual relationship with her husband. That woman was later recruited to become a DOS "slave" and was tasked with sending nude photographs to Raniere, among other assignments. As another example, the victim identified in the child exploitation racketeering acts, Jane Doe 2, is the same individual that was later housed by Russell, at Raniere's direction, under an assumed name in Clifton Park, New York. Jane Doe 2 is also a "first-line" DOS "slave," along with Mack, and the evidence of Jane Doe 2's evolving relationship with Raniere—including when it began—is central proof relating to DOS. Under these circumstances, the danger of spillover prejudice resulting from a joint trial is non-existent, because the pattern of racketeering activity alleged would be proven against each defendant whether she was tried separately or with her co-conspirators.

28

Even if the Court were to hold that certain evidence was not admissible at a separate trial, courts have repeatedly recognized that any potential prejudice caused by a joint trial can be effectively mitigated by instructions to the jury that it must consider separately each individual defendant and each charge, and consider only the evidence that has been admitted against each defendant.  See United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003); United States v. Miller, 116 F.3d 641, 679 (2d Cir. 1997); United States v. DeVillio, 983 F.2d 1185 (2d Cir. 1993).

The defendants conspired together, they were indicted together, and they should be tried together.  The severance proposed by defendants Bronfman, Russell and Mack would require trying this case at least twice, if not three times, and would result in significant inefficiency, cost in time and resources, and hardship to witnesses.

IV.   Raniere and Mack's Motion to Preclude the Government's Experts Should Be Denied

There is no basis for Raniere's and Mack's request to preclude the government from calling expert witnesses at trial.  Raniere and Mack cite no legal authority to support his assertion that the government's ongoing expert disclosure, including its letter dated March 15, 2019, is insufficient to avoid surprise and prejudice.

The cases upon which Raniere relies upon make this clear.  In United States v. Lee, for example (RBR. at 13), the Second Circuit affirmed the district court's conclusion that the defendant was not prejudiced by the mid-trial disclosure of a statement of the defendant that, the Court assumed, the government should have disclosed prior to trial under Rule 16.  See 834 F.3d 145, 159 (2d Cir. 2016).  In United States v. Mahaffy (RBr. at 14-15), the district court noted its order that experts be disclosed 10 days prior to trial upon penalty

29

of exclusion, and precluded a defendant from introducing expert testimony that he disclosed for the first time on the "day the trial commenced."  No. 05CR613 (ILG), 2007 WL 1213738, at *3 (E.D.N.Y. Apr. 24, 2007).  In United States v. Ulbricht, the Second Circuit affirmed the district court's decision to preclude defense experts who were noticed "[l]ong after the trial began . . . , and shortly before the government rested . . . and the defense rested."  858 F.3d 71, 91 (2d Cir. 2017).  See also, e.g., United States v. Tin Yat Chin, 476 F.3d 144, 146 (2d Cir. 2007) (holding that defendant was not prejudiced by disclosure of government expert one day before defense rested in light of one-day continuance given to defense counsel to prepare cross-examination).

The government recognizes the Court's authority to regulate discovery under Rule 16(d).  The government will continue to work diligently to provide additional information about its noticed experts under Rule 16, and to identify and disclose the expert it intends to call at trial "regarding the health effects of extreme calorie restriction and sleep deprivation."  The government respectfully requests that the Court deny Raniere and Mack's motion without prejudice to its renewal at such time as the government has completed its expert disclosures.

## V.    There Is No Basis for Raniere's Refusal to Identify His "Foreign Witnesses"

There is no legal basis for Raniere's refusal to identify witnesses he seeks to have testify via closed-circuit television ("CCTV") until such time as the government "confirms that [S-2] is the final indictment on which it will proceed to trial."  (RBr. at 15).  As an initial matter, the charges in S-2 are based on facts that overlap in nearly all respects with S-1, except for the new allegations in Racketeering Acts Two, Three and Four.

