1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    UNITED STATES OF AMERICA,          :
                                        :  18-CR-00204 (NGG)
5                                       :
                    v.                  :
6                                       :  225 Cadman Plaza East
     KEITH RANIERE, et al.,             :  Brooklyn, New York
7                                       :
                    Defendants.         :  April 8, 2019
8    ------------------------------------X

9        TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE VERA M. SCANLON
10                UNITED STATES MAGISTRATE JUDGE

11   APPEARANCES:

12
     For the Government:        MOIRA PENZA, ESQ.
13                              MARK J. LESKO, ESQ.
                                SHANNON JONES, ESQ.
14                              TANYA HAJJAR, ESQ.
                                United States Attorneys Office
15                              Eastern District of New York
                                271 Cadman Plaza East
16                              Brooklyn, New York 11201

17   For the Defendant:         MARC AGNIFILO, ESQ.
                                TENY GERAGOS, ESQ.
18                              DANIELLE SMITH, ESQ.
                                Brafman & Associates
19                              767 Third Avenue
                                New York, New York 10017
20
     For Allison Mack:          SEAN BUCKLEY, ESQ.
21                              Kore & Kim, LLP
                                800 Third Avenue
22                              New York, New York 10022

23   For Kathy Russell:         AMANDA RAVICH, ESQ.
                                Sher Tremonte, LLP
24                              90 Broad Street
                                23rd Floor
25                              New York, New York 10004


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.

```
 1                                                              2

 2

 3    APPEARANCES (Continued)

 4
      For Clare Bronfman:        KATHLEEN ELIZABETH CASSIDY, ESQ
 5                               CAROLINE GROSSHANS, ESQ.
                                 Hafetz & Necheles, LLP
 6                               10 East 40th Street, 48th Floor
                                 New York, New York 10016
 7
      For NXIVM:                 MICHAEL SULLIVAN, ESQ.
 8

 9

10    Court Transcriber:        SHARI RIEMER
                                 TypeWrite Word Processing Service
11                               211 N. Milton Road
                                 Saratoga Springs, New York 12866
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1   (Proceedings began at 10:27 a.m.)

2           THE CLERK:  Criminal Cause for a Status Conference,

3   Case No. 18-CR-204, United States v. Keith Raniere, et al.

4           Counsel, state your name for the record starting

5   with the Government, please.

6           MS. PENZA:  Moira Penza, Tanya Hajjar, Shannon Jones

7   and Mark Lesko for the United States.  Good morning, Your

8   Honor.

9           THE COURT:  Good morning everybody.

10          MS. CASSIDY:  Good morning, Your Honor.  Kathleen

11  Cassidy and Caroline Grosshans on behalf of Ms. Bronfman who

12  waives her appearance this morning.

13          MS. GERAGOS:  Good morning, Your Honor.  Teny

14  Geragos and Marc Agnifilo on behalf of Keith Raniere who

15  waives his appearance.

16          MS. RAVICH:  Good morning, Your Honor.  Amanda

17  Ravich for Kathy Russell who waives her appearance.

18                  [Pause in proceedings.]

19          MR. BUCKLEY:  Good morning, Your Honor.  Sean

20  Buckley on behalf of Allison Mack who waives her appearance.

21          THE COURT:  Sit at a table.  Share.

22                  [Pause in proceedings.]

23          THE COURT:  Mr. Sullivan, hi.  This is Judge

24  Scanlon.  My deputy just called the case and we have

25  defendants' counsel.  All of the defendants waive their

4

1  counsel and we have the Government's attorneys both for the

2  trial team and for the privilege review team.  Thank you for

3  calling in.

4          So we have a lot of paper in this case.  Do you have

5  a lot of paper in this case?  We're here because you had a

6  conference with Judge Garaufis the other day and there's some

7  outstanding issues related to discovery.  So we just have to

8  proceed carefully because in some of these decisions there's

9  some material that I believe is still privileged, some

10 material for which not everyone knows this, before its

11 additional submissions were requested, and some which I don't

12 believe are privileged.

13         I'm not sure where you all are with reviewing these

14 decisions and/or sharing the materials that can be shared.

15         So I saw the transcript from your appearance before

16 Judge Garaufis.  So I think you could tell me what other

17 issues there are but there's definitely the [inaudible] issue

18 and then I would like to fill in if there's anything left, I

19 think there is, on crime fraud and whatever else you think we

20 should be talking about.  I don't know.

21         Who should we start with?  Someone from the

22 Government.

23         MS. JONES:  Your Honor, Shannon Jones from the trial

24 team.  Regarding the first order that Your Honor issues, the

25 parties have gone back and forth about a redacted version of

5

1   that order that we could have filed publicly.  We agreed on I

2   would say about 90 percent of the redactions but there's about

3   ten percent which we have not been able to agree upon which I

4   think Your Honor will have to rule on.  My understanding is

5   that counsel for Ms. Bronfman have brought a copy of that

6   order with the redactions that we've agreed on are in black

7   and then there's this yellow portion which is what they would

8   like to have redacted but the Government has not agreed to

9   those redactions because I do not believe that those -- that

10  material is privileged.  I have a copy of it if they do not

11  have a copy to give to you right now.

12              MS. CASSIDY:  We do not have a copy.  We were

13  planning to submit that along with a letter that's due today

14  requesting certain additional information.  I'm planning just

15  to submit -- address that in one letter.

16              THE COURT:  All right.  You could just email it

17  then.

18              MS. JONES:  Regarding the other two orders, I

19  will --

20              THE COURT:  I'm sorry.  Just so the record is clear,

21  that is the one that's a 502?

22              MS. JONES:  That's right.  And for the other two

23  orders that are at 505 and 507, I will prepare redactions like

24  I did with the first one and forward it to them for their

25  review and then hopefully we can figure out where we have an

6

1    agreement or don't have an agreement about the redactions.

2              THE COURT:  Okay.  I know you're busy.  So if you

3    need more time let me know.

4              MS. JONES:  Your Honor, one question that I have in

5    light of the timing that we have is when -- to the extent that

6    there are -- there were some categories or documents or

7    specific documents that you said that are not privileged, when

8    can the privilege review team turn those over to the -- to the

9    trial team?

10             THE COURT:  So I guess it depends on is anybody

11   appealing the orders.

12             MS. JONES:  Your Honor, on the Government side, we

13   do expect that we may be appealing categories where we are not

14   permitted --

15             THE COURT:  Right, right.

16             MS. JONES:  But that may be a separate --

17             MS. CASSIDY:  We don't expect to appeal.

18             MS. JONES:  Okay.  Then I will --

19             THE COURT:  You can just give it whenever you want.

20             MS. JONES:  -- make those available.  Right.

21             THE COURT:  Okay.

22             MS. CASSIDY:  If I could have the caveat that let me

23   confer with my client who has not seen the most recent opinion

24   or the opinion over the weekend and I'll confer with her today

25   and we can let the Government know by the end of the day

1  whether we'll appeal.

2          MS. JONES:  Okay.  And, Your Honor --

3          THE COURT:  Hold off until they tell you if there's

4  anything they're appealing.  I mean the usual appeal period

5  would be -- you'd still have a fair bit of time.  So it

6  probably should be expedited if you need the materials for the

7  case.  So if the defendant -- if he is appealing then -- she

8  is appealing, I'm sorry, you should if you can work out an

9  expedited schedule.  Do that.  If not let me know.

10          MS. JONES:  Your Honor, one thing I did want to

11  raise.  For the category, main category of documents that you

12  said are not privileged in the first order which hopefully the

13  unredacted -- the redacted order will be available soon, we

14  had sent -- on March 12th we had sent a whole new list of

15  documents that we had said we did not believe were not

16  privileged.

17          Within that list -- again, while there were -- there

18  were about 5,000 documents in that list.  Only 1,400 were from

19  Ms. Bronfman's email account and we had delivered those on

20  March 12th and within that I believe there are going to be a

21  number of documents that would also fall under that category

22  of what you said is not privileged.  And in addition, there

23  are documents in there where I know the defense counsel has

24  previously said we don't -- we are not asserting privilege on

25  this but, for example, there were documents between -- that

1    related to a Microsoft and AT&T litigation that involved

2    defendant Raniere.  Defendant Bronfman had said if we are

3    copied on those communications we are not asserting privilege.

