UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- x

UNITED STATES OF AMERICA,                    **TO BE FILED UNDER SEAL**[1]

-against-                                              **ORDER**

KEITH RANIERE, also known as Vanguard,        18 Crim. 204 (NGG) (VMS)
CLARE BRONFMAN, ALLISON MACK,
KATHY RUSSELL, LAUREN SALZMAN,
and NANCY SALZMAN, also known as Perfect,

                              Defendants.
--------------------------------------------------------- x

**VERA M. SCANLON, United States Magistrate Judge:**

## I.      Preliminary Statement

This Order addresses four of the six categories of email communications and attachments that Defendant Bronfman asserts are privileged and, as such, should not be turned over to the Government's prosecution team, other Defendants and their counsel, or the public.  See Defendant Bronfman's Privilege Motion ("Def. Mot."), ECF No. 363.  This Order presumes familiarity with the record in this case, and it only discusses those aspects of the case relevant to the herein motion

## II.     Relevant Procedural History

In connection with its criminal investigation in this matter, by warrant the Government seized and searched Defendant Bronfman's email account.  Prior to completing its privilege

---

[1] This Order will initially be filed under seal.  By 4/10/2019, counsel are to submit a joint proposal as to those portions that they believe should be redacted and remain sealed with copies only to the Court, the privilege review team and Defendant Bronfman's counsel.  Counsel should also propose a redacted copy that may be made available to Nxivm's counsel.  The Court will consider the proposed redactions and file the Order publicly with appropriate redactions if necessary.

review, the Government filed a motion seeking an order from the Court holding that: (1) "no valid privilege can attach to communications between attorneys, applicants for United States visas, and a third party;" and (2) communications between Nxivm representatives and two Mexican attorneys with whom they communicated are not privileged under the crime-fraud exception to the attorney-client privilege.  See Gov't Mot., ECF No. 256.

Defendant Bronfman opposed the Government's motion, arguing that it was premature as the Government had not yet identified specific communications, within the scope of the warrants, that it believed were not privileged; rather, the Government had segregated 23,924 emails that were identified using attorney and law firm names as search terms and identified a few as not privileged.  See Def. Opp. 1-3, ECF No. 282.  Thus, according to Defendant Bronfman, it was inaccurate to say she had "asserted privilege" as to the "potentially privileged" records identified by the Government.  Id.  Defendant Bronfman "ask[ed] the Court to reject the Government's attempt to shift its burden to review seized documents onto the Court, and to rule that the parties should continue to engage in the process that has already begun in which (1) the taint team identifies any documents it does not believe are privileged, (2) defendants respond identifying which, if any, documents they believe are privileged, and (3) the taint team can move for in camera review of any documents which remain in dispute."  Id. at 4.

Subsequent to the Government's motion, the privilege review team produced 1,719 emails (with attachments) to Defendant Bronfman that it believed were not privileged.  After meeting and conferring, disputes remained as to 249 of those emails.   Defendant Bronfman submitted the disputed emails to the Court for in camera review, together with briefing and supporting documents.  Def. Mot., ECF No. 363.  Defendant Bronfman grouped the disputed

emails into the following six categories: (1) Dr. Park Dietz documents[2]; (2) Work-Product

documents; █████████████████ ; (4) Immigration documents; (5) Ricardo Olmedo

documents; (6) Plugged-in document.  Id.  The Government opposed Defendant Bronfman's

motion.  See Gov't Opp., ECF No. 448-1.  This Order addresses categories (3) through (6).

### III.    Legal Framework

"In considering privilege questions that arise in a federal criminal prosecution case, the

Court applies 'principles of the common law as they may be interpreted by the courts of the

United States in the light of reason and experience.'"  United States v. Hatfield, No. 06 CR 0550

(JS), 2009 WL 3806300, at *2 (E.D.N.Y. Nov. 13, 2009) (quoting Fed. R. Evid. 501).  "Thus, the

Court turns first to the decisions of the United States Supreme Court, the Second Circuit, and the

Second Circuit's district courts in settling questions concerning the attorney-client privilege and

the work product doctrine (i.e., 'courts of the United States')."  Id.[3]

### A.    Attorney-Client Privilege

The attorney-client privilege protects from disclosure "(1) a communication between

client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made

for the purpose of obtaining or providing legal advice."  In re Cnty. of Erie, 473 F.3d 413, 419

---

[2] The privilege issues as to these documents were addressed in the Order at ECF No. 502.

