# HAFETZ & NECHELES LLP
ATTORNEYS AT LAW

---

10 East 40th Street, 48th Floor
NEW YORK, N.Y. 10016
TELEPHONE: (212) 997-7400
TELECOPIER. (212) 997-7646

February 21, 2019

**VIA ECF (Under Seal and Provided Only to Taint Team and the Court)**
Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *United States v. Raniere, et al.*, 18-cr-204 (NGG) (VMS)

Dear Judge Scanlon:

    We write on behalf of defendant Clare Bronfman, following the Court's Order at the February 5, 2019 conference. The taint team produced three sets of documents to defendant on December 21, 2018, January 18, 2019, and February 11, 2019 that the taint team believes are not privileged. These three sets of documents include 1,719 emails and attachments that pertain to Ms. Bronfman. This submission addresses the 249 documents as to which there remains a dispute between the taint team and defendant after meeting and conferring to try to resolve the question of privilege.[1] We have attempted to group these documents based on subject matter for ease of review. The documents can be grouped into six categories that we address below:[2]

1. Dr. Park Dietz Documents
2. Work Product Documents
3. ███████████████
4. Immigration Documents
5. Ricardo Olmedo Documents
6. Plugged-In Document

---

[1] Many of these 249 documents are part of the same email chain and/or cover similar topics, so there are many fewer than 249 unique documents. *See* Appendix A, Bronfman List of Disputed Documents.

[2] These categories also correspond to the tabs on the binders we have prepared for Your Honor's *in camera* review.

1

HAFETZ & NECHELES LLP

1. <u>Dr. Park Dietz Documents</u>

Attorney Bob Crockett had represented NXIVM for many years, ███████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████ Crockett hired Dr. Park Dietz to assist him in his representation of NXIVM. The taint team has identified numerous communications related to Dietz's work on behalf of NXIVM, performed under the supervision of Crockett, as not privileged, presumably because of the inclusion of Dietz on these communications. *See* Index Nos. 1 through 160. However, each of the Dietz documents included herein as to which defendant maintains privilege are plainly protected by the attorney-client privilege and attorney work product.



Crockett's communications with Bronfman, acting in her capacity as executive board member of NXIVM, and Dietz, hired by Crockett to assist in his litigation strategy, clearly fall within the attorney-client privilege and are protected as attorney work product as well. *United States v. Kovel* established the ability for attorneys to seek assistance from third-parties when

---

[3] ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████

[4] To the extent any information was disclosed to the press, we are not maintaining privilege over those communications, reports, or statements. With respect to Index Nos. 22-33 (AAAB0017678, AAAB0022445, AAAB0065508, AAAB0008530, AAAB0037490, AAAB0045641, AAAB0055652, AAAB0037149, AAAB0009529, AAAB0016817, AAAB0052497, and AAAB0058781), which contain in part communications with the press, we agree that these portions of the emails are not privileged, and propose to allow the taint team to disclose redacted versions of these documents to the trial team. Any communications between Dietz, Crockett, and/or Bronfman regarding drafts of those communications to the press or strategy surrounding those communications are subject to attorney-client privilege pursuant to the *Kovel* doctrine.

representing a client without breaking privilege. The critical inquiry is whether "the communication [was] made in confidence for the purpose of obtaining legal advice from the lawyer." *Kovel*, 296 F.2d 918, 919 (2d Cir. 1961). The *Kovel* privilege *"*is now recognized as extending to representatives of the attorney, such as . . . non-testifying experts." *United States Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (indicating that "the attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in usable form information obtained from the client"). The *Kovel* court also made clear that the privilege is equally applicable to direct communications between the expert and the client, noting that "if the lawyer has directed the client, either in the specific case or generally, to tell his story in the first instance to an [expert] engaged by the lawyer . . . communications by the client reasonably related to that purpose ought fall within the privilege." *Kovel*, 296 F.2d at 922 (2d Cir. 1961). The *Kovel* court explained that "there can be no more virtue in requiring the lawyer to sit by while the client pursues these possibly tedious preliminary conversations" with the expert "than in insisting on the lawyer's physical presence while the client dictates a statement to the lawyer's secretary." *Id.*



