

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AES:SCJ/PP
F. #2017R01840

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 27, 2019

TO BE FILED UNDER SEAL
BY GOVERNMENT PRIVILEGE REVIEW TEAM

BY HAND

The Honorable Vera M. Scanlon
United States Magistrate Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Keith Raniere, et al.
Criminal Docket No. 18-204 (NGG) (S-1)

Dear Judge Scanlon:

The privilege review team respectfully submits this response to the defendant Clare Bronfman's ex parte and sealed letter dated February 21, 2019 ("Bronfman Ltr.") regarding the first set of privilege disputes between the privilege review team and Bronfman.[1]

In a typical criminal case, the privilege review team's task should be relatively straightforward. However, this is anything but the typical case. Here, Bronfman and Nxivm have identified well over a hundred attorneys at approximately 50 law firms, as well as a number of consultants and investigators, with whom they have asserted that they, and related entities, have had an attorney-client relationship at some point over the past fifteen years. The ways that the defendants have used litigation to intimidate their "critics and perceived enemies" is part of the charges in the instant case. (See S-1 Ind. ¶¶ 1, 4, 6(f)). It is also significant that a federal district court, in a case it characterized as a "tri-party litigious bloodletting," previously found that Nxvim's assertion of privilege over certain communications was merely a "façade" and a "tool to achieve secrecy, not to give [or receive] legal advice." Nxivm Corp. v. O'Hara, 241 F.R.D. 109, 112 (N.D.N.Y. 2007).

[1] The privilege review is ongoing and we expect additional disputes will arise.

In this case, the defendants also have asserted [redacted] without providing evidence [redacted] other than conclusory assertions. Furthermore, Bronfman, one defendant in a multi-defendant criminal case, purports to assert privilege on behalf a number of corporate entities and individuals, in addition to herself, including Nxivm, the Ethical Science Foundation ("ESF"), Wisdom Systems LLC, Truth LLC, Plugged-In Technologies LLC ("Plugged-In"), [redacted] M[redacted] F[redacted] ([redacted]) and a number of third-party visa applicants. The more documents that are swept up in overly broad assertions of privilege, the larger the number of documents will be shielded from both the prosecution team and the co-defendants. Although the applicable legal standards must be applied fairly and impartially, Bronfman's assertions of privilege, given this history and the allegations in this case, merit close scrutiny.

As an initial matter, for each document in dispute, the Court must consider the identity of the privilege holder, whether Bronfman has the authority to assert privilege on behalf of the privilege holder, and whether the privilege Bronfman seeks to assert is for an attorney-client communication or for attorney work product. If a document is claimed to be attorney work product, the Court should consider whether the attorney work product belongs to an entity that is not a party to this matter, such as Nxivm, whether the work product is "opinion" or "fact" work product, and whether the work product was generated in anticipation of this litigation or another unrelated matter. The government respectfully submits that the information provided by Bronfman to date is inadequate to allow the Court to make these preliminary determinations. As a result, Bronfman cannot meet her burden to show the documents submitted with her letter and identified as Index Nos. 1-249 are privileged.

Moreover, even if Bronfman could clear these preliminary hurdles, for the additional reasons set forth below, Bronfman cannot show that the documents in question are privileged.[2]

---

[2] Some or all of the documents in question may not be privileged for the additional reason that they "relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." In re John Doe, Inc., 13 F.3d 633, 636 (2d Cir. 1994) (quoting In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984)); see also In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995). Given the many other bases to conclude that the documents in question are not privileged, the government does not address the applicability of the crime-fraud exception here, but reserves its right to do so in the future as necessary.

I. Legal Framework for Privilege Issues

A. Attorney-Client Privilege and Standing to Assert

The purpose of the attorney-client privilege is "to encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403 (1976). In order to balance the protection of confidentiality with the competing value of public disclosure, courts apply the attorney-client privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable. United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). To invoke the attorney-client privilege, a party must demonstrate that there was (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential and (3) was made for the purpose of obtaining or providing legal advice. Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice, 697 F.3d 184, 207 (2d Cir. 2012) (quoting Mejia, 655 F.3d at 132). Ultimately, the burden is on the party asserting the attorney-client privilege to establish each element of the three-part standard. See Mejia, 655 F.3d at 132. The burden cannot "be discharged by mere conclusory or ipse dixit assertions." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F. 2d 223, 224–25 (2d Cir. 1984) (citations omitted) (internal quotation marks omitted). "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege." Koumoulis v. Independent Financial Marketing Group, Inc., 295 F.R.D. 28 (E.D.N.Y. 2013) (internal citations omitted).

