UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| – against – | ) ) | Docket No. 18-204 (NGG) (VMS) |
| KEITH RANIERE, CLARE BRONFMAN, ALLISON MACK, KATHY RUSSELL, LAUREN SALZMAN and NANCY SALZMAN | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Non-party NXIVM respectfully submits this memorandum of law in response to the Government's Objections to the Privilege Orders (Dkt. 552) and Magistrate Judge Vera M. Scanlon's April 22, 2019 Order (Dkt. 570).[1]

### *Introduction*

Judge Scanlon was entirely correct when she found that the record is sufficient to conclude that NXIVM as a corporate entity is neither dissolved, nor defunct, and retains attorney-client privileges and work product protections in this matter, and that Bronfman and Sullivan accordingly may assert them on NXIVM's behalf. *See* Court's Order, Dkt. 502. She also reached the correct result when she found that certain documents prepared by Dr. Park Dietz were protected by the work product doctrine. Neither of these rulings was clearly erroneous or contrary to existing law.

---

[1] The government objects to the following holdings in the April 2, 2019 Privilege Order: (1) the order's findings that the record is sufficient to find that NXIVM is not defunct and may still assert attorney-client and work product privileges in this matter, and that Bronfman and Sullivan may assert privileges on NXIVM's behalf; and (2) the order's finding that the Park Dietz Documents are protected by NXIVM's work product privilege. *See* ECF No. 502.

1

As discussed in more detail below and as evidenced in the attached Declaration, *see* Ex. A, NXIVM may assert attorney-client and work-product privileges over documents, including the Park Dietz Documents, for the simple reason that NXIVM is not, as the government alleges, a defunct corporation. Contrary to the government's assertion, NXIVM is still an active corporation that exhibits practical business functions, including the power to retain counsel to represent it and advocate on its behalf. In fact, undersigned counsel has done so in several civil and criminal cases, including this one, which has extended to ███████████████████████████████████
███████████████████████████████████

Even so, the Second Circuit has ***not*** ruled that a defunct company no longer retains the right to assert the privilege, let alone that a company like NXIVM – which has suspended certain operations but otherwise maintained its active status as a corporate entity – no longer retains the right to assert the privilege. Under these circumstances, given the importance of attorney client and work product privileges to our jurisprudence, this Court should be extremely reluctant to conclude that these protections are no longer available to an entity such as NXIVM.

This Court also should affirm that the work product privilege applies to the Park Dietz Documents. The record amply supports his retention for the purpose of anticipated litigation, and the government's view to the contrary, or that Dr. Dietz may provide ancillary assistance or advice in public relations, is unavailing.

### *Legal Authority*

A. <u>Standard Of Review</u>

As an initial matter, the appropriate standard of review for Judge Scanlon's Privilege Opinions under Federal Rule of Criminal Procedure 59(a) is whether her findings were "contrary to law or clearly erroneous." Courts have found that "[p]re-trial matters involving discovery are

generally considered nondispositive since they do not resolve the substantive claims for relief alleged in the pleadings . . . [t]his includes issues of privilege." *See CFTC v. Standard Forex*, 882 F. Supp. 40, 42 (E.D.N.Y. 1995) (internal citations omitted). As such, a magistrate judge's privilege determinations should be "reviewed under a clearly erroneous standard of review"—a "highly deferential standard." *Id.; see also Koumoulis v. Indep. Fin. Mktg. Grp.*, 29 F. Supp. 3d 142, 145 (E.D.N.Y. 2014) (noting that "a party seeking to overturn a discovery order bears a heavy burden.").

The government does not cite any case law from the Second Circuit or any other district to further support the position that a different standard of review should be applied to Judge Scanlon's privilege decisions other than what is plainly indicated in Federal Rule of Criminal Procedure Rule 59(a).[2]

B.  Defunct And/Or "Dead" Companies

Whether, absent dissolution, a corporation is "defunct" or has "died," depends more upon the practical business realities than technical legal status. *See Official Committee of Administrative Claimants ex rel. LTV Steel Co., Inc. v. Moran*, 802 F.Supp.2d 947, 949 (N.D. Ill. 2011) (courts should look to practical business realities rather than technical legal status). In particular, courts consider whether there is someone who is authorized to speak for the client and assert privilege, whether the corporation carries on any practical existence, and whether the rights and interests of

---

[2] The government reliance on *In re De Mayolo*, No. 06-64, 2007 U.S. Dist. LEXIS 27912 (N.D. Iowa Apr. 16, 2007), for the proposition that the Court may review the present order *de novo*, is misplaced. *See* Government's Objections, at 6. The court in *In re De Mayolo* relies upon a portion of the advisory committee notes to Federal Rule of Criminal Procedure 59 that states "[d]espite the waiver provisions, the district judge retains the authority to review any magistrate judge's decision or recommendation whether or not objections are timely filed." *In re De Mayolo*, 2007 U.S. Dist. LEXIS 27912, at *11. Those "waiver provisions," in turn, refer to portions of Rule 59(a) and 59(b) that state "[f]ailure to object in accordance with this rule waives a party's right to review." Both the court in *In re De Mayolo* and in *Thomas v. Arn*, 474 U.S. 140, 154 (1985), which is cited to by the advisory committee notes, thus address a district judge's authority to review a magistrate judge's decision absent a timely objection under Rule 59, but neither articulate a different standard of review when considering objections to a magistrate judge's decision on nondispositive issues.

