```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ----------------------------------x
                                                18-CR-204(NGG)
 3   UNITED STATES OF AMERICA,
                                                United States Courthouse
 4           Plaintiff,                         Brooklyn, New York

 5           -against-                          August 18, 2020
                                                4:00 p.m.
 6   CLARE BRONFMAN,

 7           Defendant.
     ----------------------------------x
 8
             TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
 9              BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
                  UNITED STATES SENIOR DISTRICT JUDGE
10

11   APPEARANCES

12   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
13                            271 Cadman Plaza East
                              Brooklyn, New York 11201
14                            BY:  TANYA HAJJAR, AUSA
                                   MARK J. LESKO, AUSA
15                                 (Via video conference)

16   For the Defendant:       RONALD S. SULLIVAN JR., ESQ.
                              712 H Street, Suite 1354
17                            Washington, D.C. 20002
                              BY:  RONALD S. SULLIVAN, ESQ.
18                                      -and-
                              TUCKER LEVIN, PLLC
19                            230 Park Avenue, Suite 440
                              New York, New York 10169
20                            BY:  DUNCAN P. LEVIN, ESQ.
                              (Via video conference)
21
     Court Reporter:          Georgette K. Betts, RPR, FCRR, CCR
22                            Phone:  (718)804-2777
                              Fax:    (718)804-2795
23                            Email:  Georgetteb25@gmail.com

24   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
25
```

1          (All parties attended via video conference.)

2          THE COURTROOM DEPUTY:  United States versus
3  Bronfman.  Starting with the government counsel, please state
4  your appearances.

5          MS. HAJJAR:  Good afternoon, Your Honor.  Tanya
6  Hajjar and Mark Lesko for the government.

7          THE COURT:  Good afternoon.

8          MR. LESKO:  Good afternoon, Judge.

9          MR. SULLIVAN:  Good afternoon, Your Honor.  Ronald
10 Sullivan and Duncan Levin for Ms. Bronfman, who is present.

11         THE COURT:  Yes, good afternoon everyone.

12         I have a letter from Mr. Sullivan requesting a
13 Fatico hearing on certain issues and I have a response from
14 the government.  The letter from you, Mr. Sullivan, is a
15 wide-ranging set of issues, as if we were going to have a full
16 trial, a full bench trial on the defendant's involvement in
17 the activities of Mr. Raniere up in the Albany area, and the
18 government takes the position that there is adequate evidence
19 to demonstrate that the presentence report accurately
20 describes the defendant's involvement in those activities.  So
21 it seems to me that puts us in a situation where it would be
22 best for you to make your submissions of your presentencing
23 memoranda and to include whatever information you have that
24 puts meat on the bones, so to speak, of your assertion and
25 then to hear from the government in its submission on

1  September 11th and then decide whether a Fatico hearing is
2  necessary, and I'll let you know about it.
3           But let me say this, if we do have a Fatico hearing
4  it will be focused and limited in scope.  The Court went
5  through a six-week trial with Mr. Raniere and much of the
6  evidence and testimony in that case reflected on your client
7  not just Mr. Raniere, but to the extent that the PSR may be
8  inaccurate as to your client's involvement in these
9  activities, we can then move ahead with a Fatico hearing and
10 then it would seem that we're not there yet but we may get
11 there.  So that's just my preliminary sense of where we are.
12          Now, let me say this, I remind everyone that a
13 recording of this proceeding is prohibited by Local Rule 1.8
14 of the rules of this court and by the policies of the U.S.
15 Judicial Conference.  Any violation of that stricture subjects
16 the individual who violates it to sanctions that would be
17 imposed by the Court.
18          But I think that's a starting point.  I've never
19 gotten a letter like this that is so -- that is so extensive
20 in taking issue with the contents of the presentence report
21 but we might end up having a hearing, but I don't think I'm at
22 that point yet.
23          So let me hear from you, sir, if you have anything
24 else to say on the subject at this point.
25          MR. SULLIVAN:  Thank you, Your Honor, for the

