# Exhibit B

```
 1    UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
 2    --------------------------------x
      UNITED STATES OF AMERICA
 3                                        18 CR 204(NGG)

            versus
 4
      KEITH RANIERE, et al,              United States Courthouse
 5                                       Brooklyn, New York
                                         April 4, 2019
 6            Defendants.                11:00 a. m.
      --------------------------------x
 7

 8         TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE NICHOLAS GARAUFIS
 9                UNITED STATES DISTRICT JUDGE

10                         APPEARANCES

11    For the Government:    RICHARD DONOGHUE
                             United States Attorney
12                           Eastern District of New York
                             271 Cadman Plaza East
13                           Brooklyn, New York 11201
                             BY:  MOIRA KIM PENZA, AUSA
14                                TANYA HAJJAR, AUSA
                                  MARK LESKO, AUSA
15

16    For K. Raniere:        BRAFMAN & ASSOCIATES
                             767 Third Avenue, 26th Floor
17                           New York, New York 10017
                             BY:  MARC AGNIFILO, ESQ.
18                                TENY GERAGOS, ESQ.

19                           DEROHANNESIAN & DEROHANNESIAN
                             677 Broadway, Suite 707
20                           Albany, New York 12207
                             BY:  PAUL DEROHANNESIAN, II, ESQ.
21                                DANIELLE SMITH, ESQ.

22    For C. Bronfman:       GERAGOS & GERAGOS
                             Historic Engine Company No. 28
23                           644 South Figueroa Street
                             Los Angeles, California 90071
24                           BY:  MARK GERAGOS, ESQ.

25
```

EXHIBIT-B001

```
 1                       CONTINUED APPEARANCES

 2   For C. Bronfman:        HAFETZ & NECHELES, LLP
                             10 East 40th Street, 48th Floor
 3                           New York, New York 10016
                             BY:  KATHLEEN CASSIDY, ESQ.
 4
     For A. Mack:            KOBRE & KIM, LLP
 5                           800 Third Avenue
                             New York, New York 10022
 6                           BY:  SEAN BUCKLEY, ESQ.

 7   For K. Russell:         SHER TREMONTE, LLP
                             90 Broad Street, 23rd Floor
 8                           New York, New York 10004
                             BY:  JUSTINE HARRIS, ESQ.
 9                                AMANDA RAVICH, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21   Reported by:

22   LISA SCHMID, CCR, RMR
     OFFICIAL COURT REPORTER
23   225 Cadman Plaza East, Room N377
     Brooklyn, New York 11201
24
     Proceedings recorded by mechanical stenography.  Transcript
25   produced by computer-aided transcription.
```

EXHIBIT-B002

1          MR. GERAGOS:  The 17th works for us.

2          THE COURT:  Okay.  That's on the in limine motions.

3          What else do we have?

4          MR. AGNIFILO:  We have a technical issue that I'll

5     let the Government raise about some discovery that they

6     provided, that we -- that we found and then have to give back,

7     but I'll let the Government brief that one to the Court.

8          MS. PENZA:  So Your Honor, as you are aware, we had

9     had an issue regarding one of the discovery devices.  When we

10    had initially produced the device, we did not know that there

11    were child pornography images on the device.  We retracted all

12    of those.  They -- we then -- there was --

13         THE COURT:  Were there images in connection with

14    this case on the device?

15         MS. PENZA:  Yes, Your Honor.

16         We then -- we then reproduced the device.  We did

17    eliminate the folder that had the child pornography; however,

18    there were additional carved deleted files of that -- those

19    same images, I believe the same ones, in other locations on

20    the drive.

21         The FBI is working right now to create a new version

22    of the drive that has removed those deleted images, which we

23    will provide hopefully today to the defendants and receive

24    from them back the original drives that we had.  So it's the

25    second drive that we had given them.

EXHIBIT-B003

1          The Government does want to raise the issue that we

2     put in our -- in our response to the defendant's motion.  In

3     particular, there have now been two assertions by defense

4     counsel regarding their ability to prepare on the predicate

5     acts related to child pornography.

