---------------------------------------------------------x

UNITED STATES OF AMERICA

                                              Case No.1:18-cr-00204(S3)(NGG)

v.

CLARE BRONFMAN,

        *Defendant.*

---------------------------------------------------------x

## CLARE BRONFMAN'S MOTION TO MODIFY SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. § 3583(d)(2)

Clare Bronfman, by and through undersigned counsel, respectfully requests that the Court modify her special conditions of supervised release pursuant to 18 U.S.C. § 3583(d)(2).

On September 30, 2020, the United States District Court for the Eastern District of New York ordered at Ms. Bronfman's Sentencing Hearing special conditions of supervised release that she "not associate in person through e-mail, through mail, electronic mail, telephone with any individual with an affiliation through Executive Success Programs, Nxivm, DOS or any other affiliated Nxivm organizations. Nor shall the defendant frequent any establishment or locale where these groups may be, pursuant to but not limited to prohibition list provided by the U.S. Probation Department." *See Exhibit A* 128-129.

This Special Non-Associational Condition ("SNC") should be amended or clarified, as it presently violates four requirements founded in constitutional, statutory, and precedential authority:

1. **Special conditions must be reasonably related to the sentencing factors.** The SNC is not reasonably related to the sentencing factors, and the Court failed to provide the required individualized assessment to justify imposing the SNC.

1

2. **Special conditions must be sufficiently clear.** The SNC is vague because the term "affiliated" is undefined, especially in the context of the now defunct organizations.

3. **Special conditions must not impose a greater deprivation of liberty than reasonably necessary to accomplish sentencing objectives**. The SNC infringes upon Ms. Bronfman's First Amendment right to freely associate by banning her from interacting with thousands of individuals merely "affiliated" with **non-criminal** and now-defunct organizations, arbitrarily curtailing not only her rights but also those of these individuals.

4. **Special conditions must not result in the court exceeding its ability to delegate decision-making authority to Probation.** The SNC improperly delegates to Probation the authority to decide, from potentially thousands, which individuals Ms. Bronfman can or cannot associate with, exceeding the court's permissible scope of delegation.

Ms. Bronfman respectfully submits that the conditions of supervised release as applied to her are vague, overbroad, and unduly burdensome as per the statutory safeguards set out in 18 U.S.C. §§ 3583(d)(1), (d)(2), and (d)(3) and as such requests a modification pursuant to 18 U.S.C. § 3583(d)(2) stating the specified persons to be included in these limitations and the specific justifications for their inclusion.

### I. The SNC is invalid due to the lack of a required individualized assessment by the Court.

The law requires that when imposing special conditions of supervised release, a District Court must conduct "individualized assessments when determining whether to impose a special condition of supervised release, and . . . state on the record the reason for imposing it." *United States v. Sims*, 92 F.4th at 123 (quoting *Eaglin*, 913 F.3d at 94 (citations omitted)). The District Court must make "findings specific to the defendant, connecting those findings to the applicable § 3553(a) factors that would justify including the special condition." *Id.*; *see also United States v. Salazar*, No. 22-1385-cr, 2023 WL 4363247, at *3 (2d Cir. July 6, 2023) (vacating judgment where district court "did not make individualized findings about the nexus between the breadth of the

condition, on the one hand, and [the defendant's] characteristics and offense conduct, on the other").

The Court did not perform such an inquiry or place any such findings on the record. The SNC is therefore invalid as a matter of law and so must be amended.

## II. The SNC is not reasonably related to the sentencing factors.

There must be a "reasonable relationship" between the SNC and "the [sentencing] factors considered by the district court in the individualized assessment." *United States v. Haverkamp*, 958 F.3d 145, 151 (2d Cir. 2020) (citation omitted); *see* 18 U.S.C. § 3583(d)(1) (listing § 3553(a) factors for consideration).

Among the relevant statutory factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," the need "to afford adequate deterrence to criminal conduct," and the need "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C).

The Court did not conduct such an individualized assessment, which would have specified the justification for the SNC. However, even if the Court were to provide its justification, there would be no reasonable relationship between the factors and the very broad SNC.

The Court's own conclusion at Ms. Bronfman's sentencing supports that the SNC is unjustified, as it stated: "**I don't expect her to commit further crimes of this nature, regardless of the sentence that I imposed.**" *See* Dkt. 964 at 123 (emphasis added).

## III. The SNC is unconstitutionally vague.

Due process requires that the conditions of supervised release be sufficiently clear to "'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he

3

may act accordingly.'" *United States v. Cabot*, 325 F.3d 384, 385 (2d Cir. 2003) (quoting *Grayned v. City of Rockford*, 408 U.S. 104 (1972)); *see also LoFranco v. United States Parole Comm'n*, 986 F.Supp. 796, 810–11 (S.D.N.Y.1997). A statute violates due process of law if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926). Although a condition of supervised release applies only to the releasee, rather than to the general public, "[a] probationer [] has a[] due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002); *see also Cabot*, 325 F.3d at 385; *LoFranco*, 986 F.Supp. at 811 (special condition prohibiting petitioner from associating with "outlaw motorcycle gangs" was unconstitutionally vague).