Perhaps, as Raniere suggests, the new racketeering acts have led "counsel [to] consider[] making changes to our potential witness base" (RBr. at 15), but, given the overwhelming similarity between the two indictments, any such change would necessarily be at the margins and would hardly warrant his blanket refusal to permit the Court to assess whether he can demonstrate the "exceptional circumstances" necessary to support his application.  See United States v. Gigante, 166 F.3d 75, 81 (2d Cir. 1999).  The government respectfully submits that Raniere is not entitled to use his potential list of "foreign witnesses" as leverage to compel a representation from the government to which he is not entitled.  The government further requests that Raniere be ordered to disclose his list of "foreign witnesses" and his asserted basis for their testimony via CCTV on or before the date on which he is required to disclose his in-person witness list.  (DE 248 at 70 (identifying facts Raniere must proffer to assess proposed testimony via CCTV)).

VI.    Counts Three, Four, Five and Eleven Should Be Dismissed

        The government does not dispute that Counts Three, Four, Five and Eleven should be dismissed without prejudice for lack of venue.  (RBr. at 8; BBr. at 10-11).  As Raniere correctly notes, the government has never asserted that these out-of-venue charges can be tried in the Eastern District of New York absent a waiver of venue from the defendants charged in those counts.  (RBr. at 9).  Contrary to Raniere's and Bronfman's suggestion, however, it is neither a "problem" (RBr. at 8) nor "unconscionable" (BBr. at 11) for the grand jury investing this matter to have returned an indictment charging crimes venued in other districts.  Indeed, although the Sixth Amendment requires that trial be held before a "jury of the State and district wherein the crime shall have been committed," U.S.

Const. Amend. VI, the grand jury clause of the Fifth Amendment says nothing about venue, id. Amend. V. ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."); see also, e.g., United States v. Zodhiates, 166 F. Supp. 3d 328, 342 (W.D.N.Y. 2016) (collecting cases and noting that "the Vermont federal grand jury had jurisdiction to investigate [defendant's] alleged commission of a federal crime, regardless of whether the conduct constituting that crime occurred in Virginia, Vermont, New York, or elsewhere"), aff'd, 901 F.3d 137 (2d Cir. 2018).

In any event, the government concedes that, in the absence of a waiver from Raniere and Bronfman, these out-of-venue counts should be dismissed without prejudice. The undersigned have been in contact with the United States Attorney's Office for the Northern District of New York and will determine how to proceed on Counts Three, Four, Five and Eleven following their dismissal in this matter.

VII. Raniere's Request for a Bill of Particulars as to the Interstate Commence Element of Racketeering Acts Two, Three and Four Should Be Denied

Raniere requests a bill of particulars as to the interstate commerce element of Racketeering Acts Two, Three and Four. (RBr. at 10-12). The government anticipates that the interstate commerce element for Racketeering Acts Two, Three and Four will be met by, among other things, evidence that the photographs underlying the acts were taken by Raniere with a Canon EOS 20D camera recovered from under the desk in the office of 8 Hale Drive. The government anticipates that the evidence will show that the camera was manufactured in Japan and therefore had been transported in interstate and foreign commerce. See United

States v. Pattee, 820 F.3d 496, 511 (2d Cir. 2016) (holding that the interstate commerce nexus of § 2251(a) is met when the child pornography is produced with equipment manufactured outside New York); see also United States v. Lively, 852 F.3d 549, 559 (6th Cir. 2017) (affirming conviction under § 2251(a) where government admitted into evidence at trial a SanDisk memory card from the Kodak camera which the defendant used to produce child pornography because the card "bore a trade inscription stating that it was '[m]ade in China.'").

VIII.   Bronfman's Remaining Arguments Are without Merit

Bronfman's remaining arguments (BBr. at 10-12) are duplicative of the arguments she made in her motion to dismiss S-1.  They should be rejected for the reasons set forth in the government's December 17, 2018 response.

CONCLUSION

For the reasons set forth above, the government respectfully submits that the

defendants' motions are without merit and should be denied.

Dated:    Brooklyn, New York
          March 29, 2019

                                    Respectfully submitted,

                                    RICHARD P. DONOGHUE
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Mark J. Lesko
Kevin Trowel
Assistant United States Attorneys
        (Of Counsel)

34