4    There were documents like that included in that list but there

5    has been, you know, basically no response as to whether or not

6    they're going to agree or disagree on our not privileged

7    designation.

8         So I think at this point I think we would just like

9    to take -- using good faith efforts to say well, these

10   documents you've already agreed are either not privileged or

11   you have ruled are not privileged and just mark them as such

12   and turn them over to the trial team.

13        MS. CASSIDY:  The set of documents, that's correct,

14   we have not reviewed those because we were waiting for the

15   opinions and now we can go through them with Your Honor's

16   rulings and determine which -- which we do believe are

17   privileged.  I mean there are -- I was not aware that there

18   are documents in there that relate to things that we are not

19   asserting privilege over.  Maybe we can talk about how to

20   address that but we're not asserting privilege over the

21   Raniere versus AT&T to Microsoft.

22        MS. JONES:  I just -- and that's fine.  I just -- I

23   wanted to give them an opportunity to review that because in

24   some cases I didn't want to make a mistake because Bob Crocket

25   [Ph.] is involved in a lot of different matters and it looks

9

1  to me -- this is what they're talking about but there's a

2  chance that I might be wrong but it seemed pretty clear that I

3  would only mark things where I thought this is what this is

4  about.

5         MS. CASSIDY:  Perhaps if now that we have the

6  rulings if the team can go back and look at which -- which

7  they think they think that we need to look at given Your

8  Honor's rulings -- I mean some I think will be very similar to

9  categories that are addressed in the opinions then we probably

10 don't need to even discuss those further.  If there are

11 categories that we do need to look at because of what Ms.

12 Jones is -- the concerns you're articulating then we can take

13 a look at those, that smaller universe of documents.

14        MS. JONES:  We can discuss it with them but I think

15 it would be basically running searches based on the names of

16 the people because those are the reasons why they were flagged

17 is not privileged but we can discuss it with them.

18        THE COURT:  Okay.  Can we check in later this week

19 and tell me what's left?

20        MS. JONES:  Why don't we check in on Wednesday when

21 we have to give the new redacted orders, the final -- the

22 other two orders?

23        THE COURT:  Okay.  So other issues that you have?

24        MS. JONES:  Well, Your Honor, my understanding is

25 that one of the reasons why we're here today relates to Mr.

10

1  Sullivan and your order from April 6th about the things that

2  he should be prepared to address today.

3          THE COURT:  All right.

4          MS. JONES:  I do want to note that I had reached --

5  I had after you had issued an order asking us to consult with

6  NXIVM, I did call counsel for NXIVM.  I send them an email.  I

7  did explain to them these are some of the disputed issues that

8  relate to NXIVM, are you getting the documents to review them,

9  are you being apprised of the briefing schedule, do you

10 understand what's going on, and I sent that email but I didn't

11 get a response.

12         THE COURT:  Okay.  Are there other issues on your

13 side related to any of these orders?

14         MS. JONES:  No, Your Honor.  Thank you.

15         THE COURT:  No.  Anybody else?  Okay.

16         Just before I hear from Mr. Sullivan, so for the

17 trial team issues that you have.

18         MS. PENZA:  Yes, Your Honor.  I think one of the

19 issues is the one that Ms. Jones had raised regarding NXIVM

20 and what the current management is and who it is who is

21 actually asserting privilege on behalf of NXIVM.  And when we

22 say NXIVM, again we're using the umbrella term but we do think

23 it is important that where documents are asserted to be

24 documents for a specific company that we're talking about that

25 individual company and who is in a position to assert

11

1   privilege for that company.

2          THE COURT:  Meaning that there's what, for example,

3   when we looked up the New York Department of State there were

4   I think five entities, one of which is active.  You obviously

5   had NXIVM Mexico here.  Are there other --

6          MS. PENZA:  Those things -- yes --

7          THE COURT:  -- permutations?

8          MS. PENZA:  Like, for example, Rainbow Cultural

9   Gardens.  There's a whole host of them, Your Honor.  So I

10  don't -- it doesn't -- right now I don't know what the

11  categories of documents are where there are privileges being

12  asserted but I think -- we just want to be careful that it's

13  not just we're saying NXIVM -- NXIVM's executive board even as

14  it existed prior to a substantial portion of the board being

15  indicted prior to that there was still -- there were still

16  other organizations all with different owners, things like

17  that.  So I don't know which entities still exist.

18         THE COURT:  Were they known as NXIVM or are you

19  talking about other entities?

20         MS. PENZA:  No one was ever known as NXIVM.  That

21  was a shorthand that the Government has used from the

22  beginning which makes sense in order for us to discuss general

23  issues.

24         THE COURT:  There are New York State corporations

25  known as NXIVM.

12

1            MS. PENZA:  Your Honor, I --

2            THE COURT:  I'm sorry.

3            MS. PENZA:  I'm sorry to interrupt.  I don't believe

4    that's correct.  I think there was a New York State

5    corporation that is inactive that was the main one but I think

6    NXIVM, the umbrella corporation, I think is a Delaware company

7    but I also want to make sure that we're distinguishing there

8    are these NXIVM affiliated entities and then there are these

9    entities where Ms. Bronfman has said these are not NXIVM.

10   Like --

11           THE COURT:  The businesses she owns; right?

12           MS. PENZA:  -- ESM, Wisdom Systems, like those are I

13   think are different.

14           THE COURT:  Okay.  Anything about NXIVM you want to

15   weigh in on?

16           MS. CASSIDY:  We believe Your Honor has ruled on

17   this issue.  I think once we take a look at the -- and agree

18   on the redacted opinion or Your Honor rules on the portion

19   that can be shared trial team that they'll be able to see the

20   ruling but I think Your Honor ruled that the Government has

21   not met any burden of establishing that --

22           THE COURT:  Yes.

23           MS. CASSIDY:  -- NXIVM is defunct.

24           THE COURT:  Is defunct, right.  It is what it says.

25           MS. PENZA:  Yes, Your Honor.  And that is one thing

13

1  that we do take exception with because we don't believe that

2  that burden is ours to establish that it's defunct.  It's

3  their burden to show that it's active and that the current

4  management has authorized the assertion for privilege the way

5  that it's being asserted.

6          The fact that Clare Bronfman at one time may have

7  been on the executive board does not mean that -- we don't

8  know who the current management is and we don't know who

9  authorized Ms. Bronfman to make the assertions of privilege

10  that she has on behalf of NXIVM.

11          THE COURT:  I'm sorry.  Do you mind talking --

12  thanks.  Tell them to turn off the record.  Thank you.

13          So the NXIVM entities, whatever they are, other

14  issues?

15          MS. PENZA:  Yes.  And then the other primary issue

16  is 8 Hale.  We have been raising this as an issue for a long

17  time now, Your Honor, and we no closer to clarity.  Every time

18  it is raised with Mike Sullivan it's a loop of well, I don't

19  have the documents, we understand there may be potentially

20  privileged documents.  The Government wants to operate under

21  the assumption that there are indeed potentially privileged

22  documents.

23          THE COURT:  Can I just make sure -- and this may be

24  just I have lost track of this.  Do I have all -- if you can

25  tell me either now or just later on, which warrants go with 8

14

1  Hale because fundament -- you're saying -- your general view

2  if I understand is you had search warrants, you went in, you

3  took all the devices and nobody has claimed the ones that

4  you're concerned about.  Is that --

5          MS. PENZA:  Nobody has claimed a privacy interest

6  over them including everyone you would think could possibly

7  have that privacy interest, or said anything about the

8  security of the home, the security of the devices, anything

9  like that.

10         THE COURT:  I have a super basic and maybe just too

11 basic question.  You only went in there because you had the

12 warrants.  So I don't understand -- so to me isn't it about

13 the scope of the warrant?  This is not abandoned property on

14 the side of the road.  This is property in private -- this is

15 private property on real property that was not open to the

16 public.

17         MS. PENZA:  Your Honor, our choice to get -- we get

18 warrants frequently even where a warrant is not necessary.