[3] "However, because the Court must apply privilege law in the light of reason and experience, it is entirely appropriate for federal courts to evaluate state precedent for whatever light it might shed on questions unsettled under federal law."  Hatfield, 2009 WL 3806300, at *2 (internal quotation marks omitted).  "Thus, if not bound by Supreme Court or Second Circuit precedent, the Court may properly consider both state judicial opinions and state statutes along with its own reasoned understanding, in resolving federal common law privilege questions."  Id. (internal quotation marks omitted).  "It is noteworthy . . . that the 'New York law of attorney-client privilege is, with certain exceptions, substantially similar to the federal doctrine.'"  Argos Holdings Inc. v. Wilmington Nat'l Ass'n, No. 18 Civ. 5773 (DLC), 2019 WL 1397150, at *2 (S.D.N.Y. Mar. 28, 2019) (quoting HSH Nordbank AG N.Y. Branch v. Swerdlow, 259 F.R.D. 64, 70 n.6 (S.D.N.Y. 2009)).

(2d Cir. 2007); accord United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). The purpose of

the privilege "is to encourage full and frank communication between attorneys and their clients

and thereby promote broader public interests in the observance of law and administration of

justice." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677 (1981). "It is axiomatic

that the burden is on a party claiming the protection of a privilege to establish those facts that are

the essential elements of the privileged relationship." In re Grand Jury Subpoena Dated Jan. 4,

1984, 750 F.2d 223, 224-25 (2d Cir. 1984).

     The privilege protects the advice of the attorney to the client and the information

communicated by the client to the attorney that provides a basis for giving legal advice. See

Upjohn, 449 U.S. at 390. In the context of the attorney-client privilege, "legal advice involves

the interpretation and application of legal principles to guide future conduct or to assess past

conduct." Erie, 473 F.3d 413, 419 (2d Cir. 2007) (explaining that legal advice also includes

"considerations and caveats" that are not severable from the core legal advice); see In re Grand

Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984) (noting

that the privilege is "triggered only" by a request for legal advice, not business advice).

Obtaining or providing such legal advice must be the "predominant purpose" of a privileged

communication. Favors v. Cuomo, 285 F.R.D. 187, 198 (E.D.N.Y. 2012) (quoting In re Cnty. of

Erie, 473 F.3d at 420).

     The attorney-client privilege applies not only to individuals, but also to corporate entities.

See Upjohn, 449 U.S. at 391-92; In re Six Grand Jury Witnesses, 979 F.2d 939, 943-44 (2d Cir.

1992). "Privileged corporate communications with counsel, as well as the assertion or waiver of

the privilege, must of course take place through the participation of an individual speaking for

the client—be it an officer or a director or the entire Board of Directors or (in the case of a

communication) even a low-level employee." Fitzpatrick v. Am. Int'l Grp., Inc., 272 F.R.D. 100, 107 (S.D.N.Y. 2010). The internal communication of corporate legal advice does not necessarily waive the privilege. See Upjohn, 449 U.S. at 392; see also AU New Haven, LLC v. YKK Corp., No. 15 Civ. 03411 (GHW) (SN), 2016 WL 6820383, at *2 (S.D.N.Y. Nov. 18, 2016) ("Lower courts have recognized the necessity of corporate employees discussing advice received by one agent of the corporation. 'Therefore, although dissemination of privileged information to third parties generally waives attorney-client privilege, the distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege.'" (quoting Strougo v. BEA Assocs., 199 F.R.D. 515, 519-20 (S.D.N.Y. 2001)); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 442 (S.D.N.Y. 1995) ("[S]ince the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege.").

"The attorney-client privilege does not always reside exclusively with one party." MacKenzie-Childs LLC v. MacKenzie-Childs, 262 F.R.D. 241, 249 (W.D.N.Y. 2009). For example, a joint client relationship may be established where "two or more persons jointly consult an attorney concerning a mutual concern." Id. Confidential communications made between joint clients and their mutual attorney, "although known to each other, will of course be privileged in the controversy of either or both of the clients with the outside world." Id. The scope of the joint client privilege is circumscribed by the "limited congruence of the clients' interests." In re Teleglobe Commc'ns Corp., 493 F.3d 345, 362-63 (3d Cir. 2007).

As a general matter, "[a] party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling itself from claiming that the communications were intended to be confidential." Schaeffler v. United States, 806 F.3d 34, 40