The fact that Dietz exchanged some limited correspondence with media outlets and that a summary report of his findings was provided to the New York Times does not waive privilege or work product protection as to these materials that were not distributed. Crockett Decl., ¶ 10. Even if an expert, such as a psychiatrist, conducts examinations and plans to *testify* to his findings at trial, that does not necessarily mean he is compelled to turn over all work product from his various sessions. The court in *Misek-Falkoff v. Int'l Bus. Machs. Corp.* found that an expert psychiatrist who was hired for purposes of litigation to render an opinion could "testify at trial based on the examination to the extent necessary," without waiving privilege with respect to all communications. 144 F.R.D. 48, 50-51 (S.D.N.Y. 1992) (acknowledging that "[c]ommunications between a patient and a psychologist, psychiatrist or psychotherapist are usually much more intensely personal than those with physicians and other doctors . . . [and] [d]isclosure of such communications and diagnoses could be considered embarrassing and an intrusion into one's privacy").

**HAFETZ & NECHELES LLP**

Based on this evidence and applicable case law, we submit that the enclosed emails relating to Dietz's engagement by Crockett squarely fall within the *Kovel* definition of expert assistance and should be protected by attorney-client privilege and related work product. To the extent that Bronfman ▮▮▮▮ were included in communications, they do not break privilege because they were acting in their capacities as executive board members of NXIVM ▮▮▮▮ communicating with NXIVM's attorney and the expert retained by that attorney.

a. ▮▮▮▮

There are seven emails, (Index Nos. 154-160) ( ▮▮▮▮



[5] "The attorney-client privilege applies to preliminary discussions about representation between a lawyer and prospective client, even where the lawyer ultimately declines to provide representation or the client decides not to employ the lawyer." *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 434 n.8 (E.D.N.Y. 2006).

---

[5] Note that we did not maintain privilege over emails AAAB0013292, AAAB0017062, AAAB0032830, AAAB0034909, and AAAB0039736 (attached as Exhibits B, C, D, E, and F, respectively) because they were not seeking legal advice and were merely scheduling meetings. ▮▮▮▮.

[6] ▮▮▮▮

**HAFETZ & NECHELES LLP**

███ — ████████████████████████████████████████████
██. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████

 Emails Index Nos. 154-160 ████████████████████████████
████████████████████████████████████████ protected attorney-client communications ████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████

2. <u>Work Product Documents</u>

There are several documents that all implicate the work product doctrine. For ease of analysis we have grouped these documents together as many of the same legal principles are applicable to them all.

The work product rule protects documents that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). There is no requirement that "documents be prepared at the behest of counsel, only that they be prepared because of the prospect of litigation." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010) (internal quotation mark and citation omitted). The courts have recognized that often an attorney "must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," and thus "the doctrine protect[s] material prepared by agents for the attorneys as well as those prepared by the attorney for himself." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). This includes "work by those enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparation for litigation." *Gucci Am., Inc.*, 271 F.R.D. at 74 (S.D.N.Y. 2010) (internal citation omitted) (s*ee also Costabile v. Cnty. of Westchester*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008) (finding that the private investigator's report was work product because it "was clearly prepared on behalf of plaintiffs' former counsel in anticipation of litigation")). Courts have also extended the work product doctrine to cover work product produced by a client at the direction of counsel in anticipation of litigation. *Gucci Am., Inc.*, 271 F.R.D. at 74 (S.D.N.Y. 2010) (collecting cases).