The attorney-client privilege "can be asserted only by the client (or one authorized to do so on the client's behalf)." In re Sarrio, S.A., 119 F.3d 143, 147 (2d Cir. 1997); see also In re von Bulow, 828 F. 2d 94, 100 (2d Cir. 1987) (attorney-client privilege "belongs solely to the client"). Where a corporation is a privilege holder, the corporation's current management controls the attorney-client privilege. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1985) (holding that a former manager cannot assert an attorney-client privilege on behalf of a corporation as a shield to protect his/her self-interest). A dissolved or defunct corporation retains no privilege. See S.E.C. v. Carrillo Huettel LLP, No. 13 Civ. 1735 (GBD) (JCF), 2015 WL 1610282 (S.D.N.Y. Apr. 8, 2015); Gilliland v. Geramita, No. 05 Civ. 1059, 2006 WL 2642525 (W.D.Pa. Sept. 14, 2006). But see Overton v. Todman & Co., CPAs, P.C., 249 F.R.D. 147, 148 (S.D.N.Y. 2008) (refusing to apply Gilliland where corporate officers submitted affidavits alleging that corporation continued to function and that they were the officers).

B. Attorney Work Product Privilege

The attorney work product privilege applies to criminal litigation as well as civil. United States v. Nobles, 422 U.S. 225, 238 (1975) (applying Hickman v. Taylor, 329 U.S. 495 (1947)). It protects documents created by counsel or per counsel's directive, in anticipation of litigation. In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003). The attorney work product doctrine generally does not shield from discovery documents that were not prepared by the attorneys themselves, or

their agents, in the course of or in anticipation of litigation. In re Grand Jury Subpoenas Dated Oct. 22, 1991 and Nov. 1, 1991, 959 F. 2d 1158, 1165 (2d Cir. 1992). As with the attorney-client privilege, the party asserting the work product privilege "bears the heavy burden of establishing its applicability." In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007).

The attorney work product privilege includes both opinion work product, such as an attorney's mental impressions or legal theories, and fact work product, such as factual investigation results. See In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180,183 (2d Cir. 2007); In re Grand Jury Subpoena Dated Oct. 22, 2001, 282 F.3d 156, 161 (2d Cir. 2002). Opinion work product is entitled to greater protection than fact work product. United States v. Adlman, 134 F.3d 1194, 1197 (2d Cir.1998). Fact work product may be discovered by the government upon a showing that it has a "substantial need" for the materials and that it has "exhausted other means of obtaining the relevant information it seeks[.]" In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d at 183. A party's conclusory assertions that a document constitutes opinion work product will be insufficient to establish that the document is privileged. Id. at 184.

The application of attorney work product privilege where the party asserting the privilege is not a party to the litigation is a "complex question." Jean v. City of New York, No. 09 Civ. 801 (RJD) (VVP), 2010 WL 148420 (E.D.N.Y. Jan. 12, 2010); see also Montesa v. Schwartz, No. 12 Civ. 6057 (CS) (JCM), 2016 WL 3476431 (S.D.N.Y. June 20, 2016) (work product analysis is different where the creator of the work product is a non-party to the action). Rule 26(b) (3) of the Federal Rules of Civil Procedure, the broad work product rule that applies in civil cases, only covers parties to a litigation. Non-parties must rely on the federal common law developed under Hickman to assert attorney work product protection. In Jean, Magistrate Judge Pohorelsky noted that "several courts have extended work-product protection to non-parties when that finding vindicated the purposes underlying the work product doctrine." Id. Those "purposes" included "protecting an attorney's ability to formulate legal theories and prepare cases, preventing opponents from 'free-loading' off their adversaries' work, and preventing interference with ongoing litigation." Id. (internal citations omitted); see also Montesa 2016 WL 3476431 at *11; Schomburg v. New York City Police Dept., 298 F.R.D. 138 (S.D.N.Y. 2014)(refusing to extend attorney work product protection to a district attorney's factual investigative file where the Hickman purposes not otherwise implicated, although opinion work product remained protected). The government flags this issue for the Court because it appears that a number of the work product assertions raised by Nxivm, particularly with respect to fact work product prepared by non-attorneys in unrelated matters, do not appear to vindicate any of these purposes.