3

the corporation would be adversely affected by the determination that the privilege does not survive. *See County of Santa Clara v. Myers Industries, Inc.*, 1996 U.S. Dist. LEXIS 1341, No. 95-298, at *1 (E.D. Pa. Feb. 9, 1996) ("analysis of whether the attorney-client privilege survives the death of the client depends on whether the 'rights and interests' of the client could be adversely affected"); *PCS Nitrogen*, 2011 U.S. Dist. LEXIS 93021 at *4 (finding that the privilege did not apply under the circumstances where corporation asserted no reason to raise the privilege other than to protect the directors). *Compare Lewis v. United States,* No. 02–2958, 2004 WL 3203121, at *4–5 (W.D. Tenn. Dec. 6, 2004) (concluding that the "attorney-client privilege cannot be applied to a defunct corporation" where the corporation "is bankrupt and has no assets, liabilities, directors, shareholders, or employees"), *with Gilliland v. Geramita*, No. 2:05–1059, 2006 WL 2642525, at *3–4 (W.D. Pa. Sept. 14, 2006) (communications between a business entity and its lawyers remain protected by the attorney-client privilege after a company dissolves or ceases operations "so long as the company retains some form of continued existence evidenced by having someone with the authority to speak for the 'client'"). Further, in *Official Comm. of Admin. Claimants on Behalf of LTV Steel Co.*, the district court held that the privilege continued to exist for a company which had temporarily dissolved and had ceased normal business operations but had not "died" because the company was pursuing claims as part of the windup process and retained management which could assert the privilege. 802 F. Supp. 2d at 949-50.

This analysis makes sense because under well-settled law, a company does not immediately become defunct or "die" simply because it ceases its normal business operations. In fact, the Supreme Court has recognized this point in this very context when it held that a bankruptcy trustee retains and controls a bankrupt corporation's attorney-client privilege. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351–52, 105 S. Ct. 1986, 85 L.Ed.2d 372 (1985).

Likewise, it makes eminent sense that a dissolved corporation should be permitted to assert its privilege during the windup process, "at least until all matters involving the company have been fully resolved and no further proceedings are contemplated." *See Reilly v. Greenwald & Hoffman, LLP*, 196 Cal.App.4th 891, 127 Cal.Rptr.3d 317, 324 (2011). To hold otherwise would undercut the primary policy underlying the privilege: "to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *See Swidler & Berlin v. United States,* 524 U.S. 399, 408 n. 3, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) (citation omitted).

*Argument*

I. **NXIVM HAS THE CAPACITY AND AUTHORITY TO ASSERT ATTORNEY-CLIENT AND WORK-PRODUCT PRIVILEGES**

    A. <u>NXIVM Retains All Privileges Because It Is Not Defunct</u>

NXIVM retains the attorney-client privilege and work product protections for the straightforward reason that it is by no means defunct and instead retains all the hallmarks of a viable legal corporation. For example, NXIVM: (1) is maintaining ordinary business practices; (2) has been served with (and has responded to) grand jury subpoenas by the government as recently as March 4, 2019 – which may be viewed as a concession as to its legal status and capacity; (3) has retained accountants and attorneys to provide services on its behalf; (4) has been billed for and paid normal operating costs; (5) has maintained files, storage facilities, computer servers, operating systems, and domain names; (6) has had tax returns prepared and filed; and (7) has an existing Board and held a Board Meeting in December. Nor, incidentally, is NXIVM bankrupt or can be fairly said to remain only as a sham entity, given it has assets, liabilities, directors, and contracted employees. The attached declaration – which provides important additional details regarding NXIVM, its Board members, and retention of counsel – further supports the conclusion that

5

NXIVM is not "defunct" as the Government contends. Ex. A (Declaration of M. Sullivan). Because NXIVM has all the characteristics, except perhaps revenue, of a legal corporation, it consequently has continuing rights to assert attorney-client and work-product privileges on its behalf via its legal counsel.