1  opportunity to be heard.
2         So Your Honor started by saying you've never seen a
3  letter like this as broad in its objections to a PSR, and in
4  my long legal career, Your Honor, I've never seen a
5  presentence report so riddled with demonstrable inaccuracies
6  that it's never been warranted in my career to write a letter
7  like this.
8         Our request for a presentence -- for a Fatico
9  hearing derives, Your Honor, from a series of material
10 misrepresentations of facts that Your Honor, without our
11 intervention, would be presented with supposed facts, urging
12 the Court to punish Ms. Bronfman for conduct she did not do,
13 that she demonstrably did not engage in as opposed to conduct
14 that she did engage in.
15        Your Honor also said -- and I'll be very brief, Your
16 Honor, just to respond to a couple of points.  Your Honor also
17 said that the Court sat through a six-week trial where
18 evidence was adduced that reflected on Ms. Bronfman.  I'll
19 just point out that Ms. Bronfman was not at that trial nor was
20 I at that trial or able to challenge and cross examine any
21 evidence that purported to reflect on Ms. Bronfman.  A lot of
22 things can come into trial that may or may not be relevant to
23 Mr. Raniere, I'm not his lawyer, but with respect to items
24 that came in with respect to Ms. Bronfman, those were not
25 subject to cross-examination and they have not risen to the

1	level to my thinking of fact.
2	          Very briefly, Your Honor, here's what I think is
3	going on with the presentence report and the reason the
4	breadth and scope of my letter is because the presentence
5	report is sprinkled throughout with claims that are just so
6	beyond anything that could be reasonably construed as a fact
7	that it required our very strong, quick and immediate
8	intervention.  We are ready for sentencing and we will be
9	ready for sentencing on the appointed date, but we want to
10	ensure that Your Honor is possessed with facts relevant to
11	Ms. Bronfman and not sort of made up or created facts where
12	there is no basis.
13	          Now, here's what has happened with the presentence
14	report and this is why we object so strenuously.  It is
15	important to note and point out that Ms. Bronfman did not
16	enter a plea to any RICO count.  She's not convicted of any
17	RICO count.  And this is important to point out because the
18	pretrial report -- or the presentence, excuse me, Your Honor,
19	report is written as though Ms. Bronfman has pled to some sort
20	of a RICO claim and is responsible for an enterprise.
21	          Now, as the Court is well aware, RICO is a
22	particular species of vicarious liability or some call it
23	expanded liability, so like complicity, conspiracy, felony
24	murder.  RICO imputes a mens rea onto an actor based on the
25	commission of some underlying facts so long as all involved

1   have some shared aspiration with respect to the enterprise's
2   success.  So in this sense RICO visits liability on an actor
3   in an enterprise even for unintended results.  The theory is
4   that defendants to a RICO claim simply do not deserve a
5   fine-tuned analysis of blame worthiness, of mens rea, of
6   responsibility with respect to the enterprise, so this
7   imputation happens and courts do not follow the normal or
8   traditional liability or grading routes.
9            Now, the PSR treats Ms. Bronfman like she has agreed
10  to a RICO claim.  Other defendants in this case pled to RICO,
11  Ms. Bronfman did not and she strenuously disputes the
12  accusations.
13           Now, this is not the Fatico hearing and I'm going to
14  just use the following, very briefly, as illustrative of how
15  these claims are so --
16           THE COURT:  Look, look, Mr. Sullivan, this is not a
17  Fatico hearing and so I'm just telling you how I'm going to go
18  about dealing with this.  You don't need to lecture the Court
19  about the contents of the racketeering laws.  I've been doing
20  this job for 20 years and I dare say I've had many defendants
21  who have gone to trial on RICO, convicted on RICO and I take
22  all my own pleas, so that's not the issue here.
23           The issue here is, I don't get to the point where I
24  have to decide whether we need to have a Fatico hearing, all
25  right.  And I'm not --

1           MR. SULLIVAN:  Absolutely, Your Honor.

2           THE COURT:  I'm not there.  Don't interrupt me.
3    We're not going there.  Let me hear from the government.