6          THE COURT:  Yes.

7          MS. PENZA:  And so, the Government is obviously

8     concerned by those representations.  I understand that this

9     drive is something that they want to provide to their expert.

10    And so given that, we -- that concern is again raised, that

11    they may need additional time to prepare their expert for

12    those additional charges.

13         THE COURT:  I see.

14         MS. PENZA:  And so we want to make sure that we are

15    proceeding to trial with the defendant and his counsel saying

16    that they are, indeed, prepared to go forward on April 29th,

17    contrary to what they had put in two previous motions.

18         THE COURT:  All right.  Let me hear from Mr.

19    Agnifilo.

20         MR. AGNIFILO:  Yes, Judge.

21         I don't think we ever said that we couldn't be

22    ready.  I think the phrase I used is we were going to move

23    heaven and earth to be ready and we're still going to move

24    heaven and earth to be ready.

25         We have a very productive dialogue with the

1   Government around these matters.  I think what the Government

2   produced and then needed back was through mere inadvertence,

3   and we caught it.  We saw there was something on the drive

4   that should not be in the public sphere.

5          We contacted the Government.  We said, we have to

6   give this back to you.  We knew that would end up in some sort

7   of a delay in getting the drive, which is an important piece

8   of evidence in terms of these charges that were recently

9   indicted.

10         And here's my request -- and I think the Government

11  will work with us on this because they have been working with

12  us on this -- to the extent that we can front-load whatever

13  reports there might exist that relate to the alleged child

14  pornography charges, that -- getting that that sooner rather

15  than later would be very helpful to us.

16         And so we do have an expert.  The expert's been down

17  to the FBI.  The Government was very responsive when I asked

18  for dates.  They accommodated our dates.  Our expert went

19  down.  I expect they'll accommodate our other dates.

20         So as long as we're continuing to be as productive

21  as we've been -- and I think that will continue -- I fully

22  expect to be ready for those charges and all the charges on

23  the trial date.

24         So, it's a lot of work.  It's a lot of work being

25  done at the last minute, but this is what happens in trials

1    and that's what happening here.  And the Government's been

2    accommodating and responsive, and I'm sure we can get it done.

3              MS. PENZA:  Your Honor, if I may, frankly, that

4    doesn't -- that doesn't satisfy the Government.  It doesn't

5    sound like they're in a place to say right now.

6              And in terms of front-loading the information

7    regarding child pornography, Mr. Agnifilo knows that the

8    alleged victim of the child pornography charges goes

9    throughout this case.  I mean, there will be almost -- there's

10   very little evidence in this case that does not relate to that

11   victim.

12             And so, the Government is going to abide by the

13   Court's deadline.  We're going to produce everything.  But

14   given that, the Government is concerned that we are not

15   hearing a clear statement from Mr. Agnifilo and Mr. Raniere,

16   frankly, that they are ready to go.

17             And given that -- we understand that there are

18   jurors coming in.  We do understand that the landscape of this

19   case has changed dramatically, and may continue to change over

20   the coming days.

21             If that is the case, the Government does not

22   anticipate that our trial will last as long as we have

23   previously said to the Court, because we don't believe there

24   will be -- there won't be six defense attorneys

25   cross-examining witnesses, for example.

EXHIBIT-B006

1      And so given that, the Government, you know, the

2  Government feels that there has not been a representation that

3  they will be ready on April 29th, and the Government believes

4  that it's important to have certainty right now.

5      THE COURT:  Well, let me cut to the chase on this.

6  You know, while the Court is reserving judgment for the moment

7  on the pending motions to dismiss and sever, I agree.

8      The Court -- the Court needs to know the answer to

9  the following questions.  And this is from each of the four

10 defendants:  Are you prepared for trial?  Pardon me.  Will you

11 be prepared for trial on the second superseding indictment on

12 April 29th, and if not, how much more time do you need to be

13 fully prepared for trial?

14     I think that's a really essential consideration for

15 the Court.  The Court wants to honor its objective of going to

16 trial April 29th, but not -- but not if I do not hear a

17 declaration, in effect, from each of the defendants' counsel,

18 on behalf of the defendants, that they're going to be prepared

19 to go to trial on April 29th.