The SNC here is vague because a reasonable person cannot know what it means to be "affiliated" with these now defunct organizations. It might apply to anyone who ever took a class with them. Even the most charitable reading results in effectively prohibiting Ms. Bronfman from interacting with thousands of as yet unidentified members of the public, including members of her own family.[1] And if this reading is not the right one, it is difficult to identify one that is. Accordingly, the current SNC fails to provide Ms. Bronfman with clarity on how to conform with the Court's order and therefore should be amended.

### IV. The SNC violates Ms. Bronfman's rights under the First Amendment.

---

[1] As is well documented, Ms. Bronfman became involved with NXIVM through her father and participated in its programs with her sister and cousins. Under the current language of the SNC, Ms. Bronfman is presumptively prohibited from interacting with her sister, her cousins and would be presumptively prohibited from contacting her father were he still alive. Clearly this is not the result the Court intended.

4

Under the First Amendment, Ms. Bronfman has a liberty interest in maintaining personal relationships with whom she chooses. *See United States v. Myers*, 426 F.3d 117, 125 (2d Cir. 2005) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984) (holding that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding individual freedom that is central to our constitutional scheme").

"A deprivation of that liberty is only 'reasonably necessary'" and therefore only passes constitutional muster "if the deprivation is narrowly tailored to serve a compelling government interest." *Myers*, 426 F.3d at 126.

In each situation where an SNC has been found to be constitutional, the associational prohibition has been directly linked to the specific crimes or **criminal groups** involved in the conviction.[2] However, in this case, the SNC lacks such a link. It prohibits contact with "any individual with an affiliation through Executive Success Programs, Nxivm, DOS or any other affiliated Nxivm organizations." These are **non-criminal groups.** They were never charged as conspiracies or as criminal enterprises under RICO, let alone adjudicated as such.

Over the course of these organizations' existences, *tens of thousands*[3] of people signed up to take classes, attend events, and otherwise become "affiliated" with NXIVM, ESP, and associated

---

[2] *See, e.g.*, *United States v. Schiff*, 876 F.2d 272, 276-77 (2d Cir. 1989) (upholding SNC that prohibited petitioner, who had been convicted of tax evasion, from associating with persons and groups that advocated non-compliance of tax laws); *United States v. Gracia*, 755 F.2d 984, 991 (2d Cir. 1985) (upholding SNC that prohibited petitioner, who had been convicted of refusing to testify to a grand jury investigating terrorist groups, from associating with suspected terrorists and terrorist groups); *United States v. Green*, 618 F.3d 120, 123-23 (2d Cir. 2010) (upholding SNC that prohibited petitioner, who had been convicted of gang-related activity, from associating with criminal street gangs).

[3] The line of cases finding SNCs to be constitutionally proper involve organizations with limited members. The sheer number of people who were involved NXIVM and related entities is surely enough to raise concerns with overbreadth.

entities. Any assertion that preventing Ms. Bronfman from associating with *anyone* affiliated with these organizations is important to the goals of sentencing is fundamentally flawed: unlike a "criminal street gang" where mere membership can sensibly implicate advocacy of unlawful behavior, the vast majority of the thousands on thousands that were affiliated with these

**non-criminal** organizations had no goal other than self-improvement, have no criminal history, nor any connection to the legal matter at hand.

Yet as it stands, the SNC prevents these individuals, including friends and family of Ms. Bronfman from associating with Ms. Bronfman. This unwarranted restriction fails to serve any legitimate sentencing objective. **Thus, the SNC sets a dangerous precedent that not only violates the First Amendment rights of Ms. Bronfman but effectively violates those of others not connected to the legal matter at hand nor involved in any criminal proceedings, arbitrarily curtailing their freedom of assembly. This is patently unconstitutional and exceeds the bounds of governmental authority.**

If allowed to stand, this precedent could serve as a blueprint for broader governmental overreach, silencing dissent and weakening the public's ability to organize, advocate, and peacefully challenge authority—a foundational principle of any free society.

### V. <u>The SNC exceeds the Court's ability to delegate decision-making authority to Probation.</u>

Some of Ms. Bronfman's vagueness concerns could perhaps in theory be addressed by simply asking Probation to provide her with a more precise list of who they consider to be covered by the Court's order. Any such list, however, would be problematic: given the *tens of thousands* of people to which the SNC could arguably apply. Allowing Probation to pick and choose goes

6

beyond Probation's obligation to effectuate the Court's sentence and instead usurps the Court's authority to fashion one. Though the Court may, and for all practical purposes, must delegate *some* decision-making authority to Probation, it cannot delegate the authority to determine the extent of a special condition because that kind of delegation makes "a defendant's liberty contingent on a probation officer's exercise of open-ended discretion." *United States v. Carlineo*, 998 F.3d 533, 538 (2d Cir. 2020).

This Court has held that constitutional limits, shaped in large part by 18 U.S.C. § 3583(d) and the Sentencing Guidelines, U.S.S.G. § 5D1.3(b), are vital for safeguarding the rights of criminal defendants and have been explained to varying degrees by our precedent.

Undersigned counsel inquired of the government regarding its position on this issue, and the government noted its opposition.

## CONCLUSION

WHEREFORE, Ms. Bronfman respectfully requests the Court modify her conditions of supervised release to specify which individuals and organizations she is not to associate with, and the specific reasons for the prohibition.