19 I'm not making any point regarding 8 Hale given our warrant

20 right now.  I think the issues can be thought of separately,

21 and what I'm saying is in a hypothetical world if you have a

22 house and the house has an open back door and people

23 frequently go in and out and friends are allowed to go in,

24 lovers are allowed to go in, nobody really takes care and the

25 devices don't have passwords on them.  There I think there is

15

1  something to be said about whether privileged communications,

2  whether that is maintained, whether the confidentiality of any

3  privileged communications is maintained or not.

4          THE COURT:  So you may just have to refresh my

5  recollection.  Where is the information that this was as open

6  as you're suggesting?

7          MS. PENZA:  Our point is that now as we sit here

8  with no one claiming any sort of privacy interest for NXIVM to

9  say these things are still privileged they should have to say

10  that they were maintained in a way that that privilege was

11  protected.

12          THE COURT:  I'm -- I can't -- haven't gotten past

13  the first hurdle which is that you have the right to have

14  them.  This is the question.

15          MS. PENZA:  I'm sorry.

16          THE COURT:  You got this property because you went

17  in with a warrant at 8 Hale; right?

18          MS. PENZA:  And no one is challenging -- no has

19  asserted -- no one has challenged that.

20          THE COURT:  Again, this might just be refreshing my

21  recollection.  What warrant, which warrants let you get that

22  property?

23          MS. PENZA:  A warrant for 8 Hale.

24          THE COURT:  Okay.  But obviously we've parsed these

25  warrants.  The warrants are four of these crimes and then you

16

1   can seize this material and then --

2           MS. PENZA:  Yes, it was the one that was Keith

3   Raniere sex slayer.

4           THE COURT:  -- can you look for this -- okay.  Which

5   -- just you're going to have to tell me --

6           MS. PENZA:  I believe the "executive library."

7           THE COURT:  You're still going to have to tell me

8   not right here, sitting right here which is that warrant.  So

9   you're --

10          MS. PENZA:  You want a docket number.

11          THE COURT:  Yes.  Or a copy of it.  Whatever.

12          MS. PENZA:  Sure.  And you think that covers and

13  lets you keep everything and then nobody has claimed it and so

14  NXIVM can't be claiming it either.

15          MS. PENZA:  Well, they can if they're going to stand

16  up and say why that is so protective.

17          THE COURT:  Right.  Why they didn't leave it on the

18  front porch basically which is what you're saying.  Everybody

19  wandering by was allowed to look at it, could look at it and

20  so it's as if it was sitting on the front porch.

21          MS. PENZA:  Hypothetically if that were the case

22  they should have to say why that privilege is still maintained

23  if it's sitting on the porch.

24          THE COURT:  Okay.  8 Hale, other issues?

25          So I'm just going to ask the Government.  The way I

17

1  handle this, and again we'll wait until you have the redacted

2  one, but in general I said I can only make these decisions

3  about documents.  Now, you have -- as your colleagues have

4  proposed they're going to extrapolate from these decisions to

5  many of the other documents.  Crime fraud I neither see what

6  you offered as showing crime -- a prima facie case of the

7  crime fraud exception or that the documents that you were

8  quoting showed the crime fraud exception.

9           So my question is does anybody on the Government's

10  team want to offer more in relation to crime fraud either

11  documents or other evidence that -- or --

12           MS. PENZA:  We may wish to once we see the rulings,

13  Your Honor.

14           THE COURT:  Okay.  But I -- it is what I just told

15  you.

16           MS. PENZA:  But -- well, should that be just handled

17  in the context of an appeal now?  I mean that's what I'm not -

18  - it's unclear to us because we -- I mean we're down to the

19  wire now, Your Honor.

20           THE COURT:  You are indeed.

21           MS. PENZA:  And we haven't seen these documents and

22  there is a concern about the fact that if you just throw a

23  lawyer on thousands and thousands and thousands of documents

24  it would be impossible to ever actually get through this

25  process going document by document.  So given where we are --

18

```
1              THE COURT:  So why don't you look at it but I think
2    that the -- the approach was it needs -- these kinds of
3    decisions need to be about particular documents and -- so once
4    you see it that's a question.  Is there really -- is there
5    more information about particular documents or about the
6    alleged crime fraud in general -- it's not really general.
7    It's about the extortion type claim, the communications with
8    the Mexican attorneys but anyway you can -- I'm leaving it
9    open as to whether I guess -- maybe it's Ms. Jones.  I don't
10   know.  I mean this is one of those ones that overlaps between
11   so I don't know who it is who might offer information about
12   the crime fraud exception but anyway it's there.
13             Are there other issues for the trial team?
14             MS. CASSIDY:  No, Your Honor.
15             THE COURT:  No.  Anything?
16             MS. PENZA:  Not from us, Your Honor.  Your Honor,
17   sorry.  One more thing I did want to flag for you.  Of those
18   5,000 documents that we had flagged as not privileged on March
19   12th as our ongoing rolling production, three or 3,000 of them
20   the custodian was Nancy Salzman who has now since pled guilty.
21   So I had -- one of the questions I put to Mike Sullivan was do
22   you have access to these documents to the extent that the
23   asserted privilege here is NXIVM because I think the reason
24   why most of those documents were hit upon based on a term
25   search were privileged terms that were provided by NXIVM, not
```

19

1   by privileged terms provided by Salzman.

2              She only had given us a very limited list of like

3   five or six attorneys to run against her documents but the

4   bulk of these were NXIVM privileged terms.  So to the extent

5   that these are NXIVM privileges that were in the custody of

6   Nancy Salzman has there been any steps for him to review any

7   of these documents to see if he in fact is going to assert

8   privilege.

9              THE COURT:  All right.  You're up, Mr. Sullivan.

10             MR. SULLIVAN:  Thank you, Your Honor.  As I

11  understood Your Honor the first question that was being asked

12  by the Court is whether or not NXIVM is a dissolved or defunct

13  company.

14             THE COURT:  And --

15             MR. SULLIVAN:  And the Government is asking -- I'm

16  sorry, Your Honor.

17             THE COURT:  So yes, that is the question and the

18  Government's under -- is elaborating on that question saying

19  there are multiple NXIVM entities.  So each one --

20             MR. SULLIVAN:  They are and a number of them are

21  interrelated.  A number of them have common ownership.  It has

22  been I would say complicated in terms of understanding all the

23  various entities and the entity ownership and from the

24  beginning we tried to identify who had ownership interest and

25  the right to retain counsel on behalf of an entity and to the

20

1   best of our abilities we'll describe those entities for the

2   company and -- to the Government very early on.

3           The Government has been asking kind of generally as

4   to whether or not NXIVM is -- the Government's position is is

5   then that NXIVM is a defunct resolved company.  I just want to

6   assure the Court that that is not the case at all.  I've been

7   telling the Government that NXIVM does not consider or its

8   affiliated companies as dissolved and defunct.  In fact, NXIVM

9   continues to engage accountants to assist in its tax

10  preparation.  It engages attorneys to assist in responding to

11  the Government's request for information.  It has consultants

12  who choose to assist in managing its ongoing operations as

13  limited as it's been since the indictments were announced.

14          They retained an e-discovery firm for the purposes

15  of producing documents as a result of a Government request.

16  They've been paying some routine expenses based on some very

17  limited resources that the company and its affiliated entities

18  have.  There's been no voluntary dissolution of any of the

19  entities.  There's been no judicial dissolution that I'm aware

20  of and there's been no dissolution by any type of proclamation

21  by the State of New York.

22          So I guess the short response to the Court is NXIVM

23  and its affiliated companies to the best of the information

24  that I have continue to operate as best as it can under these

25  circumstances notwithstanding the fact, Your Honor, it did

21

1  announce on its website a while ago that it was at this point

2  in time suspending its operations.  Those operations, Your

3  Honor, were principally the training classes that it provided

4  to a number of his clients and customers.

5         The other issue, Your Honor, that you asked me to

6  discuss, the issue concerning --

7         THE COURT:  Can we -- hold on.  Hang on one second.

8         MR. SULLIVAN:  I'm sorry.

9         THE COURT:  So which -- when you say -- when you've

10 been saying NXIVM just to follow up on the question the

11 Government was asking, so you're saying NXIVM are there --

12 which are you considering -- you said NXIVM and its affiliate

13 companies.  So what are we talking about here?  Because we

14 had -- my clerks looked at the New York State website.  Ms.