(2d Cir. 2015). The "common-interest doctrine" serves as "an exception to the general rule that voluntary disclosure of confidential, privileged material to a third-party waives any applicable privilege," and applies to materials protected by both the attorney-client privilege and the work product doctrine. HSH Nordbank, 259 F.R.D. at 71 (internal quotation marks omitted). "It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989). "The common interest doctrine precludes a waiver of the underlying privilege concerning confidential communications between the parties 'made in the course of an ongoing common enterprise and intended to further the enterprise,' irrespective of whether an actual litigation is in progress." Sokol v. Wyeth, Inc., No. 07 Civ. 8442 (SHS) (KNF), 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008) (quoting Schwimmer, 892 F.2d at 243); see Schaeffler, 806 F.3d at 40, 42 ("Parties may share a 'common legal interest' even if they are not parties in ongoing litigation," and "[a] financial interest of a party, no matter how large, does not preclude a court from finding a legal interest shared with another party where the legal aspects materially affect the financial interests."). "Thus, the common interest doctrine permits the disclosure of a privileged communication without waiver of the privilege provided the party claiming an exception to waiver demonstrates that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy." Sokol, 2008 WL 3166662, at *5. "While some case law has suggested there must be identical legal interests among the parties asserting the common interest, more recent cases have held that the parties need not have total identity of interest as long as a limited common purpose necessitates disclosure to certain parties." Egiazaryan v. Zalmayev, 290 F.R.D.

421, 434 (S.D.N.Y. 2013) (internal citations & quotation marks omitted); see Coan v. Dunne, No. 15 Civ. 00050 (JAM), 2019 WL 276203, at *1-2 (D. Conn. Jan. 22, 2019) ("The Second Circuit has taken a broad view of what may constitute a common legal interest." (citing Schaeffler, 806 F.3d at 40.

**B.    Work-product Doctrine**

"The work-product rule shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." United States v. Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995) (quoting Fed. R. Civ. P. 26(b)(3)). "The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation." Id. (citing United States v. Nobles, 422 U.S. 225, 238, 95 S. Ct. 2160 (1975)). The doctrine is "distinct from and broader than the attorney-client privilege." Nobles, 422 U.S. at 238 n.11. A document falls within the scope of the work-product privilege where it was "created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation." Haugh v. Schroder Inv. Mgmt. N. Am. Inc., No. 02 Civ. 7955 (DLC), 2003 WL 21998674, at *4 (S.D.N.Y. Aug. 25, 2003) (quoting United States v. Adlman, 134 F.3d 1194, 1195 (2d Cir. 1998)).

"The work product privilege establishes a zone of privacy for an attorney's preparation to represent a client in anticipation of litigation." In re Grand Jury Subpoena Dated Oct. 22, 2001, 282 F.3d 156, 160 (2d Cir. 2002) (citing Hickman v. Taylor, 329 U.S. 495, 510, 67 S. Ct. 385 (1947); Adlman, 134 F.3d at 1196. In Nobles, 422 U.S. at 238-39, the Supreme Court extended the privilege to materials "prepared by agents for the attorney as well as those prepared by the attorney himself," observing that "attorneys often must rely on the assistance of

investigators and other agents in the compilation of materials in preparation for trial.  See United States v. Ghavami, 882 F. Supp. 2d 532, 540 (S.D.N.Y. 2012) (quoting In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007)) ("Indeed, the work product doctrine protects more than the mental impressions and strategies of counsel: 'fact work product may encompass factual material, including the result of a factual investigation.'").

The attorney work-product doctrine "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial."  In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 383 (2d Cir.2003).  There are two types of work product, "fact" and "opinion."  In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d at 183.  Fact work product encompasses "factual material, including the result of a factual investigation."  Id.  In contrast, "opinion work product reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative, and is entitled to greater protection than fact work product."  Id. (internal quotation marks omitted).  To be entitled to protection for opinion work product, the party must show "a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation."  Id. at 183-84.

## IV.    ANALYSIS

### A.    Preliminary Matter: The Government's Initial Privilege Motion

As a preliminary matter, the Court finds the Government's initial privilege motion, ECF No. 256, to be moot without prejudice.  The motion was made before any assertion of privilege was made as to specific communications and essentially sought an advisory opinion that broad categories of communications were not privileged.  Resolving privilege disputes based on a developed record, based on specific communications, is a preferable method of resolving

privilege disputes.  See In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65, 71 (1st Cir. 2011)

("Determining whether documents are privileged demands a highly fact-specific analysis—one

that most often requires the party seeking to validate a claim of privilege to do so document by

document."); Pritchard v. Cnty. of Erie, No. 04 Civ. 534C (HBS), 2006 WL 2927852, at *3

(W.D.N.Y. Oct. 12, 2006)  (declining to resolve privilege dispute prior to deposition; noting

"normal practice" dictates that deposition should proceed so that parties may may "create a

record of where questionable inquiries, objections, or assertions of privilege arose and furnish a

context for the dispute[]," thereby enabling court to resolve the dispute on "concrete record").  In

addition, the Government's argument in its initial privilege motion was premised on there being

no set of circumstances under which privilege could be found.  As discussed below, this is not

the case as to all of the disputed documents touched on in the Government's original motion.