---

[7] *See*, e.g., Barry Meier, "Inside a Secretive Group Where Women Are Branded," *New York Times*, 17 October 2017, https://www.nytimes.com/2017/10/17/nyregion/nxivm-women-branded-albany.html; Laura Barcella, "Is NXIVM a Cult? What We Know," *Rolling Stone*, 21 November 2017, https://www.rollingstone.com/culture/culture-news/is-nxivm-a-cult-what-we-know-129600/; Frank Parlato, "12-year NXIVM veteran speaks out," *FrankReport*, 6 August 2017, https://frankreport.com/2017/08/06/12-year-nxivm-veteran-speaks-out/.

HAFETZ & NECHELES LLP

### a. Pam Nichols Representation

Index Nos. 161 and 162 (DOJ_Bronfman_Priv_00006564 and DOJ_Bronfman_Priv_00006586) reflect attorney-client communications and work product ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ who was hired by Pam Nichols, an attorney at O'Connell & Aronowitz. Declaration of Pamela A. Nichols, hereinafter "Nichols Decl.," ¶ 5. Nichols has a long history of representing both NXIVM and Bronfman in a variety of litigation matters. In this instance, Nichols was acting as counsel for NXIVM ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nichols retained ▮▮ in the case pursuant to a *Kovel* agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The emails copy only Bronfman and ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nichols Decl., ¶ 4. ▮▮▮ was simply sending ▮▮▮▮▮▮ to the client, Bronfman and Keeffe, and the attorney, Nichols, and thus his communication is protected work product and an attorney-client communication.

Work product also protects the communications between company employees if they are acting at the direction of counsel in preparing material[8] to be shared with counsel for purposes of litigation. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ worked on various litigation matters throughout her time at NXIVM and was acting in this capacity when she helped to create, or oversaw the creation of, the documents in question. See Nichols Decl., ¶ 4. ▮▮▮▮ is simply sharing work product with

---

[8] *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 640 (E.D.N.Y. 1997) (citation omitted) (ruling "the first and third prongs of the tripartite [work product] test set forth in Rule 26(b)(3) clearly are met . . . [where the] materials constitute documents . . . [and] they were prepared by a Defendant employee").

HAFETZ & NECHELES LLP

Bronfman in her capacity as an executive board member of NXIVM also involved in NXIVM's legal affairs, and Bronfman immediately forwarded this information on to NXIVM's attorney, Nichols, demonstrating that these documents were work product prepared for an attorney in anticipation of litigation.

    *b. Diego Duran Representation*

  Diego Ruiz Duran of CLG Abogados is an attorney based in Mexico who represented NXIVM on a number of matters ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[9]

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The inclusion of Alejandro Betancourt on this email does not break privilege as he was at the time a fellow executive board member of NXIVM.

  The work product ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ was prepared by ▇▇▇▇▇▇▇▇▇. *See* Index No. 177 (DOJ_Bronfman_Priv_00000318). ▇▇▇▇▇▇▇ is a NXIVM-affiliated person ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[9] In light of the government's letter filed last night related to Diego Duran and Olmedo Gaxiola, ECF No. 361, we will coordinate with counsel for NXIVM to address the government's outstanding questions related to NXIVM's attorney-client relationship with Duran and Gaxiola.

HAFETZ & NECHELES LLP

3. ███████████.

████████There are four emails (Index Nos. 183-186 ██████████████████
███████████████████████████████████████████
██████████ Defendant asserted privilege over these communications pursuant to the common interest and work product doctrines.



████████The common interest doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). The rule can be invoked whether or not an action has been commenced. *Id.* at 243-44.

████████████████████████████ legal interests need not be identical to be protected by the common interest doctrine. *Am. Eagle Outfitters, Inc. v. Payless Shoesource, Inc.*, No. CV

8

HAFETZ & NECHELES LLP

07-1675 (ERK)(VVP), 2009 U.S. Dist. LEXIS 105608 (E.D.N.Y. Nov. 12, 2009) (rejecting requirement that common interest be "identical" and not merely "similar," and holding that the common interest rule applied where two parties "share[d] a common legal interest that entitles them to the protections afforded by the common interest rule, at least with respect to matters at issue here where there [sic] interests do not diverge"). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ *See also Eugenia VI Venture Holdings v. Chabra*, 2006 U.S. Dist. LEXIS 23421, at *3 (S.D.N.Y. Apr. 25, 2006) (applying the common interest doctrine where a managing partner shared legal advice with the board of directors, and finding that "each had reason to believe that all of them might be named as defendants in a lawsuit . . . [and the managing partner] was sharing, with the directors, legal advice that was being given to help him and them to formulate a common strategy to defend themselves").