## II. Documents in Dispute

Nxivm is the privilege holder for the majority of the documents currently in dispute. This presents two threshold issues. First, it is unclear whether Nxivm is in fact an

active corporation, as it appears to have suspended operations.[3] If it is not an active corporation, no privilege can be asserted by or on behalf of Nxivm. Carrillo, 2015 WL 1610282. Second, Nxivm's retained counsel, Michael Sullivan, has refused to identify the individual(s) who are instructing him to assert privilege on behalf of Nxivm. It is therefore unclear whether such individuals have the authority to so direct Nxivm to assert privilege. In re Sarrio, S.A., 119 F.3d 143 at 147. As an initial matter, then, and before the Court entertains Bronfman's submission regarding any Nxivm document, Nxivm should be required to provide sworn declarations from Nxivm's current management which indicate that Nxivm continues to function as an active corporation and that Bronfman is authorized to assert and litigate privileges on Nxivm's behalf.

In addition, Bronfman's attempts to assert privilege over the documents at issue are unavailing for the reasons set forth below. The government addresses these documents in the following categories set forth, in most part, by Bronfman, and addresses each in turn: (1) communications that involved Bronfman and either Park Dietz, a forensic psychologist, or members of his staff; (2) [REDACTED] (3) documents over which Bronfman seeks to assert work product privilege on Nxivm's behalf; (4) [REDACTED] 5) immigration related documents; and (6) a document over which Bronfman seeks to privilege on behalf of Plugged-In.

A. Park Dietz Documents (Index Nos. 1-148, 150-153)

More than half of the disputed documents relate to communications seized from Bronfman's email account [REDACTED] that involved Bronfman and Dietz, or Bronfman and a member of Dietz's staff. (Index Nos. 1-148, 150-153). These documents were tagged as "not privileged" due to the inclusion of Dietz or his staff as a recipient of the email, along with any accompanying attachments. [REDACTED] In addition, attached as Exhibit B is a copy of Dietz's January 28, 2018 report, entitled "Progress Report Regarding NXIVM and DOS," (the "Dietz Nxivm Report"). This report was produced to the trial team by Nxivm, presumably because it had previously been provided to the New York Times in January 2018. (Ex. B).

[3] Nxivm's website currently has the following statement on its homepage: "It is with deep sadness that we inform you we are suspending all NXIVM/ESP enrollment, curriculum and events until further notice … While we are disappointed by the interruption of our operations, we believe it is warranted by the extraordinary circumstances facing the company at this time." See http://www.nxivm.com/.

Even assuming the Court finds that Nxivm is an active corporation and that Bronfman has the authority to assert the privilege on its behalf, , Bronfman has not met her burden of showing that these documents are protected from disclosure as attorney-client communications because (1) the communications were not solely between client and counsel, as third party Dietz and/or his staff were included in the communications, (2) the communications' primary purpose was not to elicit legal advice from an attorney but to engage Dietz to assist in a public relations campaign, and (3) Dietz's reports summarizing his findings were not intended to be kept confidential and, in fact, were not kept confidential.[4] Furthermore, Bronfman also has not met her burden of showing that the communications between Dietz and Bronfman are protected as Nxivm's attorney work product because they were not prepared in anticipation of litigation, but were drafted primarily to combat negative press about Nxivm and DOS.

1. Background on the Retention of Dietz

Bronfman claims that Nxivm attorney Bob Crockett hired Park Dietz, and that all communications with Dietz are protected by Nxivm's attorney-client privilege and/or the attorney work product privilege.[5] (Bronfman Ltr. at 2). Bronfman also submitted a declaration from Crockett ("Crockett Decl.") in support of her arguments.