In addition to its ongoing business functions, NXIVM also retains management capable of asserting the privilege. This is in contrast to circumstances where corporations are found to be without current management, and therefore have lost their privilege. *See Gilliland v. Geramita*, No. 2:05–1059, 2006 WL 2642525, at *3-4 (W.D.Pa. Sept. 14, 2006) (holding that companies without ongoing management could not assert privilege even though they had not been technically dissolved). Three Board Members of NXIVM remain, and its President has not resigned. *See* Sullivan Decl. Here, Bronfman, as a member of the executive board, has heretofore asserted privilege on behalf of and in consultation with NXIVM. In addition, as discussed in more detail below and communicated to this Court, undersigned counsel has been instructed to assert valid assertions of privilege on behalf of NXIVM in the course of the representation.

The government's reliance on *Lopes v. Vieira*, 688 F. Supp. 2d 1050 (E.D. Cal. 2010), is unavailing. *See* Government Objections, at 10. The court in *Lopes* explained that "Plaintiffs cannot transfer the power to assert or waive the attorney-client privilege from [the company's] officers and management simply by asserting the apparent insolvency of [the company]." *Id*. at 1061. And while the court in *Lopes* ultimately determined the company had no corporate manager or officer to assert or waive the privilege, the facts of that case are entirely distinguishable from the case at hand. In *Lopes* the corporation "elected to be managed by a subset of managing members, [and] its ability to continue as a business was dependent upon this continued annual election of managing members." *Id*. at 1064. In addition to other considerations, the court noted that "annual meetings

have not been held, no manager has been re-elected at an annual meeting, and no managers remain under the terms of the Operating Agreement." *Lopes*, 688 F. Supp. 2d at 1067 (weighing public interest factors in favor of waiving the attorney-client privilege where there were allegations by the moving party of fraud and misappropriation of corporate assets). That is a far cry of the circumstances presented here.

Instead, the facts of this case are more closely aligned with *Overton v. Todman* & Co., 249 F.R.D. 147 (S.D.N.Y. 2008), where the court found that a company is "technically still an active corporation" because there is still an acting President and corporate officer, "and a corporation's current management controls the attorney-client privilege." *Id*. at 148*; see also United States v. Shapiro*, 2007 U.S. Dist. LEXIS 74725, at *17 (S.D.N.Y. Oct. 2, 2007) (company in "wind-down mode" would otherwise have had a valid privilege claim but for the appointment of a receiver who had assumed "operational control" and "took over the day-to-day operation of the company").

B. <u>NXIVM's Retention of Counsel To Advocate On Its Behalf Supports Its Claim of Privilege</u>

It also is worthwhile noting, as Judge Scanlon pointed out, that NXIVM is represented by counsel, who has asserted privilege on NXIVM's behalf throughout this litigation. *See* Dkt. 382. Furthermore, in an April 9, 2019, letter to Judge Scanlon, and in the attached Declaration, undersigned counsel explains that the law firm had been retained for purposes of providing legal advice and guidance in connection with this case, and others impacting NXIVM and its related corporate entities (the "Clients"). During the course of the representation, the Firm was instructed by individuals with authority to interact with the government on behalf of the Clients, and, as necessary, to retain services to assist the Firm in locating, examining, and providing non-privileged/responsive documents to the government. Undersigned counsel thus has provided advice in connection with a government asset forfeiture matter, a May 6, 2018, Grand Jury Subpoena, and a March 4, 2019 Grand Jury Subpoena. Additionally, and as explained in the above-

7

referenced letter and undersigned counsel's attached Declaration, upon being retained, undersigned counsel understood that NXIVM had a Board and that Board provided direction to NXIVM Corporation d/b/a ESP. Without waiving attorney-client privilege, undersigned counsel understood from each of the Client's representatives that the privilege should be asserted regarding documents and attorney work-product when appropriate and in NXIVM's best interest, and no unilateral waiver of the privilege on behalf of any of the Clients should take place. As explained in the attached Declaration, undersigned counsel was thus duly authorized by a majority of then-existing Board Members in December 2018 to determine NXIVM's position with regard to assertions of privilege. Client direction regarding representation, reviewing documents, work-product, and asserting privilege has not changed since the date of my representation.

C. <u>NXIVM Has An Independent Interest In Preserving the Privilege</u>

NXIVM is likely to be the target of lawsuits in the future arising from the facts of the criminal case against defendants here. If the Court determines that NXIVM is unable to assert attorney-client or work-product privileges over past litigations and communications with its attorneys on a variety of matters over many years, tens of thousands of documents seized from various defendants and/or subpoenaed from NXIVM will be determined not to be privileged and will be available to potential plaintiffs against NXIVM. NXIVM is not bankrupt or defunct and has an interest in protecting itself and its assets against future litigation. Moreover, as Judge Scanlon aptly noted in her privilege opinion: "It would be troubling if the Government's prosecution of a company's leadership as the source of a business's difficulties could then be used to find a waiver of the attorney-client or similar privileges." *See* Dkt. 502 at 3.