4           MS. HAJJAR:  Your Honor, the government has found
5    this process confusing because although counsel said that
6    there are all these inaccuracies in the PSR, we've asked them
7    what exactly, what provisions of the PSR do you think are
8    inaccurate and counsel has declined to answer that.  There
9    is -- there is no paragraph or portion of the PSR that counsel
10   has specified is inaccurate and would necessitate a Fatico
11   hearing on that factual dispute.  Rather, the statements in
12   counsel's letter are not factual disputes at all.  They are
13   arguments.

14          Examples that were given was Clare Bronfman did not
15   provide any financial support or facilitate sex trafficking
16   whatsoever.  To the extent counsel is saying Ms. Bronfman
17   didn't provide financial support to Raniere, that can be
18   resolved with bank records that clearly demonstrate that she
19   did.  To the extent counsel is actually saying Clare Bronfman
20   didn't knowingly provide financial support to an exploiter or
21   abuser of women, that's an argument they can make to Your
22   Honor at sentencing.  There is no fact there that would be
23   appropriately decided at a Fatico hearing and so the
24   government is not in a position to understand what it is that
25   counsel says needs to be resolved at a Fatico and what

1  witnesses the government would need to call at a Fatico.
2  There is no explanation of any of that.
3              THE COURT:  Mr. Sullivan.
4              MR. SULLIVAN:  Yes, that's completely inaccurate,
5  Your Honor.  For example, the PSR states and claims that
6  Ms. Bronfman used her wealth in order to facilitate the
7  following crimes.  It then goes on to list a number of things
8  including, for example, number one on our list, DOS.  It is a
9  fact indisputable that Ms. Bronfman did not know about DOS.
10 Indeed, the government's own witnesses, the government
11 elicited from its own witnesses at trial that Mr. Raniere
12 specifically said don't tell Clare Bronfman about DOS.  This
13 is a fact.  For the pretrial -- sorry, the presentence report
14 to claim that Ms. Bronfman used her wealth in order to
15 facilitate DOS is a matter of fact that is incorrect.
16             For the presentence report, for example, Your Honor,
17 to claim that Ms. Bronfman made efforts to assist Jane Doe 3,
18 this is commonly referred to as MF, in entering the United
19 States is a falsehood.  Jane Doe 3 entered the United States
20 in 2003 when Ms. Bronfman was riding around Europe.  When she
21 was professionally doing shows in Europe.
22             Things like this, Your Honor, are just demonstrably
23 false and the entire report is riddled with these sorts of
24 claims that attempt to connect Ms. Bronfman with DOS, with sex
25 trafficking, with the illegal importation of people for

1  purposes of sex traffic, and there is nothing.  There is
2  nothing in this record that shows that Ms. Bronfman spent one
3  dime, one penny to facilitate sex trafficking, to facilitate
4  DOS.  These are material misrepresentations that try to
5  connect up Ms. Bronfman with the behavior that she absolutely
6  did not engage in.
7           She accepts responsibility for the things she pled
8  to and she will stand before Your Honor and she will talk
9  about what she did, but to make these sorts of claims simply
10 is not supported by the record, Your Honor.  And we had a
11 conversation with the government, they have a list of these
12 claims.  If the government will simply sign a stipulation that
13 agrees with these propositions, there will be no need for a
14 hearing and so -- I'm sorry, for a Fatico hearing.  We can
15 agree, if the government will agree that Ms. Bronfman did not
16 know about DOS, and you can't fund something you didn't know
17 about, she did not know about the secret society, and she did
18 not fund a sex consult, as it's commonly referred to.  If the
19 government will agree to those sorts of things, then we can be
20 much more efficient with the Court's time, but the report
21 through the back door attempts to associate Ms. Bronfman with
22 all of this conduct that she demonstrably did not engage in.
23 So that was my purpose for the RICO.  I'm saying Ms. Bronfman
24 did not -- did not enter a plea to a RICO, she did not.  She
25 entered a plea to two counts, two counts, two separate counts