20     So, of course, we'll start with you, Mr. Agnifilo,

21 because I agree with the Government, to the degree that there

22 needs to be an affirmative statement that based on what's in

23 the second superseding indictment, that you -- which is a

24 recent indictment -- that you will still be ready to go to

25 trial.

 1              MR. AGNIFILO:  I'll be ready to go to trial, and I

 2    mean, and I say that because I do need help from the

 3    Government.  They have been giving me that help.  I'm going to

 4    need to have my expert going to the FBI.  They have been

 5    accommodating of that.

 6              This little wrinkle with having to give the drive

 7    back is not perfectly timed, but we can get through that.  I'm

 8    told that I'm going to get a new drive soon.  Maybe today.

 9    That would be wonderful.

10              But I'm going to make it work.  I mean, I have an

11    expert on retainer.  He's working for us.  He's given me an

12    assurance that in his opinion, that he has been doing this for

13    decades, he can get the work done that I need done by the

14    29th.  So I expect to be ready for trial.

15              My request -- and maybe I wasn't as clear as I could

16    have been.  I know who the person is in the photographs.

17    That's not the point.  I just believe that there's going to be

18    some sort of FBI reports in regard to that part of the FBI

19    investigation regarding the photographs, that if we could get

20    sooner rather than later, that would be helpful to me, but I

21    will be ready to go, representing Mr. Raniere on the Court's

22    trial date.

23              THE COURT:  Yes, Mr. Geragos?

24              MR. GERAGOS:  Thank you, Your Honor.  We will be

25    ready to go on the 29th.

EXHIBIT-B008

```
 1                THE COURT:  All right.

 2                MS. HARRIS:  Yes, Your Honor.

 3                You know in our March 22nd letter to the Court, we

 4    indicated in connection with our renewal of our motion to

 5    sever, enjoining the motion to sever Ms. Bronfman, that we did

 6    advise that we were in plea negotiations with the Government,

 7    and that the Government had indicated that given the pressure

 8    of trial preparation and the fairly abbreviated schedule that

 9    we have been on, that additional time would be beneficial to

10    conclude those negotiations.

11                And we'll say, given the Court's denial of the

12    motions that were made by counsel for Ms. Mack for an actual

13    adjournment of the trial date, I think substantial progress

14    has been made.

15                So I think that the Government's in a better

16    position to speak to, you know, that particular issue than --

17    we have, of course, been preparing for trial, but that's the

18    only aspect of this that bears as to Ms. Russell.

19                THE COURT:  Yes?

20                MR. BUCKLEY:  Yes, Your Honor.  Sean Buckley on

21    behalf of Ms. Mack.

22                THE COURT:  Yes.

23                MR. BUCKLEY:  As the Court is aware, we are the ones

24    who did file a motion for the continuance, and we recognize

25    that Your Honor has denied it.  Our motion was to permit us to
```

EXHIBIT-B009

1  engage in what have been and what continue to be fruitful

2  discussions regarding potential resolution of this.

3          But other than that, we are similarly situated to

4  Ms. Harris and her client.

5          THE COURT:  Well, as to Ms. Russel and Ms. Mack,

6  it's the old story.  You need to be able to walk and chew gum

7  at the same time in this business.

8          And we have one defendant who's incarcerated, and so

9  I look very carefully at that kind of request, and I also look

10  at the difficulty of impaneling a jury, since we have already

11  sent notices to 500 potential jurors that I'm going to be

12  interviewing in mid-April, and if I interview them in

13  mid-April and tell them that they're going to have to come to

14  court and try a case in June and July, we're in a much

15  different posture than we would be if we're telling the

16  potential jurors that we're going to start the trial in April.

17  So it creates a complication.

18          But I think that my sense is that all of the

19  defendants can be ready to go to trial.  The defendant with

20  the greatest difficulty will be Mr. Raniere because there are

21  additional charges of significance against him in the second

22  superseding indictment, but I have Mr. Agnifilo's clear

23  declaration that he and his client will be ready to go to

24  trial.  And I also have Mr. Geragos, who is a recent addition

25  to Ms. Bronfman's trial team, and he's ready to go to trial.