15 Jones suggesting it should be the Delaware company.  Just can

16 you fill in a bit more information about which corporate

17 entities you're talking about.

18        MR. SULLIVAN:  Your Honor, I don't have those at my

19 fingertips.  I'm happy to provide it to the Court and to

20 counsel.  I believe that there were somewhere around 30

21 entities who are identified as being related with NXIVM.  Of

22 the 30 I think somewhere in the neighborhood of 20 or 20 plus

23 we identified as counsel for based on the information we

24 received very early on during the course of these proceedings.

25 I do know that we shared the list internally with regard to

22

1   which entities we wanted to continue to register with the

2   various state registration agencies and also to maintain

3   domain names.

4           I apologize, Your Honor.  I don't have that list in

5   front of me as we're speaking right now, but I'm happy to put

6   that together and provide it to the court and counsel.

7           THE COURT:  How quickly can you do that?

8           MR. SULLIVAN:  I can get it done today, Your Honor.

9           THE COURT:  Okay.  And then a related issue is

10  the -- who is the decision-maker?  Are the boards still

11  extant?  I would assume so.  There has to be some officers.

12  Do you have that information?

13          MR. SULLIVAN:  As best as I know, Your Honor,

14  there's been no resignations from the board since -- and I

15  want to say it was sometime probably during the late fall or

16  early winter when there was a call amongst the board members

17  and with respect with counsel in terms of authorization to

18  proceed on behalf of NXIVM with regards to asserting privilege

19  in those documents that NXIVM had a legitimate interest in

20  maintaining privilege.  So I've not been told that there's

21  been any resignation of those board members.

22          THE COURT:  And is there the same board membership

23  for all of the entities?

24          MR. SULLIVAN:  Well, there's not, but there's

25  overlapping.  In some instances it was -- it may have been a

23

single ownership based on the records that were like 99 percent versus one percent ownership, but there is significant overlap between the general board members of NXIVM and some of these other related entities.

THE COURT:  All right.  So if you can provide the information about the -- which are the entities that you believe -- well, which are the NXIVM entities and then identify them by which ones are ongoing, if they all are or which are ongoing and which are in some other status.

MS. PENZA:  Your Honor, if I may.

THE COURT:  Um-hum.

MS. PENZA:  Just in terms of the board, if what was being relied upon was the board that existed prior to the indictments in this case, obviously the landscape has changed. And so I think there should be a re-analysis of whether that -- whatever -- whatever decisions were made regarding privilege, whether that is still the -- those are still the decision-makers now.

And we also want to make sure that there is very specific clarity on these wholly-owned companies that are, as far as I understand, separate from NXIVM and if it is the NXIVM board making decisions on behalf of companies that were wholly owned by Pam Cafritz, wholly owned by Nancy Salzman, wholly owned by others, I think that's a real problem and the Government would take issue with that.  So if that is what is

24

1   happening then I think that should be delineated.

2           THE COURT:  When was the call that you're talking

3   about, the one that was --

4           MR. SULLIVAN:  I think after the indictment, Your

5   Honor.

6           MS. PENZA:  Right after the indictment is different

7   than now, Your Honor.  I mean, Your Honor, two members of the

8   board have pleaded guilty to crimes.

9           THE COURT:  And we have -- as far as I understand

10  from what Mr. Sullivan said, nobody has withdrawn from the

11  board.

12          MS. PENZA:  Well, I think he should re-eval --

13          THE COURT:  Well --

14          MS. PENZA:  I think he should make that

15  determination with the board.

16          THE COURT:  Making the decision based on the

17  information that was provided.  If there's some reason to

18  think that there's been a change, which currently counsel has

19  no information about, you could revisit that.

20          All right.  If there are these separate wholly-owned

21  companies then -- that are not part of the same board

22  structure then you should identify -- well, identify the board

23  and then who goes with which company and then we'll see where

24  we are.  But there's -- unless you find out that your

25  information is no longer current, that the board structure and

25

1    board membership remain the same then this is -- the exercise

2    of the authority of the board to assert privilege seems to me

3    to be still in place.

4           Now, you know, I don't know what the -- as you

5    pointed out, the legal strategy of some of the individuals who

6    may be members has -- may have changed -- certainly the

7    situation in this case has changed and whether their situation

8    with regard to their --

9           MS. PENZA:  Some of these --

10          THE COURT:  -- board membership has changed, but I

11   don't know.

12          MS. PENZA:  Never mind, Your Honor.

13          THE COURT:  All right.

14          MS. PENZA:  Your Honor, may I just clarify --

15          THE COURT:  Yeah.

16          MS. PENZA:  -- Your Honor's just -- ruling?  Have

17   you instructed Mr. Sullivan to then identify the board --

18   identify of those 20 companies that he represents to identify

19   the board whether it's wholly owned, whether that structure is

20   still in place and whether for those entities some corporate

21   representative has a designated --

22          THE COURT:  Yes.

23          MS. PENZA:  -- Clare Bronfman to assert on behalf?

24          THE COURT:  No, no.  What was the last part?  Say it

25   again.

1          MS. PENZA:  Delegated authority to assert on behalf

2    of that.

3          THE COURT:  No.  Everything but the last point,

4    which is whether someone has -- someone on the board in the

5    position of authority has exercised the authority of the board

6    to assert privilege.  You don't have to identify who did it.

7          Okay.  All right.  So that's NXIVM with regard to

8    the -- it's NXIVM and its various incarnations existed as --

9    to provide that information.

10         All right.  What's your position with regard to 8

11   Hale?

12         MR. SULLIVAN:  Yes, thank you, Your Honor.  First,

13   the position has not changed since this was first brought to

14   my attention by the Government on January 8th.  I believe that

15   was the first time the Government raised 8 Hale.  Our position

16   has been all along there's been no intentional relinquishment

17   of NXIVM's rights to assert privilege.

18         On or about January 8th Your Honor and I received an

19   email from Ms. Penza and Ms. Jones asking if NXIVM was

20   asserting privilege of materials covered as a result of the

21   search warrant on 8 Hale Drive.  I believe I called the

22   Government around 4:30 p.m. that afternoon, Your Honor.  I

23   don't have -- I haven't had a chance to confirm that since I

24   received the notice to participate today, but I'll try to

25   confirm that.  And if I did call it's likely my communication

27

1    with the Government would have been the same as it's been

2    since I was first asked about 8 Hale Drive, and it was likely

3    something along the lines, Your Honor, that I'm not sure what

4    you have in terms of what you'll seize from 8 Hale Drive and

5    if you can share it with me, I'd be happy to review it for

6    purposes of privilege.

7              On January 14 there is a follow-up email and

8    Ms. Penza -- that NXIVM needs to know what was seized since we

9    understood from the Government that they segregated certain

10   documents that potentially are NXIVM privileged by the

11   tainting in order for us -- NXIVM to determine if it intends

12   to assert privilege to share those documents with us.

13             Your Honor may recall, it was a process that was put

14   in place regarding NXIVM, potentially NXIVM privileged

15   communications whereby they would go to the various defense

16   teams.  They would do the initial review and then make a

17   determination if there were some documents that they had that

18   NXIVM may have an assertion of privilege, they would then

19   share those documents with me and then we would review them

20   separately and respond to the Government as to whether or not

21   we're going to be asserting privilege over any of those

22   documents and the reasons behind it.

23             On January 14 there was an email response from

24   Ms. Penza and Ms. Jones where they confirmed out of an

25   abundance of caution they're segregating materials that hit on

28

1  the NXIVM privilege terms, but wanted to know whether or not

2  NXIVM intended to assert privilege at all given that no one is

3  saying that these items are theirs.

4          And again, Your Honor, our position has never

5  changed.  All we simply asked for is somehow get us the

6  documents that have been segregated and we'll make a

7  determination as to whether or not it's privileged.

8          Subsequent to that, I think the Government's

9  position suggested that somehow NXIVM had waived privilege

10 based on what Ms. Penza had described earlier that these

11 devices were left in a home that was substantial traffic in

12 and out of and the devices did not have any password

13 protection on them.  I don't know whether or not any of the

14 devices have password protection, but it's been our position

15 that NXIVM has not intentionally relinquished any privileged

16 communications.