The Government and Defendant Bronfman have incorporated some of their arguments from the

initial briefing into the current motion which the Court addresses below.  As the Court now has

been provided with specific disputed communications for which privilege has been asserted, the

Court denies the Government's initial motion as moot without prejudice.

██  █████████

█████████████████  include four emails which Defendant Bronfman claims fall

within the attorney-client privilege and are protected as work product.[4]  Def. Mot. 8-9.  ████

████████████████████████████████████████████

████████████████████████  ███████████████

---

[4] Index No. 183 (AAAB0002199); Index No. 184 (AAAB0002200);
  Index No. 185 (AAAB049418); Index No. 186 (AAAB0029968).

███████████████████████████████████████████████

████████████████████████████████

Defendant Bronfman submitted a declaration from Attorney Nichols, ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ Attorney Nichols ████

████████████████████████████████████████ █

████████████████████████████████████████████

████████████████████████████████████████████

Attorney Nichols states that ██████████████████████████████████

████████████████████████████████████████████

██ ████████████████████████████████ ████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████ ████

████████████████████



Id. ¶¶ 9-10.  The Court has reviewed the submitted emails and finds that Defendant Bronfman's assertion of attorney-client privilege under the common-interest doctrine is well-supported. ██

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████    See East End Eruv Assoc., Inc. v. Town of Southampton, No. 13 Civ. 4810 (AKT), 2014 WL 12847276, at *6 (E.D.N.Y. Mar. 13, 2014); see Schaeffler, 806 F.3d at 40-41 ("Parties may share a 'common legal interest' even if they are not parties in ongoing litigation . . . . The dispositive issue is . . . whether the . . . common interest . . . . [is] of a sufficient legal character to prevent a waiver by the sharing of those communications.").  Unlike New York law, which restricts the common-interest doctrine to communications with respect to legal advice "in pending or reasonably anticipated litigation," federal common law lacks this requirement.  See HSH Nordbank, 259 F.R.D. at 71 n. 9 ("While federal case law makes clear that the common interest doctrine applies even where there is no litigation in progress, New York law appears to restrict the doctrine to communications with respect to legal advice in pending or reasonably anticipated litigation." (internal quotation marks omitted)).

The four communications are also protected by the work-product doctrine, ██████

██████████████████████████████████████████████████████████

Unlike disclosure of a document protected by the attorney-client privilege, voluntary disclosure of work product to a third party "does not constitute a waiver of work-product protection unless it substantially increases the opportunity for potential adversaries to obtain the information." In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982).  "This risk must be evaluated from the viewpoint of the party seeking to take

advantage of the doctrine."  Ghavami, 882 F. Supp. 2d at 540; see id. ("As far as Privilege Claimants 1 and 2 knew, they were disclosing work product not to a government agent, but to a friend who was similarly positioned in relation to the government's investigation and who had seemingly shared his own privileged information with them.").  Thus, even if the Court were to find the common-interest doctrine inapplicable, work-product protection was not forfeited as there would have been no reason for Defendant Bronfman to believe ███████████████

████████████████████████████████████████████████████████████

██████████████████  ████████████████

  The ████████████ also include an email[5] and its attachment[6] sent from

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████ ████████████████████████ ██████████

████████████████████████ ████████████████████████

██████ ████████████████████ ████████████████████

████████████████████████ For the same reasons set forth above as to the common legal interest, the Court finds that Defendant Bronfman has properly supported her claim of attorney-client privilege and work-product protection as to these documents.

---

[5] Index No. 187 (AAAB0007741).

[6] Index No. 188 (AAAB0007742).

### C. Immigration Documents

Defendant Bronfman asserts attorney-client privilege as to emails relating to the efforts of

████████████████████████████████████████████ Def. Mot. 9-15. According to

Defendant Bronfman, "[i]n addition to her role as an executive board member of NXIVM,

Bronfman held several other corporate leadership positions in [different] companies." Id. at 9.

Defendant Bronfman identified the following companies, and her role in each, as relevant to her

privilege assertion here:

- Ethical Science Foundation ("ESF") (sole owner & director);

- EXO|ESO (manager);

- Truth LLC (owner);

- Wisdom Systems (sole owner & director).

Id. at 9-10 & nn.10-14. In support of her assertions of privilege over the "immigration"

communications, Defendant Bronfman provides the following context:



Id.

The Court now addresses each subcategory of the "immigration" communications

identified by Defendant Bronfman.

    1.    

Index No. 189 (DOJ_Bronfman_Priv_00005766): This is an email from Jonathan Ware,

an attorney retained by ESF, to Defendant Bronfman, the sole owner and director of ESF,

responding to Defendant Bronfman's inquiry ████████████████████████████.