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are also protected as work product. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even if the documents were not protected under the common interest doctrine, they would be protected as work product, because sharing the communications ▮▮▮▮▮▮▮▮▮▮ did not materially increase the likelihood that the matters would be disclosed to the opposing side. *Magee*, 172 F.R.D. at 641 (E.D.N.Y. 1997) ("the privilege is not automatically waived by any disclosure to a third party. . . . [p]rotection is waived only if such disclosure substantially increases the opportunity for potential adversaries to obtain the information."). *See also Am. Eagle Outfitters, Inc.*, 2009 U.S. Dist. LEXIS 105608 at *11 ("Given the overriding common interest shared by Jimlar and Payless, signified by their joint defense agreement, the work product they share with one another remains protected since the sharing of those matters with one another does not materially increase the likelihood that the matters will be disclosed to AEO.").

Finally, Index Nos. 187 and 188 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4. <u>Immigration Documents</u>

In addition to her role as an executive board member of NXIVM, Bronfman held several other corporate leadership positions in companies such as: Ethical Science Foundation[10],

---

[10] Bronfman is the sole owner and director of the Ethical Science Foundation ("ESF").

HAFETZ & NECHELES LLP

EXO|ESO[11], Truth LLC[12], and Wisdom Systems[13]. ████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

      As outlined in Defendant Bronfman's January 12, 2019 Opposition to the Government's Memorandum Regarding Defendants' Assertions of Attorney-Client Privilege (ECF No. 282), a U.S. corporation is the only entity authorized to petition United States Customs and Immigration Services ("USCIS") for the majority of employment-based visas. *See* 8 CFR § 204.5(c). Other USCIS regulations also make clear that only the petitioner, not the beneficiary, has standing to appear before the agency. *See* 8 C.F.R. §§ 103.2(a)(3) & 103.3(a)(1)(iii)(B) (indicating that "[a] beneficiary of a petition is not a recognized party" and "the person or entity with legal standing in a proceeding … does not include the beneficiary of a visa petition").

      It follows that the company, whether it be NXIVM, Ethical Science Foundation, EXO|ESO, Truth LLC, or Wisdom Systems, is the client when working with an attorney to secure an employment-based visa. To the extent that Bronfman, on behalf of the client, is communicating with an attorney about these various employment-based visa applications, those emails fall squarely within protected attorney-client communications. Incorporating other company employees on these communications, as explained in Bronfman's January 12, 2019 submission to the Court, does not break that privilege. This is well established by case law and

---

[11] Bronfman is the manager of EXO|ESO.

[12] Bronfman is the owner of Truth LLC.

[13] Bronfman is the sole owner and director of Wisdom Systems.

[14] An H-1B visa is a temporary work visa to work in a specialty occupation where the prospective employer must first file a petition with United States Customs and Immigration Services ("USCIS") (Form I-129). The employer may also need to obtain a labor certification from the Department of Labor before filing the I-129. After that is approved, the employee can apply for a temporary work visa. Once the petition is approved USCIS will send the employer a Notice of Action, Form I-797. *See generally* https://travel.state.gov/content/travel/en/us-visas/employment/temporary-worker-visas.html#overview.

[15] Under NAFTA the TN nonimmigrant classification allows Mexican citizens to seek temporary entry into the U.S. to engage in business activities at a professional level. The types of professionals who qualify are accountants, engineers, lawyers, pharmacists, scientists, and teachers. Prior to applying for a TN visa, a prospective applicant must have prearranged a full-time or part-time job with a U.S. employer. *See generally* https://www.uscis.gov/working-united-states/temporary-workers/tn-nafta-professionals.