[redacted]

---

[4] In or about January 2018, Nxivm provided Dietz's report to the New York Times. (Crockett Decl. at ¶ 10; NXIVM00001298). As noted above, Nxivm also produced to the trial team a copy of Dietz's report, entitled "Progress Report Regarding NXIVM and DOS," dated January 28, 2018. (Ex B).

[5] While Nxivm's attorney, Bob Crockett, was included on most of these communications, a number of them are just between Bronfman and Dietz. (Index Nos. 71, 80-83, 151-153). In addition, India Oxenberg, a DOS member who was evaluated by Dietz, was copied on six of these emails. (Index Nos. 12-18). There is also one email included in this set between Bronfman, [redacted]

[redacted].

On October 17, 2017, the New York Times published an article about Nxivm entitled, "Inside a Secretive Group Where Women Are Branded," which was an extremely negative story about Nxivm and a "secret sorority" of branded sex slaves.[7] Catherine Oxenberg, India Oxenberg's mother, is quoted in the article discussing her daughter's membership in this sorority and Catherine's concerns for India's well-being. On November 2, 2017, Catherine also was interviewed on the Today show, which featured more allegations about DOS, and Catherine claimed that, over a period of years, India had been brainwashed into participating in DOS.[8]

[redacted]

---

[6] At the time, Crockett was one of Nxivm's attorneys in a long-running civil lawsuit involving a number of individuals connected to Rick Ross. Nxivm v. Rick Ross et al., No 06 Civ. 1051 (D.N.J.). [redacted] Crockett also represented Raniere in intellectual property litigation in Raniere v. Microsoft Corp, No. 15- Civ. 0540, No. 15 Civ. 2298 (W.D.TX.).

[7] See https://www.nytimes.com/2017/10/17/nyregion/nxivm-women-branded-albany.html

[8] See https://www.today.com/video/catherine-oxenberg-talks-about-her-fight-to-save-her-hijacked-daughter-1087139395742).



2. Dietz's Status as a Third Party Vitiates Any Otherwise Applicable Attorney-Client Privilege

In general, the attorney-client privilege applies only to communications between a client and its lawyer, not between the client or its lawyer and third parties. Under certain limited circumstances, however, the attorney-client privilege may extend to communications with a third party, such as an accountant hired to assist in the rendition of legal services. See, e.g., United States v. Kovel, 296 F. 2d 918 (2d Cir. 1961). Like any communication protected by the attorney-client privilege, however, communication with such third-party agents is only protected if it is "made in confidence for the purpose of obtaining legal advice from the lawyer." Id. at 922. The purpose of the third party's participation in the communication must be to "improve the comprehension of the communications between attorney and client." United States v. Ackert, 169 F.3d 136, 139-40 (2d Cir. 1999). On the other hand, where an attorney seeks out a third party in order to obtain information that his client does not have, the third party's role is "not as a translator or interpreter of client communications, [and] the principle of Kovel does not shield his discussions with [the attorney]." Id.; see also United States Postal Service v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (where the experts' "function was not to put information gained from defendants into usable form for their attorneys to render legal advice, but rather, to collect information not obtainable directly from defendants' the privilege did not apply).

While the government is aware of one district court opinion which extended Kovel to cover communications with a public relations firm hired by counsel in a high

profile grand jury investigation, see In re Grand Jury Subpoenas Dated March 24, 2003, 265 F. Supp. 321 (S.D.N.Y. 2003), this case appears to be an outlier and its reasoning has been distinguished or rejected in a number of cases, including in a recent case from this district, In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation, No. 18-MD-2819 (NG) (LB), 2019 WL 254348 (E.D.N.Y. Jan. 17, 2019). There, Judge Gershon found that the attorney-client privilege was waived when a pharmaceutical company included consultants, including one former Acting Deputy Director of the Food and Drug Administration ("FDA"), on privileged communications with outside counsel regarding a dispute with the FDA over one of their products. Id. Judge Gershon concluded that, although the consultants offered assistance in "navigating a difficult situation," their input was not necessary to explain the client's information to counsel. Id.