D. <u>The Attorney-Client and Work Product Privilege Survives Even Corporate Dissolution</u>

Although this Court need not reach this issue – and contrary to the Government's suggestion that this novel legal question is settled, *see* Government's Objections, at 8 – even assuming NXIVM is found to be "defunct," there is no controlling precedent in this Circuit finding that the privilege automatically disappears. *In Securities and Exchange Commission v. Carrillo Huettel LLP, et al*. No. 13-cv-1735 (S.D.N.Y. Apr. 8, 2015) (citing cases that have held question unsettled). NXIVM submits that this important right can and should survive dissolution. The attorney-client privilege is one of the oldest recognized privileges protecting confidential communications and is of critical import in encouraging clients to make full disclosures to their attorneys, so that attorneys may provide sound legal advice based thereon. *See, e.g., Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), *see also In re Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d at 1036-37. There are many strong reasons why the privilege should survive, and because the government assumed, rather than briefed, that issue, NXIVM respectfully reserves its right to respond should it be necessary. In any event, unavailability of the protection should only be found in the narrowest of circumstances, and certainly not where, as here, NXIVM has provided sufficient evidence to establish it is not defunct.

## II. THE PARK DIETZ DOCUMENTS ARE PRIVILEGED

As a threshold matter, NXIVM incorporates by reference all of the arguments made in Hafetz & Necheles LLP's February 21, 2019, letter and attachments thereto (Dkt. 363) which Judge Scanlon reviewed and relied upon in reaching her conclusion that the Park Dietz Documents were protected.

A. <u>The Park Dietz Documents Are Privileged Because He Was Retained In Anticipation Of Litigation</u>

Crockett's communications with Bronfman, acting in her capacity as executive board member of NXIVM, and Dietz, who was hired by Crockett to assist in litigation strategy, fall within the attorney-client privilege and/or are protected as attorney work product. *United States v. Kovel* established the ability for attorneys to seek assistance from third-party experts when representing a client without breaking privilege. The *Kovel* privilege "is now recognized as extending to representatives of the attorney, such as . . . non-testifying experts." *United States Postal Serv. v. Phelps Dodge Ref. Corp.,* 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (indicating that "the attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in usable form information obtained from the client"). Crockett's ███████████████████████████████████████████████████████████████████████████████████████████████████ Based on this evidence and applicable case law, the documents relating to Dietz's engagement by Crockett squarely fall within the *Kovel* definition of expert assistance and should be protected by attorney-client privilege and related work product doctrine.

> B. The Privilege Does Not Disappear Merely Because Retention May Serve More Than One Purpose

In its objections, the government argues that Park Dietz (1) was retained by Ms. Bronfman, and not Attorney Bob Crockett, who has submitted a declaration on this matter to the contrary, and (2) was retained to combat negative publicity, rather than to assist with or in anticipation of litigation. The government argues, pursuant to *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998), that even if the Park Dietz Documents "might also help in preparation for litigation,"

those documents were not protected by the work-product privilege because such documents "would have been created in essentially similar form irrespective of the litigation," as NXIVM was seeking to use such documents in a public relations campaign to rebut claims that NXIVM and DOS was a cult. *See* Govt. PRT Opp'n at 10.

The government's theory gets the arrangement exactly backwards and is not supported by the record, ███████████████████████████████████████████████████████████████████████████████████████████████████████████ As noted above, Crockett's ███████████████████████████████████████████████████████████████████████████████████. Any additional benefit, assistance, or communication by Dietz to others, moreover, would not undermine the relationship or the privilege itself. Indeed, as the court in *Misek-Falkoff v. Int'l Bus. Machs. Corp.* found, an expert psychiatrist who was hired for purposes of litigation to render an opinion could even "testify at trial based on the examination to the extent necessary," without waiving privilege with respect to all communications. 144 F.R.D. 48, 50-51 (S.D.N.Y. 1992).

### *Conclusion*

As a matter of both fact and law, NXIVM is entitled to assert the attorney-client and work product privileges. To rule otherwise, especially in light of the factual evidence that refutes the government's assertions, and the importance of the privilege itself, may set a dangerous precedent and jeopardize the provision of full and frank advice to future companies under similar circumstances as NXIVM.

11

**Dated**: April 25, 2019                                Respectfully submitted,

<p style="margin-left: 40%">
<u>/s/ Michael J. Sullivan</u><br>
Michael J. Sullivan,<br>
ASHCROFT LAW FIRM, LLC<br>
200 State Street, 7th Floor<br>
Boston, MA 02109<br>
617-573-9400<br>
msullivan@ashcroftlawfirm.com
</p>