1   and not --
2            THE COURT:  All right, I know what she pled --
3   excuse me.  I know -- I was there when she entered her plea so
4   I know all about what she pleaded to.  This is not new news,
5   but what I will say is, what I said at the outset, that with
6   specificity, you can, in your submission on August 28th,
7   provide the Court and the government with specific assertions
8   or facts that take issue with the claims that the government
9   has put forward through the presentence report and then afford
10  the government the opportunity to respond to that, then the
11  Court can decide what to do for the proceeding but -- or if
12  the parties can reach an agreement, that's fine too, or if
13  Ms. Bronfman wants to withdraw her plea and go to trial on the
14  indictment, she can do that too.  But if we have a Fatico
15  hearing and we have witnesses who are brought to court and
16  testify for the government I'll also expect Ms. Bronfman to
17  testify for herself.  So bear that in mind that you just can't
18  cross examine the government's witnesses in a Fatico hearing
19  without having witnesses of your own, beginning with the
20  defendant who's the most important witness as to these
21  activities.
22           This is not a criminal trial.  The purpose of this
23  is to establish by a preponderance what the defendant's
24  activities were in connection with the alleged criminal
25  violation in the indictment.  So I would prefer if we could do

1  all this on paper and then we move on from there to a
2  sentencing.  But I'm not going to give you a free pass on
3  this, sir, because there is plenty of evidence that alludes to
4  and demonstrates potentially that Ms. Bronfman did not simply
5  write checks here and then go riding her horse through Europe.
6           Now, Ms. Bronfman has let Ms. Necheles, Mr. Geragos,
7  and you and we even had some other guy come forward who was in
8  this -- who was that?  Who negotiated with the U.S. Attorney
9  at one point.
10          MR. LESKO:  Mr. Avenatti, Your Honor.
11          THE COURT:  Mr. Avenatti, who according to
12 Ms. Bronfman, was just a consultant.  When I asked her what
13 was Mr. Avenatti in this case, he was a consultant I was told
14 by your client.
15          So my view is file your papers, I will take a look
16 at them, and then I'll figure out what to do from there.  And
17 I'll certainly seriously consider all of your arguments, but I
18 need to know the facts as you see them so that I can make an
19 informed assessment of whether some or all or none of the
20 factual assertions in the presentence report bear
21 consideration on sentencing.  And that's really where I am.
22 If they don't, that's fine.  If they do, that's fine.  And if
23 you're not satisfied with my evaluation, then you certainly
24 have the right to appeal any sentence that is above the
25 guidelines.

1        Anything else?

2        MR. SULLIVAN:  Yes, Your Honor.  We are -- to answer
3   Your Honor's direct question, we are prepared to go forward on
4   that basis should Your Honor grant a Fatico and, yes, we
5   indeed have witnesses that prove up each and every claim that
6   I made on the letter motion.  So we would be ready to proceed
7   on that basis.  We certainly hope the Court will afford us an
8   opportunity to distinguish which things Ms. Bronfman knew
9   about and participated in and which things that she was simply
10  kept in the dark about and had no relation to.

11       I can't speak to what previous counsel have done or
12  have said except those things that are in the record and that
13  is descriptive, but Mr. Levin and I have taken a look at this
14  anew and fresh and we are comfortable.  I've made this on a
15  good faith basis.  Ms. Bronfman knew nothing about DOS for
16  example.  We think we can prove that up and will welcome an
17  opportunity to do so consistent with your Court's -- this
18  Court's order.