EXHIBIT-B010

4868

1           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - X
3
UNITED STATES OF AMERICA,    :    18-CR-00204(NGG)
4
            Plaintiff ,       :
5                                 United States Courthouse
       -against-              :    Brooklyn, New York
6
KEITH RANIERE, et al.,       :
7                                 June 13, 2019, Thursday
            Defendant.       :    9:30 a.m.
8
    - - - - - - - - - - - - X
9
               TRANSCRIPT OF TRIAL
10        BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
          UNITED STATES DISTRICT JUDGE, and a jury
11
APPEARANCES:
12
For the Government:          RICHARD P. DONOGHUE
13                           United States Attorney
                             BY: MOIRA K. PENZA, ESQ.
14                               TANYA HAJJAR, ESQ.
                                 MARK LESKO, ESQ.
15                           Assistant United States Attorneys
                             271 Cadman Plaza East
16                           Brooklyn, New York 11201

17  For the Defendant:       BRAFMAN & ASSOCIATES, P.C.
                             767 Third Avenue
18                           New York, New York 10017
                             BY: MARC A. AGNIFILO, ESQ.
19                               TENY ROSE GERAGOS, ESQ.

20                           DEROHANNESIAN & DEROHANNESIAN
                             677 Broadway
21                           Albany, New York 12207
                             BY:  PAUL DerOHANNESIAN, II, ESQ.
22                               DANIELLE R. SMITH, ESQ.

23
Court Reporter:  Stacy A. Mace, RMR, CRR, RPR, CCR
24               Official Court Reporter
                 E-mail:  SMaceRPR@gmail.com
25  Proceedings recorded by computerized stenography.  Transcript
    produced by Computer-aided Transcription.

Booth - cross - der Ohannesian                    4934

1    A    Yes.

2    Q    For example?

3    A    Well, from moving computers across from one computer to

4    another, if you've got a file system that is a very, what we

5    call a young file system, like something we use with floppy

6    disks, they don't actually hold on to all that data because

7    newer file systems can hold modified data, access data, much

8    differently.

9           So sometimes when you move the files across, a

10   creation date would be made, but a last access date wouldn't

11   be created completely.  You'd only have a date.  So in some

12   ways you can actually modify dates and times as you move

13   across different file systems.

14   Q    And that's not something you're able to determine without

15   examining the computers along the way?

16   A    Not unless we have them in our hand, no.

17   Q    So, for example, in this case, we know there was a Dell

18   Dimension computer?

19   A    I don't know that, but if you're telling me.

20   Q    Your analysis reflected a path that said Dell Dimension?

21   A    Yes, I do.

22   Q    And you said there were two other computers?

23   A    Two other file paths that indicated other computers.

24   Q    Like an Apple?

25   A    Like an Apple computer, yes.

Booth - cross - der Ohannesian                          4935

1   Q    What was the third?

2   A    It was another Dell computer.

3   Q    And then you mentioned last access date?

4   A    Yes, I did.

5   Q    And last access date can have many meanings also;

6   correct?

7   A    Yes.

8   Q    It can mean literally the last time someone accessed it;

9   correct?

10  A    Correct.

11  Q    And it can also mean the last time it was copied?

12  A    A last access date can be moved across one computer to

13  another, but the access date, if they're like devices, would

14  stay.  So unless you've actually opened up an item and looked

15  at it, it wouldn't change the last access date.

16  Q    So last access doesn't even mean last view?

17  A    In some cases, software will change the last access date

18  if you've opened it up.  But it's really software dependant.

19  Q    So last access date does not necessarily mean last

20  viewed?

21  A    Correct.

22  Q    But if a file is viewed, it would be reflected in an

23  access date?

24  A    If it's opened up?

25  Q    Yes.

Booth - cross - der Ohannesian                    4936

1    A    Depending on what piece of software.

2    Q    And in terms of file folders, files can be moved from one

3    folder to another; correct?

4    A    Yes.

5    Q    And you don't have that information when you examine a

6    hard drive such as this, whether files were moved or not?