17         I know Ms. Penza just gave a hypothetical to the

18 Court.  I would say, Your Honor, the hypothetical I would

19 offer if somebody leaves a laptop on a plane and doesn't have

20 it password protected that has privileged communication on it,

21 I don't believe the person that's the holder of the privilege

22 waives privilege because of that.

23         So all I've been asking for is for the documents to

24 be shared with the defense team and then making them forward

25 those documents that might have a NXIVM privilege and we'd

29

1  review them.  Our position since January, Your Honor, has not

2  changed at all.

3           THE COURT:  Okay.  So have you ever gotten the

4  documents?

5           MR. SULLIVAN:  I don't believe so, Your Honor.  I

6  know that Ms. Jones referenced a March 15th email to me and I

7  do apologize.  I was traveling on March 15th and for some

8  reason I didn't see that email on the 15th.  I saw it when I

9  was reviewing communications in preparation for this hearing,

10 but that March 15th doesn't include any documents.  I did

11 understand from a follow-up call with the defense teams based

12 on the protocol that was being put in place that this issue

13 was going to be briefed by the defense teams would be caught

14 and it -- likely the documents would fall the same way that

15 had been agreed to previously to the defense teams and then

16 tilted to those documents that will be NXIVM privilege.  I

17 don't recall receiving any documents that would segregate it

18 from 8 Hale Drive where NXIVM may be able to assert a

19 privilege.

20          THE COURT:  Let me ask Ms. Jones to respond.

21          MS. JONES:  Your Honor, no.  The 8 Hale documents

22 are not included in the last set of documents that we had

23 reviewed.  The procedure that we had been following is that we

24 have been sent -- we have been dealing with privilege issues

25 for the custodian of each set of documents.  So Ms. Bronfman

1  has been asserting privilege on behalf of NXIVM and herself

2  for the documents that we seized from her email account.  We

3  sent to -- we sent -- we sent all the defendants like the --

4  the list of -- here is the Excel sheet, but each defendant has

5  their own documents that they were the custodian of.

6          There is no custodian of the 8 Hale documents, so

7  there is nobody who has been engaging on 8 Hale and that

8  actually has been set aside because we do not think that -- or

9  my understanding was the issue of is priv -- can anyone assert

10  privilege on these documents on basically an abandoned house

11  was like a legal issue, like nobody is -- nobody is -- has

12  standing here to assert privilege or nobody -- anyways, 8 Hale

13  is not included --

14          THE COURT:  Okay.

15          MS. JONES:  -- in those documents.

16          THE COURT:  All right.  So it seems like there's two

17  branches here.  One is whether there is actually privilege

18  material which, I don't know, we don't know.  And then the

19  other is this point you were just touching on but it seems

20  pretty disputed as to what the facts are related to this

21  property.  So should there be a hearing on this or some other

22  submission as to what was going on at 8 Hale?  I don't know

23  how else to figure this out.

24          MS. JONES:  Our view is that NXIVM should have to

25  assert something on this.  This is not something --

1          THE COURT:  Well, then give them the documents.  I

2    mean, I don't understand --

3          MS. JONES:  But it's not --

4          THE COURT:  -- how they're doing this.

5          MS. JONES:  It's not about the documents, Your

6    Honor.  We're not going to have time before trial to go

7    through these documents by documents, give them time on this.

8    This is an over-arching legal issue.

9          THE COURT:  It's not a legal issue only.  This is

10   what I don't understand.  You compare it to -- you had adopted

11   my --

12         MS. JONES:  I used --

13         THE COURT:  You know, it's abandoned.  It's on the

14   front porch.  People can come in and out.  Nobody is paying

15   attention.  There's no passwords.  And then Mr. Sullivan is

16   analogizing this to a laptop accidentally left on a plane

17   where somebody would normally use the device.  They wouldn't

18   need a password because it would be in their custody, but it's

19   accidentally left in public view.  You know, the airline staff

20   could get it, but the hope would be that it would make it back

21   unexamined to the custodian.  So how to decide what happened

22   here?

23         MS. JONES:  But it's not -- but it's NXIVM's burden,

24   so let them make the initial showing.  Put it in an affidavit.

25   Do whatever they need to do.  Why should we have to have a

1    hearing at this point and the Govern -- when it the defend --

2    when it is NXIVM's burden.  And they have not done a thing in

3    two months to try and meet that burden.

4              THE COURT:  That doesn't -- I mean, Mister -- as I'm

5    hearing Mr. Sullivan asked Ms. Jones for the documents and

6    then she sent an email that he missed.

7              MS. JONES:  But we will concede that it is almost

8    entirely certain that there are documents that otherwise

9    NXIVM -- certainly some that would be legitimate, probably

10   some that are not, that would be privileged within this

11   because there's email accounts of various people who were

12   members of NXIVM.  So that seems like just a stalling tactic,

13   Your Honor.

14             THE COURT:  This is what I -- all right,

15   Mr. Sullivan --

16             MR. SULLIVAN:  Well, Your Honor, may I respond?

17             THE COURT:  Yes, but I still -- I have the

18   fundamental problem of understanding this because the

19   Government went on to private property to seize these

20   computers.  So this notion of it's just out there for you to

21   take, I don't -- I don't understand it.

22             But anyway, Mr. Sullivan, what's your client's

23   position with regard to this property and how do you think the

24   question of whether this was just there for anybody to take,

25   including the Government, which they have, or some other way

33

1    one should look at this?

2          MR. SULLIVAN:  Well, I would suggest, Your Honor,

3    it's pure speculation in terms of the Government's position

4    whether this was there for anybody at all to take.  NXIVM has

5    certain rights to at least review those documents, but the

6    Government has acknowledged that it's segregated as a result

7    of the search terms.

8          THE COURT:  All right.  But I want you to respond to

9    the second --

10          MR. SULLIVAN:  And they don't --

11          THE COURT:  Can you respond to the other question?

12    As I said, there's two branches.  One is whether there are

13    documents that are privileged.  For the sake of this

14    discussion, the Government is agreeing there are privileged

15    documents.  They are suggesting that one could take a complete

16    waiver of all privacy privileged interest in this because of

17    the lack of care with regard to maintaining privacy over these

18    devices, and so that's the question.

19          MR. SULLIVAN:  And we -- we don't concede that

20    there's been a lack of care with regards to maintaining

21    control over those devices, Your Honor.  It is private

22    property.  It wasn't on the front porch or on the sidewalk.

23    It wasn't abandoned.  The Government used a search warrant for

24    the purposes of seizing those items and the items were used --

25    some of the communications on those devices, in fact, were

34

1  used for legitimate business purposes.

2          So there's been no abandonment.  There's been no

3  negligence on the part of NXIVM --

4          THE COURT:  All right.  So you're having --

5          MR. SULLIVAN:  -- and with regards to the

6  management --

7          THE COURT:  So there's a legal back and forth here

8  about who asserts a privilege and the Government is suggesting

9  that you have some burden of proof.  So if that were to be --

10  if that is true then what's your suggestion for how you would

11  show that there had been sufficient efforts made to protect

12  the confidentiality of the -- whatever material is on the

13  devices?  And --

14          MR. SULLIVAN:  NXIVM is going to -- I'm sorry.  Go

15  ahead, Your Honor.

16          THE COURT:  Well, just -- and what form would you

17  suggest that that should be -- could be offered?  A hearing,

18  an affidavit?  What?

19          MR. SULLIVAN:  Well, I -- I think NXIVM is going to

20  have to speak to some of the members or former members of

21  NXIVM to determine how those devices were at 8 Hale Drive and

22  under what circumstances they were being used at 8 Hale Drive

23  and whether or not any of them had any password protection on

24  them.

25          But even if they didn't then if somebody was

35

1    misusing a device that either belonged to NXIVM or NXIVM

2    material I don't think it necessarily answers the point, Your

3    Honor.   In the short period of time I tried to see whether or

4    not there was any particular law on this matter and I couldn't

5    find any.   The Government certainly did not propose any case

6    that suggests under these circumstances these devices have

7    been abandoned.   Therefore, nobody can assert privilege.   I

8    think we -- they're claiming that NXIVM has waived

9    privilege --

10              THE COURT:  Well, I --

11              MR. SULLIVAN:   -- based on where the devices were

12   found.