13

Def. Mot. 11-12; <u>see</u> Def. Mot., Ex. H (ESF's retainer letter with Attorney Ware).  According to Defendant Bronfman, two of these individuals, ████ ██ and ████ ███, were employees of ESF at the time of the communication.  <u>Id.</u> at 12.  The portion of the email relating to those two individuals is protected by the attorney-client privilege, as a communication between ESF's counsel (Ware) and his client (ESF, through Bronfman) concerning matters of corporate concern (██████████████████████████████████████).

As to the third individual, identified only as "Balu," Defendant Bronfman states that she "personally sought advice from her attorney regarding Balu's situation and how she might be able to legally assist her."  Def. Mot. at 12 n.18.  It is well-settled that in the context of corporate representation, "the attorney-client privilege belongs to the corporation."  <u>Fitzpatrick v. Am. Int'l Grp., Inc.</u>, 272 F.R.D. 100, 107 (S.D.N.Y. 2010) (citing <u>Commodity Futures Trading Comm'n v. Weintraub</u>, 471 U.S. 343, 348, 105 S. Ct. 1986 (1985)).  "The Court of Appeals recognizes a personal claim of privilege over conversations between a corporate employee and corporate counsel only where the employee demonstrates that he [or she] 'sought [ ] or received legal advice from [counsel] on personal matters.'"  <u>United States v. Daugerdas</u>, 757 F. Supp. 2d 364, 370 (S.D.N.Y. 2010) (quoting <u>United States v. Int'l Bhd. of Teamsters</u>, 119 F.3d 210, 215 (2d Cir. 1997) (second and third alterations in original)).  Here, Defendant Bronfman has not claimed, or offered evidence as to, the existence of a personal, rather than corporate, attorney-client relationship between her and Attorney Ware with respect to this communication.  The subject email was not a communication from an attorney to a client as it relates to Balu.  The Court finds that this email may be produced subject to redaction of all information not pertaining to Balu.

14

Index No. 190 (DOJ_Bronfman_Priv_00002654):  This is an email from Attorney Ware to Defendant Bronfman, copying Matt McMorris (ESF's treasurer) and Michele Tarzia, who,

█████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████  Def. Mot. 12 n.19.  The Government challenges the assertion of privilege based on Ms. Tarzia's inclusion on the email, stating that "it is our understanding that Michele Tarzia did not work for [ESF], and thus her inclusion on this communication between an ESF attorney and ESF employees results in a privilege waiver."  Gov't Opp. 16.

Whether an individual's presence on an attorney-client communication in the corporate setting results in waiver is a fact-specific question.  The Court ████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████  If Ms. Tarzia was an ESF employee at the time of the communication, then the email is protected by the attorney-client privilege.

   **2.**   ████████

Index No. 191; (AAAB0029757):  This communication consists of an email from Ms. Tarzia to Defendant Bronfman, in which Ms. Tarzia informs Defendant Bronfman of a payroll correction for ███████████████████████  ████████████████████, and Defendant Bronfman's response to Ms. Tarzia, on which she copied Attorney Ware.[7]  Def. Mot. 12-13.  The Court finds that that the first email, from Ms. Tarzia to Defendant Bronfman, with no counsel involved and not at counsel's direction, is not privileged as it appears to be a

_____

[7] The Government does not challenge that Ms. Tarzia was an employee of Wisdom Systems.

business, rather than legal, communication and may be produced. See BNP Paribas v. Bank of New York Trust Co., N.A., No. 11 Civ. 350 (PGG) (HBP), 2013 WL 2434686, *5 (S.D.N.Y. 2013) ("Some emails within an email chain are not covered by the same privilege or protection as the other emails within the chain. Thus, each email must be addressed individually."). The reply email from Defendant Bronfman, copying counsel, is privileged. Although "[d]ocuments prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel are generally not privileged since they are not communications made primarily for legal advice," Pacamor Bearings Inc. v. Minebea Co., 918 F. Supp. 491, 511 (D.N.H. 1996), it is apparent that Defendant Bronfman's purpose in copying counsel was to obtain his legal advice. See In re Omeprazole Patent Litig., No. 21 MDL 81 (BSJ), 2005 WL 818821, at *7 (S.D.N.Y. Feb. 18, 2005) ("The request for confidential legal assistance need not be expressly stated when the request is implied."), aff'd, 227 F.R.D. 227 (S.D.N.Y. 2005).

3.    

Index No. 192; (AAAB0010869): ███████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██ The communication between Defendant Bronfman and Attorney Winkler is a communication between an attorney and her client (Nxivm, through Bronfman). The Government does not dispute that Attorney Winkler and Frontier Solutions represented Nxivm in immigration matters. The communication between Defendant Bronfman and ██████ is protected by attorney-client privilege as it is communication shared between corporate employees for the purpose of sharing or securing the legal advice of the corporation's counsel.