[16] An O-1 visa is a temporary work visa for persons with extraordinary achievement in the motion picture and television fields (among others), including individuals providing essential services in support of such persons. *See generally* https://travel.state.gov/content/travel/en/us-visas/employment/temporary-worker-visas.html#overview/.

**HAFETZ & NECHELES LLP**

we outline below, as well as in our privilege log, the various roles of each relevant individual within the respective companies.

The government concedes that where Bronfman consults an immigration attorney and no visa applicant is copied on the communication that the communication is privileged. Tr. of 2/11 Conf. at 54, 58-59. The government takes issue with communications on which a third-party visa applicant, or beneficiary of the legal advice, is copied, and asserts that there are no circumstances in which such communications can be privileged.

First, the government's argument fails to account for the work product doctrine, which is applicable to the context of immigration petitions. An immigration petition can be the first step in what can evolve into an adversarial process. As set forth in the Administrative Appeals Office ("AAO") Practice Manual, available at https://www.uscis.gov/aao-practice-manual, when a USCIS field office issues an unfavorable decision for an application or petition, the appellant may appeal the decision to the AAO. The AAO has jurisdiction over most employment based visa petitions and EB-5 immigrant investor petitions. AAO Practice Manual, Section 1.4(a). Beyond seeking relief from the AAO, certain visa applicants can seek relief for a denied petition by filing for declaration judgment under the Declaratory Judgment Act, 28 U.S.C. 2201. In addition, the Administrative Procedure Act, 5 U.S.C. 701 can be used to bring a lawsuit to overturn a USCIS contrary to statutes or regulation. *See Citizens to Preserver Overton Park, Inc., v. Volpe*, 401 U.S. 402, 414, 420 (1971). Certainly, agency decisions in the immigration context can be subject to litigation, and thus work product protection applies. *See Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F.Supp.2d 206, 221 (D.D.C. 2012) ("the litigation anticipated by the work product can include proceedings before administrative tribunals if they are of an adversarial nature") (citation omitted).

Moreover, as explained in our opposition papers to the government's motion, in many instances visa applicants who are included on emails can be covered either as a current or prospective employee of the company and thus as a joint client, or under a common interest agreement, depending on the circumstances. We address below the taint team's concerns for the various visa applicants identified by the taint team.[17] These descriptions are not meant to be a comprehensive description of each individual's immigration history, but rather to provide the relevant context for the documents in dispute.

   *a.* ▮▮▮▮▮▮▮▮



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ work with ESF. ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[17] Defendant determined not to challenge the taint team's assertion with respect to privilege on numerous of the immigration-related documents identified. These determinations were based on the specifics of the document identified and should not be interpreted to mean that Defendant waives privilege with respect to all documents related to that visa applicant. Indeed, with respect to some of the individuals discussed below, Defendant did not assert privilege as to some documents identified by the taint team but does not assert privilege as to others.

HAFETZ & NECHELES LLP

███████████████████████████████████████████████
█████████████████████████████

    ███████████████████████████████████████████
███████████████████████████ █████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████

    ███████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████ █████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

        b.  ███████

    ███████████████████████ ████████████████████
██████████████ █████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████

    ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████. ████████████████████████████
█████████████████████ ██████████████████████████
████████████████████████████████████ ████████████

---

[18] ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████

[19] Matt McMorris was treasurer for ESF, ███████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████

**HAFETZ & NECHELES LLP**

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████

    *c.* ███████████████

███████████████████████████ obtained an H-1B visa through NXIVM ███████
███████████████████████████████████████████
██ ███████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████ it is well established by case law that communications among corporate employees "regarding legal advice given by counsel to the corporation" is protected by the attorney-client privilege. *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995).[20]

    *d.* ███████████████

███████████████████████████████ working with NXIM on a TN visa █
██ ███████████████████████████████████████
███████████ Bronfman worked on behalf of NXIVM with the Frontier Solutions ████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

---

[20] "[T]he distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege." *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519-20 (S.D.N.Y. 2001); *see also Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015).