Here, Nxivm has failed to make the requisite showing that Dietz's involvement was necessary to facilitate communications between Nxivm and Crockett so that Crockett could render legal advice to Nxivm. [redacted] . As a result, the inclusion of Dietz and/or his staff members on communications between Nxivm and Crockett destroys any otherwise applicable attorney-client privilege.

3. The Dietz Communications Were Not for Legal Advice

Communications between a client and counsel are not protected where the predominant purpose of the communications concerns something other than legal advice. Thus, when an attorney is used as a business consultant, the resulting attorney-client communications will not be privileged. See In re Cnty. of Erie, 473 F.3d 413, 421 (2d Cir. 2007) ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged."). For example, a district court previously concluded that Nxivm's hiring of a public relations firm through an attorney was a "façade and not for the purpose of helping [the attorney] provide legal advice to Nxivm but to give cover to communications between Nxivm, [an investigative firm] and [a public relations firm]." Nxivm Corp. v. O'Hara, 241 F.R.D. 109 (N.D.N.Y. 2007). A media campaign is not a legal strategy. Id. (citing Haugh v. Schroder Inv. Mgmt. N. Am. Inc., 02 Civ. 7955 (DLC), 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003). Here, the retention of and communications with Dietz were not for the purpose of legal advice, but public relations.

4. Dietz Report Not Intended to Be Confidential

To assert the privilege on behalf of Nxivm, Bronfman must also show that there was an intent to keep the communications and materials in question confidential. Dietz's findings were not expected to be kept confidential, and were not kept confidential. [redacted] On December 15, 2017, ABC

aired a report about Nxivm on its program 20/20.[9] ) Also, it appears that, in or about January 2018, Nxivm provided the Dietz Nxivm Report to the New York Times. (Crockett Decl. at ¶ 10; Ex. B atNXIVM00001298, NXIVM00001299)). Nxivm also produced to the trial team a copy of the Dietz Nxivm Report. (Ex. B).

5. Dietz Documents Not Protected Attorney Work Product

The Dietz documents also do not qualify as attorney work product because they were not intended to be confidential or not prepared in anticipation of litigation, but were prepared to rebut claims reported in the media that Nxivm and DOS were harmful to the psychological health of its members. As Nxivm was a for-profit self-help organization, claims that participation in Nxivm and DOS were damaging to its members' mental well-being threatened its business model. When assessing whether a document was prepared in anticipation of litigation, courts consider "if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998) (quoting Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8 Federal Practice & Procedure § 2024 at 343 (1994)). Even where the document "might also help in preparation for litigation," it will not be protected by the work-product doctrine if it was "prepared in the ordinary course of business" or "would have been created in essentially similar form irrespective of the litigation." Id. [redacted] Any use that Dietz's report would have to a litigation purpose was ancillary.

6. Additional Issues Regarding Specific Dietz Documents

Finally, even if the Court were to conclude that some privilege attached to a portion of the above-referenced documents, the bulk of the documents in dispute are not privileged under any theory. For example, a large number of the emails at issue relate to Dietz's retention, payment, and scheduling meetings. Communications about these administrative matters are not privileged. In Re Shargel, 742 F. 2d 61, 62 (2d Cir. 1984) (client identity and fee information, absent special circumstances, are not protected by attorney-client privilege); Ramseur v. Chase Manhattan Bank, 865 F. 2d 460, 456 (2d Cir. 1989) (date and fact of meeting between attorneys and client not privileged). Furthermore, the Dietz Nxivm Report discusses his retention, the scope of his assignment and the people he interviewed, so none of this information was kept confidential and any applicable privilege either did not attach in the first instance or was waived.

The inclusion of India Oxenberg, another third party, on six documents is another basis for waiving any applicable privilege over those documents. India could have distributed these documents to anyone, including her mother. The direct communication between Bronfman [redacted]

[9] https://abc.go.com/shows/2020/episode-guide/2017-12/15-121517-2020.



[redacted].

B. [redacted] (Index Nos. 154-160)

[redacted] While an attorney-client relationship can arise prior to formal engagement, see United States v. Dennis, 843 F.2d 652, 656–57 (2d Cir. 1988), there is no such protection when a third party, such as Bronfman, and not the potential client, engages in those preliminary communications.