19       THE COURT:  Well, if we do have a hearing on that
20  subject I would expect that the -- to prove that up I will
21  need to hear from Ms. Bronfman, so just bear that in mind.
22  This is not -- I'm not going to deal with what Ms. Bronfman
23  was thinking through her mother or her sister or some friend
24  out in Fiji.  She's going to have to do it herself, bear that
25  in mind.  You can bring witnesses but -- if we end up there,

1  but if we do end up there I'm going to need to hear from
2  Ms. Bronfman as well.
3  　　　　　You're not going to slip through the hearing process
4  by just bringing along people who knew Ms. Bronfman, that just
5  won't work.
6  　　　　　MR. SULLIVAN:  That's certainly not my intent.  My
7  intent is to bring forth witnesses that can competently
8  establish propositions that do not rely on what Ms. Bronfman
9  is thinking.  If I make a claim about what Ms. Bronfman is
10 thinking, then certainly we'll bring Ms. Bronfman to testify
11 about what she was -- was thinking.
12 　　　　　THE COURT:  Well, she was -- well, excuse me, excuse
13 me.  I'm not new to this party, sir.  She was writing checks
14 for hundreds of thousands of dollars for this enterprise.
15 You're claiming she wasn't a party to the criminal enterprise.
16 She was writing a lot of checks and it took -- I will tell you
17 since you're new, you are new to it, that it took almost a
18 year for the Court to receive the financial records that the
19 Court needed for the sentencing process.  And so if there's
20 anyone or anything that has slowed this process down before
21 your arrival it was the lack of cooperation in getting the
22 financial information that the Court needed and repeatedly
23 requested through the Probation Department.
24 　　　　　MR. SULLIVAN:  Well --
25 　　　　　THE COURT:  Ms. Bronfman -- I'm not done.  So I'm

1  not going to debate with you today.  I told you what you need
2  to do, I will read everything you submit and then we will take
3  it from there.  It may be that the witness submissions are
4  sufficient.  It may be that you work something out with the
5  government in terms of the facts that can be considered at
6  sentencing, and that would be fine.  But if nothing else like
7  that should take place, you know, I'll go to the next step,
8  whatever the right next step is so we can accomplish a
9  sentencing.  But it may not be on September 30th because I'm
10 not going to be rushed, since Ms. Bronfman's team was not
11 rushed about getting any of the financial information to the
12 Probation Department.  One can't expect the burden to be on
13 the Court to push this through without careful consideration
14 and without a full exposition of your position on the factual
15 issues that are alleged in the presentence report and those --
16 and the views of the government in writing as well.  And
17 that's how we're going to handle it.
18              Anything else for today?
19              MR. SULLIVAN:  Yes, Your Honor, we're happy to do
20 this.  I certainly also would like an opportunity to brief the
21 Court's statement that Ms. Bronfman somehow engaged in the
22 dilatory tactic with respect to submission of financial
23 material to the probation office.  I certainly don't agree
24 with the assertion and don't want it left on the record
25 unchallenged, so with the Court's permission I would like to

1  add something in my submission with respect to that explained
2  as well.
3              THE COURT:  You can put anything in there that you
4  want, but the fact is it took a very long time to get this
5  information.
6              MR. SULLIVAN:  Very well, I'll do that, Your Honor.
7  We appreciate it.
8              MS. HAJJAR:  Nothing further from the government,
9  Your Honor.  Thank you.
10             THE COURT:  Anything from the defense?
11             MR. SULLIVAN:  No, Your Honor.  Except for
12 clarification on the dates that you want the submissions.
13             THE COURT:  The dates have already been psr, have
14 they not?
15             MR. SULLIVAN:  Yes, the August 28th is set, you also
16 mentioned a September 11th date.
17             THE COURT:  September 11th is the government's
18 submission and your reply is September 21st.
19             MR. SULLIVAN:  Very well.
20             THE COURT:  Okay.  Thank you very much everyone.
21 Have a nice day.
22             MR. SULLIVAN:  Thank you.
23             MS. HAJJAR:  Thank you, Your Honor.
24             MR. LESKO:  Thank you, Judge.
25             (Matter concluded.)

          *     *     *     *     *


1  I certify that the foregoing is a correct transcript from the
2  record of proceedings in the above-entitled matter.

<u>s/ Georgette K. Betts</u>          <u>October 2, 2020</u>
GEORGETTE K. BETTS                  DATE

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*