7    A    Well, between devices, I do not.

8    Q    Or even when it was on a Dell Dimension, Dell computer or

9    Apple computer?

10   A    No, I do not.

11   Q    Does DOS script also impact the file names?

12   A    Does what?  Excuse me?

13   Q    DOS.  D-O-S script?

14   A    I don't know what you're referring to.

15   Q    Your examinations were at different times; correct?

16   A    As far as my two examinations here were at two different

17   times, yes.

18   Q    With respect to the images that you testified about this

19   morning, Government Exhibits 518, A through U, they're also

20   reflected in your report.

21        You understand my question?

22   A    As far as looking at the actual items themselves?

23   Q    Let me try to break it down then.

24        So Government Exhibit 518-A through U are like

25   images, printed images?

Booth - cross - der Ohannesian                          4937

1    A    Okay, yes.

2    Q    In addition, you have a report that talks about those

3    images and the data for those images; correct?

4    A    Yes.

5    Q    And some of those were reviewed with you on direct

6    examination by the prosecutor; correct?

7    A    Correct.

8    Q    Do you know, without looking at your report, what the

9    file creation date is for each and every one of Government

10   Exhibit 518-A through U?

11   A    No, I'd have to see the report itself.

12   Q    Then we can do that.

13              MR. der OHANNESIAN:  This is Government

14   Exhibit 504-A.  I'm going to put it on the screen.

15              (Exhibit published.)

16   Q    Starting with -- first of all, can you read it?

17   A    The highlighted item?

18   Q    Yes, .jpg 150?

19   A    Yes, I can.

20              Would you like me to read it out loud?

21   Q    Does that help you recall the file creation date for .jpg

22   150?

23   A    Yes, it does.

24   Q    July 26th, 2003?

25   A    Correct.

Booth - cross - der Ohannesian                    4938

1   Q   151, file creation date.

2   A   Correct.

3   Q   Same?

4   A   2003.

5   Q   .jpg 152?

6   A   Correct.

7   Q   July 2003.

8           .jpg 153, July 2003?

9   A   Correct.

10  Q   .jpg 154, creation date of July 2003?

11  A   Yes.

12  Q   .jpg 155, creation date of July 26th, 2003?

13  A   Yes.

14  Q   .jpg 156, creation date of July 2003?

15  A   Correct.

16  Q   .jpg 160, a creation date of July 26th, 2003?

17  A   Correct.

18  Q   .jpg 161, creation date of July 26th, 2003?

19  A   Correct.

20  Q   .jpg 162, creation date of July 26th, 2003?

21  A   Correct.

22  Q   And .jpg 163, a creation date of July 26th, 2003?

23  A   Correct.

24  Q   So with respect to .jpg images 150 to 163, they were all

25  created, according to your forensic examination, on July 26th,

Booth - cross - der Ohannesian                4939

1   2003; correct?

2   A    Yes.

3   Q    And in terms of the times, going back, we'll go

4   backwards.  That date, 2:05:16, 2:05:16, 2:05:15, 2:05:15,

5   2:05:15, 2:05:14, 2:05:14, 2:05:14, 2:05:13, 2:05:13?

6   A    Correct.

7   Q    2:05:12, 2:05:12, 2:05:12, and 2:05:11.

8            So on those, the first set of .jpg images, there was

9   a creation date of July 26th, 2013?

10  A    Correct.

11  Q    Now, with respect to .jpgs 184 to 191, which you talked

12  about this morning and yesterday, which were also contained in

13  Exhibit 518, do you know what the file creation date was for

14  those messages?

15  A    I recall, I thought they were 2003, also.

16  Q    Would you know for sure if you looked at --

17  A    The report would show it.

18  Q    The one we were just looking at?

19  A    Yes.

20  Q    So this is Exhibit 504-A.  This is the second set of

21  images that you testified about with the prosecution.  .jpg

22  184 creation date, July 26th, 2003, 2:05 p.m.?

23            185, July 26th, 2003?

24  A    Correct.

25  Q    205.

Booth - cross - der Ohannesian                    4940

1            .jpg 186, creation date, July 26th, 2003, 2:05 p.m.

2            .jpg 187, file creation, July 26th, 2003, 2:05 p.m.

3            .jpg 188, file creation, July 26th, 2003, 2:05 p.m.