13              THE COURT:  All right.   We're going right now with

14   the -- NXIVM is asserting privilege because you haven't seen

15   the documents.   The Government is agreeing there is at least

16   some privileged information on the devices.   So how to tee up

17   this question about whether there has been abandonment or not,

18   I mean, it seems like the kind of question one considers for

19   whether an attorney has maintained confidentiality and to use,

20   you know, the old-fashioned comparisons, right, when you're

21   thinking about is there an appropriate separation and

22   confidentiality maintained over client files.   You ask things

23   like is there a locked door, is there a separate cabinet, is

24   there a key, is there a combination, is there -- what do they

25   call it, a war room, is there -- whatever.   Whatever the

36

1   computer versions of this.

2          So when you say speak to people are we talking about

3   the folks whose attorneys are in the room here?  Forgetting --

4   Mr. Agnifilo is nodding his head.  So what do you --

5          MR. AGNIFILO:  If Your Honor reads lips, I -- the

6   word was "probably."

7          THE COURT:  So what is your suggestion for any of

8   the defense or Mr. Sullivan for NXIVM for teeing this issue

9   up?  Yeah.

10          MS. GROSSHANS:  Your Honor, I -- I was just -- we

11   don't have the warrant application in front of us and I can't

12   recall off the top of my head.  I mean, I assume that the

13   warrant application, you know, makes certain representation of

14   who owns the property --

15          THE COURT:  I don't know.  This is not one of the --

16          MS. GROSSHANS:  -- what the property is used for.

17          THE COURT:  -- ones that we have parsed.

18          MS. GROSSHANS:  No, that's correct.

19          THE COURT:  Down to the --

20          MS. GROSSHANS:  And it probably -- because the

21   others did -- you know, talks about what the Government will

22   do with attorney-client privilege material when it is seized.

23   I think the Government anticipated that there could be

24   attorney-client privilege material in any of these properties

25   from which it seized.  And it doesn't -- you know, I -- it

37

1   doesn't make a lot of sense to me that just because if someone

2   was using this property and that's not -- that person is not

3   the privilege holder that the privilege is necessarily gauged

4   by how that person treats the privilege.

5            THE COURT:  Okay.  So I mean, we're back to what --

6   all right, Mr. Agnifilo, anything or --

7            MR. AGNIFILO:  I think what makes the most sense,

8   I'm not sure when today we're going to be able to do it but --

9            THE COURT:  You have a jury.

10           MR. AGNIFILO:  I know.  We have a pretty full --

11           THE COURT:  Process.  Yeah.

12           MR. AGNIFILO:  We're in front of Judge Garaufis at

13  two -- at one and then we are again at two and I don't know

14  how long that will go.  But we can endeavor to speak to

15  Mr. Sullivan at the end of our jury selection process today,

16  which I would imagine would be after five.  I don't know what

17  Mr. Sullivan is planning on doing after five.  He might have

18  other things that he wants to do but we'll find a way to get

19  in touch with him before the end of the whole day.  Maybe this

20  evening.

21           THE COURT:  Okay.  What I would like is a copy of

22  the warrant, singular or plural, the Government thinks covers

23  these devices and then by Wednesday a proposal from the --

24  NXIVM in consultation with whoever you think has the

25  information either a presentation of the information or if you

38

1    think there should be a hearing what that infor -- you know, a

2    statement as to what it is you'd be offering.

3           And then -- I mean, any which way as quickly as you

4    can get it -- the information together and then the Government

5    can respond.  If it's a hearing, we'll have a hearing.  If

6    it's not a hearing then just do it on the affidavits.

7    Obviously, given all of your consid -- you know, it's whatever

8    makes the most sense in light of your other obligations which

9    I understand they're significant.  Okay.

10          Is there other information that the Government has?

11   I mean, would it be the -- some information from -- I don't

12   know -- one of the agents who took --

13          MS. PENZA:  We believe --

14          THE COURT:  -- took the devi -- I don't understand.

15          MS. PENZA:  We believe they're separate issues, Your

16   Honor, that the Fourth Amendment question about the warrant

17   versus an assertion of privilege by NXIVM's counsel.

18   Mr. Sullivan just made some representations to Your Honor

19   including that these devices were -- belonged to NXIVM in some

20   form or that they were used for legitimate business purposes.

21          The Government would welcome an affidavit from

22   Mr. Sullivan detailing what privileges he expects to assert

23   over the devices at 8 Hale.

24          THE COURT:  I mean, I -- well --

25          MS. PENZA:  It is -- it is --

39

1          THE COURT:  No.  It seems to me there's three

2    questions.  One, were you ever entitled to have this device.

3    I don't understand.  I don't know.  I don't have the

4    materials.

5          MS. PENZA:  Your Honor, the --

6          THE COURT:  The second is, what you just said is

7    what privileges.  I've been lumping that question -- you know,

8    encapsulating it and saying, you are agreeing that there are

9    privileges to be asserted about some of the materials but

10   you're suggesting that there can be an over-arching waiver

11   because of the conduct related to the -- maintaining -- to the

12   maintenance of the protections necessary and I -- what we've

13   been talking about that.

14          If it turns out that the protections were sufficient

15   for NXIVM to be allowed to assert privilege now then we would

16   be where you are, but he hasn't seen the several thousand

17   pieces of information or documents of whatever this is.

18          MS. GROSSHANS:  Just be clear, Your Honor, number

19   one is not before Your Honor.  No one has challenged the

20   warrant.  That is not --

21          THE COURT:  Aren't you saying --

22          MS. GROSSHANS:  Ms. Bronfman's counsel has asserted

23   no privacy interest over any of the materials seized at 8

24   Hale.

25          THE COURT:  She's making the argument that the --

40

1  you do not have the warrant and you're raising the question,

2  which is the question that I raised, which is without seeing

3  the warrant I don't know that you had a right to have the

4  device.  Maybe you do.

5          MS. GROSSHANS:  Your Honor, that's not before -- no

6  one has challenged the search warrant.  No one has challenged

7  the search and no one has asserted a privacy interest in the

8  device as such that they a Fourth -- they could assert a

9  Fourth Amendment right.

10          In short, Your Honor, there is no standing with

11  respect to the Fourth Amendment question.

12          THE COURT:  What about NXIVM?

13          MS. PENZA:  NXIVM doesn't get to come into this case

14  and say that we don't -- that they are --

15          MS. GROSSHANS:  They have a Fourth Amendment issue.

16  That's a separate question, Your Honor.  They're asserting

17  privilege, which is the question before Your Honor.

18          THE COURT:  All right.

19          MS. PENZA:  But I think those questions are quite

20  distinct and we should focus solely on the privilege issue.

21          THE COURT:  I still want to see the warrant.  Okay.

22          So NXIVM, what's your -- can you have this

23  conversation with -- well, let me ask a slightly different

24  question.

25          Going back to this Fourth Amendment point, how do

41

1   you see that relating to your client who seems to wear two

2   hats in a lot of this?

3           MS. GROSSHANS:  She does not have a Fourth Amendment

4   right in 8 Hale.  She doesn't have a privacy interest in

5   things of 8 Hale.  As a member of the board of NXIVM her --

6   she has the same privilege interest as NXIVM in maintaining

7   the company's privilege to the extent that it still exists and

8   I don't know because I have not -- I don't have a segregated

9   set of 8 Hale materials.  I do have all the materials from 8

10  Hale, but I believe she probably is copied on materials that

11  are within NXIVM's privilege and so she's, you know, similarly

12  situated to NXIVM here.

13          THE COURT:  Okay.  So, Mr. Sullivan, when can you

14  get me the information?  You're going to try to talk to

15  defendant's counsel?  Just so we're clear who you're talking

16  about, we have some defendants who are still actively

17  participating in this case and others who have pled guilty.

18  Are you still -- are you including those individuals as people

19  that you need to speak with because they're not actively

20  involved in this discussion?