16

See Valassis Commc'ns, Inc. v. News Corp., No. 17 Civ. 7378 (PKC), 2018 WL 4489285, at *3

(S.D.N.Y. Sept. 19, 2018) ("Documents conveying legal advice may be distributed within a

corporation without vitiating the attorney-client privilege.").

      **4.**    ████ ██ ██

    Defendant Bronfman asserts attorney-client privilege on behalf of Nxivm as to four

emails related to ██ ██ █.[8]  Def. Mot. 13-14.   According to Defendant Bronfman, ███

██ ████████████████████████████ ████████████████

████████████████████████████████████████

████████████████████████████████████████

███████     Defendant Bronfman asserts that the communications are protected by attorney-

client privilege because they constitute intra-corporation distribution of legal advice from

Nxivm's counsel, and because Nxivm and ███████ had a shared legal interest in ████████

███████     Again, the Government does not dispute that Frontier Solutions attorneys represented

Nxivm as to immigration issues.  As with the ████ emails, the communications are privileged

as legal advice shared within a corporation.

      **5.**    ████████ ██ ███

    There are three communications involving ████████ ██ for which Defendant

Bronfman asserts the attorney-client privilege.[9]  Def. Mot. 14.  Defendant Bronfman states that

██ ██ ████████████████████████████████████

---

[8] Index No. 193; (AAAB0061864); Index No. 194 (AAAB0037619);
  Index No. 195; (AAAB0065028); Index No. 196 (DOJ_Bronfman_Priv_00007633).

[9] Index No. 197 (DOJ_Bronfman_Priv_00001824);
  Index No. 198 (DOJ_Bronman_Priv_00001862);
  Index No. 199 (DOJ_Bronfman_Priv_00001827).

███████████████████████. Id. The communications at issue involve Defendant Bronfman, ████ ████ and the law firm Foster Quan, ████████████████████████████ ███████████. Again, the Government does not dispute that Foster Quan represented Truth LLC, a Bronfman company. In light of █████████ status as an employee of Truth LLC at the time of the communications and the company's interest in having ████ ████ continue as an employee with lawful immigration status, both Defendant Bronfman and █████████ are covered by the attorney-client privilege between the corporation and its counsel. These communications, except for the introductory email from an individual named Farouk Rojas, are covered by the attorney-client privilege. Only the Rojas email (which appears in each of the three email strings, Index Nos. 197-199), may be produced.

### 6.   M███████ F███████

The majority of the disputed communications in the "immigration" category relate to efforts to obtain a visa to the United States for M███████ F███████, a Mexican national. Def. Mot. 14-15. Many of these communications involve emails between Defendant Bronfman, Ms. F███████ and attorney John Sandweg of Frontier Solutions.[10] Defendant Bronfman asserts that these communications are covered by the attorney-client privilege as she and Ms. F███████ reasonably believed they were operating "under a common interest agreement or as joint clients." See Def. Mot. at 14-15. Wisdom Systems, a company owned by Defendant Bronfman, retained Frontier Solutions as attorneys in May 2015. Id. at 15. Defendant Bronfman submitted a declaration from Attorney Sandweg, to which he attaches a copy of the engagement letter between Frontier Solutions and Wisdom Systems. The "Scope of Representation" provision therein states, in relevant part:

---

[10] Index Nos. 205-235.



Wisdom Systems Engagement Letter ¶ 1.

In July 2015, Ms. █████ entered into her own representation agreement with Frontier Solutions (the "█████ Engagement Letter"), a copy of which was submitted as an exhibit to the Sandweg Declaration. The "Scope of Representation" provision of the █████ Engagement Letter states: ████████████████████████████



████████████ █████ Engagement Letter ¶ 1. A provision entitled █████ ████████████████████████████████████████ ████████████ However, you are our client and we represent you and will only pursue your best interests in this matter. Furthermore, we will not share your confidences █████ ████████, except as you specifically permit." Id. ¶ 6.

Defendant Bronfman asserts that "[i]t is evident from the correspondence [subject to the privilege dispute] that both Bronfman and █████ believed they were operating under a common interest agreement or as joint clients of Frontier with a mutual legal interest in obtaining a valid U.S. visa for █████" Def. Mot. at 15. According to Defendant Bronfman, both she and Ms. █████ "reasonably believed they were jointly seeking ways in which █████ could legally enter the country to care for their mutual friend [Pamela Cafritz, who was dying of cancer], and there was no apparent (or indeed any) conflict between their interests in seeking that result." Id. The record does not suggest that Ms. █████ would work for or with a Bronfman-owned or -led company.