HAFETZ & NECHELES LLP



As such, these communications with counsel for the company are protected by the attorney-client privilege.

e. █████████

Foster Quan worked ██████████████ █████████████████████████████ ████████████████████████████ Foster Quan was Bronfman's counsel but also represented ████ in helping h██ ████████████████ ███████████████████

These communications between Bronfman, ██████████████ Foster Quan are covered by the common interest privilege:

- Index No. 197 (DOJ_Bronfman_Priv_00001824);
- Index No. 198 (DOJ_Bronfman_Priv_00001826); and
- Index No. 199 (DOJ_Bronfman_Priv_00001827).

f. M████ F████ [21]

The remainder of the immigration documents relate to M████ F████. F████ was the subject of the government's privilege motion and many of these issues have already been briefed before Your Honor. Without repeating the entirety of those arguments, we will attempt to give greater context to the nature of the relationship between Frontier Solutions, F████

---

[21] Includes Index Nos. 200-235.

HAFETZ & NECHELES LLP

and Bronfman. We have also included a Declaration from John Sandweg and the relevant engagement letters, as Exhibits A and B to the Declaration, respectively.[22]

  Bronfman's company Wisdom Systems retained Frontier Solutions ▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ R▬▬▬▬ signed her own retainer agreement with Frontier Solutions in July 2015. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.*

▬▬▬▬▬▬▬▬ The intent of the client is critical to the determination of whether the communication should remain privileged. *United States v. Dennis*, 843 F.2d 652, 657 (2d Cir. 1988) ("The key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential.") (citing *United States v. Tellier*, 255 F.2d 441, 447 (2d Cir.), *cert. denied*, 358 U.S. 821, 3 L. Ed. 2d 62, 79 S. Ct. 33 (1958)).

  Their belief that the communications were privileged was not unreasonable under the circumstances. Both Bronfman and R▬▬▬▬ had signed engagement letters with Frontier. During the time that both were represented by Frontier, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[22] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

15

HAFETZ & NECHELES LLP

5. <u>Ricardo Olmedo Documents</u>

Ricardo Olmedo is a Mexican attorney associated with the Olmedo Gaxiola & Abogados law firm who represented NXIVM on a variety of matters dating back to approximately ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Communications with Alejandro Betancourt do not break privilege because Betancourt was at the time a member of the executive board of NXIVM with Bronfman. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Bronfman was clearly communicating with these attorneys for purposes of seeking legal advice and the attorney-client privilege should apply.

6. <u>Plugged-In Document</u>

In the email dated April 19, 2016, Index No. 249 (AAAB0011882), Bronfman forwarded a communication from paralegal Lisa Molloy ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ It is well established case law that "a privileged communication does not lose its protection if an executive relays legal advice to another member of management who shares responsibility for the subject matter underlying the consultation." *EEOC v. Sterling Jewelers, Inc.*, No. 08-CV-0706, 2017 U.S. Dist. LEXIS 3011, at *9 (W.D.N.Y. Jan. 3, 2017) (internal citations omitted). For this reason Bronfman asserts an attorney-client privilege over this communication.

---

[23] As noted previously, we are coordinating with counsel for NXIVM to gather additional information for the Court with respect to the representation by Gaxiola.

16

HAFETZ & NECHELES LLP

   Defendants thus respectfully request that the Court issue an Order directing the taint team not to disclose any of the documents accompanying this letter brief to the trial team, or in the alternative hold a hearing regarding the factual issues raised herein, and grant such other relief as the Court may find just and proper.

                Respectfully submitted,

                /s/

                Kathleen E. Cassidy

cc:  AUSA Shannon Jones, Privilege Review Attorney (by email)
    AUSA Philip Pilmar, Privilege Review Attorney (by email)