[redacted] The common interest doctrine "is not an independent source of privilege or confidentiality," and where "a communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply." Sokol v. Wyeth, Inc., No. 07 Civ. 8442 (SHS)(KNF), 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008) (citations omitted). Instead, the doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." United States v. Schwimmer, 892 F. 2d 237, 243 (2d Cir. 1989). In order to receive protection under the common interest doctrine, the moving party must make a two-part showing. Fireman's Fund Ins. Co. v. Great American Ins. Co of New York, 284 F.R.D 132, 139 (S.D.N.Y. 2012). First, "the parties exchanging otherwise privileged information must establish a common legal, rather than commercial, interest," which courts have found embodied in "a cooperative and common enterprise towards an identical legal strategy." Id. (quotation marks and citations omitted). Second, "the parties must establish that any exchange of privileged information was made in the course of formulating a common legal strategy[,] and that the parties understood that the communication would be in furtherance of the shared legal interest." Id. at 140 (citing Sokol, 2008 WL 3166662, at *5, *7).

---

10 [redacted]

11 [redacted]



The communications, therefore, are not privileged.

C. Alleged Work Product Documents

Bronfman also attempts to assert privilege on behalf of Nxivm over a number of documents that she claims are attorney work product. For the reasons set forth below, Bronfman has not met her burden to show that that these documents were prepared at the direction of counsel in anticipation of litigation.

1. (Index Nos. 161-171)

Bronfman has asserted work product privilege on behalf of Nxivm over a series of documents which reflect internal Nxivm personnel gathering (See Index Nos. 161-172). These documents were marked not privileged by the privilege review team because it appeared that none of the attachments to these emails were privileged, and forwarding non-privileged information to an attorney does not render the information privileged.



Furthermore, no legal advice is requested or conveyed in these emails.

It also appears that the information being gathered was not for the purpose of litigation, but to report an alleged crime to the authorities, in which case the information was not intended to be kept confidential. :

I



The Times Union, a local newspaper based in Albany, New York, reported that Nxivm's attorneys had dozens of contacts with the New York State Police's lead investigator between 2012 and 2014, including "delivering documents and other evidence, including computer records" to the investigator.[12]

2. Settlement Documents from Third Party (Index No. 172)

Bronfman has asserted Nxivm's work product privilege over the attachment to a November 10, 2017 email to Diego Ruiz Duran, an attorney in Mexico. The attachment appears to consist of documents provided to Bronfman as part of settlement connected to claims raised by Bronfman, in her personal capacity, and Precision Development LLC (owned by Bronfman and her sister, Sara Bronfman), in connection with the matters Precision v. Yuri Plyam and Natasha Plyam (California Superior Court; No. BC384285). There is no basis for the claim that the attachment is privileged. Regarding the cover email, and all other emails with Duran and Ricardo Olmedo, another Mexican attorney, the prosecution team is litigating whether Nxivm has properly asserted privilege with those attorneys.

3. [REDACTED] Documents (Index Nos. 173-182)

Bronfman has asserted Nxivm's work product privilege over a series of summaries prepared by [REDACTED], identified as a "Nxivm-affiliated person." In fact, a [REDACTED] was employed by ESF, [REDACTED] Fact work product prepared by non-attorneys is not protected, under federal common law, if it is not prepared at the direction or request of counsel because of litigation. See In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002, 318 F.3d at 383; In re Grand Jury Subpoenas Dated Oct. 22, 1991 and Nov. 1, 1991, 959 F.2d at 1165. There is no indication that [REDACTED], who was

[12] See https://www.timesunion.com/tuplus-local/article/NXIVM-attorneys-pressed-criminal-case-6564018.php. The Times Union has published a number of unflattering articles about Nxivm, and Nxivm has sued one Times Union reporter, James Odato.

employed by ESF, prepared these summaries at the direction of anyone other than Bronfman. Furthermore, considering status as a non-employee, any applicable privilege is waived.

D. (Index Nos. 183-186)

Bronfman has asserted privilege over a series of emails between herself and



Index Nos. 183-186).

Because Bronfman is not the client of these attorneys, there privilege is waived.