4            .jpg 189, July 26th, 2003, 2:05 p.m.

5            .jpg 190, July 26th, 2003, 2:05 p.m.

6            And the last in this series from 184 to 191, file

7    creation date of July 26th, 2003, at 2:05 p.m.?

8    A    Correct.

9    Q    So looking at that, it's fair to say that for images 184

10   to 191, they have the same file creation date as .jpg images

11   150 to 163.

12   A    Yes.

13   Q    And in your opinion, is the metadata that was generated

14   with respect to file creation reliable?

15   A    No.

16   Q    Is it possible these images were created in 2004?

17   A    Yes.

18   Q    Is it possible they were created in 2005?

19   A    Yes.

20   Q    Is it possible they were created in 2006?

21   A    You can keep going on what dates.  I don't know.

22   Q    Right.  It could be 2008?

23   A    Yes.

24   Q    It could be 2010?

25   A    Correct.

Booth - cross - der Ohannesian                    4941

1  Q    Because the file creation metadata is not reliable in
2  this case, according to you; correct?
3  A    The file -- the file system metadata for those dates and
4  times are not accurate.
5  Q    That issue has nothing to do with how you may have
6  conducted your examination; is that correct?
7  A    Correct.
8  Q    And these images which form the basis of the photographs
9  which were displayed today, also had modified dates on them?
10  A    Yes, they did.
11  Q    And do you remember what the modified date was for .jpg
12  images 150 to 163?
13  A    If I recall, it came back to a 2005 date.
14  Q    Okay.  And with respect to .jpg images 184 and 195, do
15  you recall what the file modified date was?
16  A    I think they call came back to 2005.
17  Q    And then did you determine in your analysis file access
18  dates?
19  A    No, I did not.
20
21            (Continued on following page.)
22
23
24
25

Proceedings                                                    4973

1   A    Which -- which metadata are you specifically --

2   Q    The date accessed.

3   A    You're talking from the file system?

4   Q    I'm talking about the data that we just looked at.

5   A    That file system data appears to have been changed.

6   Q    When we say "changed," it was changed while it was in the

7   possession of the FBI?

8   A    If I'm taking the dates on when we received it, it would

9   appear so.

10  Q    And the dates that you received just now came from your

11  report, correct?

12  A    Yes.

13  Q    That you generated as evidence in the case against --

14  United States against Keith Raniere, correct?

15  A    Yes.

16  Q    The goal of forensic examination is to preserve the

17  electronic data, so that the metadata doesn't change, correct?

18  A    Correct.

19  Q    Do you know the name of the person who accessed the SD or

20  media card, Exhibit 524, on September 19, 2018?

21  A    No, I do not.

22  Q    Do you have any record in any piece of evidence or notes

23  that reflects the accessing of Government Exhibit 524 by any

24  representative of the FBI on September 19, 2018?

25  A    No, I do not.

Proceedings                                                4974

1   Q    Based on your forensic examination of the Western Digital

2   drive, or Government Exhibit 524, do you have any digital

3   evidence that Keith Raniere knew the content of any of the

4   electronic images on either Government Exhibit 503 or 524?

5   A    I don't know Mr. Raniere, so I would never know what he

6   knows.

7   Q    Do you have any -- based on your forensic examination, do

8   you have any digital evidence as to the identity of any

9   individual who at any time may have accessed any information

10  on the Western Digital hard drive?

11  A    I do not know.

12  Q    Based on your forensic examination, do you have any

13  digital evidence of the identity of any individual who may

14  have accessed any electronic information on Government

15  Exhibit 524?

16  A    I don't know who had access to this.

17  Q    And based on your forensic examination of Government

18  Exhibit 503 or 504, do you know the identity of any person who

19  took any particular image about which you have testified

20  before this grand jury -- before this jury?

21  A    I just know people's pictures that are in the images,

22  that's it.

23  Q    You don't know the identity of any person who would have

24  been behind the camera at any particular time --

25  A    No.

Proceedings                                        4975

1   Q      -- fair to say?

2   A      Fair.

3              MR. der OHANNESIAN:  Nothing else, Your Honor.

4   Thank you.

5

6              (Continued on the following page.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25