21          MR. SULLIVAN:  Well, I would, Your Honor, if they

22  were part of the earlier discussions with regards to their

23  role as a member of the board.

24          THE COURT:  I'm sorry.  Can you say it again?  It

25  got a little garbled.

42

1          MR. SULLIVAN:  I'm sorry, Your Honor.  The answer is

2    yes.  I would likely speak to counsel for each of the

3    defendants that represented -- or represent a board member.

4          THE COURT:  All right.  So by Wednesday can you let

5    me know where you are with regard to the proffer of

6    information?  So the question seems to be first, what --

7    question seems to be first whether the devices were

8    sufficiently protected such that the confidentiality be

9    considered to have been maintained and the privilege is

10   protected.  And then depending on the outcome there, the

11   question is, what are the privileges that you're asserting

12   which you haven't seen the documents.  I don't know if you

13   have a sense of what -- you know, your clients have a sense of

14   what was on those devices so they would be particular kinds of

15   documents or if it's -- you know, I don't know what's on these

16   devices.  If there's any way to answer the --

17   [indiscernible]'s question, which is, what are the privilege

18   issues.  I don't that there is without seeing the information.

19         MR. SULLIVAN:  I'm going to watch, Your Honor, with

20   regard to that second point you raised and it's a point I

21   think I've been raising since January 8th --

22         THE COURT:  So --

23         MR. SULLIVAN:  -- and we saw the documents that they

24   sent.

25         THE COURT:  Is there any reason --

43

1        MR. SULLIVAN:  [Indiscernible] we would not be able

2   to make it.

3        THE COURT:  Is there any reason not to -- even

4   though it's only a couple days heads up to provide a copy to

5   NXIVM now?

6        MS. JONES:  I mean, we would -- I think what -- my

7   understanding is what we had done is that we had taken the

8   privilege terms that NXIVM had provided to -- and, you know,

9   ran them against the 8 Hale documents and we do have in the

10  taint database I think a set of 8 Hale documents.  I can

11  instruct our vendor to send a copy of that to Mr. Sullivan.

12       THE COURT:  Okay.  Do you have any idea what the

13  form would be?  Would it just be a --

14       MS. JONES:  I think it would be in the same form

15  that we've been sending it out, which is a -- what is it when

16  you send stuff out of relativity?

17       THE COURT:  A disk or something, thumb drive?

18       MS. JONES:  Yeah, I think it's like -- is it a link?

19       THE COURT:  Oh, like a DropBox?

20       MS. JONES:  It's done by the third-party vendor so I

21  think they send a link that the recipient can access.

22       THE COURT:  Do you know what the turnaround time

23  might be on that?

24       MS. JONES:  I mean, I if we ask them to do it

25  immediately that they could get it out I think by today.

44

1          THE COURT:  All right.  I was just asking because

2    there was concerns with other devices before, right?

3    Literally other people got devices.

4          MS. JONES:  No, this will just -- this is already

5    uploaded and it's --

6          THE COURT:  This is done -- just the thumb drive.

7    Okay.

8          MS. JONES:  It's a link.  It's just whether or not

9    he has a discovery platform that he can use it to review the

10   document.

11         THE COURT:  Okay.  All right.  Are there other

12   issues?

13         MR. SULLIVAN:  Your Honor, this is Mike Sullivan

14   again.  In light of the fact I'm likely going to be speaking

15   to counsel late today, early this evening, could I wait until

16   tomorrow to get back to you with a list of the entities?

17         THE COURT:  That's fine.

18         MR. SULLIVAN:  In the [indiscernible], thank you.

19         MS. JONES:  Your Honor, one thing I -- that has not

20   been clear to me because I have not gotten a clear answer is

21   whether or not Mr. Sullivan has access to the Nancy Sull --

22         THE COURT:  I'm sorry.  Right.  You asked me that.

23   I apologize.

24         MS. JONES:  The Nancy Salzman documents that we had

25   marked as not privileged in early March.  I think there was a

45

1  little bit of back and forth with Mr. Salway about whether or

2  not he wanted to -- anyways, I don't know if Mr. Sullivan has

3  those documents.

4          THE COURT:  Did you hear the question?

5          MR. SULLIVAN:  Yeah, I did, Your Honor.  I don't

6  believe we have seen those documents, but I can confirm that.

7          THE COURT:  Okay.  Do you have them -- and you have

8  them segregated in the same way?

9          MS. JONES:  I do.  We had been relying on defense

10  counsel, who is the custodian of each documents, too like --

11  because to some extent they may segregate -- they may want to

12  segregate, these are my personal privilege, these are NXIVM --

13          THE COURT:  Right.

14          MS. JONES:  -- send them out, but, you know,

15  Mr. Salway has had them for a month and hasn't said anything

16  one way or the other.

17          THE COURT:  They were doing other things.

18          MS. JONES:  His client has pled guilty, so I don't

19  know what he thinks he's doing.

20          THE COURT:  Yeah.  All right.  I get it.  I don't

21  know what the exact timing on that was, but okay.

22          MS. PENZA:  Your Honor, may --

23          THE COURT:  I'm not -- and just hang on.

24          All right.  So Mr. Sullivan, can you see what you

25  have, if you do -- I don't know.  You might have to --

46

1          MR. SULLIVAN:  I don't recall.

2          THE COURT:  All right.

3          MR. SULLIVAN:  I don't recall receiving anything

4    from Mr. Salway, but I can reach out --

5          THE COURT:  Right.

6          MR. SULLIVAN:  -- to Mr. Salway at the end of this

7    call, find out whether he forwarded anything to me.

8          THE COURT:  All right.

9          MR. SULLIVAN:  If he has, then certainly we'll

10   confirm.

11         THE COURT:  But then there's the secondary question

12   that Ms. Jones is correctly raising which is because

13   production was based on the individual defendants, the Salzman

14   production may have some overlap of private versus corporate

15   material, right?  That's the issue?

16         MS. JONES:  Yeah, and I did raise that with him and

17   he said he was going to look at it.  So I do think he's had

18   like two to three weeks like to look at those documents

19   himself to see if Nancy Salzman is asserting privilege on a

20   personal basis, so he should be able to say now yes or no on

21   these five documents and the rest no.

22         THE COURT:  All right.  Why don't you speak with him

23   and if it depends on the outcome of that?  All right.

24         MS. PENZA:  I'm sorry, Your Honor.  May I just have

25   one thing, please?

1           THE COURT:  Yeah.

2           MS. PENZA:  As to the documents that Mr. Sullivan

3    has already received and the documents that we're going to be

4    sending him, we'd ask that Your Honor order that he be bound

5    by the protective order that was issued in this case I believe

6    on August 1, 2018, and we'll send him a copy.  But if Your

7    Honor could order that he would give the Government.

8           THE COURT:  Any objection, Mr. Sullivan?

9           MR. SULLIVAN:  Could I take a look at the protective

10   order first, Your Honor, and see if I have any objections?

11          THE COURT:  You're not going to get any materials

12   until you review it and agree, so why don't you file a letter

13   on the Court's website --

14          MS. PENZA:  It's available actually on the docket so

15   he can -- because we're going to be in court all day.  So he

16   can look at the docket entry of the protective order.

17          MS. JONES:  We can send it to Mr. Sullivan.

18          THE COURT:  I just want to know whether he agrees or

19   not.  If you agree or don't agree just file a letter on the

20   Court's docket so I know.  If it's an issue we'll address it.

21   So -- but let -- just --

22          MR. SULLIVAN:  I will, Your Honor.

23          THE COURT:  -- let me think about it for a second.

24   So I understand your point to him looking at the NXIVM

25   documents.  Question, is there anybody else who needs to be

48

1  bound by the order, if there are any board members other than

2  the people who are defendants, because every -- all the

3  defendants are bound at this point?  All right.  So --

4        MS. JONES:  Defendants are all bound, yeah.

5        THE COURT:  All right.  So -- all right.  So first

6  obviously the question is whether you as NXIVM's attorney are

7  bound yourself, but then if you -- you said you're going to be

8  speaking to different individuals about the facts related to 8

9  Hale and the assertions of privilege.  It's not obvious to me

10  that anybody else needs to see the documents other than

11  defendants.