The Court finds that Defendant Bronfman has failed to demonstrate that she and Ms. ███ were joint clients of Frontier Solutions or that they had a "common interest agreement." As to the argument that a joint client relationship existed, this argument is belied by the above-referenced engagement letters. The ███ Engagement Letter states that Ms. ███ is Frontier Solutions' client and that Frontier Solutions "represent[s] [Ms. ███] and will only pursue [Ms. ███] best interest in this matter." ███ Engagement Letter ¶ 5. The engagement letter further states that Frontier Solutions will "not share [Ms. ███] confidences ███████████ except as [Ms. ███] specifically permit[s]." Id. These provisions are inconsistent with a joint client relationship, where sharing of information is necessarily the default rule and every client has a right to full information about the representation. The evidence demonstrates that Defendant Bronfman and Ms. ███ were concurrent clients of Frontier Solutions, not joint clients.

Defendant Bronfman's assertion of a common-interest privilege is unavailing. To the extent a common-interest doctrine can be applied where, as here, parties are represented by the same attorney, Defendant Bronfman has not established that she shared a common legal interest with Ms. ███ sufficient to invoke the common-interest doctrine. Unlike with each of the other visa applicants discussed above, Defendant Bronfman does not argue that Ms. ███ visa efforts were in connection with one of Defendant Bronfman's companies. Defendant Bronfman's personal desire for Ms. ███ to be successful in her visa efforts is not the sort of common legal interest that has been recognized as permitting the attorney-client privilege to be extended between them. See, e.g., Miller UK Ltd. v. Caterpillar, Inc., 17 F. Supp. 3d 711, 732 (N.D. Ill. 2014) ("A shared rooting interest in the successful outcome of a case . . . is not a common legal interest."). United States immigration laws and regulations do not provide for

20

visas that allow long term entry to the United States for the purpose of supporting personal nonfamilial relationships, and where Defendant Bronfman was not even the person for whom Ms. █████ sought to provide assistance, there is no basis to find a common legal interest between Ms. █████ and Defendant Bronfman, even where their desire to assist their mutual friend in ill health was well-intentioned.

There are also five emails related to Ms. █████ involving attorney Jonathan Ware.[11] Defendant Bronfman addresses these emails in a footnote, stating: "The communications related to M█████ █████ that involve attorney Jonathan Ware reflect legal advice that Bronfman obtained from Ware–sharing it with █████ would not break the work product protection covering Ware's mental impressions and strategic advice." Def. Mot. 15 n.22. As with the other █████ related communications, Defendant Bronfman has not shown that she had a legal–as compared to personal–interest in Ms. █████ visa concerns discussed in these emails. See SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props LLC., 2002 WL 1334821, at *4 (finding no common interest where party's "legal position w[ould] be unaffected by the outcome of th[e] case"). Communications with an attorney about an issue in which one has no legal interest are not protected by the attorney-client privilege. In addition, Defendant Bronfman has not shown that these communications are entitled to the protection of the work-product privilege. "It is well established that work-product privilege does not apply to" documents that are prepared "in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998). The claimant of the privilege bears the burden of showing "that the information it claims is protected was not prepared in the ordinary course of business or would not have come into

---

[11] Index Nos. 200-204.

existence in essentially the same manner irrespective of the litigation." Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc., No. 16 Civ. 6517 (SJF) (AKT), 2018 WL 4864833, at *3 (E.D.N.Y. Sept. 28, 2018).  Defendant Bronfman has not asserted or shown evidence that the efforts to obtain a visa for Ms. F███████ and the communications arising from those efforts would not have taken place in the absence of actual or anticipated litigation.  See Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 107 (S.D.N.Y. 2007) (finding the work-product privilege did not apply where the party claiming the privilege did "not attempt to provide a witness to attest to the question of what [it] 'would have' done had there been no threat of litigation, although it is a point on which [it] potentially could offer testimony," and where it did not "affirmatively assert that the [allegedly privileged materials] would not have been commissioned had there been no potential for litigation") (emphasis in original).  The documents related to Ms. F█████ may be produced.

### D.    Ricardo Olmedo Documents

This category of documents includes four emails in which Defendant Bronfman sent a picture of an individual to Ricardo Olmedo then forwarded her email to Alejandro Betancourt. Def. Mot. 16.[12]  Ricardo Olmedo is "a Mexican attorney associated with Olmedo Gaxiola & Abogados law firm who represented NXIVM on a variety of matters dating back to approximately 2013."  Id.  According to Defendant Bronfman, at the time these emails were sent, Olmedo Gaxiola & Abogados was representing NXIVM ██████████████████████ ████████████████████████████████████████████████████  In emailing the pictures to Attorney Olmedo, Defendant Bronfman says that she was "acting on behalf of [NXIVM]," and "providing NXIVM's attorney with relevant information for him to

---

[12] Index Nos. 236-243.

use in advising his client."  Id.  According to Defendant Bronfman, "[c]ommunications with Alejandro Betancourt do not break the privilege because Betancourt was at the time a member of the executive Board of NXIVM with Bronfman."  Id.