As discussed above, in order to invoke the common interest doctrine, the interest shared by the parties, among whom the privileged information passed, must be legal; the mere existence of a common business strategy or shared commercial interest, even if combined with the anticipation of or concern about litigation, is not enough to invoke the doctrine. In re Hypnotic Taxi LLC, 566 B.R. 305 (Bankr. E.D.N.Y., April 10, 2017) (citing Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 447 (S.D.N.Y. 1995)). Such a legal interest must also be identical, not merely similar. Id. (citing Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc., 215 F.R.D. 466, 472 (S.D.N.Y. 2003).). "[T]he existence even of...a coordinated legal strategy is insufficient where there is only a common commercial interest and no identity of legal interests." Gulf Islands Leasing, 215 F.R.D. at 473.



[13]

E. [redacted] (Index Nos. 187-188)

Bronfman has asserted Nxivm's work product privilege over a [redacted] to Nichols, which Nichols forwarded to Bronfman without comment, and Bronfman then forwarded to Raniere. (Index No. 188). The email itself, which contains no communication, is not privileged. (Index. No. 187). See Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 79 (S.D.N.Y.2010) ("Transmittal documents themselves are not privileged unless they reveal the client's confidences."). [redacted]

F. Immigration Documents (Index Nos. 189-235)

Bronfman has not met her burden to establish that the immigration documents she continues to assert privilege over are covered by either the attorney-client privilege or attorney work product protection. Although much of this has been briefed by the trial team before the Court (ECF Nos. 256 and 291), there are several issues raised by Bronfman's letter that should be addressed in this sealed briefing.

First, as an initial matter, the privilege review team does not challenge that communications solely between an employer and an attorney regarding a visa application for an employee may be privileged depending on the circumstances. But Bronfman claims that the inclusion of the visa recipient – a third party – does not waive privilege because there is either a "joint client" relationship or a "common interest agreement." (Bronfman Ltr. at. 11). Bronfman has not demonstrated that any common interest agreements actually existed. See Univ. Sports Publications Co. v. Playmakers Media Co., No. 09 Civ. 8206 (RJH) (DF), 2011 WL 1143005, at *5 (S.D.N.Y. Mar. 21, 2011) ("conclusory statements" that parties "shared a common legal interest" not sufficient to establish common interest doctrine applies). And there is no evidence – except potentially with respect to [redacted] that the visa holder was actually a client of the attorney such that a "joint client" relationship existed. For example, there is no evidence that the visa holder signed an engagement agreement with the attorney or retained the attorney in any way. The fact that a visa holder was a beneficiary of the advice Bronfman sought does not erase the privilege waiver when these third parties were included on emails. Bronfman has not proffered any case law that demonstrates that the inclusion of the visa holder does not waive privilege; the citation in Bronfman's prior filing (see ECF No. 282) of an article that states that dual representation in immigration cases is "very common" does not establish that such dual representations actually occurred here or that courts have held that such representation in this context maintains the attorney-client privilege. See Restatement (Third) of the Law Governing Lawyers § 75 (2000) ("Co-client representations must also be distinguished from

situations in which a lawyer represents a single client, but another person with allied interests cooperates with the client and the client's lawyer.")

Second, Bronfman argues that the privilege review team has not accounted for work product protection in the context of immigration proceedings, writing that "an immigration petition can be the first step in what can evolve into an adversarial process." (Bronfman Ltr. at 11). A party asserting work product protections "generally must show that the document sought can fairly be said to have been prepared or obtained because of the prospect of litigation." In re Initial Pub. Offering Sec. Litig., 249 F.R.D. 457, 459 (S.D.N.Y. 2008) (alteration, citation, and internal quotation marks omitted). This is a "heavy burden and cannot be discharged by mere conclusory or ipse dixit assertions." Id. (citations and internal quotation marks omitted). Despite now claiming that work product may apply to these immigration documents, Bronfman has never claimed that these documents were actually prepared in anticipation of litigation or asserted which immigration documents are covered by work product protections. Thus, any discussion of the work product doctrine regarding the immigration documents should be disregarded.

Third, Bronfman conflates a number of different companies so that she can maintain privilege over a greater number of documents.



Finally, the vast majority of immigration documents that Bronfman continues to assert privilege over involve F F and her unique situation have been specifically briefed by the trial team under the pseudonym M.F., and the privilege review team refers to that briefing as to the main arguments. ((ECF Nos. 256 and 291)). Here, as opposed to the other visa applicants, Bronfman does not maintain that F z worked for one of her companies Instead, Bronfman claims that Wisdom Systems engaged Frontier Solutions to and that F then signed a separate engagement agreement with Frontier Solutions for assistance (Bronfman Ltr. at 15). Therefore, in fact, it was F who was Frontier's client, and it is Bronfman's inclusion on all of these emails which waives privilege. Simply because Frontier Solutions "had a formal client relationship" with both F and Bronfman does not mean that, as to this specific representation, Bronfman and F were joint clients or even shared a mutual legal interest. Bronfman, in wanting F to get a visa, had no legal interest in F receiving that visa. Frontier Solutions should have communicated directly with F regarding their representation of her. The fact that they did not, and instead included, or often communicated solely with, Bronfman, waives privilege.



Because Bronfman cannot get past this threshold requirement, she instead falls back to generalities, such as an assertion that Bronfman and F "reasonably believed they were jointly seeking ways in which F z could legally enter the country to care for their mutual friend …" (Bronfman Ltr. at 15). Bronfman Two individuals who have both separately retained the same lawyer as to different matters merely believing that they both have the same goals, when one of those individual's goals is not a legal matter but a personal one, does not prevent the waiver of privilege. See Mejia, 655 F.3d at 132 ("In order to balance [the] protection of confidentiality with the competing value of public disclosure, [] courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable.") (alterations, citations, and internal quotation marks omitted). Permitting the privilege to be maintained in these circumstances would eviscerate the narrow circumstances in which privileged communications may not be waived, and Bronfman has not met her burden in establishing that the privilege between F and Frontier Solutions was not waived by the inclusion of Bronfman on the communications.

There are also a number of documents in this category which do not relate to the provision of legal advice but are merely either business-related or logistical, and for which there is no basis for an assertion of privilege. (See Index No. 191 (email between Bronfman and Index Nos. 231-234 (emails regarding a meeting between Bronfman and F ). There is also one email between F and Bronfman that does not include any attorney and is description of what happened to F at the border. (Index No. 213).

G. Ricardo Olmedo Documents (Index Nos. 236-244; 244-248)

Bronfman has asserted Nxivm's privilege over a series of emails from May 2017 between Bronfman and Alejandro Betancort where Bronfman forwards her prior emails to Mexican attorney Ricardo Olmedo, which attach photographs of (Index Nos. 236-244). Even assuming there was a valid attorney-client relationship between Nxivm and Olmedo, it is unclear what the basis of privilege is over these items or whether the communications were for the purpose of obtaining confidential legal advice for Nxivm.[14] The photographs themselves are not a communication, nor are they work product that was prepared because of litigation.

Finally, Bronfman has asserted Nxivm's privilege over a series of emails, between Duran and Olmedo. (See Index Nos. 244-248)

---

[14] If the purpose of sending these photographs was for Olmedo to provide them to Mexican law enforcement, then these communications were not intended to be confidential, and are not privileged.

H. Plugged-In Document

Finally, Bronfman has asserted the privilege of Plugged-In over an email from Arlen Olsen's offic [redacted] However, [redacted] who had no continuing legal interest in Plugged-In, Bronfman waived privilege over this document.

## III. Conclusion

For the reasons set forth above, Brofman has met her burden to show that the disputed documents are privileged. As a result, the privilege team respectfully requests permission to disclose these documents to the prosecution team.

Furthermore, the privilege review team respectfully requests permission to provide a redacted copy of both Bronfman's letter and this response, without exhibits or attachments, to the prosecution team. Proposed redactions, which eliminate references to potentially privileged information, are attached as Exhibits D (Bronfman Ltr.) and E (this submission). The prosecution team should be made aware of the arguments and positions that the parties have taken so that the government's positions are not unnecessarily inconsistent or duplicative across the two teams.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: /s/
Shannon C. Jones
Philip Pilmar
Assistant U.S. Attorneys
(718) 254-6379 (Jones)

cc: Kathleen E. Cassidy (by email)