12        Since I don't know the composition of the board I

13  can't speak to that, so anybody who would need to see the

14  documents, and it's on a need-to-know basis, they too need to

15  be bound by that confidentiality order and that needs to be

16  confirmed in writing.  So I don't -- I think that's all the

17  permutations, right?  Anybody think of any others?  No?  Okay.

18        Other issues?  All right.  All right.  So just to go

19  back to the crime fraud, I mean, I think I made it clear but

20  if I didn't, the way I looked at it was that you can't --

21  couldn't make the sweeping kind of determination that the

22  Government was proposing in its initial brief, so we looked at

23  individual documents.  But I believe a test would be that you

24  have to -- the Government would have to make a *prima facie*

25  case.  If you do, then we could move forward to *ex parte*

49

1   analysis of the information related to that and if there needs

2   to be any fact finding go from there.

3          I understand if you just think that that is clear

4   enough on the record and you want to handle as an appeal,

5   that's your choice.  But I think that the problem is the same

6   problem that I addressed and I, you know, may have been part

7   of the source of that in suggesting there could be over-

8   arching determinations.  So the concern is that that is not --

9   it wasn't a full presentation that the Government would want

10  the court to consider on that issue given when that motion was

11  made and how it was made.  But if that's -- that's really

12  something for you to decide.  I'm trying to highlight what the

13  parameters are of the decision-making with regard to that.

14         So -- and that with regard to that issue the denial

15  of finding it was -- is without prejudice to -- if there is

16  additional information that the Government thinks it should

17  have been considered.  All right.  Maybe it will make more

18  sense when you see the decisions.

19         All right.  Other issues.  Anything else?  Nothing?

20         MS. JONES:  Not from -- not by me.  Sorry, I don't

21  want to speak for Ms. Jones.

22         THE COURT:  Yes, ma'am.

23         MS. JONES:  Just one thing.  It was my understanding

24  based on the email communication I had with Ms. Bronfman's

25  attorney that they were going to be handing up to their

50

1  proposed redacted order and since they're going to email it

2  too is fine.  I just wanted to put on the record that with

3  respect to my objections to the redactions I would like to

4  refer the court to a case at 992 F.2d 449, which is <u>McNally v.</u>

5  <u>United States of America DEA</u>, which talks about -- in that

6  particular case it's about certain information related to

7  client identity and fee information not being privileged.

8          THE COURT:  Okay.  All right.  Defendants, anybody?

9          MS. GROSSHANS:  Nothing from us.  Thank you, Your

10  Honor.

11         THE COURT:  All right.  Is there any other discovery

12  issue?  Anything else?  I'm sorry.  I know you're packing up.

13  You want to go do your other work.  Is the productions, the

14  privilege information you're going to look at this -- but are

15  there other grounds that you're going to be making or, you

16  know --

17         MS. JONES:  Your Honor, when we were last before

18  Your Honor and we had said we had marked 5,000 documents as

19  not privileged and the defense counsel's response was, we have

20  no time to look at this and we're not going to, and you didn't

21  order them to and there was no deadline given to them.  We

22  are -- you know, we're not reviewing documents if no one is

23  going to look at them and make a determination about them.

24         THE COURT:  So there's no other tranches that you

25  had lined up?

51

1    MS. JONES:  I think we had -- there -- let me take

2    that back.  There -- the privilege mat -- let me that -- that

3    was incorrect.  The privilege [indiscernible] right now

4    consists of three AUSAs.  One of the AUSAs has been reviewing

5    documents on an ongoing basis.  She may have additional -- I

6    know she has marked additional documents as not privileged.

7    There were additional documents that I have marked as not

8    privileged prior to that statement that they weren't going to

9    look at them, so there probably is another tranche of a

10   certain amount of documents that have not been reviewed.

11           If it is worth the effort of turning them over we

12   will certainly do that, but it kind of felt like it was -- it

13   was -- it was not really sure where we would go --

14           THE COURT:  Whistling in the wind?

15           MS. JONES:  Now that we have some orders I think

16   that maybe -- I think we will have the incentive to at least

17   go through those and see if there are clearly documents that

18   fall within the scope of the orders of things that you said

19   are not privileged.  And we can certainly focus on those and

20   try to move those forward and where we have issues where we

21   think we are going to have either agreement or we're going to

22   have an appeal to the district court and we will focus on

23   those.

24           THE COURT:  Do you have any idea of the scope of the

25   documents if you combined what you have looked at and what the

52

1  other AUSA is looking at?

2          MS. JONES:  I am sorry, Your Honor.  I did not do

3  number count this morning to figure out like -- I haven't -- I

4  haven't --

5          THE COURT:  Okay.

6          MS. JONES:  -- been keeping a running tally of that.

7          THE COURT:  All right.  The 5,000 you're going to

8  talk.

9          MS. JONES:  The 5,000, 1400 is -- I do have the

10  number of those.  Of course, I know 1400 was -- 1400 was

11  Ms. Bronfman.

12          THE COURT:  Um-hum.

13          MS. JONES:  About 3,000 was Ms. Salzman.

14          THE COURT:  Right.  Mr. Sullivan is --

15          MS. JONES:  Mr. Raniere was the custodian of 660

16  documents.  There's been nothing from him.  And there was a

17  third party who was a custodian of about 27 documents, so we

18  can -- we can -- that's what the numbers are.

19          THE COURT:  Okay.  So you're talking -- and then I

20  didn't ask Mr. Agnifilo, Mr. Geragos with regard to

21  Mr. Raniere what's the plan?

22          MS. CASSIDY:  If I heard Ms. Jones correctly, and

23  those are AT&T Microsoft documents, I thought we'd reviewed

24  all of those.

25          MS. JONES:  No, no, no, no.  Those were -- those

53

1    issued AT&T Microsoft documents were -- Ms. Bronfman was the

2    custodian because she had been -- the issue was, she'd agreed

3    it's not privileged if she'd been copied on that document

4    because privilege was Mr. Raniere's.  It was not NXIVM's.

5    There is no reason for her to been copied on that.  So if she

6    was copied on that and she was the custodian then they were

7    not privileged.  Although Mr. Raniere, I guess, had copied him

8    and for whatever reason we don't have that in there.  That

9    would fall within that.  But I cannot say that those 660

10   documents are all of Mr. Raniere, those documents are not --

11   as far as I know, they haven't reviewed them and they haven't

12   said to me, we agree or disagree with any of these privilege

13   assertions.

14            THE COURT:  Okay.  I'm sorry.  Omar, can you tell

15   her?  I think she's for the next case.  The one -- I'm sorry

16   about that.

17            Yes.  Do you want to talk for a second?  Just let me

18   know.

19            MR. AGNIFILO:  Yeah, well, let's -- I'll talk with

20   Ms. Jones --

21            THE COURT:  Okay.

22            MR. AGNIFILO:  -- before we run off.

23            THE COURT:  Can I get a global update Wednesday

24   just -- if you still need more conversations, fine.  If you

25   need -- or resolving issues, fine.  If you need to tee

54

1   something up, that's good, too.  Whatever you decide.  I just

2   want to know what it is.  Okay.  So on the other custodian, is

3   there --

4           MS. JONES:  Is that -- you want to know who it is?

5           THE COURT:  No, just what's going to happen there.

6   Are they getting back?

7           MS. JONES:  They're not a party to this -- they're

8   not a party to this litigation, but they are the subject of

9   that one category of documents that you say -- that you say is

10  not privileged.

11          However, we would have to look at those documents to

12  see if Ms. Bronfman is copied on them because if she is not

13  then there may be a privilege for that, but that individual is

14  just between her and her counsel.

15          THE COURT:  Okay.  That's another update.  All

16  right.

17          Now, anything else?  We're good?  All right.  Thank

18  you.  Bye, Mr. Sullivan.

19          MR. SULLIVAN:  Thank you, Your Honor.

20  (Proceedings concluded at 11:40 p.m.)

21                          *  *  *  *  *

22

23

24

25

55

1           I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4

5                                                                    _____

6                         Shari Riemer, C.E.T.**

7    Dated:  April 9, 2019