The Court finds that Defendant Bronfman has failed to establish that these emails are privileged.  First, the emails sent from Defendant Bronfman to Attorney Olmedo each consist only of a picture with a short description such as "[t]his is what she looked like about 8 months ago," or no accompanying text at all.  Documents or other communications that a client transmits to a lawyer neither gain nor lose privileged status as a result of the transfer.  See Fisher v. United States, 425 U.S. 391, 404, 425 U.S. 391 (1976).  Unless a pre-existing document was itself privileged before it was communicated to an attorney, it does not become privileged merely because of the transfer.  Id.  Thus, a court will consider a pre-existing document to be privileged only if the document was kept confidential and was prepared to provide information to the lawyer in order to obtain legal advice.  See United States v. DeFonte, 441 F.3d 92, 94 (2d Cir. 2006).  Defendant Bronfman has not provided any information about the purpose of sending the pictures to Attorney Olmedo or the nature of the legal advice it was intended to facilitate.  See Ambrose v. City of White Plains, No. 10 Civ. 4946 (CS), 2011 WL 13290651, at *4 (S.D.N.Y. Sept. 30, 2011) ("Assertions that the advice was legal in nature, without more, are insufficient to meet Defendants' burden, and Defendants must provide details suggesting that the advice provided was 'legal' advice, as opposed to, for example, business or policy or labor negotiation advice.") (citing In Re Grand Jury Subpoena Dated July 6, 2005, 256 F. App'x 379, 382 (2d Cir. 2007)); see also Tessera v. UTAC (Taiwan) Corp., No. 10 Civ. 4435 (EJD) (HRL), 2015 U.S. Dist. LEXIS 118803 (N.D. Cal. Sept. 4, 2015) (privilege proponents did not meet their burden of demonstrating that a privilege applies to a photo sent by a client to its attorney).

The emails forwarded to Ms. Betancourt do not contain advice from Attorney Olmedo, or reflect information he needed to give advice.  These documents may be produced.

This category also includes four records[13] that are "drafts of the same email Bronfman was writing to Diego Duran and Olmedo," in which Defendant Bronfman, "acting in her capacity as executive board member of NXIVM, ███████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████  These documents may not be produced.

### E.    Plugged-in Document

Defendant Bronfman asserts the privilege of Plugged-in LLC ("Plugged-in") over an email from Plugged-in's counsel to Defendant Bronfman ██████████████

█████████████████  Def. Mot. 16.  Defendant Bronfman states ████████

████████████ that Arlen Olsen, of the law firm Schmeiser Olsen & Watts, was Plugged-in's counsel.  Id.  According to Defendant Bronfman, ████████████████

██████████████████████████████████

████████████████████████████████  Id.

The forwarded email is from a paralegal at Schmeiser Olsen & Watt to Defendant Bronfman, copying Arlen Olsen and two other individuals not identified by Defendant Bronfman, but who appear, based on their email addresses, to also work at Schmeiser Olsen & Watt.  Id.  ██████████████████████████████████

---

[13] Index Nos. 244-248.
[14] Index No. 249 (AAAB0011882).



In re Regents of the Univ. of Cal., 101 F.3d 1386, 1389-90 (Fed. Cir. 1996).

## V.    Conclusion

For the reasons set forth above, the ████████████ (Index Nos. 183-188) and Plugged-In document (Index No. 249) shall not be released any further.  As to the Ricardo Olmedo documents: the documents at Index Nos. 244-248 shall not be released any further, but the records at Index Nos. 236-243 are not privileged and may be disclosed.  As to the Immigration documents, the Court directs as follows:

- The ████████ document (Index No. 192) and ████████ documents (Index Nos. 193-196) shall not be released any further.

- As to ████████, the document at Index No. 189 may be disclosed subject to redaction of all information not pertaining to Balu; Defendant Bronfman may submit additional evidence in support of her privilege assertion as to the document at Index No. 190 by April 10, 2019.

- The ████ document (Index No. 191) may be disclosed subject to redaction of Defendant Bronfman's response to Ms. Tarzia's email.

---

15 ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

- As to the ▮▮▮▮▮▮▮▮ documents (Index Nos. 197-199), only the introductory email from Farouk Rojas in each document may be disclosed.

- The M▮▮▮ F▮▮▮ documents (Index Nos. 200-235) may be disclosed.

Dated:  April 6, 2019
      Brooklyn, New York

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge